**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| RMAIL LIMITED,<br><br>           Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC., PAYPAL, INC., and SOCIETY FOR WORLDWIDE INTERBANK FINANCIAL TELECOMMUNICATION SCRL D/B/A SWIFT,<br><br>           Defendants. | CASE NO.  2:10-CV-00258-JRG |

**AMAZON AND PAYPAL'S OPPOSED MOTION TO STAY
IN VIEW OF CLAIM AMENDMENTS DURING REEXAMINATION**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. APPLICABLE LAW ........................................................................................................ 1

III. THE SPECIFIC FACTS OF THIS CASE ........................................................................ 1

    A. The '219 And '334 Patents In Suit ........................................................................ 1

    B. Representative Amendments To The
       '219 and '334 Patents In Reexamination ................................................................ 3

    C. The Reexamination Timelines Going Forward .................................................... 5

IV. ARGUMENT .................................................................................................................... 7

    A. The First Factor: Whether A Stay Will Unduly Prejudice
       Or Present A Clear Tactical Disadvantage To The Nonmoving Party ................. 7

    B. The Second Factor: Whether A Stay Will
       Simplify The Issues In Question And Trial Of The Case .................................... 8

    C. The Third Factor: Whether Discovery
       Is Complete And Whether A Trial Date Has Been Set ........................................ 9

    D. Rmail's Material Amendments To The
       Claims Raise Numerous Other Legal Issues ........................................................ 9

V. CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Alza Corp. v. Wyeth.,*
  Case No. 9:06-CV-156, 2006 WL 3500015
  (E.D. Tex. Nov. 21, 2006) ................................................................................................ 9

*Marine Polymer Tech., Inc. v. HemCon, Inc.*,
  672 F.3d 1350 (Fed. Cir. 2012) ...................................................................................... 10

*Microlinc, LLC v. Intel Corp.*,
  Case No. 2:07-CV-488, 2010 WL 3766655
  (E.D. Tex. Sept. 20, 2010) ............................................................................................... 7

*Southwire Co. v. Cerro Wire, Inc.*,
  750 F. Supp. 2d 775 (E.D. Tex. 2010) ................................................................. 1, 7, 8, 9

*Spa Syspatronic, AG v. Verifone, Inc.*,
  Case No. 2:07–CV–416, 2008 WL 1886020
  (E.D. Tex. April 25, 2008) ........................................................................................... 8, 9

**Statutes**

35 U.S.C. § 252 ...................................................................................................................... 10

35 U.S.C. § 307(b) ................................................................................................................. 10

35 U.S.C. § 316(b) ................................................................................................................. 10

I.   **INTRODUCTION**

Defendants Amazon.com, Inc. ("Amazon") and PayPal, Inc. ("PayPal") move to stay this action, due to the fact that Plaintiff has voluntarily amended every claim in suit during reexamination. Every claim asserted in this case is therefore in flux, and it would be a waste of this Court's and others' resources to have multiple, redundant claim construction processes in one case.

II.  **APPLICABLE LAW**

The Court has the inherent power to control its own docket, including the power to stay proceedings. "In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp. 2d 775, 778 (E.D. Tex. 2010) (citations omitted).

III. **THE SPECIFIC FACTS OF THIS CASE**

   A.   **The '219 And '334 Patents In Suit**

Rmail asserts two patents in this action: (1) the '219 patent, asserted against both Amazon and PayPal and (2) the '334 patent, which is asserted only against PayPal.[1] The '219 patent[2] issued in January 2001 from a series of applications, saliently including United States Patent Application Serial Number 08/981,461. The '334 patent[3] issued from a continuation application that cited the same application (08/981,461) for priority, and repeats the specification and drawings of the '219 patent, with no differences that are

---

[1] The complete patent numbers are 6,571,334 and 6,182, 219.
[2] Ex. A to the Declaration of Derrick W. Toddy ("Toddy Decl.").
[3] Toddy Decl., Ex. B.

1

material for purposes of this motion. Both patents are titled "Apparatus and Method for Authenticating the Dispatch and Contents of Documents," and discuss both electronic (e-mail) and non-electronic (paper) embodiments for sending a message from one person to another via a mutually trusted third party. *See*, *e.g.*, '219 patent, col. 3, ll. 24-28, and column 4, ll. 1-4.

The Summary of the Invention common to both patents-in-suit states in part that one object of the present invention is to improve systems' capacity "to provide the sender with evidence he can use to prove both the dispatch and its contents." *Id.*, col. 2, ll. 59-61. The Background portion that is also common to the both patents further explains that the alleged invention contrasts with ordinary Registered Mail because, according to the patents, with Registered Mail "no proof is provided as to the information contents of the specific dispatch." *Id.*, col. 2, ll. 26-33. In sum, under the claimed invention, the third party service records timing, content, and destination information for the forwarded message, for reference in the event of any later dispute as to what sender sent where, and when. *E.g.*, *id.*, col. 2, ll. 50-61.

The claims of the '219 and '334 patents also share a good deal of common language. As an example, all of the independent claims share similar language reciting the indication of time information "relating to" or "associated with" the transmission of the dispatched message:

### "Time Indication" Language In The Current Claims

1) "a2 — a time indication associated with said dispatch"
   '219 patent, claims 1 and 30

2) "an indicia relating to a time of transmission of the dispatch"
   *Id.*, claims 60, 71, and 82

2

    3) "an indicia a2 relating to a time of the dispatch"
       '334 patent, claims 1, 18, and 35

Rmail has amended this time-indication language in every claim to overcome prior art rejections in reexamination, as shown below.

### B. Representative Amendments To The '219 and '334 Patents In Reexamination[4]

As can be seen below, in every claim at issue in this case,[5] Rmail has amended the language for the time indicator to require that (a) the time be the precise time of a transmission by the trusted third party to a recipient;[6] (b) that the transmission to the recipient be "successful"; and (c) that the third party "dispatcher" or authenticator" record the time indication information. These amendments are shown in the text below. Text in [brackets] indicates text that Rmail has deleted from the original claims, and <u>underlining</u> indicates text that Rmail has added to the amended claims. In particular, Rmail's amendments and arguments make clear that, under the amended claims, the time that the authenticator or dispatcher records must be the time the trusted third party "transmits" the dispatch, not, for example, the time that the trusted third party received it from the sender, or the time that the third party processed the message.

### "Time Indication" Language In The Amended Claims

    1) "a2 — [a time indication associated with said dispatch] <u>an indicia of a time of the successful transmission of the certain information to the recipient, the indicia recorded by the dispatcher</u>" '219 RX, amended claims 1 and 30.[7]

---

[4] These proceedings are referred to herein as the '219 RX and the '334 RX, respectively.
[5] Every asserted claim is either shown below, or depends from one of the claims shown below.
[6] *See, e.g.*, Toddy Decl., Ex. C, '334 RX, Rmail's March 13, 2012 Suppl. Resp. to Non-Final Office Action ("'334 RX Suppl. Resp. to Non-Final") at 14 ("the time at which the Postmaster [in a prior art reference] received the message from the sender … is not related to the time (if any) that the message is successfully transmitted to recipient.").
[7] Toddy Decl., Ex. D, '219 RX, Rmail's March 29, 2012 Resp. After Final Office Action ("'219 RX Resp. After Final").

2) "an indicia of [relating to] a time of successful transmission of the dispatch to the recipient, said time related indicia being recorded by an authenticator" *Id.,* amended claim 60.

3) "an indicia [relating to] of a time of successful transmission of the dispatch to the receiving system, said time related indicia being recorded by the authenticator" *Id.,* amended claim 71

4) "an indicia of [relating to] a time of successful transmission of the dispatch to the destination receiving system, said time related indicia being recorded by the authenticator" *Id.,* amended claim 82

5) "an indicia a2 [relating to] of a time of the successful transmission of the dispatch to the recipient, the indicia recorded by the authenticator" '334 RX Suppl. Resp. to Non-Final, amended claim 1.

6) "an indicia a2 relating to a time [of] the successful transmission of the dispatch from or for the sender to the recipient, the indicia recorded by an authenticator" *Id.,* amended claim 18.

7) "an indicia a2 relating to a time [of] the dispatch was successfully sent from the sender to the recipient … the indicia recorded by the authenticator" *Id.,* amended claim 35 (ellipsis added).

Rmail made these amendments because in each of the reexamination proceedings, the PTO rejected every claim as being anticipated by and obvious in light of the prior art. To take one example, in the '334 RX, the PTO found claims to be anticipated by a 1994 publication titled "Certified E-Mail," a copy of which is attached as Exhibit E to the Toddy Declaration. This publication, abbreviated "CEM94," describes a computerized Postmaster who forwards certified electronic mail from Sender Sue to Receiver Rob, and keeps a time-stamped record that reflects what Sue sent, for use as evidence in the event of a later dispute. *See, e.g.,* Toddy Decl., Ex. E, CEM94 at 1, 6, and 8. (The '219 RX Examiner rejected a number of claims as anticipated by a different copy of the same prior art reference – cited as "Bahreman" therein.)

4

In the reexaminations, Rmail has argued that its amended claims should be allowed over CEM94/Bahreman and other art based on Rmail's contention that each of the amended claims requires that the trusted third party records proof of the successful delivery of the sender's message. I.e., Rmail has argued that under each amended claim, the third party records time indicia evidence that proves precisely when a message was forwarded by the trusted intermediary, and that the evidence the trusted third party records is proof that the sender's message "actually gets to the recipient." *See, e.g.*,'334 RX Suppl. Resp. to Non-Final at 8. According to Rmail, these amendments are supposed to distinguish the CEM94 system. *See id.* at 18 (Stating that **"[i]n view of the amendments made to the claims**, Patent Owner [Rmail] submits that there is no reasonable likelihood" that the amended '334 claims 1, 18 and 35 are anticipated by the "CEM94" prior art reference.) (emphasis added).

### C. The Reexamination Timelines Going Forward

The '219 RX proceeding (Control No. 90/011,580), is an "ex parte" proceeding, while the '334 RX proceeding (Control No. 90/011,772) is "inter partes." Generally speaking, in ex parte reexaminations, the party requesting reexamination ("requester") has no further participation after the initial papers are filed. By contrast, in inter partes reexaminations, the requester has the opportunity to be heard again each time the patent owner files a substantive response to a PTO Office Action. The timelines of these two reexaminations are therefore independent. Moreover, they are before different Examiners in the PTO.

In the ex parte '219 RX, the Patent Office is currently considering Rmail's amendments, which have altered every claim in the patent. In a submission dated March 29, 2012, Rmail represented that the Examiner indicated in February that

5

amendments to the claims could place them in condition for allowance. *See* '219 RX Resp. After Final at 8. Rmail also represented that, during a subsequent interview in March, its attorney "proposed amending the independent claims of the '219 patent **to narrow the claimed indicia of time** to be an indicia of a time of the successful transmission" of the dispatch, the indicia being recorded by the dispatcher or authenticator. *Id.* at 10 (emphasis added). The next expected event in the ex parte '219 RX is an Office Action. It is possible that this action will be a Notice of Intent to Issue a Reexamination Certificate, in which case the currently asserted patent claims would be certain to be formally superseded in the fairly near future, altering the basic intrinsic evidence for the '219 patent.

In the inter partes '334 RX, requester eBay, Inc. (the parent company of defendant PayPal) has rebutted Rmail's amendments of every claim, and related arguments in a submission filed April 12, 2012. The next expected event in the '334 RX is also an Office Action, after which there will be further opportunity for written submissions. If the PTO is persuaded by eBay's April 12, 2012 comments and Rmail's amended claims are rejected in this next Office Action, Rmail may argue and seek to amend the claims further. Alternatively – or subsequently – once the Examiner issues a Right of Appeal Notice, Rmail may appeal any adverse decision to the Board of Patent Appeals and Interferences. At the other extreme, if Rmail were to prevail on its arguments on one or more of its amended claims and such claims are found allowable as amended, then eBay would similarly have a right to appeal any finding favorable to patentability once the Examiner issues a Right of Appeal Notice.

IV. **ARGUMENT**

While Rmail's arguments and amendments **may** result in reissued claims, whose validity and alleged infringement will be subject to dispute, there can be no dispute that every claim that is now asserted in this suit **will** either be rejected or materially altered from its present form. Indeed, this is already the case: all claims have been materially altered by Rmail's own hand in response to rejections by the Examiner.[8] All three factors that this Court weighs on motions to stay pending reexamination therefore favor granting a stay on the specific facts of this case, which resemble those of *Southwire* in several respects, but weigh even more strongly in favor of a stay, as set forth in more detail below.

    A. **The First Factor: Whether A Stay Will Unduly Prejudice Or Present A Clear Tactical Disadvantage To The Nonmoving Party**

Rmail is a non-practicing entity, so there is no potential prejudice of lost market share. *See Microlinc, LLC v. Intel Corp.*, Case No. 2:07-CV-488, 2010 WL 3766655 (E.D. Tex. Sept. 20, 2010) (stay granted; "since Microlinc does not manufacture or sell any products, or otherwise practice the patent, there is no risk of customer losses or of injury to market share during a stay.") (citation omitted). Even if Rmail were a competitor, Rmail's decision to submit substantive claim amendments during the '219 and '334 patents' reexamination "neutralizes" any conceivable prejudice and "strongly favor staying the litigation." *Southwire*, 750 F. Supp. 2d at 779.

---

[8] Since all claims of both the '219 and '334 patents are changing, the same is true for all claims of each of the suits presently pending in this District in which one or both of these patents are asserted. *See* 11-cv-0016-JRG; 11-cv-238-JRG; 11-cv-262-JRG; 11-cv-299-JRG; 11-cv-300-JRG, and 11-cv-325-JRG.

7

### B. The Second Factor: Whether A Stay Will Simplify The Issues In Question And Trial Of The Case

Here, as in *Southwire*, Rmail's claim amendments and responses during the '219 and '334 patent reexaminations will result either in no surviving claims, or in "amended claims with different scope and limitations than the claims currently at issue." *Id.* Plaintiff's inconsistent statements to the PTO also favor a stay. *Id.* In pursuing its patent claims in this Court, Rmail contends that the '219 and '334 patent claims are valid. However, Rmail has stated to the PTO that the revised claims of the '334 patent should be allowed "[i]n view of the amendments made to the claims.*"* *See, e.g.*, '334 RX Suppl. Resp. at 18 (same at 33 and elsewhere). Rmail chose to amend its claims, and it is based upon those particular amendments that it now asserts that the '219 and '334 patents are valid over the prior art. "Accordingly, it would waste the Court's time and resources to construe the original ['219 and '334] patent claims. A stay would simplify and resolve any inconsistencies between [Rmail's] representations to the Court and the PTO regarding the scope and validity of the ['219 and '334] patents." *Southwire*, 750 F. Supp. 2d at 779. Rmail's "inconsistent positions regarding validity and its amendments changing" the scope of the asserted patents "before the Court has conducted a *Markman* hearing strongly favor staying this case." *Id.*

A complete intrinsic record is also preferable to a changing, incomplete one, and piece-meal claim construction proceedings should be avoided. *See, e.g.*, *Spa Syspatronic, AG v. Verifone, Inc.*, Case No. 2:07–CV–416, 2008 WL 1886020, *3 (E.D. Tex. April 25, 2008) ("claim construction will ultimately be simplified because statements made during the reexamination become part of the prosecution history, which allows a full development of the intrinsic evidence to be considered by the Court. On the whole, the

8

parties and the Court will benefit from the PTO's expert guidance on the issues, and the second factor therefore weighs in favor of staying the case." (citing *Alza Corp. v. Wyeth.,* Case No. 9:06-CV-156, 2006 WL 3500015, *2 (E.D. Tex. Nov. 21, 2006)).

It is also significant that the inter partes '334 RX will finally resolve prior art validity issues between Rmail and eBay on the '334 patent. *See* 35 U.S.C. § 315(c).[9]

### C. The Third Factor: Whether Discovery Is Complete And Whether A Trial Date Has Been Set

Defendants are bringing this motion before the claim construction process of Patent Local Rule 4 has begun. The parties are presently scheduled to exchange terms under P.R. 4-1 on June 14, 2012. The *Markman* hearing is scheduled for February 14, 2013. Trial is set for August 2013.

The timing of this motion is therefore equivalent to the timing of the motions to stay granted by this Court in the *Southwire, Spa,* and *Alza* cases cited above. As in Southwire, "the *Markman* hearing has not occurred, expert reports have not been exchanged, discovery is not completed, summary judgment motions have not been filed, and the Court has not begun its claim construction." *Southwire*, 750 F. Supp. 2d at 780. Given that the proposed amendments in both patents "significantly alter the originally issued claims that are currently pending before the Court," it is still early enough in this litigation to warrant a stay. *Id.*, 750 F. Supp. 2d at 779-80.

### D. Rmail's Material Amendments To The Claims Raise Numerous Other Legal Issues

By voluntarily amending all of the claims asserted in this case, Rmail has injected a number of new legal issues into the case. For example, standing to assert the amended claims does not arise until the Reexamination Certificate issues from the PTO (if and

---

[9] Again, the '334 patent is not asserted against Amazon.

9

when). Subject matter jurisdiction issues can arise for anything that is advisory at this time, such as claim construction of the amended clams. Third, and not least, since the amended claims are not "substantially identical" to the original claims, any suit brought or maintained after a Reexamination Certificate issues for either patent will be substantially limited in scope. *See* 35 U.S.C. § 252 and Sections 307(b) (for the '219 patent), and/or Section 316(b) (for the '334 patent). See *generally*, *e.g.*, *Marine Polymer Tech., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1360-62 (Fed. Cir. 2012) (en banc) (patent owners cannot seek damages for activities predating the Reexamination Certificate's issue date on claims that were expressly amended in reexamination and are not "substantially identical" to the original claims; such amended claims also raise issues of "absolute" and/or "equitable" "intervening rights").

## V.     CONCLUSION

Defendants respectfully submit that the specific combination of these factors in this case merit staying this case until the reexaminations of both of the patents in suit have concluded. Otherwise the currently scheduled claim construction proceedings will be premature, piecemeal and/or wasteful, will lack the benefit of a complete intrinsic record, and are likely ultimately to be mooted either by the cancellation of currently asserted claims and/or by the issuance of Rmail's proposed amended claims.

Alternatively, Defendants request that the case be stayed for six months, and that the parties file a joint status report by October 31, 2012, which is three and a half months

prior to the date currently scheduled for the *Markman* hearing.

            Respectfully submitted,

Dated: April 26, 2012    By: */s/* James E. Geringer
            James E. Geringer (OR Bar No. 951783)
            james.geringer@klarquist.com
            Derrick W. Toddy (OR Bar No. 072043)
            derrick.toddy@klarquist.com
            John D. Vandenberg (OR Bar No. 893755)
            john.vandenberg@klarquist.com
            Kristin L. Cleveland (OR Bar No. 001318)
            kristin.cleveland@klarquist.com
            KLARQUIST SPARKMAN, LLP
            121 S.W. Salmon Street, Suite 1600
            Portland, Oregon  97204
            Telephone:  (503) 595-5300

            Jennifer Parker Ainsworth (TX Bar No. 00784720)
            jainsworth@wilsonlawfirm.com
            WILSON, ROBERTSON & CORNELIUS, P.C.
            One American Center
            909 ESE Loop 323, Suite 400
            P.O. Box 7339 [75711]
            Tyler, Texas 75701
            Telephone:  (903) 509-5000

            *Attorneys for Defendants*
            *Amazon.com, Inc. and PayPal, Inc.*

**CERTIFICATE OF CONFERENCE**

Counsel has complied with the meet and confer requirement in Local Rule CV-7(h).  The personal conference or conferences required by this rule have been conducted.  Undersigned counsel for Defendants PayPal, Inc. and Amazon.com, Inc. met and conferred with Robert Greenspoon (counsel for Plaintiff Rmail, Inc.) by phone and e-mail correspondence on multiple occasions, over the course of several weeks.  Rmail asked for time to consult with its client, as well as to coordinate with its licensee, and on information and belief did so in good faith.  Ultimately, however, on April 11, 2012, Rmail chose to oppose any motion for stay.

*s/* Derrick W. Toddy

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 26, 2012 a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*s/* James E. Geringer