PATRICK C. MCGARRIGLE, ESQ., SBN 149008
MICHAEL J. KENNEY, ESQ., SBN 192775
PHILIP A. ZAMPIELLO, ESQ., SBN 198723
McGARRIGLE, KENNEY & ZAMPIELLO, APC
9600 Topanga Canyon Boulevard, Suite 200
Chatsworth, California   91311
PH: (818) 998-3300    FAX: (818) 998-3344

Attorneys for Judgment Creditor
Kenneth Barton

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF TEXAS

### MARSHALL DIVISION

| | |
|---|---|
| RMAIL LIMITED,<br><br>            Plaintiff,<br><br>      v.<br><br>AMAZON.COM, INC., et al.,<br><br>            Defendants.<br><br>_____<br><br>AND RELATED CASES<br>_____ | Civil Action No.: 2:10-CV-258-JRG<br>(And Related Cases)<br><br>**JUDGMENT CREDITOR KENNETH BARTON'S OPPOSITION TO RPOST HOLDINGS INC.'S, RPOST COMMUNICATIONS LIMITED'S AND RMAIL LIMITED'S OPPOSED MOTION TO STRIKE NOTICE OF LIEN**<br><br>**Hearing Date Requested** |

Judgment Creditor Kenneth Barton ("**Barton**") opposes the Motion of RPost Holdings, Inc., RPost Communications Limited ("**RComm**") and RMail Limited ("**RMail**") (collectively, the "**RPost Parties**") to strike the Judgment Lien (Docket No. 550).   For the reasons set forth herein below, Barton requests that the Court **(a)** deny the

1

1   Motion, or (**b**) order moving parties to further meet and confer and that the RPost Parties

2   provide an under oath declaration from an officer/director (other than Khan and Tomkow)

3   attesting to the matters referenced in Section II(B) below, and provide the supporting

4   documents requested by Barton to substantiate the RPost Parties' Counsel's assertions by a

5   date certain reasonable to moving parties and their counsel, and (**c**) set an outside hearing

6   date with sufficient lead time for the supplemental meet and confer to proceed and

7   declaration and documents to be provided and for the parties to either supplementally brief

8   the issues or, if appropriate, stipulate to certain relief.

9

10   I.    **The RPost Parties' Motion Is Not Well Taken.**

11        A.    **Factual and Procedural Overview**.

12        Barton obtained a $4M judgment for fraud and intentional breach of fiduciary duty,

13   among other claims, against RPost International Limited ("**RIL**") and its primary

14   protagonists, Zafar Khan ("**Khan**") and Terrance Tomkow ("**Tomkow**").   The

15   malfeasance of Mr. Khan, et al. included, without limitation, falsifying, for the purpose of

16   attempting to steal Mr. Barton's 20% shareholder interest in RIL, various RIL corporate

17   resolutions through forgery (cutting and pasting Mr. Barton's signature onto fabricated and

18   altered "minutes" years after Mr. Barton was no longer with RIL and without Mr. Barton's

19   knowledge or consent).   Mr. Khan further admitted in testimony that the Barton

20   "signatures" were placed on the fabricated minutes without Mr. Barton's knowledge or

21   consent.   Mr. Khan, et al. were also adjudicated to have destroyed the corporate

22   shareholder registries of RIL which can only fairly be described, in addition to fraud, as an

23   obstruction of the judicial process.   The Judgment was entered on August 30, 2013 and the

24   Superior Court, while encouraging the parties to discuss settlement, denied *without*

25   *prejudice* Barton's pre-judgment request to add RMail and RComm as the real defendants'

26   in interest.   Moreover, a fraudulent transfer action is also pending in Los Angeles Superior

27   Court which concerns the fraudulent transfers – engineered by Khan and Tomkow, et al. –

28   of RIL's cash and IP rights (concerning the IP at issue in actions filed in this district, among

**OPPOSITION TO MOTION TO STRIKE NOTICE OF LIEN**
8681-006\Eastern District of Texas\Pldg\Opp- Mtn to Strike Ntc of Lien

1   others) to RMail and RComm.

2       Khan and Tomkow filed Chapter 13 proceedings in the California Central District's

3   Bankruptcy Court in April 2013 (apparently just weeks after the claimed

4   RMail-Amazon/PayPal settlements and days after the RIL-Zix settlement).   Khan and

5   Tomkow, however, have refused to provide the Trustee and creditors with information

6   concerning the RIL – Zix Corporation settlement and the settlements between RMail

7   (which Khan and Tomkow control) and Amazon and Paypal; yet, while concealing those

8   settlements and terms from the Trustee and creditors, Khan and Tomkow claim their shares

9   in RMail, RIL and RComm are worthless ($0).   McGarrigle Decl., Para. 9.   Motions to

10   Convert the Khan and Tomkow bankruptcies to Chapter 7 (which would thereby place

11   control over the pending IP actions and Khan and Tomkow's shares in the hands of the

12   United States Trustee) are scheduled for hearing on November 5, 2013.   McGarrigle

13   Decl., Ex. A.   The Trustee has filed a declaration supporting the conversion motion which

14   catalogues myriad examples of Khan and Tomkow's non-compliance and obstruction.

15   McGarrigle Decl., Ex. B.

16       **B.**    **Barton's Meet and Confer Efforts Have Been Stymied And**

17               **Not Met With Meaningful Cooperation/Disclosures By the RPost**

18               **Parties.**

19       Barton has attempted to resolve the issues presented by the Motion informally;

20   however, the RPost Parties' decision has been not to supply the requested declaration and

21   supporting evidence to substantiate their assertion that RIL has no interest in the

22   settlements and the IP and IP claims at issue in the Eastern District litigation.   Given Khan

23   and Tomkow's submission of fabricated corporate records and duplicitous testimony (and

24   the fraud findings that followed) in the Los Angeles Superior Court, it is hardly

25   unreasonable for Barton to have required that the RPost Parties' prove-up their predictable

26   assertion that RIL has no interest in the IP or IP litigation or the eve-of-bankruptcy

27   settlements with Zix and Amazon/Paypal.   Rather than the RPost Parties cooperation, the

28   RPost Parties have stonewalled and have since feigned dismay that substantiation of their

**OPPOSITION TO MOTION TO STRIKE NOTICE OF LIEN**

8681-006\Eastern District of Texas\Pldg\Opp- Mtn to Strike Ntc of Lien

1  counsel's assertions - via a declaration and supporting documentation – has been

2  requested.

3       To be certain, Barton has engaged in extensive meet and confer efforts before and

4  since the Motion was filed with the RPost Parties electing not to provide the meet and

5  confer record to this Court.   Upon receiving an initial contact from the RPost Parties'

6  counsel, Barton embarked upon a series of communications through counsel to enlist the

7  RPost Parties' cooperation in addressing RIL's interrelationship with the settlements and

8  pending IP litigation.   McGarrigle Decl., Exs. C –E .   At first, the RPost Parties' counsel

9  declined to provide written, substantive discussions.   Then, during a conference call in

10  mid-September 2013, Barton advised the RPost Parties' counsel (in a fairly precise way

11  and in addition to the records requested in an earlier pre-call, September 17th email) of the

12  type of under oath affirmation and documentation necessary to allow Barton to verify that

13  the assertions of the RPost Parties' counsel were substantiated.   The Rpost Parties'

14  counsel offered copies of IP "termination" agreements but was advised in advance those

15  records were unreliable, incomplete and insufficient to address the issues at hand.   Rather

16  than comply, the RPost Parties ignored Barton's written and verbal requests and produced

17  the self-serving, Khan manufactured IP "termination" agreements anyway, but nothing

18  else.   The RPost Parties then hurriedly filed the instant Motion, devoid of the substantive

19  meet and confer documents and failing to address Barton's reasonable requests to verify

20  counsel's assertions.   Barton's efforts, pre- and post-Motion, have simply been rebuffed

21  as the RPost Parties have no interest in providing certified and verifiable evidence to

22  demonstrate that RIL does not have the interest in the IP Settlement proceeds, the IP itself

23  and the pending IP cases.   Barton's request for cooperation, even as of this date, have been

24  met with the RPost Parties' obstruction or feigned confusion.

25       Under oath affirmations and delivery of the requested documents are reasonable and

26  necessary given Messrs. Khan and Tomkow's penchant for record manipulation and

27  destruction and piece-mealing the release of responsive documents to suit their own

28  purposes.   Barton requests that the Motion be denied or the alternative relief (as indicated

**OPPOSITION TO MOTION TO STRIKE NOTICE OF LIEN**

8681-006\Eastern District of Texas\Pldg\Opp- Mtn to Strike Ntc of Lien

1  in Section C below) be granted.

2      **C.     The Motion Should Be Denied Or Postponed And The Rpost Parties**

3             **Ordered To Provide The Requested Declaration And Documents.**

4          In a good faith effort to resolve the issues underlying the Motion, Plaintiff renewed

5  and clarified is pre- and post-Motion requests for verification and documentation.

6  McGarrigle Decl., Exs. F and G.   While the Court should deny the Motion, at the very

7  least, the RPost Parties should be ordered as follows:

8          A declaration from RPost International Ltd. (RIL) (and preferably from an

9  authorized board member other than Khan or Tomkow) under oath should be provided

10 (along with the requested proof), attesting that:

11             (a)    it had assigned all of its rights and claims arising out of the patents to

12                    which it held and/or had held through ownership and/or purported licenses,

13                    when it did so and what the consideration therefor was (and that RIL provide

14                    true and correct copies of documents evidencing same including board minutes

15                    for RIL authorizing the claimed transactions and affirmation in writing that all

16                    shareholders of RIL had specific notice of and had approved the above

17                    transactions);

18             (b)    Neither RIL (or any of RIL's officers/directors/shareholders) has and had

19                    no rights (actual, residual, contingent, liquidated or unliquidated) to any of the

20                    proceeds from any of the pending cases before the Court in the Eastern District

21                    or payment therefrom at any time;

22             (c)    the terms of the RIL - Zix Corp and Amazon/Paypal settlements have

23                    been fully performed, what those economics terms are/were, and there are no

24                    further payments due thereunder and that the Court does not have continuing

25                    jurisdiction over said parties regarding performance of the settlements;

26             (d)    provides true and correct copies of the RIL-Zix Corp and the

27                    Amazon/Paypal settlements (in whatever form(s) taken – settlement agreement,

28                    license agreement, royalty agreement, etc.) (and the economic terms clearly

5

articulated) and the executed and approved RIL and RPost Parties' board minutes authorizing same (and attesting to shareholder disclosure and approval) to verify same; and

(e)     Khan and Tomkow had, after full disclosure of all material facts to the RIL and RPost Parties' shareholders, the authority to enter into the transactions and the RIL-Zix and Amazon/Paypal settlements.

The Court should set a schedule for the RPost Parties to comply and produce, for the parties to further meet and confer and for supplemental briefing (if any is necessary) in advance of a hearing on the Motion.   The RPost Parties' ample record of "fact and loose" conduct – concealing from this Court the pending litigation in California (directly related to the IP here), concealing Khan and Tomkow's records fabrication and destruction, concealing the dubious and disputed "ownership" of the IP, concealing the Khan and Tomkow bankruptcies and their misleading and false filing with the U.S. Bankruptcy Court – warrants that a tempered and methodical consideration of these issues proceed and without permitting the RPost Parties to continue to manipulate whichever Court they are in front of aided by their obstruction and withholding of material information and documentation.

Barton respectfully requests that the Motion to Strike be denied and/or the alternative relief granted.

Date:    October 16, 2013                   McGARRIGLE, KENNEY & ZAMPIELLO, APC

By: _____
Patrick C. McGarrigle, Esq.
Michael J. Kenney, Esq.
Attorneys for Judgment Creditor
Kenneth Barton

OPPOSITION TO MOTION TO STRIKE NOTICE OF LIEN
8681-006\Eastern District of Texas\Pldg\Opp- Mtn to Strike Ntc of Lien

# DECLARATION OF PATRICK C. McGARRIGLE

I, Patrick C. McGarrigle, declare,

1.    I am an attorney licensed to practice law in the State of California and am principal in McGarrigle, Kenney & Zampiello, APC, counsel of record for Plaintiff Kenneth Barton.    The following is based upon my personal knowledge and, if called upon, I could and would competently testify to the truth thereof.

2.    Attached hereto as Exhibit "A" and incorporated fully herein by this reference is a true and correct copy of Mr. Barton's Motion to Convert the Khan Bankruptcy to Chapter 7 (without exhibits), filed on September 13, 2013.    The hearing on the Motion to Convert is set for November 5, 2013.    In the event that Motion is granted, the U.S. Bankruptcy Trustee will then take control of the corporate assets and liquidate same (Ex. B, Para. 16).

3.    Attached hereto as Exhibit "B" and incorporated fully herein by this reference is a true and correct copy of the United States Bankruptcy Trustee's Declaration (and Exhibits) in support of the Barton Motion To Convert.

4.    Attached hereto as Exhibit "C" and incorporated fully herein by this reference is a true and correct copy of my email to Lewis Hudnell, Esq. dated September 12, 2013 (in response to his initial request to withdraw the Judgment Lien) and included a copy of my August 19, 2011 letter placing said counsel on notice of the then-recently filed Fraudulent Transfer Action in Los Angeles Superior Court which concerns the very IP at issue in the various Eastern District IP legal actions (and a copy of that UFTA complaint).

5.    Attached hereto as Exhibits "D" and "E" and incorporated fully herein by this reference are true and correct copies of my September 17, 2013 emails (1:02 p.m. and 2:19 p.m. PST) to Mr. Hudnell.

///

///

**OPPOSITION TO MOTION TO STRIKE NOTICE OF LIEN**
8681-006\Eastern District of Texas\Pldg\Opp- Mtn to Strike Ntc of Lien

6.     During the conference call with Mr. Hudnell following the emails to him earlier in the afternoon), and after hearing Mr. Hudnell's characterization of the settlements involving RIL/Zix and the RPost Parties and Amazon/PayPal and the status of the pending matters and IP ownership, I requested that Mr. Hudnell provide (in addition to the information/documentation listed in the earlier emails) a) a declaration from an officer/director of RIL attesting to the characterizations he was making as fact and b) producing the various records (re-stated again in my email of October 16th).      Mr. Hudnell claimed that the IP owned or "licensed" to RIL had allegedly been relinquished back to (insider-controlled) RMail and then over to RComm; I notified Mr. Hudnell that merely producing those purported agreements (which Khan and Tomkow created) was insufficient and incomplete in any case.      I advised him, for example, that the assignment of the IP and litigation rights evidence and corporate minutes and shareholder approval thereof should be produced; and that the settlements with Amazon/PayPal and Zix, of claims and IP rights which RIL owned (and/or were usurped by Khan and Tomkow for their own aggrandizement), etc.      Barton's requests are not part of any "goose chase"; instead, given the RPost Parties' prinicpals fraud, forgery and duplicity in court filings and testimony, it is entirely reasonable for the RPost Parties to be expected to provide the source documentation to permit Barton to verify the claimed facts and relationships.      That RIL – one of the Judgment Debtor's on the $4M+ judgment – "settled" with Zix Corporation in April 2013 but there is no settlement agreement or license agreement is unorthodox at best and is lock-step with Khan/Tomkow's efforts to hide the proceeds of these IP cases, etc.

7.     Attached hereto as Exhibits "F" and "G" and incorporated fully herein by this reference are true and correct copies of my October 16, 2013 emails (8:05 a.m. and 2:40 p.m. PST) to Mr. Hudnell (along with his emails from the same date linked therein).

8.     The Rpost Parties have, thus far, declined to provide any declaration as requested or the requested documentation.

///

8

9.     Khan and Tomkow filed Chapter 13 proceedings in the California Central District's Bankruptcy Court in April 2013 (apparently just weeks after the claimed RMail-Amazon/PayPal settlements and days after the RIL-Zix settlement).   Khan and Tomkow, however, have refused to provide the Trustee and creditors with information concerning the RIL – Zix Corporation settlement and the settlements between RMail (which Khan and Tomkow control) and Amazon and Paypal; yet, while concealing those settlements and terms from the Trustee and creditors, Khan and Tomkow claim their shares in RMail, RIL and RComm are worthless ($0).

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of October, 2013 at Chatsworth, California.

Patrick C. McGarrigle

**OPPOSITION TO MOTION TO STRIKE NOTICE OF LIEN**
8681-006\Eastern District of Texas\Pldg\Opp- Mtn to Strike Ntc of Lien

# EXHIBIT A

1 | PATRICK C. McGARRIGLE, ESQ., SBN 149008
MICHAEL J. KENNEY, ESQ., SBN 192775
2 | PHILIP A. ZAMPIELLO, ESQ., SBN 198723
McGARRIGLE, KENNEY & ZAMPIELLO, APC
3 | 9600 Topanga Canyon Boulevard, Suite 200
Chatsworth, California   91311
4 | PH: (818) 998-3300    FAX: (818) 998-3344

5 | Attorneys for Creditor/Adversary Plaintiff
Kenneth Barton

6

7

8 |                    UNITED STATES BANKRUPTCY COURT

9 |                    CENTRAL DISTRICT OF CALIFORNIA

10 |                         LOS ANGELES DIVISION

11

12 | IN RE:                            )   Case No. 2:13-bk-19713-VZ
                                      )
13 |    ZAFAR DAVID KHAN,             )
                                      )   **NOTICE OF MOTION AND**
14 |         Debtor,                  )   **MOTION OF CREDITOR -**
                                      )   **ADVERSARY PLAINTIFF**
15 |                                  )   **KENNETH BARTON TO**
                                      )   **CONVERT DEBTOR ZAFAR**
16 |                                  )   **KHAN'S CHAPTER 13**
                                      )   **BANKRUPTCY CASE TO**
17 |                                  )   **CHAPTER 7; MEMORANDUM OF**
                                      )   **POINTS AND AUTHORITIES;**
18 |                                  )   **DECLARATION OF PATRICK C.**
                                      )   **McGARRIGLE AND EXHIBITS**
19 |                                  )   **THERETO.**
                                      )
20 |                                  )   **Date:    October 7, 2013**
                                      )   **[Self-Calendared]**
21 |                                  )   **Time:   11:00 a.m.**
                                      )   **Dept.:  Courtroom 1368**
22 |                                  )           **Edward Roybal Federal**
                                      )           **Building, 255 East Temple**
23 |                                  )           **Street, Los Angeles, CA**
                                      )    .
24 |                                  )
                                      )   *[Compendium of Exhibits,*
25 |                                  )   *Volumes I - IV filed concurrently*
                                      )   *herewith]*
26 |                                  )
                                      )
27 | _____  )

28

                                      1
       **MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   **TO: THE HONORABLE JUDGE VINCENT P. ZURZOLO, UNITED**

2   **STATES BANKRUPTCY JUDGE; DEBTOR ZAFAR KHAN AND HIS COUNSEL**

3   **OF RECORD; THE CHAPTER 13 TRUSTEE AND ALL INTERESTED PARTIES:**

4   PLEASE TAKE NOTICE THAT, on October 7, 2013, in Courtroom 1368, at 11:00

5   a.m., or as soon thereafter as the matter may be heard, Creditor/Adversary Plaintiff

6   Kenneth Barton ("**Creditor**," "**Barton**" or "**Movant**"), by and through his attorneys of

7   record, hereby moves for an order converting the Chapter 13 Bankruptcy Case of Debtor

8   Zafar Khan ("**Debtor**" or "**Khan**") to a Chapter 7 Case under 11 U.S.C. Section 1307(c).

9   If you wish to oppose or respond to this motion, you must file a written response

10  with the Clerk of the United States Bankruptcy Court at Edward R. Roybal Building and

11  Courthouse, 255 East Temple Street, Suite 940 Los Angeles, California 90012, serve a

12  copy of it on the Movant, United States Trustee, and all other parties requesting notice, at

13  the address set forth above and upon the Chapter 13 Trustee (see attached service list) no

14  less than 14 days prior to the above hearing date.   If you fail to file a response to this

15  motion within such time period, the Court may treat such failure as a waiver of your right to

16  oppose the motion and may grant the requested relief.

17  This Motion is based on the following:

18  1.   Debtor Zafar Khan's unsecured, liquidated and non-contingent pre-petition

19  claims exceeded and exceed the eligibility maximum for a Chapter 13 case (11 U.S.C.

20  §109(e)), and, as such, cause under 11 U.S.C. §1307(c) exists to convert the case to

21  Chapter 7 as conversion is in the best interests of the creditors and the estate.   Based upon

22  the Los Angeles Superior Court's statements of decision and Judgment in the

23  "**Pre-Petition Superior Court Action**"[1] (which claims and Khan's liability were

24  established pre-petition, with that Court poised to complete the 2nd phase of its damages

25  determination after the cause was submitted for decision just prior to the petition filing

26  date), Debtor's unsecured obligations to Creditor Barton exceed $4,070,081.91 including

27  compensatory and punitive damages for fraud, intentional breach of fiduciary duty and

28  1 *Barton v. RPost International Limited, Zafar Khan, Terrance Tomkow, et al.*, LASC
Case No. YC061581.

1

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   conversion, etc.   In addition, the pre-petition claims of unscheduled creditors – Rpost

2   International Limited ("RIL") and shareholders of RIL and its affiliates – also render Khan

3   ineligible under Chapter 13.   As a result, Debtor does not qualify under Chapter 13 as his

4   pre-petition unsecured debt exceeds the eligibility maximum.   Under the totality of the

5   circumstances in this case (as described more fully below), the best interests of the

6   creditors and the estate warrant that the instant case be converted to Chapter 7.

7         2.      While Chapter 13's eligibility bar coupled with the extent of Debtor's actual

8   unsecured debt are sufficient to preclude Debtor's continued maintenance of a Chapter 13

9   case and to justify conversion of the case to Chapter 7 for the reasons set forth below, other

10  "indicia" of cause under 11 U.S.C. §1307(c) also exist to warrant conversion to Chapter 7.

11  Under the totality of the circumstances, any one of the facts below warrant conversion to

12  Chapter 7: (**a**) Debtor concealed and misrepresented his assets in his Schedules, (**b**) Debtor

13  has obstructed and abused the Bankruptcy process as part of a larger scheme to defraud the

14  United States Bankruptcy Court, the United States District Court (in at least the Eastern

15  District of Texas), the Los Angeles Superior Court, Creditor Barton and the myriad other

16  creditors of Debtor (both those to whom notice of this bankruptcy proceeding was given

17  and those who were not); (**c**) Debtor filed the Petition to interfere with the Los Angeles

18  Superior Court's entry of Judgment, and did so at a time when Debtor was admittedly

19  solvent (at least $310,000 in net worth, and without accounting for Debtor's shareholder

20  interests in the on-going corporate businesses (RPost International Limited ("**RIL**"),

21  RMail Limited ("**RMail**") and RPost Communications, Ltd. ("**RComm**") [which he and

22  co-debtor Terrance Tomkow control]), (**d**) Debtor's petition was filed in bad faith[2]; and

23  (**e**) Debtor's plan is non-confirmable.

24        3.      Because the Chapter 13 proceeding presently continues to allow Khan to

25  control the assets including those which he concealed and defiantly refuses to disclose to

26  the Trustee and creditors, Barton respectfully requests that this case be converted to

---

28  [2] A determination of "bad faith" is not a requirement for conversion, only that "cause" for
conversion be demonstrated under Section 1307(c).   *In Re Henson*, 289 B.R. 741 (N.D.
Calif. 2003).

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   Chapter 7 forthwith as same is in the best interests of the creditors and the estate.   As the

2   Court stated in *In Re Henson*, 289 B.R. 741 (N.D. Calif. 2003):

3              "In this case, the interests at stake would be better served
4              through conversion  of the case for administration by a
                Chapter 7 Trustee than through dismissal of the case.
5              Conversion will place the estate in the hands of an independent
6              Court-appointed Trustee, preserve such assets as exist and
                allow for potential recovery of additional ones through use
7              of avoiding powers, maintain the Code's priorities among
                creditors in an orderly distribution, and permit   Creditor to
8              seek exception of its claim from discharge to pursue Debtor
9              outside of bankruptcy if it wishes to do so. On balance, that
                result is preferable to dismissal, which would leave all
10            creditors and claimants to fend for themselves in State Court,
                with an absent Debtor and none of the avoiding powers
11            provided by the Code."

12

13   Creditor Barton and all other creditors of Debtor will be best served by an independent

14   trustee's active involvement to secure, protect and preserve, and liquidate the myriad assets

15   for recovery by the creditors through the prompt seizure thereof and taking control of the

16   entities referenced above to ensure that the Debtor's creditors are paid and Debtor and his

17   representatives' manipulation of the legal system and subject businesses is substantially

18   curtailed, if not prevented and unwound.

19        This Motion is and will be based upon this Notice, the attached Memorandum of

20   Points and Authorities in support of the Motion, the Declaration of Patrick C. McGarrigle

21   (and Requests for Judicial Notice therein) and the Compendium of Evidence in Support of

22   the Motion (Volumes 1 and 2) filed concurrently therewith, the complete files and records

23   in this action, the oral argument of counsel and such other and further evidence as the Court

24   might deem just and proper.

25   Dated:   September 13, 2013      McGARRIGLE KENNEY & ZAMPIELLO, APC

26

27                      By: _____

28                         Patrick C. McGarrigle, Esq.
                            Attorneys for Creditor/Adv. Plaintiff Ken Barton

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

# TABLE OF CONTENTS

**Page(s)**

**MEMORANDUM OF POINTS AND AUTHORITIES** ...............................................1

I.  **CONVERTING DEBTOR'S BANKRUPTCY TO CHAPTER 7 IS SUPPORTED BY CAUSE AS DEBTOR IS NOT QUALIFIED FOR CHAPTER 13 AND THE TRUSTEE'S CONTROL OVER AND LIQUIDATION OF THE DEBTOR'S INDIVIDUAL AND CORPORATE ASSETS IS IN THE BEST INTERESTS OF THE CREDITORS/ESTATE** ...............................................1

A.  **UNDERLYING FACTS** ...............................................2

1.  The State Court Fraud Decision Against Khan, et al. ...............2

2.  Khan's Asset Accumulation &Concealment ...............................................4

B.  **AS KHAN WAS/IS INELIGIBLE TO FILE & MAINTAIN THIS CHAPTER 13 CASE AND "CAUSE" UNDER SECTION 1307(C) IS PRESENT, CONVERSION TO CHAPTER 7 IS WARRANTED** .........9

1.  The Law Re: Determining Chapter 13 Eligibility.........................9

2.  The Law Re: Other Indicia Of "Cause" For Conversion/Dismissal Under Section 1307(C)...............................................10

3.  Khan Is Ineligible For Chapter 13 Case; As Such, Cause For Conversion Is Present...............................................14

4.  Additional, Overwhelming Good Cause Exists Which Compels The Conversion Of Khan's Bankruptcy To Chapter 7.............17

a)  Khan's Schedules Contain Misrepresentations and Conceal Material Assets...............................................17

b)  Despite The Trustee's Written And Oral Requests, Khan Has Defiantly Refused To Produce Records And Information Of His Assets Including The Corporate Assets That He Controls, Thereby Misusing And Abusing The Bankruptcy System...............................................21

c)  Khan Had At Least $315,000 In Net Worth As Of The Petition Date (Independent Of The Value Of His Shares In The Rpost Companies And The Corporate Assets He Controls); The Petition Was Filed Solely To Interfere With The Pre-Petition Superior Court Action..................22

-i-

**TABLE OF CONTENTS**

d)    Khan's "Plan" Is Not Confirmable And Is Inequitable
Given The Substantial Claims Against Him/The Estate ..23

5.    Conversion To Chapter 7 Is Clearly In The Best
Interests Of Khan's Creditors And The Estate............................24

II.    CONCLUSION..................................................................................................25

**TABLE OF CONTENTS**

1

# TABLE OF AUTHORITIES

2

## CASES

3

## FEDERAL CASES                                                           Page(s)

4

5   *Eisen v. Curry (In re Eisen),*
        14 F.3d 469(9th Cir. 1994)............................................................13

6   *Ekeke v. United States,*
    (S.D. Il. 1991) 133 B.R. 450, 452 ..............................................10

7

8   *In re Alt,*
        305 F3d 413(6th Cir. 2002).........................................................13

9   *In re Cavanagh,* 250
        B.R. 107, 114 (9th Cir. BAP 2000)...............................................14

10

    *In Re Crittenden,*
11       2012 WL 1492321(D. Montana 2012).........................................14

12  *In Re Docco,*
        2010 WL 703113 (N.D. Calif. 2010) .........................................14

13

    *In re Ferri,*
14       2010 Bankr. LEXIS 1178 at *9, 2010 WL 141817 at * 3 (Bankr. D.N.M. 2010)..10

15  *In Re Fostvedt,*
        823 F.2d 305 (9th Cir. 1987) .....................................................9, 10

16

    *In re Goeb,*
17       675 F.2d 1386 (9th Cir.1982)...............................................13, 24

18  *In Re Guastella,*
        341 B.R. 908 (9th Cir. BAP 2006)..........................................10, 18

19

    *In re Henson,*
20       289 B.R. 741 (2003)...............................................................18, 24

21  *In re Jensen,*
        425 B.R. 105, 109-111 (Bankr. S.D.N.Y. 2010)............................11

22

    *In re Jercich,*
23       238 F.3d 1202 (9th Cir.2001) .....................................................11

24  *In Re Keenan,*
        201 B.R. 263 (USBC SD Calif. 1996) ......................................9, 10

25

    *In re Leavitt,*
26       171 F.3d 1219 (9th Cir. 1999).........................................12, 13, 14

27  *In Re Lindsey,*
        183 B.R. 624 (D. Idaho 1995).....................................................14

28

# TABLE OF AUTHORITIES

*In re Nash,*
    765 F.2d 1410, 1415 (9th Cir. 1985)........................................................13

*In re Nelson,*
    343 B.R. 671(9th Cir. BAP 2006)........................................................9, 10

*In re Su,*
    290 F.3d 1140 (9th Cir.2002)........................................................11

*In re Sobczak,*
    369 B.R. 512, 518 (9th Cir. BAP 2007)........................................11

*In Re Wenberg,*
    902 F.2d 768(9th Cir. 1990)........................................................10

*Neary v. Padilla (In re Padilla),*
    222 F.3d 1184, 1192-93 (9th Cir. 2000)....................................13

*Scovis v. Henrichsen (In re Scovis),*
    249 F.3d 975(9th Cir. 2001)........................................................10

**CALIFORNIA CASES**

*Industrial Indemnity Co. v. Golden State Co.*
    (1953) 117 Cal.App.2d 519........................................................6

*In re Marriage of Connolly*
    (1979) 23, Cal.3d 590........................................................8, 18

**FEDERAL STATUTES**

11 U.S.C. § 101(12) ........................................................9

11 U.S.C. §109(e)........................................................9, 10, 11, 12

11 U.S.C. § 1112(b) ........................................................10, 11

11 U.S.C. § 1307(c)........................................1, 2, 9, 10, 11, 12, 13, 17, 24

**SECONDARY SOURCES**

*8 Collier On Bankruptcy,*
    ¶1307.04 (Alan N. Resnick & Henry J. Sommer, 15th ed. rev. 2005) ..............9

*Norton Bankruptcy Law and Practice,*
    3rd Ed. § 148:1 (2012) ........................................................11

**TABLE OF AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.**   **CONVERTING DEBTOR'S BANKRUPTCY TO CHAPTER 7 IS SUPPORTED BY CAUSE AS DEBTOR IS NOT QUALIFIED FOR CHAPTER 13 AND THE TRUSTEE'S CONTROL OVER AND LIQUIDATION OF THE DEBTOR'S INDIVIDUAL AND CORPORATE ASSETS IS IN THE BEST INTERESTS OF THE CREDITORS/ESTATE.**

By this Motion, Barton move the Court for an order converting the instant Chapter 13 case to Chapter 7 (conversion, rather than dismissal, being in the best interests of Khan's creditors and the estate) because **(a)** the Debtor is ineligible for Chapter 13, as Debtor's pre-petition debts exceed the Chapter 13 limitation, and **(b)** as separate but additional cause for conversion, Debtor has misrepresented and concealed assets on his schedules (original and amended), has misused and defiantly refused to cooperate with the Bankruptcy process (including the Trustee's requests for specific asset documentation and information), filed the petition solely to interfere with the Superior Court entering its decision on the valuation of the common shares (held by Khan, Barton and Tomkow in RIL) (as the valuation/damages issue had been submitted to the Court pre-petition and required the Court to simply choose the value per share and multiply same by the number of Barton's Shares in RIL fraudulent stolen by Khan, et al.), and has otherwise prosecuted this Bankruptcy in bad faith having secreted away assets in the preference period and refusing to disclose same.   Khan's practice of playing fast and loose with every court he is in front of – submitting forged corporate resolutions and destroying corporate records in the State Court Action, concealing the State Court fraud decision and this bankruptcy from the United States District Court in Texas (presiding over multiple consolidated patent infringement cases (IP)) and now with this Court (by submitting misleading schedules and concealing assets) - must be stopped and conversion of this case is the first step in that direction.

Under the totality of the circumstances, Chapter 7 conversion is the appropriate measure to ensure that the creditors of Debtor are paid and that the estate, managed by a Trustee concerned about the recovery of assets for the estate and creditors (and not by the

---

1

1   Debtor whose self-interest and manipulation is the stuff of legends), realizes a substantial

2   (but otherwise never to be shared and distributed) benefit.   Debtor made the election to

3   bring these matters before the Bankruptcy Court and, as a result, he should not be rewarded

4   with a dismissal, but instead, the conversion of the case to Chapter 7 and an orderly,

5   unbiased control over and disposition of the assets should occur for the benefit of the

6   creditors and the estate without delay.

7      **A.   Underlying Facts.**

8         **1.   The State Court Fraud Decision Against Khan, et al.**

9         Barton was a co-founder of RIL, a technology-software firm whose patents and

10   products included registered email and electronic transaction verification functionality.

11   During the course of litigation between Barton and RIL concerning RIL's failure to pay

12   some $450,000+ in compensation and expense reimbursements, Barton learned in a

13   deposition of Khan in the summer 2009 that RIL/Khan/Tomkow had secretly taken

14   Barton's 6,016,500 shares in RIL and returned them to RIL's treasury (purporting to divest

15   Barton of his near 20% equity position in the company).   Shortly thereafter, Barton

16   commenced the Pre-Petition State Court Action in January 2010 for fraud, intentional

17   breach of fiduciary duty, conversion, violations of Business & Professions Code Section

18   17200, etc.   The liability and damages phase of the trial proceeded in March/April 2012.

19   In August 2012, the Superior Court adjudged Khan, Tomkow and RIL to have committed

20   fraud, etc. including, without limitation, engaging in corporate records forgery, corporate

21   records destruction and other conduct sufficiently egregious to also warrant the imposition

22   of punitive damages against Khan and Tomkow.   Ex. 10.   The Superior Court had already

23   received extensive share and enterprise valuation evidence regarding RIL (Ex. 9);

24   however, the Superior Court initially decided (in August 2012) to award Barton the return

25   of his shares as an alternative remedy (plus $100,000 in emotional distress damages and

26   punitive damages, among other relief).   The punitive damages phase, which had been

27   bifurcated, proceeded to trial in November 2012.   At the conclusion of that phase, the

28   Superior Court, having heard sufficient evidence of Khan/Tomkow's gutting of RIL's

1   assets – through transfers of IP and cash from RIL to RMail and RComm (both then

2   newly-formed Bermuda entities which Khan/Tomkow controlled), reversed his decision

3   regarding the return of the shares and decided to proceed with additional share/enterprise

4   valuation evidence and hearings so as to award Barton the value thereof.   Declaration of

5   Patrick C. McGarrigle ("**McGarrigle Decl.**"), Para. 15; Compare Ex. 10 & Ex. 15.   The

6   Court appointed an independent expert (proposed by Khan/Tomkow/RIL) who supplied a

7   report and gave testimony regarding the valuation of the RIL shares and, inherent therein,

8   the enterprise value of RIL as of the June 2009 conversion date.   Exs. 14 & 25.   As the

9   Superior Court stated on April 4, 2013, its remaining task was to assign the value to the

10   common shares of RIL, multiply same by the number of Barton shares (to award share

11   valuation damages) and multiply same by the number of Khan and Tomkow common

12   shares in RIL to assist in the Court's punitive damages determination.   Ex. 25, p.

13   99:5-100:14.   Khan agreed that the entire matter was deemed submitted as of April 12,

14   2013 (two days before the Petition was filed).   Ex. 25, p. 102:6-7; 104:16-105:13.

15   However, on the eve of the Superior Court issuing its Revised Statement of

16   Decision awarding further damages (based on the extensive share valuation evidence the

17   Court had received) and punitive damages against Debtor, among others, Khan filed a

18   Sunday night Chapter 13 petition on April 14, 2013.   Exs. 1 & 2.   The Superior Court

19   had, all pre-petition, conducted three trial phases: liability and damages in March/April

20   2012, punitive damages in November 2012 and additional damages/valuation hearings in

21   February/early April 2013.   The Petition filing simply delayed the Superior Court entering

22   its further damages and punitive damages award based on the pre-petition conduct of

23   Khan, et al.; the Court confirmed it was "prepared to rule."   Ex. 27.   On or about May 3,

24   2013, this Court issued an order lifting the automatic stay concerning the Pre-Petition

25   Superior Court Action so that the Superior Court could issue its ruling and Judgment, etc.

26   On June 18, 2013, the Superior Court issued its Ruling on Punitive Damages and Revisions

27   to Statement of Decision ("**RSOD**") finding that the common shares of RIL (Barton, Khan

28   and Tomkow all held common RIL shares) were worth $.64 per share and, multiplying said

3

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   sum by Barton's 6,016,500 common shares, Khan, Tomkow and RIL were liable in the

2   further sum of $3.9M for their fraud, etc. in the theft of those shares.   Ex. 15, p. 3.   On

3   August 30, 2013, the Superior Court entered its Judgment against Khan, Tomkow & RIL

4   for $3.8M, plus punitive damages against Khan and Tomkow, etc.   Ex. 17.

5          No sooner had the Superior Court entered its Judgment but Khan and Tomkow have

6   (underscoring why Chapter 7 conversion is necessary) RIL attempting, *after-the-fact*, to

7   conduct three years of RIL shareholder meetings (meetings for the years when

8   Khan/Tomkow had orchestrated the asset transfers without shareholder knowledge or

9   approval) (Ex. 24[B]).   Yet, in sharp contrast, RIL/Khan/Tomkow's attorney falsely

10   represented to the Superior Court that same day (on August 30, 2013) that RPost had

11   complied with all "corporate formalities."   Ex. 24[A], p. 29:21-23.

**2.      Khan's Asset Accumulation & Concealment.**

13          Debtor Khan is a shareholder, officer and director of RPost International Limited

14   ("**RIL**"), RMail Limited ("**RMail**"), RPost Communications, Ltd. ("**RComm**") (the "**RIL**

15   **Parties**").   Ex. 26, p. 21:6-13; 31:24-32:2.   RIL, formed in approximately 2000, was

16   founded by Barton, another debtor (Terrance Tomkow, Bankruptcy Case No.:

17   2:-13-bk-19712-WB), and Debtor Khan.   Barton owned 6,016,500 common shares in

18   RIL; the Superior Court determined that his shares were converted by Khan and Tomkow

19   (and RIL) in June 2009 (Exs. 10 & 15) (though, Khan/Tomkow/RIL asserted that Barton's

20   Shares had allegedly been unwound earlier – though they admittedly destroyed the

21   corporation's shareholder registries which would evidence such facts and forged corporate

22   records to cover up their theft).

23          During the period of mid-2009 through October 2010, RIL raised at least $6M from

24   investors, leaving $4M net capital (*after* deducting $2M in claimed accrued expenses) for

25   approximately the same period.   Ex. 12, p. 165:26-169:24.   **Said funds have never been**

26   **accounted for by RIL/Khan/Tomkow and refuse to do so in these proceedings**.   After

27   the purported RIL asset transfer to RComm in March 2011, RComm (with the same

28   business, assets, shareholders, officers/directors, officers, website, business plan and

4

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   contracts as RIL) similarly raised at least another $5M+ from March 2011 thru July 2012

2   (Ex. 26, p. 17:3-10); <u>**Yet, RComm/Khan/Tomkow have never accounted for that**</u>

3   <u>**capital and refuse to do so in the proceedings.**</u>   Similarly, as discussed below,

4   Khan/Tomkow have utilized their insider company, RMail, to seize for themselves IP

5   rights and RIL's corporate opportunities that RIL funded and were within RIL's

6   business-sphere and then sued SWIFT, Amazon/Paypal and others and then settle and

7   retain for themselves (and in secret) the proceeds from those suits and without disclosure to

8   the RIL/RComm shareholders or, thereafter, the Trustee.  Ex. 12, p. 101:19-102:20;

9   103:20-104:13; Ex. 26, p. 25:22-27:15; 28:16-23.   IP settlements typically involve cash

10   payments and royalty/licensing agreements – yet, Khan/Tomkow defiantly refused to

11   disclose the RMail settlements at all or the amount and location of the settlement proceeds

12   and terms (and bank statements) to the Trustee while concurrently and incongruously

13   claiming their shares in RMail are worthless.  Ex. 5; Ex. 26, p. 14:16-23; 16: 2-5, 9-10,

14   15-25; 21:14-25.  The corporate share assets of Khan/Tomkow (which corporate finances

15   Khan brazenly conceals so as to "support" his false representation that his shares in the

16   RPost entities are "$0") more than amply demonstrate that conversion is in the best

17   interests of the creditors and estate.

18       Yet, the success of RIL business enterprise was not something that Khan/Tomkow

19   ever wanted Barton to be a part of (as if the forgery of corporate resolutions and corporate

20   record destruction were not evidence enough of their intent to freeze Barton out of any

21   realization of the value of his equity), even if he prevailed, as he did, in the litigation.

22   Knowing that they were engaging in their fraud and that Barton would pursue and

23   ultimately did pursue them for their fraud and breaches of fiduciary duty, etc. Khan and

24   Tomkow proceeded with a series of acts (in addition to concealing and failing to account

25   for the stunning equity accumulated as noted above):

26       (a) They formed RMail and secretly (with no disclosure to and approval by

27   RIL's shareholders) syphoned off nearly a $1M of RIL cash in the summer of 2009/2010 to

28   put valuable IP in the control of Khan/Tomkow's insider company (RMail) (McGarrigle

5

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1    Decl., Para. 30 [See, Ex. 11, p. 27:5-15; 28:19-29:25; 30:15-23]);

2           **(b)** They concealed the taking of the corporate IP opportunity and diversion

3    of corporate assets from RIL to their asset-less Bermuda company RMail[3] [*Id.*];

4           **(c)** Compounding their duplicity and plan for self-aggrandizement (and again

5    with no disclosure to and approval by RIL's shareholders), they carved out for RMail's use

6    only (Ex. 29, p.2) a valuable "field of use" within the IP (IP which was purchased with

7    syphoned off RIL funds) that verifies electronic banking/sales transactions and purported

8    to exclude this valuable "field of use" from the artificial construct of "license-back" of the

9    IP to RIL (whose cash paid for the entirety of the IP in the first place); and

10          **(d)** After suing Amazon and PayPal for damages based on the alleged

11   infringement of the "carved-out" patent, caused RMail to settle with Amazon/PayPal in

12   March 2013 (some 30 days before the Petition was filed) (Exs. 21 & 22), but have refused

13   to disclose and continue to conceal the settlement amounts and settlement documents (the

14   Petition and "Amended" schedules disclose nothing regarding these IP litigations and

15   settlement) while continuing to speciously claim their interests in RMail are worthless.

16   Ex. 26, p. 14: 16-23; 16:2-5, 9-10, 15-25; 21: 14-25.    Khan also caused RIL to settle with

17   Zix Corp. days before the Petition was filed (Exs. 18-20), but has refused to disclose and

18   continues to conceal (again, the Petition and "Amended" schedules disclose nothing

19   concerning this IP litigation and settlement) the settlement sums received and the

20   settlement documents, all to frustrate and materially interfere with the Trustee/Creditor's

21

22   3 *Industrial Indemnity Co. v. Golden State Co.* (1953) 117 Cal.App.2d 519, 533
23   ("corporate officer or director may not seize for himself to the detriment of his company
     business opportunities in the company's line of activities which the company has an
24   interest in or a prior right to obtain and that if he seizes them in violation of his fiduciary
     duty the corporation may claim for itself all benefits so obtained by him.). Here, RIL
25   signed the NDA and was listed as the purchaser on the patent acquisition contracts until the
     last minute when Khan/Tomkow swapped in their new and admittedly asset-less entity
26   (Ex. 12, p. 104:14-20), RMail, to be the buyer (but having RIL guaranty the obligation it
     was already poised to buy for itself).   Then, after the secret swap of entities, Khan/RMail
27   secretly peeled-off of a valuable "field of use" within that very patent for itself (Ex. 29, p.
     2) to the exclusion of RIL's shareholders/creditors (and then collecting undisclosed
28   settlements with Amazon and PayPal [Ex. 21-22]).

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1  rights and interests.  Ex. 26, p. 37:15-38:4.

2      The 2nd act in the Khan/Tomkow asset concealment and transfer charade occurred in

3  early 2011 and continues to this day.  After taking nearly $1M in cash out of RIL in

4  2009/2010 and raising more than $6M (in the name of RIL) between July 2009 and

5  October 2010, Khan and Tomkow augmented their asset transfer scheme.  In early 2011,

6  Khan and Tomkow engineered the transfer of 99% of RIL's assets to another new Bermuda

7  company, RComm, ostensibly to assist garnering new investors because, by using a new

8  company name and re-stating the share composition, new investors would not be deterred

9  from investing by the number of financing rounds RIL had undertaken in the prior 10

10  years.  RIL became RComm with a new name, but the same initial shareholders (save

11  certain common shareholders who apparently were not rolled into RComm), same officers,

12  same directors, same patents, same contracts, same website, same advisors, same counsel,

13  same offices, etc.  Even the equity raises were nearly identical:  In the 20 months before

14  the RIL to RComm transfer, RIL raised $6M in new equity at preferred share prices

15  ranging from $3.85 to $4.75 per share; In the 16 months after the RIL to RComm asset

16  transfer, RComm raised at least $5M in new equity (from late March 2011 through late

17  July 2012) at preferred share prices ranging from $5.00 to $5.75 per share.  Ex. 11, p.

18  76:24-78:20.

19      Yet, Debtor Khan incredibly asserts – while concealing the financial records of the

20  entities and failing to account for millions in investor capital – that his common and

21  preferred shares in these companies are worth "$0" or are "speculative" (Ex. 2, p. 7).  This

22  patently untenable plea (orchestrated through the artificial construction of asset transfers

23  between companies which Khan/Tomkow control overall) cries out for conversion and

24  Trustee seizure and liquidation.  For example,  (a) RComm investors are paying at or

25  above $5.75 per share for a typical interest payment preference (and with the same

26  purported re-sale restrictions as on Khan's preferred shares) (Ex. 12, p.178:5-15), but Khan

27  claims *his identical preferred shares* (183,000 of them) are worth $0; (b) the RIL

28  enterprise and shares had been valued by two different experts (Exs. 9 & 14) establishing

7

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   the common share values at $2.43 per common share with a near $100M enterprise

2   valuation or $.64 per common share at a $33M enterprise value[4], but neither of these

3   experts said the RIL shares were worth $0, nor did the Superior Court; and (c) RMail

4   settled with Amazon/Paypal in March 2013 and RIL settled with Zix Corporation in April

5   2013 (Exs. 18-22), but Khan has defiantly refused to disclose the amounts paid in the

6   preferential settlements, where the funds were deposited and/or disbursed and will not

7   provide the settlement documents, all to interfere with the bankruptcy process and the

8   Trustee/Creditors' ability to assess the availability of assets to satisfy the debts.   In short,

9   (a) as of June 2009 (and before Khan artificially dissected and transferred out RIL's assets

10  to RMail and RComm), the value of just Debtor's common shares in RIL was between

11  $3.8M and $14M, derived from a $3.85 preferred share pricing as of said date (and without

12  accounting for the $5.75 preferred share pricing as of late 2012, which causes the value of

13  the commons to have increased as well (as the value of the commons is extrapolated from

14  the enterprise value.   As the preferred share prices continued upward to $5.75 per share,

15  the value of the commons, too, increase, and therefore the value of Khan's common shares

16  also increased (See, Ex. 9 and compare 2/07 ($2.04) to 6/09 ($2.43) common share

17  valuation derived from preferred shares at $3.00 and $3.85 per, respectively); and (b)

18  Debtor's preferred shares in RComm (RIL preferred shares that were transferred and

19  exchanged into preferred shares in RComm), are worth at least the $1M (183,000 pref

20  shares x $5.75).   *In re Marriage of Connolly* (1979) 23, Cal.3d 590.

21      Between Khan's deliberate withholding of financial records, bank statements,

22  equity contributions, IP asset valuations and IP settlements and coupled with the value of

23  Khan's shares based on the determinations made the experts and the Superior Court and

24  based on Khan's own admissions, in addition to Khan's debts making him ineligible for

25  Chapter 13, Khan's assets demonstrate that the best interests of the creditors and the estate

26  will only have an opportunity to be realized vis-à-vis a Chapter 7 conversion and the

27  immediate appointment of a trustee to seize and liquidate the Khan interests in the

28
_____
4   See, Exs. 9 (p. 3, Sched. 3) & 14 (Ex. 5B therein).

8
**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1    companies and marshal the corporate assets to be available for distribution or sale.

2    **B.**      **As Khan Was/Is Ineligible To File & Maintain This Chapter 13**
3            **Case And "Cause" Under Section 1307(c) Is Present, Conversion To**
4            **Chapter 7 Is Warranted.**

5            11 U.S.C. § 1307(c) allows the Court, upon a showing of cause, to convert the

6    Chapter 13 Bankruptcy case to a Chapter 7 case (or dismiss the Chapter 13) "whichever is

7    in the best interests of creditors and the estate."   Evaluating whether a Chapter 13 case

8    should be dismissed or converted is a two-step process.   Once the court determines that

9    cause exists (here, for example, ineligibility due to the amount of pre-petition debts), the

10   court must then decide between conversion and dismissal based upon the best interest of

11   the creditors.   *In re Nelson* (9th Cir. BAP 2006) 343 B.R. 671, 675.

12           **1.**      **The Law Re: Determining Chapter 13 Eligibility.**

13           As an overview, the maximum threshold of unsecured debt a debtor may have to file

14   and maintain a Chapter 13 case is $383,175.00, effective as of the April 1, 2013

15   adjustment.   11 U.S.C. §109(e).   If a debtor is not eligible for relief under Chapter 13,

16   that ineligibility is cause for dismissal under §1307(c).   8 *COLLIER ON BANKRUPTCY*,

17   ¶1307.04 (Alan N. Resnick & Henry J. Sommer, 15th ed. rev. 2005).

18           Under Section 109(e), the determination of the pre-petition debts is guided by

19   various statutes and case authority.   Under the Bankruptcy Code, a debt means "liability

20   on a claim." 11 U.S.C. § 101(12).   A "claim" is defined as a "right to payment, whether or

21   not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

22   unmatured, disputed, undisputed, legal, equitable, secured, or unsecured [.]" 11 USC §

23   101(5)(A).   In evaluating the Debtor's debts for purposes of Chapter 13 eligibility, the

24   Court assesses whether the debt/claim in question is noncontingent and liquidated.   11

25   USC Section 109(e).   To that end, "[T]he case law uniformly holds that 'if all events

26   giving rise to liability occurred prior to the filing of the bankruptcy petition,' the debt is not

27   contingent."   *In Re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987) (affirmed denial of C13

28   Plan where pre-petition sums were neither contingent or unliquidated); *In Re Keenan*, 201

1  B.R. 263, 264-265 (USBC SD Calif. 1996) (debtor motion requesting estimation of

2  creditor's claim was denied where claim was neither contingent ["All of the events upon

3  which liability could be imposed occurred prepetition.   Accordingly, her claim is not

4  contingent, and is not amenable to estimation under Section 502(c) on that ground."] or

5  unliquidated).   Moreover, a claim is liquidated where it is subject to "ready determination

6  and precision in computation of the amount due."   *In Re Fostvedt*, supra; *In Re Keenan*,

7  supra, at p. 265-266 (state court's determination and ability, based on the status of the

8  proceedings there, to determine the sum due renders the claim liquidated, barring

9  estimation under Section 502); *In Re Wenberg*, 902 F.2d 768 (9th Cir. 1990) (state court's

10  post-petition award of attorneys' fees and costs as part of that court's pre-petition

11  award/judgment against debtor ***constituted part of the "liquidated debt for purpose of***

12  ***determining debtor eligibility under 11 U.S.C. Section 109(e)."***) (Emphasis Added).[5]

13  **2.      The Law re: Other Indicia of "Cause" For Conversion/Dismissal**

14  **Under Section 1307(c).**

15  For Chapter 13 cases, Section 1307(c) specifically enumerates ten non-exhaustive

16  circumstances in which a court may dismiss a case of convert it to Chapter 7.   *Ekeke v.*

17  *United States*, 133 B.R. 450, 452 (S.D. Il. 1991) ("The listed `causes' are not exhaustive,

18  nor is the court limited to the listed `causes.'").   The language in 1307(c) parallels the

19  language contained in 1112(b), which governs dismissal and conversion in Chapter 11

20  cases.   *In re Ferri*, 2010 Bankr. LEXIS 1178 at *9, 2010 WL 141817 at * 3 (Bankr.

21  D.N.M. 2010).   Section 1307(c) also requires "notice and a hearing" prior to   conversion.

22  Both 11 U.S.C. § 1307(c) and 11 U.S.C. § 1112(b) establish a two-step process for

23  considering the question of conversion or dismissal.   *In re Nelson*, 343 B.R. 671, 674 (9th

---

5 The amount of a debtor's debt for Chapter 13 eligibility purposes under § 109(e) is
normally determined by reference to the schedules.   *Scovis v. Henrichsen (In re Scovis)*,
249 F.3d 975, 982 (9th Cir. 2001).   However, the Bankruptcy Court is permitted to
consider matters beyond the schedules in assessing the debtor's eligibility and bad faith.
*In Re Guastella*, *supra* at 918 (Affirmed order granting motion to dismiss for ineligibility
under Chapter 13 and finding bad faith filing of schedules in conflict with state court
tentative decision in pending litigation).

10

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1    Cir. BAP 2006) (Sections 1307(c) and 1112(b) "establish a two-step analysis for dealing

2    with questions of conversion and dismissal": (a) cause must be established, and (b) "a

3    choice must be made between conversion and dismissal based on the `best interest of

4    creditors and the estate.'"). The choice of one remedy over the other is to be made upon

5    consideration of the best interests of creditors and the estate.   11 U.S.C. § 1307(c); *In re*

6    *Jensen*, 425 B.R. 105, 109-111 (Bankr. S.D.N.Y. 2010).   **The interests of the debtor**

7    **are not paramount. Generally, a case should be converted rather than dismissed**

8    **when there are assets available for distribution to creditors.**" William L. Norton, Jr. &

9    William L. Norton III, *Norton Bankruptcy Law and Practice*, 3rd Ed. § 148:1 (2012)

10    (Emphasis Added).   In considering whether to grant a § 1307(c) conversion motion, the

11    court may consider only the best interests of the creditors and the estate; the debtor's best

12    interests cannot be considered.   *In re Sobczak*, 369 B.R. 512, 518 (9th Cir. BAP 2007).

13       In addition to ineligibility based on the sum of pre-petition debts of the debtor, there

14    are other indicia of "cause" which warrant an order granting a motion to convert and policy

15    reasons for conversion abound as well.   *First*, the policy reasons for conversion to Chapter

16    7, over dismissal, are inherent to the purpose of Section 109(e) – to protect and promote the

17    best interests of the creditors and the estate.   The Court in *In re Henson*, 289 B.R. 741

18    (2003) provided guiding analysis:

19      "If the case were dismissed with prejudice, Creditor, Zlotoff,
20      Wells Fargo Bank, the Internal Revenue Service, and anyone
21      else to whom Debtor incurred a pre-petition or post-petition
      debt would have to compete with each other for such assets as
22      could be located (including whatever Debtor may have taken,
      or had sent, to Canada). **However, if the case were converted**
23      **to Chapter 7, § 348 would apply to provide that all pre-conversion**
      **creditors and claimants would receive whatever pre-conversion assets**
24      **were available in an orderly distribution conducted by a professional**
25      **Chapter 7 Trustee according to the priorities fixed by the Code**. With
      respect to Creditor's judgment for willful infringement, Creditor has argued
26      that such a claim would be non-dischargeable in Chapter 7 under
      § 523(a)(6)—that may or may not be so pursuant to recent
27      Case law such as *In re Jerich*, 238 F.3d 1202 (9th Cir.2001)
28      and *In re Su*, 290 F.3d 1140 (9th Cir.2002), but Creditor

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   would have a chance to test its theory in Chapter 7 and, if
successful, could pursue Debtor outside of bankruptcy just

2   as if the case had been dismissed.... **Finally, a Chapter 7 Trustee**

3   **could apply § 547 and § 549 to avoid, respectively,**
**any pre-petition preferential transfers and unauthorized postpetition**

4   **transfers, which remedies are provided by the Code**
**but not available to creditors outside of bankruptcy.**

5   As noted by *Staff* (at 260): 'The standard for choosing conversion or

6   dismissal based on "the best interest of creditors and the estate" implies a
balancing test to be applied through case-by-case analysis.

7   In the end, the determination is a matter of sound judicial

8   discretion.' **In this case, the interests at stake would be better served**
**through conversion of the case for administration by a**

9   **Chapter 7 Trustee than through dismissal of the case.**
**Conversion will place the estate in the hands of an**

10  **independent Court-appointed Trustee, preserve such assets**

11  **as exist and allow for potential recovery of additional**
**ones through use of avoiding powers, maintain the Code's**

12  **priorities among creditors in an orderly distribution, and**
**permit Creditor to seek exception of its claim from discharge**

13  **to pursue Debtor outside of bankruptcy if it wishes to**

14  **do so. On balance, that result is preferable to dismissal,**
**which would leave all creditors and claimants to fend for**

15  **themselves in State Court, with an absent Debtor and none**
**of the avoiding powers provided by the Code.** The reasons

16  supporting conversion over dismissal are equally applicable

17  regardless of whether the cause to remove the case from
Chapter 13 is a bad faith filing, unreasonable and prejudicial

18  delay, or any other form of cause." (Emphasis Added).

19  As demonstrated more fully below, Khan has assets - personally and which he controls

20  through his corporations – which, when liquidated, provide a substantial source of

21  recovery for the creditors and estate.    Allowing Khan's continued control over,

22  concealment of and use of the assets to the great prejudice of the creditors and estate is

23  abhorrent to the very policy purpose behind Section 109(e) and an abuse of the bankruptcy

24  process.

25  *Second*, additional 'cause' – beyond ineligibility due to the amount of pre-petition

26  debt – is established through a variety of indicia including the debtor's bad faith. In

27  addition to the factors specifically enumerated in Section 1307(c), a Chapter 13 petition

28  filed in bad faith may be dismissed for "cause." *In re Leavitt* (9th Cir. 1999) 171 F.3d

---

12

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1    1219, 1224-1225; _In re Eisen_ (9th Cir. 1994) 14 F.3d 469, 470.   It is well established that

2    lack of good faith constitutes "cause" to invoke the relief under Section 1307(c).[6]   The _In_

3    _Re Henson_ Court further discussed the bad faith standard:   "In the Ninth Circuit, an

4    additional form of 'cause' for involuntary dismissal consists of filing a Chapter 13 petition

5    in bad faith, _see In re Eisen,_ 14 F.3d 469, 470 (9th Cir.1994) ("_Eisen_"): A Chapter 13

6    petition filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. § 1307(c)

7    [citations omitted].... To determine bad faith a bankruptcy judge must review the 'totality

8    of the circumstances.' _In re Goeb,_ 675 F.2d 1386, 1391 (9th Cir.1982). A judge should ask

9    whether the debtor "misrepresented facts in his [petition or] plan, unfairly manipulated the

10   Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable

11   manner." _Id._ at 1390; _In re Leavitt, supra,_ 171 F.3d at 1224 [Debtor's initial schedules

12   undervalued assets and Debtor offered nothing to largest unsecured creditor which was

13   deemed inequitable considering Debtor's assets]; _In re Eisen, supra_ [Chapter 13 petition

14   dismissal appropriate as having been filed in "bad faith" based in part upon debtor's

15   contradictory and misleading statements of his property interests; a factor relevant in

16   determining whether a Chapter 13 Petition has been filed in bad faith includes

17   misrepresentations of fact by debtor in his Plan or **any evidence that debtor filed his**

18   **Petition in an inequitable manner**]; _In re Alt_ (6th Cir. 2002) 305 F3d 413, 421 (Chapter

19   13 petition dismissed as having been filed in "bad faith" where Debtor understated income

20   and failed to schedule tax debt that put her over the jurisdictional limit.).   "A debtor's

21   history of filings and dismissals is relevant." _In re Nash,_ 765 F.2d 1410, 1415 (9th Cir.

---

22

23   6 "[W]e have held that bad faith does provide "cause" to dismiss Chapter 11 and Chapter
     13 bankruptcy petitions…The Bankruptcy Code specifically mentions good faith in
24   Chapters 11 and 13 when it permits a court to confirm a payment plan only if it is proposed
     in good faith.   In _[Eisen v. Curry (In re Eisen)](https://),_ 14 F.3d 469 (9th Cir. 1994),] we linked the
25   good faith requirement implicit in a Chapter 13 bankruptcy with the good faith requirement
     for proposing a payment plan when we stated that '[t]o determine if a petition has been
26   filed in bad faith courts are guided by the standards used to evaluate whether a plan has
     been proposed in bad faith.'…The Bankruptcy Code's language and the protracted
27   relationship between reorganization debtors and their creditors lead us to conclude that bad
     faith per se can properly constitute "cause" for dismissal of a Chapter 11 or Chapter 13
28   petition…" _Neary v. Padilla (In re Padilla),_ 222 F.3d 1184, 1192-93 (9th Cir. 2000).

13

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1 | 1985).   Bad faith also exists where the debtor only intended to defeat state court litigation.

2 | *In re Chinichian*, 784 F.2d 1440, 1445–46 (9th Cir.1986); *In Re Docco*, 2010 WL 703113

3 | (N.D. Calif. 2010).   It should further be noted that a finding of bad faith does **not** require

4 | fraudulent intent on the part of the Debtor.   *Leavitt, supra*, at 1224.

5 | Conversion to Chapter 7 from Chapter 13 is also warranted where the Debtor has

6 | not presented and cannot present a confirmable plan.   *In Re Lindsey*, 183 B.R. 624 (D.

7 | Idaho 1995).   In *In Re Crittenden*, 2012 WL 1492321 (D. Montana 2012), the Bankruptcy

8 | Court iterated the test for determining whether a Chapter 13 plan was submitted in good

9 | faith:

10 | "In *Leavitt*, 171 F.3d at 1224, the Ninth Circuit held that in
11 | determining whether a chapter 13 plan was proposed in good faith, a bankruptcy court should consider (1) whether the debtor misrepresented facts in his or her petition or plan,
12 | unfairly manipulated the Code, or otherwise filed his or her

13 | petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor
14 | intended to defeat state court litigation; and (4) whether egregious behavior is present. See also *In re Cavanagh*, 250
15 | B.R. 107, 114 (9th Cir. BAP 2000).   After considering the *Leavitt* factors and the evidence in this case, the Court concludes
16 | that conversion of the case to Chapter 7 is in the best interests of creditors and the estate."

17 |

18 | Under anyone of the above standards, an order converting Khan's case to Chapter 7 is also

19 | supported by good cause beyond Khan's patent ineligibility for Chapter 13 relief.

20 | **3.   Khan Is Ineligible For Chapter 13 Case; As Such, Cause**
21 | **For Conversion Is Present.**

22 | *First*, Barton's claim against Khan – documented through a series of pre-petition

23 | and post stay-being-lifted orders and Judgment – is and was non-contingent and liquidated

24 | as of the petition filing date.   As such, because the Barton claim exceeds $4M against

25 | Khan, Khan is ineligible for Chapter 13 and conversion to Chapter 7 is warranted.

26 | The history of the Pre-Petition State Court Action is not subject to any good faith

27 | dispute by Khan.   See, Section I(A)(1) above.   Here, as of April 12, 2013, pre-petition,

28 | the Superior Court has already adjudged (in August 2012) Khan to have committed fraud – corporate resolutions forged (cutting and pasting Barton's signatures on 'back-dated'

14

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  resolutions designed to strip Barton of his shares in RIL), corporate shareholder registries

2  destroyed (to hide the evidence of Barton's share ownership), etc., and awarded damages

3  and the return of Barton's Shares.  The Court had conducted a three day punitive damages

4  phase trial and, thereafter, having decided to issue share value damages rather than what

5  would have been (due to the asset transfers by Khan and Tomkow from RIL to

6  RMail/RComm) the inequitable return to Barton of shares in an asset-gutted RIL,

7  conducted several additional trial hearings regarding share valuation damages and

8  commissioned and received a valuation report from an independent expert.  The final step

9  for the Court was "arithmetic":  Pick the common share value (the Court chose the [Khan

10  suggested] independent expert's value) and multiply it by Barton's 6,016,500 common

11  shares and publish his share damages award (and, for punitive damages consideration,

12  multiply the same per common share value by the Khan and Tomkow common shares as

13  part of the Court's net worth evaluation).  Ex. 25, p. 100:2-14.

14      Yet, just days after the cause was submitted for the Court to do just that, Khan filed

15  his midnight petition.  Hence, Khan knew, at the time of his Petition filing, that he would

16  not meet the Chapter 13 threshold because the Superior Court was poised to issue its

17  further damages award, which was readily determinable by the Court as all the evidence

18  (testimonial and documentary) had been introduced to the Court over a 12 month period.

19  Underscoring the improper motive for the petition filing, Khan did not seek additional time

20  to file his Chapter 13 plan; instead, he rushed to do so ahead of the Superior Court's RSOD

21  to leave the false impression that Khan's unsecured debt somehow was at a level that

22  qualified him for Chapter 13 status.  In mid-June 2013, the Superior Court issued its

23  Revised Statement of Decision establishing Khan's liability to Barton at over $4M (and, by

24  virtue of the Court's $.64 per common share value conclusion, Khan's own common shares

25  in RIL could then be valued at more than $3.9M).  Thereafter, the Superior Court's

26  Judgment was entered on August 30th, further affirming that Khan's indebtedness for

27  fraud, intentional breach of fiduciary duty, conversion exceeds $4M.  Under the facts and

28  controlling law, any plea by Khan that Barton's claim was anything but non-contingent and

15

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   liquidated would be folly.

2       **Second**, and independent of Barton's claims against Khan, the claims of other

3   creditors arising from pre-petition wrongful acts of Khan, Tomkow, et al. – including

4   creditors that Khan did not schedule – render Khan ineligible for Chapter 13.   **First**, RIL

5   has a claim of at least $1M against Khan and Tomkow for defense costs and, separately

6   though related, for the full amount (for indemnity) of the liability of RIL to Barton in the

7   Pre-Petition State Court action (liability which derives from Khan/Tomkow's (and others)

8   pre-petition fraud and breaches of fiduciary duty).   Pursuant to RIL's Bye-Laws (Ex. 8,

9   Para. 77.3), Khan and Tomkow were required to post bonds for the benefit of the

10   corporation as security for the fees and costs incurred by RIL in defending them in the

11   Pre-Petition State Court Action.   At the 341A hearing on May 28, 2013, Khan admitted

12   that he did not post that bond (and falsely claimed RIL, hit with the near $4M judgment

13   because of Khan, et al.'s fraud, is not a creditor in his case), a pre-petition wrongful act that

14   left and now leaves RIL as a creditor for the defense expenses and for the Barton Judgment.

15   Ex. 26, p. 34:8-35:8.   Had Khan posted the bond as required (and for at least the value of

16   the insurance policy which was depleted defending Khan/Tomkow and which would have

17   been available to RIL to pay some portion of the Judgment), RIL would then at least have

18   had a source of recovery (for fees/costs and/or indemnity) as RIL's $1M D&O policy was

19   fully exhausted in the litigation.   Ex. 28.   Clearly, the obligation to post the bond was a

20   pre-petition event (which should have been done part and parcel of RIL commencing the

21   defense of Khan and Tomkow when the Barton lawsuit was filed in January 2010.   Yet,

22   and underscoring their insider-control of RIL, Khan and Tomkow neither posted the bond

23   nor did they list RIL as a creditor and, as such, failed to give RIL's shareholders notice of

24   the bankruptcy proceedings as well.   Failing to schedule RIL as a creditor and RIL's

25   pre-petition claim of at least $1M (if not the full $4M due on the Barton Judgment) also

26   render Khan Chapter 13 ineligible.

27       **Third**, the myriad other proofs of claim filed against Khan in the Chapter 13 case

28   reflect pre-petition claims in the tens of millions.   The Court's docket reflects proofs of

1   claim – separate from Barton's POC – well beyond the Chapter 13 threshold (in an order of

2   magnitude far in excess of 10).

3       Hence, pursuant to Section 1307(c), because the pre-petition claims against Khan

4   exceed the maximum debts for Chapter 13 eligibility, Barton's Motion herein is well taken

5   and conversion to Chapter 7 should be ordered.   For the reasons set forth in Section B(3)

6   below, conversion is most definitely in the best interests of the creditors and estate of Khan

7   and an independent trustee should be immediately appointed to seize the assets and take

8   immediate steps to protect the interests of the creditors and the estate therein.

9

10      **4.      Additional, Overwhelming Good Cause Exists Which Compels
        The Conversion of Khan's Bankruptcy To Chapter 7.**

11      In addition to Khan's ineligibility, this Court can rely on any number of other

12  indicia of "cause" to grant the instant Motion and convert Khan's case to Chapter 7.

13      **a)      Khan's Schedules Contain Misrepresentations and
        Conceal Material Assets.**

14

15      Ostensibly, since 2000, Debtor's entire livelihood and economic success is tied to

16  his ownership and control of the RPost Companies – RIL, RMail and RComm and their

    affiliates and subsidiaries around the world.   However, to mislead the Court and Trustee,

17  Khan has incredibly scheduled his shares in these three companies as valued at $0 and

18  concealed and continues to conceal the financial details and documents of the RPost

19  companies so as to interfere with the Trustee/Creditors' evaluation of what is already

20  known to be Khan's bogus "$0" share valuations listed in his schedules.

21

22      *First*, Khan's RIL shares, at least as of June 2009 (and before Khan and Tomkow

23  orchestrated the transfers of cash and IP out of RIL and usurped RIL's IP opportunities) are

    valued at at least the same $.64 per common share as the Superior Court determined.

24  With at least 6M common shares in RIL, Khan's RIL share interest is worth at least $3.8M.

25  That share value, moreover, does not account for at least $4M ($6M raised less the

26  purported "accrued" expenses) in capital raised in RIL from July 2009-October 2010

27  which is unaccounted for in RIL's own financial records and which Khan continues to

28  refuse to account for.   *Second*, Khan's preferred shares (which were in RIL and then were

17

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   apparently rolled into the reconstituted in RComm) are worth at least $1.035M; Khan

2   admitted that RComm was selling preferred shares (with all the restrictions Khan will

3   complain about in an Opposition) for $5.75 per preferred shares.   With 183,000 preferred

4   shares in his name, Khan's preferred shares in RComm are worth at least $1.045M.   *In Re*

5   *Marriage of Connolly*, *supra*.   Hence, Debtor's filing of his original schedules and

6   amended schedules both concealing the above-referenced valuations and then

7   misrepresenting that the value as "zero" constitute sufficient evidence of bad faith to justify

8   conversion (*In Re Gaustella* and *In Re Henson* ) and underscore Debtor's efforts to

9   manipulate and misuse the Bankruptcy proceedings.

10       ***Third***, Khan does not account for the RComm capital accumulation (above

11   purported "accrued" expenses) of at least $5M from March 2011 through July 2012 and

12   thereafter.   Khan has at least 750,000 common shares in RComm; if RComm has

13   additional equity (cash) above expenses and liabilities of several million dollars (a fair

14   conclusion but one which Khan's non-disclosure and obstruction is designed to thwart the

15   final determination thereof), then Khan's common shares have value (independent of the

16   enterprise value being determined).   ***Fourth***, with respect to his RMail shares, Khan

17   would have the Court believe that the RIL's shareholders were informed of fully and

18   approved Khan/Tomkow's **(a)** transfer of $750,000-$1M from RIL to RMail for the

19   purpose of allowing RMail to "buy" two very valuable, core patents (the "**219/334**

20   **Patents**"), **(b)** secret set-up of an insider Bermuda company that Khan/Tomkow would

21   only allegedly be 10% shareholders of but Khan (who admits that he controls all of the

22   RPost Companies purse strings and is the only person able to answer about the company's

23   business affairs [Ex. 26, p. 25:22-27:25; 28:16-23] has allowed a purported salesman from

24   Costa Rica to own and control 90% of the entity that controls the key patents to RIL's

25   business, while the investors in RIL and, later RComm, have no interest in RMail or the IP

26   (and no say in the terms that Khan imposes for this "license back" of only a part of the IP

27   which was acquired using RIL's funds/guaranty); **(c)** plan, while purporting to "license

28   back" to RIL the patents bought with RIL's funds, to carve out from the patent – for their

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  own aggrandizement – a field of use within the 219/334 Patents that verifies electronic

2  banking and on line7 sales transactions and then secretly (with no disclosure to and

3  approval by the RIL/RComm shareholders) prosecutes actions and retains the settlements;

4  (**d**) settle, in March 2013, just these "carve-out" patent infringement claims against

5  Amazon/PayPal but refuse to disclose the payments and other consideration received by

6  RMail (or Khan, etc.) and refuse to disclose the settlement agreement, notwithstanding

7  their occurrence within 90 days of the filing; and (**e**) settle, in April 2013 with the press

8  announcement the day after the petition filing, that "RPost" has settled another IP action

9  against Zix Corporation (a competitor in the email verification platform), but refuse to

10  disclose the payments and other consideration received by the RPost entity(ies) and refuse

11  to disclose the settlement agreement.   And, as noted below, Khan has defiantly refused to

12  produce the bank statements and other financial information for the RIL/RComm/RMail

13  entities so that the Trustee and creditors could assess the duplicitous $0 share valuations

14  that Khan has represented under oath.   If RMail received $1M from Amazon/PayPal,

15  Khan's shares – and there is little doubt that Khan owns (and/or beneficially owns and

16  controls) far more than 5% of RMail and that the 90% "majority" purported shareholder is

17  a strawman (since Khan/RIL set up the corporation and bank account for the shareholder's

18  company in Belize and used Khan's prior business name – Momentex – as the shill for his

19

20  7 Imagine the number of electronic banking and sales transactions that occur every day in
21  just the U.S. and then imagine what the value of the patent is that allows for verification of
    those transactions. Even RPost's press releases tout that its patents cover the tracking of
22  "billions" of business advertising emails (Ex. 6, Ex. 6 therein).  Hence, it is no surprise
    then that Khan refuses to provide the Trustee and Creditors with the settlement amounts
23  and settlement documents in the SWIFT and Amazon/PayPal settlements because those
    sums are likely sufficient to make a substantial contribution towards the payout of the
24  claims against Khan, including on Barton's Judgment.  **What is alarming, particularly**
25  **given the recent NSA matters in the news, is that an adjudged fraud and corporate**
26  **document forger, etc. (Khan) has the ability – through the RPost registered email**
    **product which acts as a clearinghouse for all emails using its services – to view and**
27  **retain the emails and attachments thereto of government agencies, law firms,**
    **insurance companies, etc. and do so without any accountability or safeguards to**
28  **ensure secrets are not being divulged, mis-used or worse.   Placing these assets in the**
    **hands of a Trustee is all the more compelling under these circumstances.**

19

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   activities) – have substantial value (independent from the value that the IP itself has which

2   Khan's obstruction also seeks to prevent this Court/The Trustee/Creditors from learning

3   about and evaluation).

4       The Federal District Court in the Eastern District of Texas has viewed Khan's

5   duplicity in that Court – concealing these bankruptcy proceedings and the fraud

6   determination - as grounds to stay the IP litigation which Khan his prosecuting for

7   RIL/RMail/RComm.   Ex. 23.   Conversely, by concealing the IP litigation, settlements

8   and cash/equity received from the scheduled, Khan continues to play fast and loose, telling

9   one Court only what Khan wants it to know and telling this Court only what Khan wants to

10  reveal to suit the purpose of this sham Chapter 13 filing and obstructing the discovery and

11  consideration of assets that impact the value of the shares in the RPost companies.

12      Khan has (**1**) concealed assets which he controls through the RPost Entities

13  (including the RMail entity [that Khan, Tomkow and a strawman "salesman" own – to the

14  exclusion of the several hundred RIL/RComm investors] that now controls all of the

15  intellectual property after a series of inter-company transfers) including, without

16  limitation, valuable settlements between, for example, RMail and Amazon/PayPal (entered

17  into just a month before the Petition Filing Date) with the unaccounted for proceeds being

18  distributed to Khan's offshore (Belize, Cayman Islands and/or Bermuda) accounts while

19  Debtor has feigned an inability or lack of recollection as to the consideration paid by

20  Amazon/PayPal when questioned at the 341A hearing; (**2**) concealed the other extensive

21  intellectual property lawsuits being litigated in the Eastern District of Texas, which legal

22  proceedings have substantial value to the estate and Khan's shares in the corporations; and

23  (**3**) has provided patently evasive and non-responsive "answers" to asset and liability

24  inquiries by the U.S. Trustee and Creditors' counsel and has failed to comply with the

25  Trustee's requests (Ex. 5; Ex. 26, pp. 16, 16 & 21) for shareholder lists and capital

26  contributed, all banking information (accounts and statements) for all of the RPost entities

27  in the U.S. and abroad (of which there are nearly two dozen per RPost's own website [Ex.

28  6, {Exs. 5 & 6 therein}) and copies of the settlement agreements with Amazon/PayPal and

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   Zix Corporation (and the records tracing the proceeds from these March/April 2013

2   settlements – none of which were disclosed on the Debtor's schedules, original or

3   amended.  Exs.1, 2, 3 & 7.

4          **b)**       **Despite the Trustee's Written And Oral Requests, Khan**
               **Has Defiantly Refused To Produce Records And**
5              **Information Of His Assets Including the Corporate Assets**
               **That He Controls, Thereby Misusing and Abusing The**
6              **Bankruptcy System.**

7          Khan's evasion and defiant refusal to provide the Trustee and Creditors with asset

8   information and supporting documentation is in and of itself an abuse of the Bankruptcy

9   process and sufficient 'cause' for conversion.   At the 341A hearing on May 28, 2013 and

10  in the Trustee's subsequently filed objections, the Trustee requested (**a**) all bank statements

11  and all the financial records of the corporate entities; (**b**) complete lists with contact

12  information of the shareholders of the corporations – RIL, RComm and RMail, the capital

13  paid in by each shareholder and where that capital was deposited and when and where the

14  funds are now; and (**c**) the settlement agreements that were entered into in the 45 days

15  before the Petition was filed including, without limitation, settlements with Amazon,

16  PayPal and Zix Corporation and where those settlement funds were received and

17  distributed.    Khan defied the Trustee, failing to produce the required information and

18  documentation.[8]   Khan's fast and loose repertoire with the facts and the obligation to

19  speak fully and truthfully is not limited to his Petition filing here.   While hurriedly

20  _____

21  8 Instead, and in sharp contrast to a debtor who is compliant, what Khan did produce was
22  900 pages of largely uninformative tax returns and then a summary cover sheet with
    redacted banking institutions used by each RPost entity (though not represented as
23  complete), **but no bank statements whatsoever and no accounting for the $6M in**
    **capital RIL raised from July 2009 through October 2010 or for the minimum $5M in**
24  **capital RComm raised from March 2011 through July 2012 (or the millions raised**
    **thereafter).**   Khan did not produce the RIL/RComm/RMail shareholder
25  **information and contacts, the capital contribution amounts, dates of the capital**
26  **contributions and in which bank's accounts for which entities the funds were**
    **deposited.**   And, Khan refused to produce the settlement agreements entered into in
27  **March and April 2013 with Amazon, PayPal and Zix corporation or account for the**
    **proceeds of the settlements, the accounts the settlement funds were deposited in and**
28  **where the funds were distributed to therefrom.**

                                   21
          **MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1  attempting to settle out the IP lawsuits Khan was pursuing in the names of

2  RIL/RComm/RMail in the U.S. District Court in the Eastern District of Texas, Khan and

3  his counsel there concealed his bankruptcy and the Superior Court fraud determination

4  from the judge presiding over said IP litigation.  The Federal Court there has since issued

5  a stay of proceedings (issued just 2 days before the trial was to begin), underscoring the

6  Court's rightful concern about the relationship between Debtor's fraud and bankruptcy and

7  the disposition of corporate assets.  As safeguarding the interests of the estate and

8  creditors is the paramount consideration, Khan's abuse of the bankruptcy process and

9  deliberate non-compliance should not be countenanced.

10

11    c)  **Khan Had At Least $315,000 In Net Worth As Of The Petition Date (Independent of The Value of His Shares In The RPost Companies And The Corporate Assets He Controls); The Petition Was Filed Solely To Interfere With the Pre-Petition Superior Court Action.**

12

13

14    Without even disclosing or factoring in his shares in and the assets of the RPost

15  Companies he controls as an officer/director/shareholder (Khan being the signatory on all

16  the entities bank accounts), at the time of the Petition filing, Khan has admitted to the

17  Superior Court that his net worth was at least $315,000.00.  Ex. 16, p.10:15-18.

18  Moreover, even the initial $100,000.00 awarded to Barton was not sufficient to put Khan's

19  net worth in the negative or justify the instant Petition filing, for one simple reason: Khan

20  represented to the Superior Court that RIL, not Khan, had set aside $100,000 to pay that

21  portion of the Superior Court's award in the initial Statement of Decision.  Ex. 11, p.

22  86:19-24; Ex. 13, p. 45:20-25.  Further, Khan concedes that all of his credit card bills were

23  being paid by RIL/RComm (Ex.11, p. 6:11-23), rendering meritless on its face any

24  assertion that Khan faced credit card debt of any significance not being covered by the

25  corporations he controls.

26    Instead, what is crystal clear is that Khan's midnight Petition was filed the weekend

27  after the Superior Court (with acknowledgment by Khan's state court counsel) determined

28  that the matter was submitted for further decision effective April 12, 2013.  Ex. 25. p.

102:6-7, 104:16-105:13.  Here, Khan filed the Petition just following the close of

22

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1    evidence in the Pre-Petition Superior Court Action on Sunday, April 14th, and while that

2    Court was ready to issue its monetary award after more than 1 year of trial activities (three

3    trial phases); Khan then quickly filed his purported Chapter 13 Plan (Ex. 4) before the

4    Superior Court issued its further Statement of Decision and suggested to this Court that his

5    liability in that action was merely $100,000.    After the stay was lifted, the Superior Court

6    issued its RSOD 3 months ago but Khan and his counsel have refused to withdraw the inapt

7    "plan" or convert this case, have presented no other plan (and cannot do so) and continue to

8    propagate the fraudulent schedules that conceal the corporate assets (and, hence, share

9    values), all to the prejudice of the creditors and the estate.    Khan used the Petition filing to

10   attempt to suggest that his liability was only $100,000 (putting aside that he represented

11   that RIL would pay that sum) and rushed to submit a Chapter 13 plan before the Superior

12   Court issued its RSOD establishing its findings regarding the value of common shares

13   which necessarily include the value of Khan's 6M common shares in RIL.    The Petition

14   was filed, therefore, as part of Khan's plan to create a false impression before this Court

15   and the Trustee and his failure to withdraw same underscores the improper purpose of the

16   Petition filing and continued case prosecution by Khan.

17        Only a Chapter 7 conversion will rectify Khan's charade and allow the appointment

18   of an independent Trustee to marshal the assets and provide for their orderly sale and

19   distribution to satisfy the creditors and the estate; in sharp contrast, Khan has demonstrated

20   a deliberate disregard for the authority of the Courts and an unchecked willingness to say

21   anything to any court and conceal the material information that a debtor acting in good

22   faith would have long ago disclosed in full and, at worst, disclosed when called out by the

23   Chapter 13 to do so.

24        **d)    Khan's "Plan" Is Not Confirmable And Is**
25             **Inequitable Given The Substantial Claims Against**
             **Him/The Estate.**

26        Even assuming *arguendo* that Khan's Chapter 13 ineligibility and other "cause"

27   does not somehow compel conversion and his bad faith in filing and prosecuting this

28   Chapter 13 case were not rampantly evident, Khan's failure to account for, via submission

23

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  of an amended plan, Barton's liquidated fraud claim (or the claims of the other creditors)

2  and to present any payment plan concerning same is considered "bad faith" under Section

3  1307(c)(1).  _In re Goeb_ (1982) 675 F2d 1386 [Court can consider lack of repayment of

4  unsecured claims in 'bad faith' analysis]).   The deliberately hurried plan – derived from

5  schedules which conceal and mislead regarding Khan's assets and which blatantly omits

6  any reference to the other pre-petition claims of RIL and other shareholders of the RPost

7  Companies and attempts to avoid the Barton Judgment – could not be confirmed from

8  either an undisclosed asset or misrepresented debt perspective.   The instant plan was

9  presented in bad faith and is not confirmable and, therefore, conversion of the case to

10  Chapter 7 is warranted.

## 5.    Conversion to Chapter 7 Is Clearly In The Best Interests of Khan's Creditors And The Estate.

13  Under controlling law and applicable principles, conversion of Khan's Chapter 13

14  case to a Chapter 7 case is undoubtedly and undeniably in the best interest of all of the

15  creditors and the estate.   Chapter 7 is the only equitable method by which – for the

16  administrative, procedural and substantive reasons articulated in _Henson_ – all of Khan's

17  creditors have the best opportunity to receive the most amount of, if not all of, the sums due

18  from him.   Khan has manipulated and concealed assets (despite opportunities to reverse

19  his duplicity), has secreted away the undisclosed assets (IP litigation settlements, for

20  example), defiantly refused to comply with the Trustee's documentary and information

21  requests at the 341A hearings and in its objections, filed the Chapter 13 case for an

22  improper purpose involving the Pre-Petition State Court Action, and has played and

23  continues to play fast and loose with the Courts.

24  Debtor's control over the RPost entities (and his common and preferred shares

25  therein) reflect an asset base that, upon Chapter 7 liquidation and assuming no waste or

26  other wrongful acts undertaken by or at the direction of Debtor concerning said assets, will

27  be sufficient to pay movant and all unsecured creditors that which they are owed in full and

28  cover the costs incurred by the trustee and his/her employed professionals.   Conversion of

Debtor's Bankruptcy case to Chapter 7 with the Trustee thereupon assuming managerial

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   control (and employing such professionals in connection therewith) is in the best interests

2   of the creditors[9] and, further, to prevent Debtor's continuing fraud upon this Court, the

3   creditors and the judicial system in other myriad jurisdictions.

4   **II.    CONCLUSION**.

5       Khan does not qualify for Chapter 13 and, on that ground alone, conversion to

6   Chapter 7 is required and, given the substantial assets under Khan's control and in his

7   possession, is in the best interests of the creditors and the estate.   In addition, conversion

8   of this case to a Chapter 7 case is supported by cause as Khan's petition and schedules have

9   concealed and misrepresented assets, Khan has subverted the Bankruptcy process, Khan

10   (with admitted net worth in excess of $310,000 (without even accounting for his shares and

11   assets under control in the RPost entities)) filed the Petition to interfere with the

12   Pre-Petition State Court Action (so as to attempt to have a "plan confirmed" before the

13   Superior Court's final judgment damages award was issued), Khan has no confirmable

14   plan and the best interests of the creditors and estate are overwhelming protected vis-à-vis

15   a conversion to Chapter 7.

16       Debtor Khan's fraud before the Los Angeles Superior Court, the US District Court

17   in Texas and now this Court is irreconcilable with the maintenance of the Chapter 13 case

18   and the avoidance of a Chapter 7 conversion.   Barton's Motion is well taken and should be

19   granted.   A Chapter 7 trustee should be appointed forthwith and a restraining order

20   imposed on Debtor from taking any actions regarding his assets pending further order of

21   this Court.

22   Date:   September 13, 2013              McGARRIGLE, KENNEY & ZAMPIELLO, APC

23                                 By:

24                                      Patrick C. McGarrigle, Esq.
                                 Michael J. Kenney, Esq.

25                                    Attorneys for Creditor/Adversary Plaintiff
                                 Kenneth Barton

26

27   [9] Upon conversion, Barton requests that the Court deem Barton's Adversary Complaint,
    filed on July 26, 2013 (and Debtor's answer thereto), as filed in the converted Chapter 7

28   case (and that such administration also apply to the other adversary complaint filed in the
    Khan bankruptcy).

25

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

## DECLARATION OF PATRICK C. MCGARRIGLE

I, Patrick C. McGarrigle, declare:

1.      I am an attorney, duly licensed to practice before this Court, and the principal McGarrigle, Kenney & Zampiello, APC, counsel for Creditor/Adversary Plaintiff Kenneth Barton ("**Barton**").   The following is based upon my personal knowledge and, if called upon, I could and would competently testify to the truth thereof.

2.      Attached to the accompanying Compendium of Evidence as Exhibit "1" and incorporated fully herein by this reference is a true and correct copy of the Chapter 13 Bankruptcy Petition (the "**Petition**") filed by Debtor Zafar Khan ("**Khan**" or "**Debtor**") on April 14, 2013 with the United States Bankruptcy Court, Central District.

3.      Attached to the accompanying Compendium of Evidence as Exhibit "2" and incorporated fully herein by this reference is a true and correct copy of Khan's Summary of Schedules, filed with this Court on April 29, 2013, regarding his Petition in this Bankruptcy case.

4.      Attached to the accompanying Compendium of Evidence as Exhibit "3" and incorporated fully herein by this reference is a true and correct copy of Khan's Amended Schedules, filed with this Court on May 3, 2013, regarding his Petition in this Bankruptcy case.

5.      Attached to the accompanying Compendium of Evidence as Exhibit "4" and incorporated fully herein by this reference is a true and correct copy of Khan's "Chapter 13 Plan," filed with this Court on April 29, 2013.

6.      Attached to the accompanying Compendium of Evidence as Exhibit "5" and incorporated fully herein by this reference is a true and correct copy of the Chapter 13 Trustee's Objections to Khan's Chapter 13 Plan, filed with this Court on May 30, 2013.

7.      Attached to the accompanying Compendium of Evidence as Exhibit "6" and incorporated fully herein by this reference is a true and correct copy of Barton's Objections to Khan's Chapter 13 Plan, filed with this Court in May 2013.

1

8.      Attached to the accompanying Compendium of Evidence s Exhibit "7" and incorporated fully herein by this reference is a true and correct copy of Khan's Amended Schedules filed in this Bankruptcy Case on or about June 28, 2013.

9.      Attached to the accompanying Compendium of Evidence as Exhibit "8" and incorporated fully herein by this reference is a true and correct copy of the Bye-Laws of Rpost International Limited ("RIL"), which RIL produced (through Khan) to my office in approximately January 2006.

10.      Attached to the accompanying Compendium of Evidence as Exhibit "9" and incorporated fully herein by this reference is a true and correct copy of the common share valuation report of Jaime d'Almeida of Duff & Phelps concerning the value of the common shares of RIL as of June/July 2009, which report I moved into and which the Los Angeles Superior Court admitted into evidence in the trial of *Barton v. RPost International Limited; Zafar Khan; Terrance Tomkow; et al.*, LASC Case No. YC061581 (the "**Pre-Petition Superior Court Action**").    Duff & Phelps concluded, based on the then $3.85 per preferred share pricing of RIL shares sold in May/June 2009 and utilizing the back-solve method, that RIL's enterprise value was $100M and the common share value (per common share) was $2.42 per common share.

11.      Attached to the accompanying Compendium of Evidence as Exhibit "10" and incorporated fully herein by this reference is a true and correct copy of the Los Angeles Superior Court's August 3, 2012 Statement of Decision (the "**LASC SOD**") in the Pre-Petition Superior Court Action, following the first (liability) phase of the trial therein.

12.      Attached to the accompanying Compendium of Evidence as Exhibit "11" and incorporated fully herein by this reference is a true and correct copy of excerpts of the November 20, 2012 transcript which was Day 1 of the punitive damages phase of the trial in the Pre-Petition Superior Court Action.

13.      Attached to the accompanying Compendium of Evidence as Exhibit "12" and incorporated fully herein by this reference is a true and correct copy of excerpts of the

2

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1      November 21, 2012 transcript which was Day 2 of the punitive damages phase of the trial

2      in the Pre-Petition Superior Court Action.

3           14.      Attached to the accompanying Compendium of Evidence as Exhibit "13"

4      and incorporated fully herein by this reference is a true and correct copy of excerpts of the

5      November 26, 2013 transcript which was Day 3 of the punitive damages phase of the trial

6      in the Pre-Petition Superior Court Action.

7           15.      Attached to the accompanying Compendium of Evidence as Exhibit "14"

8      and incorporated fully herein by this reference is a true and correct copy of the report of the

9      expert offered by RIL to the Los Angeles Superior Court and appointed thereupon by said

10      Court as an independent valuation expert, Dr. Paul Wazzan, dated March 8, 2013, which

11      report was submitted directly to the Court and all counsel (including myself) pursuant to

12      Court Order.  Dr. Wazzan concluded, also based on the then $3.85 per preferred share

13      pricing of RIL shares sold in May/June 2009 and utilizing the back-solve method (but

14      utilizing two different inputs than Duff & Phelps, that RIL's enterprise value was $33M

15      and the common share value (per common share) was $.64 per common share.

16           16.      In the Pre-Petition Superior Court Action, the Superior Court issued its SOD

17      following the liability phase (which initially awarded Barton the return of his shares in RIL

18      which had been procured by RIL/Khan/Tomkow through forgery and fraud and thereafter

19      converted) and found that a punitive damages phase would proceed.  After a period of

20      punitive damages discovery, the punitive damages phase of the trial proceeded on

21      November 20, 21 and 16, 2012.  At the conclusion of that trial, on November 26, 2012, the

22      Court concluded that, because of the asset transfers by Khan and Tomkow from RIL to

23      both RMail and RComm, the return to Barton of his shares would not be equitable or just;

24      the Court then proceeded to reconsider and revisit the award of damages and the

25      determination of the value of RIL and its common shares as of a June 2009 conversion

26      date.  Following further stipulated to meetings between the Court and the parties'

27      experts, the Court obtained proposed third party experts from which the Court to choose

28      and appoint as the Court's independent expert under the California Code of Civil

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   Procedure.   The Court selected the independent expert preferred by Khan/Tomkow/RIL,

2   Dr. Paul Wazzan, who thereafter reviewed materials and reports from the parties' experts,

3   issued his own report and submitted to examination before the Court on April 4, 2013 and

4   provided a supplemental report as of April 12, 2013, at which point the parties – Barton and

5   RIL/Khan/Tomkow agreed that the case was then deemed submitted for decision (which

6   the Court advised all parties that it was prepared to promptly proceed to do).

7        17.        Based on Khan's admissions in the Pre-Petition Superior Court Action,

8   Khan has 6,016,500 common shares in RIL but has also since indicated it is 6M shares.

9        18.        Attached to the accompanying Compendium of Evidence as Exhibit "15"

10   and incorporated fully herein by this reference is a true and correct copy of the Los Angeles

11   Superior Court's Punitive Damages Award and Revisions to Statement of Decision, dated

12   June 18, 2013.

13       19.        Attached to the accompanying Compendium of Evidence as Exhibit "16"

14   and incorporated fully herein by this reference is a true and correct copy of excerpts of

15   Khan's Motion to Reduce Punitive Damages filed on or about June 28, 2013 in the

16   Pre-Petition Superior Court Action, wherein Khan admits that his net worth is

17   $310,000.00.

18       20.        Attached to the accompanying Compendium of Evidence as Exhibit "17"

19   and incorporated fully herein by this reference is a true and correct copy of the "Judgment

20   After Court Trial" entered by the Court and filed on August 30, 2013 in the Pre-Petition

21   Superior Court Action.

22       21.        Attached to the accompanying Compendium of Evidence as Exhibit "18"

23   and incorporated fully herein by this reference is a true and correct copy of RIL's Federal

24   court Complaint in the Eastern District of Texas entitled *RPost International Limited v. Zix*

25   *Corporation*, Case No. 2:11-cv-00064-TJW-CE, filed on January 31, 2011 (the **"Zix**

26   **Action"**).   The Zix Action was one of several alleged patent infringement actions filed by

27   RIL/RMail/RComm against national and multi-national corporations conducting business

28   in the email and electronic banking/transaction verification spaces.   Attached to the

---

4

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   Compendium of Evidence as Exhibits "19" and "20," respectively, are true and correct

2   copies of the Order of Dismissal of the Zix Action (entered on April 12, 2013) and the RIL

3   Press Release dated April 15, 2013 announcing the purportedly "confidential" settlement

4   of the Zix Action.   As noted in the transcript of the May 26, 2013 341A examination of

5   Mr. Khan, he refused to provide any of the settlement terms of the RIL-Zix settlement.

6   And, despite the Trustee's request for production of the settlement agreement, Khan has

7   refused to produce same and has not produced same to Barton or to the Trustee.

8         22.     Attached to the accompanying Compendium of Evidence as Exhibit "21"

9   and incorporated fully herein by this reference is a true and correct copy of RMail Federal

10   court Complaint in the Eastern District of Texas entitled *RMail v. Amazon*, Case No.

11   2:10-cv-00258-TJW, filed on July 21, 2010 (the "**Amazon Action**").   Attached to the

12   Compendium of Evidence as Exhibit "22" is a true and correct copy of the Order of

13   Dismissal of the Amazon Action (entered on March 13, 2013).   Unlike the Zix Action

14   settlement, RMail did not announce in a press release that it had reached any settlement at

15   all of the Amazon Action (and its companion, consolidated PayPal Action).   At his July 2,

16   2013 further 341A examination, Khan refused to provide any of the settlement terms of the

17   Amazon/PayPal settlement.   And, despite the Trustee's request for production of the

18   settlement agreement, Khan has refused to produce same and has not produced same to

19   Barton or to the Trustee.

20         23.     Attached to the accompanying Compendium of Evidence as Exhibit "23"

21   and incorporated fully herein by this reference is a true and correct copy of the Stay Order

22   of the United States District Court, entered August 2, 2013, in the RIL/RMail/RComm

23   action against Adobe Systems/EchoSign/Docusign (Eastern District Case No.

24   2:10-cv-00025-JRG [the "**Adobe Action**"], the remaining not-settled IP claims that exist

25   in the consolidated action of which Amazon and PayPal were a part.   The Eastern District

26   Court issued the Stay Order, not because of any disclosure to the Court by

27   RIL/RMail/RComm or its principals, Khan & Tomkow but, because that Court there just

28   learned (from Adobe's counsel through contacts with counsel for other RIL/RComm

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   shareholders [who have filed adversary complaints in the Khan/Tomkow bankruptcies]

2   and the undersigned as counsel for Barton that Khan and Tomkow had been adjudged to

3   have committed forgery and fraud and had personal bankruptcies pending in the Central

4   District of California.

5        24.    Attached to the accompanying Compendium of Evidence as Exhibit "24"

6   and incorporated fully herein by this reference is a true and correct copy of an RIL

7   shareholder meeting notice dated August 30, 2013, which RIL sent to certain shareholders

8   purporting to give notice of a shareholder meeting covering three years (2011-2013) and to

9   approve minutes from an alleged meeting from 2010, nearly four years ago.   This Notice

10  is particularly alarming since (a) in sharp contrast, RIL's counsel represented to the

11  Superior Court on the very same date that RPost had "complied with all corporate

12  formalities" (Ex. 15, p. 29), and (b) Khan/Tomkow are attempting to white-wash corporate

13  records covering periods where Khan/Tomkow were engaged in fraudulent asset transfers

14  from RIL to RMail and to RComm.

15       25.    Attached to the accompanying Compendium of Evidence as Exhibit "25"

16  and incorporated fully herein by this reference is a true and correct copy of excerpts of the

17  transcript of the April 4, 2013 valuation damages hearing before Judge Stuart M. Rice in

18  the Los Angeles Superior Court in the Pre-Petition State Court Action.

19       26.    Attached to the accompanying Compendium of Evidence as Exhibit "26"

20  and incorporated fully herein by this reference is a true and correct copy of the transcript of

21  the May 28, 2013 341A hearing of Debtor Khan, conducted by the Trustee and at which I

22  was present and made inquiries of Khan.

23       27.    Attached to the accompanying Compendium of Evidence as Exhibit "27"

24  and incorporated fully herein by this reference is a true and correct copy of the April 19,

25  2013 of the Superior Court's Minutes, stating that the Court was "prepared to rule" and

26  issue its award including punitive damages.

27       28.    Attached to the accompanying Compendium of Evidence as Exhibit "28"

28  and incorporated fully herein by this reference is a true and correct copy of the July 26,

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   2013 email letter I received from counsel for Carolina Casualty Insurance, RIL's insurer,

2   confirming that RIL's Director's & Officer's (D&O) policy proceeds have been fully

3   exhausted.   In other words, Khan and Tomkow, while failing to post a bond as security for

4   their obligation to RIL to cover defense and indemnity obligations (Ex. 7, Para. 77.3), have

5   caused the D&O policy to be exhausted.   As such, RIL, exposed to a $3.9M judgment in

6   favor of Barton, has claims against Khan and Tomkow for the defense fees and costs and

7   the judgment; yet, Khan and Tomkow did not schedule RIL as a creditor or the indemnity

8   rights as a claim of the corporation.   Why?   It is clear that Khan and Tomkow will not

9   acknowledge the patent conflict of interest of their continued status as the operational

10   officers/directors of RIL/RComm/RMail.

11        29.   Attached to the accompanying Compendium of Evidence as Exhibit "29"

12   and incorporated fully herein by this reference is a true and correct copy of Debtor Khan's

13   Declaration in the *RMail et al v. Amazon, PayPal* litigation wherein he admits to having

14   "carved out" for RMail's benefit only the functionality (the "field of use") of the 219/334

15   Patents that verify electronic transactions.   This sequestering of this valuable field of use

16   for their own benefit and to the exclusion of the shareholders of RIL and RComm,

17   notwithstanding that RIL's funds and guaranty were used to acquire the entire IP at issue, is

18   and was a patent breach of fiduciary duty and conflict of interest through self-dealing and

19   usurpation of RIL's corporate opportunities.

20        30.   Khan and Tomkow formed RMail in the Fall 2008 and syphoned off nearly a

21   $1M of RIL cash in the summer of 2009 and into 2010 to put the 219/334 Patents in the

22   control of Khan/Tomkow's insider company (RMail) and not RIL (which entity had signed

23   the NDA and was set up to be the patent acquisition entity until Khan/Tomkow switched

24   the name of the buyer in the contract, while keeping RIL as a guarantor of the entire

25   purchase price).   See, Ex. 11 p. 27:5-15; 28:19-29:25; 30:15-23.   Khan and Tomkow

26   plugged in the asset-less RMail as the buyer of the patents, swapping out RIL but still

27   having RIL guaranty the purchase, and then had RIL "loan" RMail $754,000+ to acquire

28   the 219/334 Patents - $554,000 being described as a "loan" to RMail (that never gets

---

7

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  repaid), $200,000 as a "license" fee and then $45,000 per year in license fees payable to

2  RMail.   Conspicuously, Khan and Tomkow have never produced any shareholder meeting

3  and board of director meeting minutes whereby their insider, self-dealing transactions were

4  fully disclosed and approved in advance; given the Superior Court's SOD/RSOD, Khan

5  and Tomkow's corporate record forgery and destruction (coupled with the August 30, 2013

6  "notice" for a meeting to approve undisclosed corporate minutes from 4 years ago – Ex.

7  24[B]) underscores why there is no record of actual full disclosures and informed consent.

8  Consistently with their practice of concealment here, and although the 219/334 Patents

9  transaction allegedly was completed in August 2009, Khan and Tomkow did not allude to

10  the transactions until January 2011 (burying the reference to the transaction in a note

11  section of an alleged "audit" of RIL's assets (an "audit" used to spook those shareholders

12  contacted about yet another asset transfer transaction involving RIL's assets, this time to

13  RComm)).

14    I declare under the penalty of perjury under the laws of the State of California and

15  the United States of America that the foregoing is true and correct.

16    Executed this 13th day of September, 2013 at Chatsworth, California.

17

18

19  Patrick C. McGarrigle

20

21

22

23

24

25

26

27

28

8

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

9600 Topanga Canyon Boulevard, Suite 200, Chatsworth, California 91311

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION OF CREDITOR - ADVERSARY PLAINTIFF KENNETH BARTON TO CONVERT DEBTOR ZAFAR KHAN'S CHAPTER 13 BANKRUPTCY CASE TO CHAPTER 7; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PATRICK C. McGARRIGLE AND EXHIBITS THERETO** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____9/13/2013_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Trustee - Nancy K Curry (TR): ecfnc@trustee3.com

Attorney for Debtor - Lewis R. Landau : LLandau@HorganRosen.com

Attorney for Thomas Burke/ 26736 Canada, Inc.: scott.e.shapiro.esq@gmail.com

United States Trustee (LA): ustpregion116.la.ecf@usdoj.gov

Joely Khanh Linh Bui on behalf of Interested Party Courtesy NEF: wdk@wolffirm.com, joely.bui@wolffirm.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ___9/13/13___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | | | |
|---|---|---|---|
| Franchise Tax Board<br>Bankruptcy Section MS: A-340<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | Courtesy NEF<br>c/o The Wolf Firm<br>2955 Main Street<br>Second Floor<br>Irvine, CA 92614-2528 | Employment Development Dept.<br>Bankruptcy Group MIC 92E<br>P.O. Box 826880<br>Sacramento, CA 94280-0001 | Los Angeles City Clerk<br>P.O. Box 53200<br>Los Angeles, CA 90053-0200 |
| Los Angeles Division<br>255 East Temple Street<br>Los Angeles, CA 90012-3332 | 126736 Canada Inc., a Canadian<br>corporation<br>c/o Scott E. Shapiro, Esq.<br>APPELL SHAPIRO, LLP<br>15233 Ventura Blvd, Suite 420<br>Sherman Oaks, CA 91403-2220 | American Express<br>Box 0001<br>Los Angeles, CA 90096-8000 | (p) BANK OF AMERICA<br>PO BOX 982238<br>EL PASO TX 79998-2238 |
| Barclays US Air<br>Card Services<br>PO Box 13337<br>Philadelphia, PA 19101-3337 | CMRE Financial Svcs In<br>3075 E Imperial Hwy, Ste 200<br>Brea, CA 92821-6753 | Cerastes, Llc<br>C O Weinstein And Riley, Ps<br>2001 Western Avenue, Ste 400<br>Seattle, Wa 98121-3132 | Chase United Mileage Plus<br>Card Services<br>PO Box 94014<br>Palatine, IL 60094-4014 |
| Citibank Aadvantage<br>Processing Center<br>Des Moines, IA 50363-0001 | George Martin<br>c/o Scott E. Shapiro, Esq.<br>15233 Ventura Blvd, Suite 420<br>Sherman Oaks, CA 91403-2220 | Henry Ben-Zvi<br>Ben-Zvi & Associates<br>3231 Ocean Park Boulevard, Suite<br>212<br>Santa Monica, California 90405-3232 | Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 |
| (p)Portfolio Recovery Associates<br>LLC<br>PO BOX 41067<br>NORFOLK VA 23541-1067 | Suntrust Mortgage, Inc<br>Bankruptcy Department RVW 3034<br>PO Box 27767<br>Richmond VA 23261-7767 | Suntrust Mortgage Inc.<br>PO Box 26149<br>Richmond, VA 23260-6149 | Thomas Burke<br>c/o Scott E. Shapiro, Esq.<br>APPELL SHAPIRO, LLP<br>15233 Ventura Blvd, Suite 420<br>Sherman Oaks, CA 91403-2220 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| United States Trustee (LA) | Lewis R Landau | Nancy K Curry (TR) | Zafar David Khan |
|---|---|---|---|
| 725 S Figueroa St., 26th Floor | Horgan Rosen Beckham & Coren | 700 S Flower Street, Suite 1215 | 1929 Ruhland Ave, Unit A |
| Los Angeles, CA 90017-5413 | LLP | Los Angeles, CA 90017-4114 | Redondo Beach, CA 90278-2322 |
| | 23975 Park Sorrento Ste 200 | | |
| | Calabasas, CA 91302-4011 | | |

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) ____9/13/13____, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

Via Federal Express:
Hon. Vincent Zurzolo
U.S. Bankruptcy Court, Roybal Federal Building,
255 E. Temple Street, Suite 1360 / Courtroom 1368
Los Angeles, CA 90012-3332

Via Federal Express:
Hon. Julia W. Brand
U.S. Bankruptcy Court, Roybal Federal Building
255 E. Temple Street, Suite 1382 / Courtroom 1375
Los Angeles, CA 90012-3332

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 13, 2013   Vanessa Bravo | /s/ Vanessa Bravo |
|---|---|
| *Date*                *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT B

Nancy Curry, Chapter 13 Trustee
Omid Moezzi, Esq. (SBN 260145)
700 S. Flower St, Ste 1215
Los Angeles, CA 90017
Tel: (213) 689-3014
Fax: (213) 689-3055

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

In re:                              ) Chapter 13
                                    )
                                    ) Case No. 2:13-bk-19713-VZ
ZAFAR DAVID KHAN                    )
                                    ) **DECLARATION OF OMID MOEZZI,**
                                    ) **ATTORNEY FOR CHAPTER 13 TRUSTEE,**
                                    ) **IN SUPPORT OF CREDITOR'S MOTION TO**
                    Debtor           ) **CONVERT TO CHAPTER 7 [Docket No.**
                                    ) **41]**
                                    )
                                    ) **HEARING DATE/TIME**
                                    ) Date: October 7, 2013
                                    ) Time: 11:00 a.m.
                                    ) Courtroom: 1368
                                    )      255 E Temple Street
                                    )      Los Angeles, CA 90012
_____)

**DECLARATION OF OMID MOEZZI**

I, OMID MOEZZI, do hereby declare and state as follows:

1.    I am employed by the Trustee as a staff attorney and am duly qualified to make this declaration. As to the following facts, I know them to be true from my personal knowledge or I have gained knowledge of them from the Trustee's business records which were

1

1  maintained in the ordinary course of business made at or near the

2  time of the acts, conditions, or events to which they date.

3      2.    Nancy Curry is the Chapter 13 Trustee (the "Trustee") with

4  respect to Chapter 13 Case No. 2:13-bk-19713-VZ of Zafar David Khan.

5      3.    This voluntary chapter 13 case was filed on April 14, 2013

6  by debtor through his attorney, Lewis Landau.

7      4.    The initial §341(a) Meeting of Creditors was scheduled and

8  held on May 28, 2013 at 9:00AM. At that time, the matter was

9  continued to July 2, 2013 due to documents including proof of income

10  that was not yet received by the Chapter 13 Trustee. Various

11  creditors were present at this meeting.

12      5.    On May 30, 2013, the Chapter 13 Trustee filed an objection

13  to debtor's plan based on the examination conducted on May 28, 2013

14  (attached as Exhibit A and hereinafter incorporated by reference).

15      6.    On July 2, 2013, at the continued §341(a) Meeting of

16  Creditors, the Chapter 13 Trustee again continued the meeting due to

17  proof of income documents that were provided to the Chapter 13

18  Trustee as a compact disc that could not be processed by the trustee.

19  Various creditors were again present at this meeting. The matter was

20  continued to August 8, 2013.

21      7.    On August 8, 2013, at the time of the continued §341(a)

22  Meeting of Creditors the Chapter 13 Trustee again conducted her

23  examination. Various creditors were parent at this meeting.

24      8.    Debtor's schedules disclose his ownership interest in

25  various corporations including RPost International, RPost

26  Communication, and RMail Limited (attached as Exhibit B and

27  hereinafter incorporated by reference).

28

9.   Debtor provided to the trustee on or around August 2013, tax returns for RPost US Inc., RPost Holdings Inc., Zansu Inc. and his personal tax returns.

10.   While debtor's schedules disclose secured debts totaling $583,000.00 and unsecured debts totaling $144,558.00, the claim register provides for a total secured claim amount of $568,032.48 and a total of $67,621,223.91 (attached as Exhibit C and hereinafter incorporated by reference).   .

11.   Debtor's total unsecured debts are not disclosed and render the debtor ineligible under 11 U.S.C. §109(e).

12.   Debtor's Statements of Financial Affairs questions number 19 - 24 fail to sufficiently respond regarding the businesses inventory, interested current or former parties, withdrawals from the business and other required information of an officer, director, or managing executive (attached as Exhibit B and hereinafter incorporated by reference).

13.   Debtor's documents fail to provide sufficient information to properly determine the present values of all the assets of the various corporations to which debtor is an officer, insider, or managing executive.

14.   Debtor's documents fail to provide sufficient information to properly determine the value of common and preferred shares of all the various corporations to which debtor holds stock.

15.   Debtor's documents fail to provide sufficient information to properly determine any debts owed by the corporation that would be attributable to the debtor.

16.   Finally, the best interest of creditors would be served if the case was converted to Chapter 7 thereby assigning a trustee to

3

1  properly   liquidate   the   assets   and   provide   distributions   to

2  outstanding creditors.

3

4      I declare under penalty of perjury that the foregoing is true

5  and complete to the best of my knowledge. Executed at Los Angeles,

6  California on September 23, 2013.

7

8  Date: September 23, 2013              /s/ OMID MOEZZI
                                         Omid Moezzi
9                                        Attorney for Nancy Curry
                                         Chapter 13 Trustee
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# PROOF OF SERVICE OF DOCUMENT

3   I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4      NANCY CURRY CHAPTER13 TRUSTEE
   700 S. Flower St, Ste 1215

5      Los Angeles, CA 90017

6   The foregoing document described as **DECLARATION OF OMID MOEZZI, ATTORNEY FOR**
**CHAPTER 13 TRUSTEE, IN SUPPORT OF CREDITOR'S MOTION TO CONVERT TO**

7   **CHAPTER 7 [Docket No. 41]** will be served or was served **(a)** on the judge in chambers in the form
and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

8

9   I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling
General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via

10  NEF and hyperlink to the document. On 9/23/13, I checked the CM/ECF docket for this bankruptcy case or
adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive
NEF transmission at the email address(es) indicated below:

11

   • **Philip A Zampiello** McGarrigle Kenney & Zampiello philipz@mkzlaw.com

12     • **Scott E Shapiro, Esq** Law Offices of Scott E Shapiro PC
      scott.e.shapiro.esq@gmail.com

13     • **Thomas Burke** c/o Appell Shapiro, LLP
      scott@asattorney.com

14     • **Lewis R Landau** Horgan Rosen Beckham & Coren LLP LLandau@HorganRosen.com

15  II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On 9/23/13, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy

16  case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States
Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge*

17  *here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the*
*document is filed.*

18  Debtor

19  **Zafar David Khan**
   1929 Ruhland Ave, Unit A

20     Redondo Beach, CA 90278

21  III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each**
**person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 9/23/13, I served the following

22  person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method),
by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal*

23  *delivery on the judge will be completed no later than 24 hours after the document is filed.*

24  Honorable Vincent P. Zurzolo
U.S. Bankruptcy Court

25  Bin outside of Suite 1360
255 E. Temple St

26  Los Angeles, CA 90012

27  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and
correct.

28

| 9/23/2013 | Carlos Robles | /s/ Carlos Robles |
|---|---|---|
| Date | Type Name | Signature |

# EXHIBIT A

Case 2:10-cv-00258-JRG   Document 553   Filed 10/16/13   Page 61 of 139 PageID #:  13434
Case 2:13-bk-19713-VZ   Doc 26   Filed 09/03/13   Entered 09/03/13 09:54:34   Desc
Main Document   Page 1 of 8   Page 7 of 40

Nancy Curry, Chapter 13 Standing Trustee
700 South Flower Street, Suite 1215
Los Angeles, CA 90017
TEL: (213) 689-3014
FAX: (213) 689-3055

<table>
<tr><td colspan="2" align="center">UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION</td></tr>
<tr><td>IN RE<br><br>KHAN, ZAFAR DAVID<br><br><br><br><br><br><br><br><br>Debtor</td><td>Case No. 2:13-bk-19713-VZ<br><br>Chapter 13<br><br>TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN UNDER 11 USC §§§1322, 1325 AND 1326; DECLARATION IN SUPPORT; NOTICE OF POSSIBLE DISMISSAL OR CONVERSION UNDER 11 USC §1307<br><br>Date: February 10, 2014<br>Time: 09:00 AM<br>Ctrm: 1368<br>    255 East Temple Street<br>    Los Angeles, CA 90012</td></tr>
</table>

The Chapter 13 Standing Trustee hereby objects to the confirmation of the proposed plan because the Debtor has failed to meet all necessary requirements as detailed in the attached declaration and supporting Exhibit A.

THE FAILURE OF THE DEBTOR, OR THE ATTORNEY REPRESENTING THE DEBTOR, TO RESPOND TO THESE OBJECTIONS, APPEAR AT THE CONFIRMATION HEARING AND FAILURE TO PRESENT EVIDENCE THAT ALL REQUIRED PAYMENTS ARE CURRENT MAY RESULT IN DISMISSAL OR CONVERSION OF THE CASE. THEREFORE, the Trustee respectfully requests that confirmation of the plan be denied and for such other relief as the Court may deem appropriate.

DATED: May 30, 2013

/s/ Nancy Curry
Chapter 13 Standing Trustee

Case 2:10-cv-00258-JRG   Document 553   Filed 10/16/13   Page 62 of 139 PageID #:  13435
Case 2:13-bk-19713-VZB   Doc 256   Filed 09/03/13   Entered 09/03/13 09:43:24   Desc
Main Document   Page 2 of Page 8 of 40

### DECLARATION OF MASAKO OKUDA

I, MASAKO OKUDA, declare as follows:

1. Nancy Curry is the Chapter 13 Standing Trustee in this matter KHAN, ZAFAR DAVID

   , 2:13-bk-19713-VZ. I am employed by the Trustee as

   a staff attorney and am duly qualified to make this declaration. The Trustee has files and

   records kept by her office in  the regular course of business. I have personally reviewed

   the files and records kept by her office in  the within case. The following facts are true and

   correct within my own personal knowledge and I could and would testify competently

   thereto if called upon to do so.

2. I object to confirmation of the proposed Plan because of the specific deficiencies which

   are set forth in the attached Exhibit A which is incorporated herein by reference.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: May 30, 2013

/s/ Masako Okuda
Masako Okuda

Case Name: Khan, Zafar David
Case No.  2:13-bk-19713-VZ

## EXHIBIT A

If the Debtor fails to produce the requested documents and fails to resolve the issues set forth in this objection to confirmation, the Trustee will recommend dismissal or conversion of the case for cause and unreasonable delay that is prejudicial to creditors. See 11 USC §§1307(c) and 1307(c)(1).

Other issues may arise at or before confirmation requiring additional action or information by the debtor and counsel.

The Debtor has a duty to cooperate with the Trustee. See 11 USC §521(a)(3) and FRBP 4002(4).

The Debtor has the burden of proof for plan confirmation. See In re: *Huerta* 137 BR 356, 365 (Bkrtcy. C.D.Cal., 1992), In re: *Wolff* 22 BR 510, 512 (9th Cir. BAP (Cal.) 1982), In re *Hill* 268 BR 548, 552 (9th Cir. BAP (Cal.), 2001).

| Objection | Possible Resolution |
|---|---|
| **Failure to disclose** | **In re Rolland, 317 BR 402 (Bankr. C.D. Cal 2004)** |
| The Debtor has failed to disclose [11 USC §521(a)(1)] | |
| 1. Assets – Debtor has failed to list the number of shares he holds in various entities including the business valuation, debts, and assets. Debtor has also failed to disclose interest in other businesses both within and outside the U.S. Debtor to disclose all bank accounts, domestic and international, to which he has ability to withdraw, deposit, or has the ability to sign on behalf of a corporation. | Debtor must disclose all assets in his schedules. |
| **Best effort** | **Hamilton v. Lanning, 130 S.Ct. 2464 (2010)** |
| The Plan does not represent a best effort of the Debtor [11 USC §1325(b)(1)(B)] because | |
| 1. Not all scheduled expenses appear to be reasonable and/or necessary. Transportation $1,040/mo; Home Maintenance $921/mo; Clothing $500/mo. In re Smith, 418 BR 359 (BAP 9th Cir. 2009) | Debtor must commit all disposable income in to the plan. |
| **Liquidation** | |
| The Plan provides less for general unsecured creditors than they would receive in Chapter 7 [11 USC §1325(a)(4)].<br><br>1. The Plan's own liquidation analysis reflects that general unsecured creditors must receive at least __100__% whereas the Plan provides 40 %<br><br>2. The schedules reflect that there is non-exempt equity which would result in a higher percentage payment to general unsecured creditors.<br><br>Debtor's schedules disclose a value of $751k where as an online appraisal values the real property at $833k (see attached). | Debtor must provide for full payment of class 5 creditors due to unexempt equity in his home. |

Case 2:10-cv-00258-JRG   Document 553   Filed 10/16/13   Page 64 of 139   PageID #:  13437
Case 2:13-bk-19713-WB   Doc 286   Filed 09/03/13   Entered 09/03/13 09:54:34   Desc
Main Document   Page 4 of 40   Page 10 of 40

| Income | |
|---|---|
| The Debtor has failed to timely (7 days before the §341(a) debtor examination) provide<br><br>(1) Payment advices (documentation) to prove income received during the sixty days preceding the date of the petition [11 USC §521(a)(1), LBR 3015-1(c)(3)].<br><br>(2) Complete copies of Federal and State Income Tax Returns, including W-2s, 1099s (or other supporting documentation) for the most recently ended calendar year [ 11 USC §521(e)(2), LBR 3015-1(c)(3)]. | Debtor to provide business and personal tax returns for 2008 – 2012 including businesses outside the U.S. including business statements. |
| The Debtor has failed to comply with the business reporting requirements of LBR 3015-1(c)(4) for all businesses, and holding companies, within and outside the U.S. for Rpost (and its various entities and corporations) and Zansu, Inc. | • Actual monthly income and expense statements (not a profit and loss statement) for the six months preceding the date of the petition with supporting bank statements; and continue to provide these statements each month until a plan is confirmed;<br>• Projected income and expenses for the 12 month period following the filing of the petition;<br>• Evidence of appropriate business insurance and required licenses;<br>• Complete Federal and State income tax returns for each of the five years preceding the filing of the petition;<br>• Inventory of goods and list of business furniture and equipment as of the date the petition date. |

| Statement of Financial Affairs (SOFA) - Blank or incomplete items | |
|---|---|
| **In re Rolland, 317 BR 402 (Bankr. C.D. Cal 2004)** | |
| The Debtor has failed to accurately and completely answer all items. | No. 18 - 21 regarding various businesses to which debtor is an executive, director or shareholder. Debtor must disclose all shareholders of various businesses, date shares were acquired, valuation documents, funds received and disposition of shareholder funds. |

| Debtor attorney fee | | |
|---|---|---|
| There are fee discrepancies among the Plan, RARA, SOFA, and the §341(a) testimony. | BR Form 2016(b) | $9,281.00 |
| | SOFA Item 9. | $9,281.00 |
| | RARA | $0 |

Case 2:10-cv-00258-JRG   Document 553   Filed 10/16/13   Page 65 of 139 PageID #:  13438
Case 2:13-bk-19713-WB   Doc 56   Filed 09/08/13   Entered 09/08/13 09:54:30   Desc
Main Document   Page 5 of 8   Page 11 of 40

| Miscellaneous |
|---|

- Debtor to provide a credit report for himself and his spouse,
- Debtor to provide articles of incorporation for all business to which he is a interested member, director, or other executive with authority for all business within and outside the U.S.,
- Debtor to provide documentation of valuation of shares of preferred and common stock of all businesses to which there have been shares issued to investors/shareholders other than the debtor,
- Debtor has not disclosed business information including assets, debts, and specifics of debtors interest as a director, executive and shareholder,
- Debtor to provide information about business liabilities and evidence that he is not personally liable for any guarantees made by the business, debts incurred by the business, or agreements made by the business in the ordinary course, and
- Debtor to provide evidence FMV of real property listed on Schedule A.

Case 2:10-cv-00258-JRG   Document 553   Filed 10/16/13   Page 66 of 139 PageID #: 13439

5/29/13      Case 2:13-bk-19773-VZB   Doc 286   Filed 05/29/13   Entered 05/29/13 09:45:04   Desc
Main Document   Page 6 of 6  Page 12 of 40

| Homes | Rentals | Mortgage Rates | Advice | Find a Pro | Local Info | Digs™ | More |          Mobile   My Zillow [0]

Location: City, State, or ZIP

California   Redondo Beach   90278   1929 Ruhland Ave                                    Views: 80

# 1929 Ruhland Ave # A, Redondo Beach, CA 90278

**Contact a local agent**

**Not for Sale**

Zestimate: $833,153

Rent Zestimate: $3,724/mo

Est. Mortgage: $3,124/mo

See current rates on Zillow
A Bad Credit Score is 598, See Yours for $0

| | |
|---|---|
| **Bedrooms:** | 4 beds |
| **Bathrooms:** | 4 baths |
| **Condo:** | 2,423 sq ft |
| **Lot:** | 6,750 sq ft |
| **Year Built:** | 2000 |
| **Last Sold:** | Dec 2004 for $810,000 |
| **Heating Type:** | Contact for details |

Map   Bird's Eye   Street View

Correct home facts   Save this home   Get updates   Email   more ▼

[ ] **Robert Dixon**
(7 reviews)
Call: (424) 257-1723

[ ] **Alex Bannerman**
Write a review
Call: (310) 621-6309

[ ] **Jessika Werchick**
(8 reviews)
Call: (310) 853-5851

Your Name

Phone

omoezzi@hotmail.com

I would like a professional estimate of my home at 1929 Ruhland Ave # A, Redondo Beach, CA 90278.

Contact Agent

Learn how to appear in this list

WELLS FARGO HOME MORTGAGE

Get $250 off closing costs

If you're ready to purchase a home, we're ready to help.

▶ Get Prequalified

## Description

This 2423 square foot condo home has 4 bedrooms and 4.0 bathrooms. It is located at 1929 Ruhland Ave Redondo Beach, California.

| | | |
|---|---|---|
| **Cooling** | **Parking** | **Basement Type** |
| Central | Unknown | Unknown |
| **Fireplace** | **Floor Covering** | **Attic** |
| Unknown | Unknown | Unknown |

▼ More   |   Visit county website

## Zestimates

| | Value | Range | 30-day change | $/sqft | Last updated |
|---|---|---|---|---|---|
| **Zestimate** | $833,153 | $392K – $1.3M | +$6,687 | $343 | 05/28/2013 |
| **Rent Zestimate** | $3,724/mo | $2.7K – $5.4K/mo | -$8 | $1.54 | 05/27/2013 |
| **Owner Estimate** | Post your own estimate | | | | |
| **Market Guide** | Zillow predicts 90278 home values will rise 9.6% next year, compared to a 9.7% rise for Redondo Beach as a whole. Among 90278… | | | | |

more

**Similar Homes for Sale**

**2112 Harriman Ln # B, …**
For Sale: $879,122
Beds: 4    Sqft: 2411
Baths: 3.0    Lot: 7492

**2000 Mathews Ave UNI…**
For Sale: $432,126
Beds: 2    Sqft: 1238
Baths: 1.5    Lot: 11255

**2109 Carnegie Ln APT …**
For Sale: $540,000
Beds: 3    Sqft: 1583
Baths: 1.5    Lot: 7405

See listings near 1929 Ruhland Ave # A

Case 2:10-cv-00258-JRG   Document 553   Filed 10/16/13   Page 67 of 139 PageID #:  13440

5/29/13   Case 2:13-bk-19713-WB   Doc 28   Filed 09/04/13   Entered 09/04/13 09:49:04   Desc
Main Document   Page 7 of   Page 13 of 40

Loading chart...



**Zillow Digs™**
Discover your dream kitchen

See more ideas ›

View your 3 Bureau Credit Report

**Nearby Similar Sales**

**2021 Ruhland Ave # 2, Redondo Beach, C...**

Sold on 3/6/2013: $574,000

| Beds: 4 | Sqft: 2480 |
| Baths: 3.0 | Lot: 7494 |

**2007 Curtis Ave # A, Redondo Beach, CA ...**

Sold on 9/17/2012: $425,000

| Beds: 4 | Sqft: 2530 |
| Baths: 3.0 | Lot: 7502 |

**1930 Gates Ave # B, Redondo Beach, CA ...**

Sold on 11/29/2012: $798,000

| Beds: 4 | Sqft: 2412 |
| Baths: 3.0 | Lot: 7405 |

See sales similar to 1929 Ruhland Ave # A

**Neighborhood**

◉ Home Values
○ Listings

View larger map

**Featured Partners**

**Quicken Loans® Home Loans**
www.QuickenLoans.com
No need to go to a bank. Get your
home mortgage online with us today!

**Capital One Home Loans**
www.capitalone.com/home-loans
Create mortgage envy with a home
loan you can brag about. Learn more.

**CHASE**
www.chase.com
Chase Mortgage Cash Back can save
you thousands

**Nearby Schools in Redondo Beach**

Data and ratings provided by GreatSchools.org

| | Grades | Distance |
|---|---|---|
| Madison Elementary (assigned) | K-5 | 0.6 mi |
| Adams Middle (assigned) | 6-8 | 1.1 mi |
| Redondo Beach Learning Academy (assigned) | 9-12 | 1.8 mi |
| Birney Elementary | K-5 | 0.4 mi |
| Explorers In Learning Academy | 6, 8, 12 | 0.4 mi |
| Lincoln Elementary | K-6 | 0.5 mi |

NEWLY VACANT
HOME AUCTIONS

»VIEW HOMES «

Bank-Owned
Homes Priced
to Sell!

auction.com

Case 2:10-cv-00258-JRG  Document 553  Filed 10/16/13  Page 68 of 139 PageID #: 13441

5/29/13    Case 2:13-bk-19711-WB  Doc 28  Filed 05/30/13  Entered 05/30/13 15:30:04  Desc
            Main Document  Page 8 of  Page 14 of 40

**Mira Costa High**                                                          8-12        0.7 mi

**More schools in Redondo Beach**

## Contact a local agent



☑   **Robert Dixon**
         (7 reviews)
     Call: (424) 257-1723

☐   **Alex Bannerman**
         Write a review
     Call: (310) 621-6309

☐   **Jessika Werchick**
         (8 reviews)
     Call: (310) 853-5851

| Your Name |
| Phone |
| omoezzi@hotmail.com |
| I would like a professional estimate of my home at 1929 Ruhland Ave # A, Redondo Beach, CA 90278. |

[ Contact Agent ]

Learn how to appear in this list

Browse more 90278 listing agents

| **Nearby Cities** | **Nearby Neighborhoods** | **Nearby Zip Codes** | **Other Redondo Beach Topics** |
|---|---|---|---|
| Real Estate in Glendale | Real Estate in Riviera | Real Estate in 90002 | Apartments for Rent in 90278 |
| Real Estate in Inglewood | | Real Estate in 90201 | Houses for Sale in 90278 |
| Real Estate in Lancaster | | Real Estate in 90278 | Homes for Rent in 90278 |
| Real Estate in Long Beach | | Real Estate in 90280 | 90278 Real Estate |
| Real Estate in Los Angeles | | Real Estate in 90640 | Redondo Beach Condos |
| Real Estate in Palmdale | | Real Estate in 91342 | Houses for Sale in Redondo |
| Real Estate in Pasadena | | Real Estate in 91406 | Beach |
| Real Estate in Pomona | | Real Estate in 91744 | Newest Listings in Redondo |
| Real Estate in Santa Monica | | Real Estate in 91745 | Beach |
| Real Estate in Torrance | | Real Estate in 91767 | Redondo Beach Home Values |
| Real Estate in Agua Dulce | | Real Estate in 91722 | Redondo Beach Real Estate |
| Real Estate in Juniper | | | Agents |
| Real Estate in Calabasas Hills | | | Redondo Beach Foreclosures |
| Real Estate in East Rancho | | | Redondo Beach Mortgage Rates |
| Dominguez | | | |
| Real Estate in Holly Park | | | |
| Real Estate in Finger Disaster | | | |
| Real Estate in La Cienegas | | | |
| Real Estate in Marde Hous | | | |
| Real Estate in Middle Ranch | | | |
| Real Estate in Valley Village | | | |

1929 Ruhland Ave # A, Redondo Beach, CA, 90278 is a condo of 2,423 sqft on a lot of 6,750 sqft (or 0.15 acres). Zillow's Zestimate® for 1929 Ruhland Ave # A is $833,153 and the Rent Zestimate® is $3,724/mo. This condo has 4 bedrooms, 4 baths, and was built in 2000. The 4 bed condo at 2112 Harriman Ln # B in Redondo Beach is comparable and for sale for $879,122. This condo is located in Redondo Beach in zip code 90278. Robert Dixon and Alex Bannerman provide real estate services in 90278. Riviera is a nearby neighborhood. The closest ZIP codes are 90022 and 90221. Glendale, Inglewood, and Lancaster are the nearest cities.

| About | Zestimates | Jobs | Help | Advertise | Terms of Use & Privacy Policy | Blog |
|---|---|---|---|---|---|---|

Yahoo!-Zillow Real Estate Network      © 2006-2013 Zillow    Follow us  🐦 f g+



## PROOF OF SERVICE DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My
business address is:

700 South Flower Street, Suite 1215
Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (specify) **TRUSTEE'S OBJECTION
TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN UNDER 11 USC §§§1322, 1325 AND
1326; DECLARATION IN SUPPORT; NOTICE OF POSSIBLE DISMISSAL OR CONVERSION
UNDER 11 USC §1307** will be served or was served **(a)** on the judge in chambers in the form and
manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant
to controlling General Orders and LBR, the foregoing document will be served by the court via
NEF and hyperlink to the document. On May 30, 2013, I checked the CM/ECF
document for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email
addresses stated below:

**2.   SERVED BY UNITED STATES MAIL:**
On  May 30, 2013, I served the following persons and/or entities at the last
known addresses in this bankruptcy case or adversary proceeding by placing a true and cor-
rect copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and
addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will
be completed no later than 24 hours after the document is filed.

KHAN, ZAFAR DAVID                          LEWIS R. LANDAU

1929 RUHLAND AVE., UNIT A                  23564 CALABASAS RD., #104
REDONDO BEACH, CA 90278                    CALABASAS, CA 91302-

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION
OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or
controlling LBR, on  May 30, 2013, I served the following persons and/or entities
by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here
constitutes a declaration that personal delivery on, or overnight mail to, the judge will be
completed no later than 24 hours after the document is filed.

Honorable Vincent P. Zurzolo
U.S. Bankruptcy Court
Bin outside of Suite 1360
255 East Temple Street
Los Angeles, CA 90012

I declare under penalty of perjury that the laws of the United States that the foregoing is true and correct.

| May 30, 2013 | Carlos Robles | /s/ Carlos Robles |
|---|---|---|
| Date | Type Name | Signature |

# EXHIBIT B

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
### Central District of California

In re   Zafar David Khan

_____
Debtor

Case No.   2:13-bk-19713-VZ

Chapter   13

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

### AMOUNTS SCHEDULED

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A – Real Property | YES | 1 | $   751,000.00 | | |
| B – Personal Property | YES | 3 | $   56,893.00 | | |
| C – Property Claimed as exempt | YES | 1 | | | |
| D – Creditors Holding Secured Claims | YES | 1 | | $   583,000.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | YES | 3 | | $   0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | YES | 2 | | $   144,558.00 | |
| G - Executory Contracts and Unexpired Leases | YES | 1 | | | |
| H - Codebtors | YES | 1 | | | |
| I - Current Income of Individual Debtor(s) | YES | 1 | | | $   9,260.00 |
| J - Current Expenditures of Individual Debtors(s) | YES | 1 | | | $   8,360.00 |
| **TOTAL** | | 15 | $   807,893.00 | $   727,558.00 | |

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

**B6D (Official Form 6D) (12/07)**

In re  Zafar David Khan                          ,          Case No. 2:13-bk-19713-VZ
_____                  _____
        Debtor                                                      (If known)

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 0238088652<br><br>Suntrust Mortgage Inc.<br>PO Box 26149<br>Richmond, VA 23260<br><br>VALUE $ 751,000.00 | | | | | | | 583,000.00 | 0.00 |
| ACCOUNT NO.<br><br><br>VALUE $ | | | | | | | | |
| ACCOUNT NO.<br><br><br>VALUE $ | | | | | | | | |

  0   continuation sheets attached

Subtotal ➤ $ 583,000.00 | $ 0.00
(Total of this page)

Total ➤ $ 583,000.00 | $ 0.00
(Use only on last page)

(Report also on Summary of Schedules) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

B6E (Official Form 6E) (04/13)

In re  Zafar David Khan
_____,                     Case No.  2:13-bk-19713-VZ
              Debtor                                                              (if known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112 and Fed.R.Bankr.P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H,""W,""J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic Support Obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $12,475* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

*Amount subject to adjustment on 4/01/16 and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

B6E (Official Form 6E) (04/13) - Cont.

In re   Zafar David Khan                                      ,          Case No.   2:13-bk-19713-VZ
_____                              _____
              Debtor                                                              (if known)

☐   **Certain farmers and fishermen**

    Claims of certain farmers and fishermen, up to $6,150* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐   **Deposits by individuals**

    Claims of individuals up to $2,775* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided.  11 U.S.C. § 507(a)(7).

☑   **Taxes and Certain Other Debts Owed to Governmental Units**

    Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐   **Commitments to Maintain the Capital of an Insured Depository Institution**

    Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution.  11 U.S.C. § 507 (a)(9).

☐   **Claims for Death or Personal Injury While Debtor Was Intoxicated**

    Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

    * Amounts are subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

_1_   **continuation sheets attached**

B6E (Official Form 6E) (04/13) - Cont.

In re Zafar David Khan_____,                          Case No 2:13-bk-19713-VZ
              **Debtor**                                                      **(If known)**

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)   Sec. 507(a)(8)

**Type of Priority for Claims Listed on This Sheet**

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See instructions above..)* | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 029586018 <br><br> Internal Revenue Service <br> P.O. Box 7346 <br> Philadelphia, PA 19101-7346 | | | Incurred: 2013 <br> Consideration: Taxes | X | | | Notice Only | Notice Only | Notice Only |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |

Sheet no. 1 of 1 continuation sheets attached to Schedule of Creditors Holding Priority Claims

|  |  | Subtotal (Totals of this page) | $ 0.00 | $ 0.00 | $ 0.00 |
|---|---|---|---|---|---|
|  |  | Total <br> (Use only on last page of the completed Schedule E.) Report also on the Summary of Schedules) | $ 0.00 | | |
|  |  | Totals <br> (Use only on last page of the completed Schedule E. If applicable, report also on the Statistical Summary of Certain Liabilities and Related Data.) | $ | $ 0.00 | $ 0.00 |

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1.-789 - 32711-301X-***** - Acrobat PDFWriter

B6F (Official Form 6F) (12/07)

In re  Zafar David Khan                          ,          Case No.   2:13-bk-19713-VZ
_____
Debtor                                                                          (If known)

# SCHEDULE F- CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 5466388417925224 Barclays US Air Card Services PO Box 13337 Philadelphia, PA 19101 | | | | | | | 42,656.00 |
| ACCOUNT NO. 4388576026054630 Chase United Mileage Plus Card Services PO Box 94014 Palatine, IL 60094 | | | Consideration: Credit Cards | | | | 1,075.00 |
| ACCOUNT NO. 5082290049438408 Citibank Aadvantage Processing Center Des Moines, IA 50363 | | | | | | | 827.00 |
| ACCOUNT NO. CMRE Financial Svcs In 3075 E Imperial Hwy, Ste 200 Brea, CA 92821 | | | | | | | Notice Only |

_1_  continuation sheets attached

Subtotal ▶ $ 44,558.00

Total ▶ $

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

B6F (Official Form 6F) (12/07) - Cont.

In re   Zafar David Khan                                      ,        Case No.    2:13-bk-19713-VZ
                    **Debtor**                                                              (If known)

# SCHEDULE F- CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT ORCOMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. | | | | | | | |
| Henry Ben-Zvi<br>Ben-Zvi & Associates<br>3231 Ocean Park Boulevard, Suite 212<br>Santa Monica, California 90405 | | | | | | | Notice Only |
| ACCOUNT NO.   YC061581 | | | Incurred: Pending<br>Consideration: LASC Complaint<br>$100,000 liquidated as of petition date.<br>Remainer unliquidated; pending LASC proceedings. | | | | |
| Kenneth Barton<br>c/o Patrick C. McGarrigle Esq.<br>McGarricle, Kenney & Zampiello APC<br>9600 Topanga Canyon Blvd., Suite 200 | X | | | X | X | X | 100,000.00 |
| ACCOUNT NO.  Chatsworth, CA 91311 | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |

Sheet no. _1_ of _1_ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal ▶  $      100,000.00

Total ▶  $      144,558.00

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 33711-301X-*****- Acrobat PDFWriter

B7 (Official Form 7) (04/13)

# UNITED STATES BANKRUPTCY COURT
### Central District of California

In Re  Zafar David Khan

Case No. 2:13-bk-19713-VZ
(if known)

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. If the answer to an applicable question is "None," mark the box labeled "None." If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

"In business." A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

"Insider." The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

### 1. Income from employment or operation of business

None ☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

|  | AMOUNT | SOURCE |
|---|---|---|
| 2013(db) | 33000.00 | Rpost Us Inc. |
| 2012(db) | 132000.00 | Rpost Us Inc. |
| 2011(db) | 132000.00 | Rpost Us Inc. |
| | | |
| 2013(nfs) | 4000 | Zansu Inc. |
| 2012(nfs) | 10000 | Zansu Inc. |
| 2011(nfs) | 0 | |

B7 (Official Form 7) (04/13)                                                                                                 2

---

**2.   Income other than from employment or operation of business**

None
☐
      State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case. Give particulars.  If a joint petition is filed, state income for each spouse separately.  (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | | SOURCE |
|---|---|---|
| 2013  (db) | 0.00 | |
| 2012(db) | 0.00 | |
| 2013(nfs) | 0.00 | |
| 2012(nfs) | 0.00 | |

---

**3. Payments to creditors**

None
☐
    *Complete a. or b., as appropriate, and c.*

    *a. Individual or joint debtor(s) with primarily consumer debts:*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within 90 days immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as  part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| American Express | December, Jan, Feb | 6000 | |
| Bank Of America , CA | April 1 | 14716 | |

B7 (Official Form 7) (04/13)                                                                                                3

| None | b. *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within 90 days immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $6,225*.  If the debtor is an individual, indicate with an asterisk (*)any payments that were made to a creditor on account of a domestic support obligation or as part of an alternativerepayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |
|------|---|

*Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after date of adjustment.*

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| American Express Box 0001 Los Angeles, CA 90096 | 12/12, 1/13, 1/14 | 6000 | |
| Bank of America PO Box 982235 El Paso, TX 79998 | 4/1 | 14716 | |

| None ⊠ | c. *All debtors:* List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |
|------|---|

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4.  Suits and administrative proceedings, executions, garnishments and attachments**

| None | a.    List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |
|------|---|

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Case No. YC051312 And YC065259 | Civil Business Torts | Torrance, Los Angeles Superior Court | Pending |

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

B7 (Official Form 7) (04/13)                                                                                      4

None ☒   b.      Describe all property that has been attached, garnished or seized under any legal or equitable process within one year immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

### 5.   Repossessions, foreclosures and returns

None ☒         List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within one year immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

### 6.   Assignments and Receiverships

None ☒   a.      Describe any assignment of property for the benefit of creditors made within 120 days immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ☒   b.      List all property which has been in the hands of a custodian, receiver, or court-appointed official within one year immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

B7 (Official Form 7) (04/13)                                                                                              5

---

**7.  Gifts**

None     List all gifts or charitable contributions made within one year immediately preceding the commencement of
☒        this case, except ordinary and usual gifts to family members aggregating less than $200 in value per individual
         family member and charitable contributions aggregating less than $100 per recipient.   (Married debtors filing
         under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a
         joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND | RELATIONSHIP | DATE OF | DESCRIPTION AND |
| ADDRESS OF | TO DEBTOR, IF ANY | GIFT | VALUE OF GIFT |
| PERSON OR ORGANIZATION | | | |

---

**8.  Losses**

None     List all losses from fire, theft, other casualty or gambling within one year immediately preceding the
☒        commencement of this case or since the commencement of this case.   (Married debtors filing under chapter 12
         or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the
         spouses are separated and a joint petition is not filed.)

| DESCRIPTION | DESCRIPTION OF CIRCUMSTANCES, AND, IF LOSS | DATE OF |
| AND VALUE | WAS COVERED IN WHOLE OR IN PART BY | LOSS |
| OF PROPERTY | INSURANCE, GIVE PARTICULARS | |

---

**9.  Payments related to debt counseling or bankruptcy**

None     List all payments made or property transferred by or on behalf of the debtor to any persons, including
☐        attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a
         petition in bankruptcy within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS | DATE OF PAYMENT, | AMOUNT OF MONEY OR |
| OF PAYEE | NAME OF PAYOR IF | DESCRIPTION AND |
| | OTHER THAN DEBTOR | VALUE OF PROPERTY |
| Lewis R. Landau | 4/14/2013 | $9,281 |
| Horgan, Rosen, Beckham & | | |
| Coren, LLP | | |
| 23975 Park Sorrento, Suite 200 | | |
| Calabasas, CA 91302 | | |

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

B7 (Official Form 7) (04/13)                                                                                     6

---

**10.   Other transfers**

None
☒
a.   List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

---

b.   List all property transferred by the debtor within ten years immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

None
☒

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

---

**11.   Closed financial accounts**

None
☒
List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

---

**12.   Safe deposit boxes**

None
☒
List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

B7 (Official Form 7) (04/13)                                                                                 7

---

**13. Setoffs**

None
☒
     List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 days preceding the commencement of this case.    (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
| --- | --- | --- |

---

**14. Property held for another person**

None
☒
     List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
| --- | --- | --- |

---

**15. Prior address of debtor**

None
☒
     If the debtor has moved within the three years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
| --- | --- | --- |

---

**16. Spouses and Former Spouses**

None
☐
     If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within eight years immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

Suzanne Khan

---

**17. Environmental Sites**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

    "Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

    "Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None
☒
    a.    List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
| --- | --- | --- | --- |

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

B7 (Official Form 7) (04/13)                                                                                                    8

b.      List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

None ☒

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

c.      List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

None ☒

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

**18. Nature, location and name of business**

None ☐

a.      If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the six years immediately preceding the commencement of this case.

If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| Rpost International Limited | | Pitts Bay Road Pembroke, Bermuda, | Tech | Ongoing |

b.      Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

None ☒

| NAME | ADDRESS |
|---|---|

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

B7 (Official Form 7) (04/13)                                                                                    9

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within the six years immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or otherwise self-employed.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within the six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

**19. Books, record and financial statements**

None  a.   List all bookkeepers and accountants who within the two years immediately preceding the filing of this
☐       bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

NAME AND ADDRESS                              DATES SERVICES RENDERED

Glazer Group                                  Last 2 years.
13747 Montfort Ste 350
Dallas, TX 75240

None  b.   List all firms or individuals who within the two years immediately preceding the filing of this bankruptcy
☒       case have audited the books of account and records, or prepared a financial statement of the debtor.

NAME                      ADDRESS              DATES SERVICES RENDERED

None  c.   List all firms or individuals who at the time of the commencement of this case were in possession of the
☐       books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                      ADDRESS

See 19.

None  d.   List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom
☒       a financial statement was issued within the two years immediately preceding the commencement of this case by
        the debtor.

NAME AND ADDRESS                              DATE
                                             ISSUED

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

B7 (Official Form 7) (04/13)                                                                                          10

---

**20. Inventories**

None   a.    List the dates of the last two inventories taken of your property, the name of the person who supervised the
☒           taking of each inventory, and the dollar amount and basis of each inventory.

DATE OF INVENTORY             INVENTORY SUPERVISOR          DOLLAR AMOUNT OF INVENTORY
                                                                (Specify cost, market or other basis)

---

None   b.    List the name and address of the person having possession of the records of each of the two inventories
☒           reported in a., above.

DATE OF INVENTORY                              NAME AND ADDRESSES OF CUSTODIAN OF
                                                          INVENTORY RECORDS

---

**21. Current Partners, Officers, Directors and Shareholders**

None   a.    If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.
☒

NAME AND ADDRESS          NATURE OF INTEREST               PERCENTAGE OF INTEREST

---

None   b.    If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who
☒           directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

NAME AND ADDRESS                    TITLE                  NATURE AND PERCENTAGE OF
                                                                  STOCK OWNERSHIP

---

**22. Former partners, officers, directors and shareholders**

None   a.    If the debtor is a partnership, list each member who withdrew from the partnership within one year
☒           immediately preceding the commencement of this case.

NAME                          ADDRESS                  DATE OF WITHDRAWAL

---

None   b.    If the debtor is a corporation, list all officers, or directors whose relationship with the corporation
☒           terminated within one year immediately preceding the commencement of this case.

NAME AND ADDRESS                    TITLE                  DATE OF TERMINATION

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

B7 (Official Form 7) (04/13)                                                                      11

---

**23.  Withdrawals from a partnership or distribution by a corporation**

None
☒       If the debtor is a partnership or a corporation, list all withdrawals or distributions credited or given to an
        insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other
        perquisite during one year immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

**24.  Tax Consolidation Group**

None
☒       If the debtor is a corporation, list the name and federal taxpayer identification number of the parent
        corporation of any consolidated group for tax purposes of which the debtor has been a member at any time
        within the six-year period immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
|---|---|

---

**25.  Pension Funds**

None
☒       If the debtor is not an individual, list the name and federal taxpayer identification number of any pension
        fund to which the debtor, as an employer, has been responsible for contributing at any time within the six-year
        period immediately preceding the commencement of the case.

| NAME OF PENSION FUND | TAXPAYER IDENTIFICATION NUMBER (EIN) |
|---|---|

*    *    *    *    *    *

*[If completed by an individual or individual and spouse]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any
attachments thereto and that they are true and correct.

Date   4/29/2013                          Signature       /s/ Zafar David Khan
                                          of Debtor
                                                          ZAFAR DAVID KHAN

Bankruptcy2013 ©1991-2013, New Hope Software, Inc., ver. 4.7.1-789 - 32711-301X-***** - Acrobat PDFWriter

B7 (Official Form 7) (04/13)                                                                                         12

_____0___ continuation sheets attached

*Penalty for making a false statement:  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §152 and 3571*

---

**DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and required under 11U.S.C. §§ 110(b), 110(h), and 342(b); (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110 setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section.

_____           _____
Printed or Typed Name and Title, if any, of Bankruptcy Petition Preparer          Social Security No. (Required by 11 U.S.C. § 110(c).)

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social security number of the officer, principal, responsible person, or partner who signs this document.*

_____

_____

Address

X_____           _____
Signature of Bankruptcy Petition Preparer                                               Date

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 18 U.S.C. §156.*

# EXHIBIT C

# Central District Of California
## Claims Register

### 2:13-bk-19713-VZ Zafar David Khan

**Judge:** Vincent P. Zurzolo     **Chapter:** 13

**Office:** Los Angeles     **Last Date to file claims:** 08/26/2013

**Trustee:** Nancy K Curry (TR)     **Last Date to file (Govt):** 10/11/2013

| Creditor:          (33710498)<br>Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | Claim No: 1<br>Original Filed<br>Date: 05/29/2013<br>Original Entered<br>Date: 05/29/2013<br>Last Amendment<br>Filed: 07/22/2013<br>Last Amendment<br>Entered: 07/22/2013 | Status:<br>Filed by: CR<br>Entered by: Carolyn L Brown<br>Modified: |
|---|---|---|

| Amount | claimed: | $79084.00 | |
|---|---|---|---|
| Secured | claimed: | $0.00 | |
| Priority | claimed: | $0.00 | |

**History:**

| Details | | 1-1 | 05/29/2013 | Claim #1 filed by Internal Revenue Service, Amount claimed: $59178.20 (Brown, Carolyn ) |
|---|---|---|---|---|
| Details | | 1-2 | 07/12/2013 | Amended Claim #1 filed by Internal Revenue Service, Amount claimed: $78878.34 (Brown, Carolyn ) |
| Details | | 1-3 | 07/22/2013 | Amended Claim #1 filed by Internal Revenue Service, Amount claimed: $79084.00 (Brown, Carolyn ) |

**Description:**

**Remarks:**

| Creditor:          (34257865)<br>SUNTRUST MORTGAGE, INC.<br>BANKRUPTCY DEPARTMENT RVW 3034<br>PO BOX 27767<br>RICHMOND VA 23261 | Claim No: 2<br>Original Filed<br>Date: 08/13/2013<br>Original Entered<br>Date: 08/13/2013 | Status:<br>Filed by: CR<br>Entered by: Tracie M Gregory<br>Modified: |
|---|---|---|

| Amount | claimed: | $568032.48 | |
|---|---|---|---|
| Secured | claimed: | $568032.48 | |

**History:**

| Details | | 2-1 | 08/13/2013 | Claim #2 filed by SUNTRUST MORTGAGE, INC., Amount claimed: $568032.48 (Gregory, Tracie ) |
|---|---|---|---|---|

**Description:** (2-1) KHAN.POC.8652

**Remarks:** (2-1) ARREARAGE $611.70

| Creditor:        (34291393)<br>Cerastes, Llc<br>C O Weinstein And Riley, Ps<br>2001 Western Avenue, Ste 400<br>Seattle, Wa 98121 | Claim No: 3<br>Original Filed<br>Date: 08/21/2013<br>Original Entered<br>Date: 08/21/2013 | Status:<br>Filed by: CR<br>Entered by: Josh Harrison<br>Modified: |
|---|---|---|

| Amount | claimed: | $41063.96 | | ||| |
|---|---|---|---|---|

| History: | | | |
|---|---|---|---|
| Details | 3-1 | 08/21/2013 | Claim #3 filed by Cerastes, Llc, Amount claimed: $41063.96 (Harrison, Josh ) |

| Description: |
|---|
| Remarks: |

---

| Creditor:        (34294906)<br>Portfolio Recovery Associates, LLC<br>c/o Chase Bank Usa, N.a.<br>POB 41067<br>Norfolk VA 23541 | Claim No: 4<br>Original Filed<br>Date: 08/22/2013<br>Original Entered<br>Date: 08/22/2013 | Status:<br>Filed by: CR<br>Entered by: Christina Jewell<br>Modified: |
|---|---|---|

| Amount | claimed: | $1075.95 | | ||| |
|---|---|---|---|---|

| History: | | | |
|---|---|---|---|
| Details | 4-1 | 08/22/2013 | Claim #4 filed by Portfolio Recovery Associates, LLC, Amount claimed: $1075.95 (Jewell, Christina ) |

| Description: |
|---|
| Remarks: |

---

| Creditor:        (33710499)<br>Kenneth Barton<br>c/o Patrick C. McGarrigle Esq.<br>McGarricle, Kenney & Zampiello APC<br>9600 Topanga Canyon Blvd., Suite 200<br>Ch | Claim No: 5<br>Original Filed<br>Date: 08/23/2013<br>Original Entered<br>Date: 08/23/2013 | Status:<br>Filed by: CR<br>Entered by: Philip A Zampiello<br>Modified: |
|---|---|---|

| Amount | claimed: | $7500000.00 | | ||| |
|---|---|---|---|---|

| History: | | | |
|---|---|---|---|
| Details | 5-1 | 08/23/2013 | Claim #5 filed by Kenneth Barton, Amount claimed: $7500000.00 (Zampiello, Philip ) |

| Description: |
|---|
| Remarks: |

---

| Creditor:        (34303636)<br>126736 Canada Inc., a Canadian<br>corporation<br>c/o Scott E. Shapiro, Esq.<br>APPELL SHAPIRO, LLP<br>15233 Ventura Blvd, Suite 420<br>Sherman Oaks, CA 91403 | Claim No: 6<br>Original Filed<br>Date: 08/23/2013<br>Original Entered<br>Date: 08/23/2013 | Status:<br>Filed by: CR<br>Entered by: Scott E Shapiro, Esq<br>Modified: |
|---|---|---|

Case 2:10-cv-00258-JRG   Document 553   Filed 10/16/13   Page 93 of 139 PageID #: 13466

9/23/13   Case 2:13-bk-19713-WB   Doc 46/ECF U.S. Bankruptcy Court (Central Filed 09/23/13   Entered 09/23/13 15:53:24   Desc
Main Document   Page 39 of 40

| Amount | claimed: | $20000000.00 | |||

| History: |
|---|
| Details | 6-1 | 08/23/2013 | Claim #6 filed by 126736 Canada Inc., a Canadian corporation, Amount claimed: $20000000.00 (Shapiro, Scott ) |
| Description: (6-1) Shareholder Derivative Claim |
| Remarks: |

| Creditor:        (34303665)<br>George Martin<br>c/o Scott E. Shapiro, Esq.<br>APPELL SHAPIRO, LLP<br>15233 Ventura Blvd, Suite 420<br>Sherman Oaks, CA 91403 | Claim No: 7<br>Original Filed<br>Date: 08/23/2013<br>Original Entered<br>Date: 08/23/2013 | Status:<br>Filed by: CR<br>Entered by: Scott E Shapiro, Esq<br>Modified: |
|---|---|---|

| Amount | claimed: | $20000000.00 | |||

| History: |
|---|
| Details | 7-1 | 08/23/2013 | Claim #7 filed by George Martin, Amount claimed: $20000000.00 (Shapiro, Scott ) |
| Description: (7-1) Shareholder Derivative Claim |
| Remarks: |

| Creditor:        (34303845)<br>Thomas Burke<br>c/o Scott E. Shapiro, Esq.<br>APPELL SHAPIRO, LLP<br>15233 Ventura Blvd, Suite 420<br>Sherman Oaks, CA 91403 | Claim No: 8<br>Original Filed<br>Date: 08/23/2013<br>Original Entered<br>Date: 08/23/2013 | Status:<br>Filed by: CR<br>Entered by: Scott E Shapiro, Esq<br>Modified: |
|---|---|---|

| Amount | claimed: | $20000000.00 | |||

| History: |
|---|
| Details | 8-1 | 08/23/2013 | Claim #8 filed by Thomas Burke, Amount claimed: $20000000.00 (Shapiro, Scott ) |
| Description: (8-1) Shareholder Derivative Claim |
| Remarks: |

# Claims Register Summary

**Case Name:** Zafar David Khan
**Case Number:** 2:13-bk-19713-VZ
**Chapter:** 13
**Date Filed:** 04/14/2013
**Total Number Of Claims:** 8

| Total Amount Claimed* | $68189256.39 |
|---|---|
| Total Amount Allowed* | |

Case 2:10-cv-00258-JRG   Document 553   Filed 10/16/13   Page 94 of 139 PageID #:  13467

9/23/13      Case 2:13-bk-19713-WB     Doc 40  CM/ECF - U.S. Bankruptcy Court (Entered 09/23/13 15:53:24   Desc
                                       Main Document      Page 40 of 40

Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

|  | Claimed | Allowed |
|---|---|---|
| Secured | $568032.48 | |
| Priority | $0.00 | |
| Administrative | | |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/23/2013 11:18:32 | | | |
| **PACER Login:** | nc0048 | **Client Code:** | |
| **Description:** | Claims Register | **Search Criteria:** | 2:13-bk-19713-VZ Creditor Type: cr,adm,20,lmt,ntcapr Filed or Entered From: 9/3/2000 Filed or Entered To: 12/31/2013 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# EXHIBIT C

## Patrick McGarrigle

| | |
|---|---|
| **From:** | Patrick McGarrigle |
| **Sent:** | Thursday, September 12, 2013 8:29 AM |
| **To:** | 'lewis@colvinhudnell.com' |
| **Cc:** | Michael Kenney (MichaelK@mkzlaw.com) |
| **Subject:** | Barton v. RPost, et al. (Our File No. 8681-006) |
| **Attachments:** | 8-19-11 Letter Huff-Hudnell.pdf |

| | |
|---|---|
| **Importance:** | High |

Dear Mr. Hudnell:

Thank you for your email, though your deadline for an immediate telephone call could not reasonably be accommodated.  As indicated below, I would be pleased to speak with you following our receipt of your substantive response and the requested information/documentation and an opportunity to review same.  Moreover, there are related subjects that you are probably already aware of (and/or should be) and we bring them to your attention further below.

*First*, your email is unclear on myriad fronts and requires clarification and documentary support before a further response can be provided.   For example:

1) What "RPost Plaintiffs" object to the notice of lien?  You use the word "RPost" (which underscores our view that the "RPost" companies are one enterprise artificially divided in name only to facilitate the fraudulent conduct of your clients' principals, Messrs. Khan and Tomkow, et al.), but you do not identify which RPost you are referring to.  Please explain and specify.

2) Are you representing (and can and will promptly document to us via disclosures this week) that RPost International Limited is not an interested party in any of the consolidated cases listed on the Notice of Lien (notwithstanding that the dockets indicate otherwise)? Your email refers to "this case," but, as you are aware, the cases are consolidated and include a number of cases.

3) If RPost International Limited is not a plaintiff/counter-claimant or is purportedly no longer a plaintiff/counter-claimant, please explain and state clearly what its current status is in the consolidated cases and when, if at all, its status changed from the original commencement of the actions listed.

*Second*, there is no "CD CAL" (presumably you mean US Federal Court, Central District) court that has issued any ruling that Barton has no right to seek recovery of his judgment sums from RMail or RComm.  Where did you get that understanding from – please explain.  While RMail and RComm have not yet been added as parties to Barton's $4M judgment against Khan, Tomkow and RIL, Barton's rights to cause RMail and RComm to be obligated to so answer for RIL's debts have not been foreclosed at all.  In fact, as you already know (and have known for at least 2 years given our prior correspondence to your firm – a copy of which is attached), as a creditor, Barton has a pending UFTA (Fraudulent Transfer) lawsuit pending against RMail, RComm and RIL in California which, among other things, challenges the dubious circumstances and transactions regarding ownership of the 219/334 patents and overall the "transactions" between RIL and RMail and RComm and the propriety of the wholesale asset transfers by RIL orchestrated by the adjudged corporate frauds, Khan and Tomkow.   Perhaps the UFTA action is yet another proceeding that the RPost parties and their representatives have not disclosed to the Court in the Eastern District consolidated cases.  Did you notify the Eastern District Court of the pendency of the UFTA action and that Khan and Tomkow had already been adjudged to have

committed fraud when you requested, among other things, the Court's dismissal – based on a purported settlement – of the Amazon/PayPal and Zix lawsuits?

**Third,** as you undoubtedly have been aware, Messrs. Khan and Tomkow filed Chapter 13 petitions in the USBC, Central, but have concealed the IP litigation in Texas and the Amazon/PayPal and Zix settlements (entered into in March and April 2013, respectively) from the Bankruptcy Court and Trustee (and creditors) there.   The USBC is scheduled to hear motions to convert the Khan/Tomkow bankruptcies to Chapter 7 in October 2013.  If granted, as you also know, the Chapter 7 Trustee, and not Khan/Tomkow (putting aside the myriad reasons why they have no authority to act now and/or in the past and/or previously acted in violation of their fiduciary duties and governing bye-laws and with extraordinary conflicts of interest), will have the right and ability to take control of the IP lawsuits (assets) as part of the liquidation of Khan/Tomkow's holdings, etc.  In addition, you should also be aware, based on the adversary actions pending in the Khan/Tomkow bankruptcies, that Khan and Tomkow's authority to act on behalf of the RPost entities is and has been in, at the very least, in doubt if not prohibited (rendering their actions in the cases you are handling *ultra vires*) and there are myriad conflicts of interest stemming back several years that have been uncovered rendering their conduct in the IP litigations to be subject to potential unwinding.

Please provide me with the requested information and documentation above so that we may meaningfully respond to your email below.   Upon receipt and an opportunity to review, I will gladly conduct a meet and confer telephone call with you should you nevertheless be intent upon filing any motion under these circumstances.  We can set up a call for the next business day or two after you supply the requested information/documentation.

All of our client's rights and remedies are reserved.

Best regards,

**Patrick C. McGarrigle, Esq.**
McGarrigle, Kenney & Zampiello, APC
9600 Topanga Canyon Boulevard, Suite 200
Chatsworth, California 91311
818-998-3300 T
818-998-3344 F
thefirm@mkzlaw.com

**From:** Lewis Hudnell [mailto:lewis@colvinhudnell.com]
**Sent:** Tuesday, September 10, 2013 12:24 PM
**To:** Patrick McGarrigle
**Cc:** Winston Huff; djagai; Casey Goolsby
**Subject:** Fwd: Activity in Case 2:10-cv-00258-JRG Rmail Limited v. Amazon.Com, Inc., et al Notice (Other)

Dear Counsel,

RPost objects Mr. Barton's Notice because (1) Mr. Barton is not a party to this case and (2) none of the parties subject to the lien are parties to this case. Further, it is our understanding that the CDCAL has already determined that Mr. Barton does not have a right to seek collection from any of the RPost entities in this case. Accordingly, on behalf of the RPost plaintiffs in this case, we request that Mr. Barton immediately withdraw his Notice. Otherwise, under CV-7(h), we request a telephonic meet and confer tomorrow as RPost intends to file a motion to strike Mr. Barton's Notice and seek other appropriate remedies. Please let us know when you are available. Many thanks.

Lewis E. Hudnell, III
d: 347.855.4772
f: 347.772.3034
m: 917.861.3494
e: lewis@colvinhudnell.com



www.colvinhudnell.com

This e-mail message is intended for the sole use of the intended recipient(s) and may contain information that is confidential, privileged and/or attorneys' work product. Any review or distribution by any other person is prohibited. If you are not an intended recipient, please immediately contact the sender and delete all copies.

## McGarrigle, Kenney & Zampiello, APC

9600 TOPANGA CANYON BLVD., SUITE 200
CHATSWORTH, CALIFORNIA 91311
TELEPHONE (818) 998-3300 FAX (818) 998-3344
E-MAIL: thefirm@mkzlaw.com

OUR FILE NUMBER:

8681-008

August 19, 2011

*VIA E-MAIL AND U.S. MAIL*

Winston O. Huff, Esq.
Navarro Huff, PLLC
302 N. Market Street, Suite 450
Dallas, Texas 75202

Lewis E. Hudnell, III, Esq.
Hudnell Law Group, P.C.
244 Fifth Avenue, Suite 240H
New York, New York 10001

Re:   **Kenneth Barton v. RPost International Limited; RMail Limited; RPost Communications. Ltd., et al.**
LASC Case No.: YC 065259

Dear Counsel:

This Firm is counsel to Ken Barton.

As we understand that you represent RMail Limited ("**RMail**") in at least three patent infringement lawsuits and possibly several others (in which your firm appears to also represent RMail) and RPost Communications Limited, the putative assignee/ successor-in-interest of RPost International Limited ("**RPost**")), we are writing to notify you concerning pending litigation relative to said patent(s). Please be advised that Mr. Barton has initiated a Fraudulent Conveyance lawsuit in the Los Angeles Superior Court, a copy of which is attached hereto, regarding RPost's fraudulent transfer of assets (including, without limitation, patents/patent rights (and claims based thereupon)) to Mr. Khan and Mr. Tomkow's insider - corporation, RMail. Mr. Khan and Mr. Tomkow, principals of both RMail and RPost, were served with the Summons and Complaint in the Fraudulent Conveyance action more than a week ago.

Please be advised that the patents/patent rights and the proceeds of the actions which you are prosecuting are the subject of the Fraudulent Conveyance lawsuit's claims. We will be proceeding in California to obtain provisional relief regarding the patent/patent rights and the subject lawsuits which you are prosecuting in the Eastern

Winston O. Huff, Esq.
Navarro Huff, PLLC

Lewis E. Hudnell, III, Esq.
Hudnell Law Group, P.C.

August 19, 2011
Page 2

District of Texas, etc. and the proceeds therefrom.  Any distribution of proceeds and/or the assignment of patents/patent rights and claims to other persons and/or entities may well result in that person(s)/entities being added to this pending California litigation.  The non-disclosure of the Fraudulent Conveyance proceeding to any such distributee of proceeds or assignee of the patents/patent rights and/or claims or rights thereunder may well exacerbate RPost, RMail and its responsible parties' liabilities.

　　　　Should you wish to discuss this matter, please do not hesitate to contact me.  All of our client's rights and remedies are reserved.

Very truly yours,

Patrick C. McGarrigle, Esq.
MCGARRIGLE, KENNEY & ZAMPIELLO, APC
Enclosures
8681-008\ltr\Huff-Hudnell.001
cc: John Ratcliffe, Esq. – The Ashcroft Law Firm (Via Email – W/encl.)

07/28/11          TIME MACHINE NETWORK          FAX          8 of 18

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 2 8 2011

John A. Clarke, Executive Officer/Clerk

By T. Rhodes, Deputy

1   PATRICK C. McGARRIGLE, ESQ., SBN 149008
2   MICHAEL J. KENNEY, ESQ., SBN 192775
    McGARRIGLE, KENNEY & ZAMPIELLO APC
3   9600 Topanga Canyon Boulevard, Suite 200
    Chatsworth, California 91311
4   PH: (818) 998-3300  FAX: (818) 998-3344

5   Attorneys for Plaintiff
    Kenneth Barton

CASE ASSIGNED FOR
ALL PURPOSES TO

6   Judge_____William G. Willett_____

7   Dept._____11_____ Div._____

**BY FAX**

8                SUPERIOR COURT OF STATE OF CALIFORNIA

9          FOR THE COUNTY OF LOS ANGELES - SOUTHWEST DISTRICT

10

11  KENNETH BARTON,                    CASE NO.: **YC065259**

12              Plaintiff,

13         v.                          COMPLAINT FOR:

14                                     (1)  ACTION TO SET
15  RPOST INTERNATIONAL                     ASIDE/RECOVER FOR AN
    LIMITED; RMAIL LIMITED;                 ACTUALLY FRAUDULENT
16  RPOST COMMUNICATIONS, LTD.;             TRANSFER (ACTUAL
    and DOES 1 through 50, inclusive,       FRAUDULENT TRANSFER
17                                          (Civil Code Section 3439.04(a)(1))
                                            AND RELATED RELIEF
18              Defendants.
                                       (2)  ACTION TO SET
19                                          ASIDE/RECOVER FOR A
                                            CONSTRUCTIVELY
20                                          FRAUDULENT
                                            (CONSTRUCTIVELY
21                                          FRAUDULENT TRANSFER)
                                            (Civil Code Section
22                                          3439.04(a)(2)(A) and/or (B)
                                            3439.05) AND RELATED
                                            RELIEF
23

24

25      Plaintiff Kenneth Barton alleges as follows:

26      1.      Plaintiff Kenneth Barton ("Plaintiff" or "Barton") is, and at all times

27  relevant herein was, an individual over the age of eighteen and is a resident of Los

28  Angeles County, California.

                                    1
                              COMPLAINT

8581-008/pldg/Complaint-UFTA.001

2.      Plaintiff is informed and believes, and on that basis alleges, that Defendant RPost International Limited ("RPost") is, and at all times relevant herein was, a Bermuda Corporation conducting business (and with its principal place of business) in Los Angeles, County of Los Angeles, State of California, with its directors and the majority of all officers residents of the State of California.

3.      Plaintiff is informed and believes, and on that basis alleges, that Defendant RMail Limited ("RMail") is, and at all times relevant herein was, a Bermuda Corporation, conducting business (and with its principal place of business) in Los Angeles, County of Los Angeles, State of California, and with the majority of its officers and directors residents of the State of California, County of Los Angeles. Plaintiff is informed and believes, and on that basis alleges, that Zafar Khan ("Khan") and Terrance Tomkow ("Tomkow"), in addition to being the two largest common shareholders of RPost and officers and directors of RPost, are also the largest (if not the sole) shareholders of RMail and are both officers and directors of RMail. RMail is an initial transferee of certain RPost assets as more fully described below.

4.      Plaintiff is informed and believes, and on that basis alleges, that Defendant RPost Communications Ltd. ("RComm") is, and at all times relevant herein was, a Bermuda Corporation, conducting business (and with its principal place of business) in Los Angeles, County of Los Angeles, State of California, and with the majority of its officers and directors both residents of the State of California, County of Los Angeles. Plaintiff is informed and believes, and on that basis alleges, that Zafar Khan and Terrance Tomkow, in addition to being the two largest common shareholders of RPost and are both officers and directors of RPost, as also the largest common shareholders of RComm and are both officers and directors of RComm. RComm is an initial transferee of certain RPost assets as more fully described below.

5.      Plaintiff is ignorant of the true names and capacities of Defendant RPost sued hereunder as Does 1 through 50, inclusive (the "Doe Defendants"), and, therefore, Plaintiff hereby names each of them by said fictitious names. Plaintiff will seek leave to

2<br>COMPLAINT

1  amend this complaint to allege the Doe Defendants' true names and capacities when they

2  are ascertained.  Plaintiff is informed and believe, and on that basis alleges, that each

3  Doe Defendant is responsible in some manner for the acts and liabilities alleged herein

4  and that the damages sustained by Plaintiff were and continue to be the direct, proximate

5  and foreseeable cause of the acts and/or omissions of the Doe Defendants, and each of

6  them.

7       6.    At all relevant times herein, Plaintiff was, and is, a creditor of Defendant

8  RPost (as defined by Civil Code Section 3439.01(c)) as Plaintiff had, and continues to

9  have, a claim (as defined by Civil Code Section 3439.01(b)) against Defendant RPost (as

10  defined by Civil Code Section 3439.01(e)).

11

12                   ***FIRST CAUSE OF ACTION***

13        *(Actual Fraudulent Transfer, Against Defendants RPost, RMail and RComm*

14                 *and DOES 1 through 50, Inclusive)*

15       7.    Plaintiff Barton refers to, realleges and incorporates by reference the

16  allegations of Paragraphs 1 through 6 of this Complaint as though fully set forth herein.

17       8.    At all relevant times from approximately 2001 through 2011, RPost was

18  engaged in the business of, among other things, filing for and/or acquiring patents

19  directly related to RPost's registered email products and services.  RPost has heretofore

20  filed and/or acquired at least seven (7) patents in the United States (and additional

21  patents, based on RPost's public pronouncements, worldwide) inherent to its business

22  products and services.  RPost solicited and obtained millions of dollars in investor funds

23  during said time period for the purposes of, among other things, filing for and/or

24  acquiring ownership of patents inherent to and affecting RPost business products and

25  services and future applications.  In approximately July 2009, RPost (1) first disclosed

26  that RPost and its directors had unwound the transactions whereby Barton had acquired

27  6,016,500 common shares in RPost ("Barton's Shares") and had returned Barton's

28  Shares to RPost's Treasury; and (2) knew that Barton had a claim for, among other

3

**COMPLAINT**

1    things, damages for conversion arising from said conduct by RPost and its officers and

2    directors, including, without limitation, Messrs. Khan and Tomkow and other directors

3    of RPost. On or about January 29, 2010, Barton filed his lawsuit regarding said claim

4    entitled *Kenneth Barton v. RPost International Limited, Symantec Corporation, et al.*,

5    LASC Case No. YC061581 ("Barton's Shares Lawsuit"), for damages arising out of

6    the fraud, breaches of fiduciary duty and conversion by the named defendants therein,

7    including RPost.

8        9.      Plaintiff is informed and believes, and on that basis alleges, that RPost,

9    acting without notice to and approval of all shareholders of RPost, transferred RPost's

10    assets including, without limitation, intellectual property acquisition rights and/or

11    corporate opportunities (including, without limitation, USPTO Patent Nos. 6,182,219

12    and 6,571,334) and at least $750,000.00 of RPost's cash to RMail (the "RPost-RMail

13    Asset Transfers"). RPost, through its officers and directors (including, without

14    limitation, Messrs. Khan and Tomkow), caused the $750,000 of RPost cash (at a time

15    when said sums represented approximately 95% of the entirety of RPost's total projected

16    revenue for 2009) to be transferred to RMail (an entity formed by RPost's insiders -

17    Khan and Tomkow) ostensibly to use RPost funds to acquire RPost intellectual property

18    assets for the benefit *of RMail and its insiders (including Khan and Tomkow)* and to pay

19    RMail $200,000 a phantom "license fee" for the privilege of having RMail purportedly

20    "license" back to RPost the very intellectual property assets (1) RPost represented to its

21    shareholders *it* is and was in the business of filing for and/or acquiring (and had

22    previously spent RPost resources defending against a patent infringement suit by Propat

23    regarding one of the above-referenced patents), and (2) acquired using all or some

24    portion of the $750,000 in RPost cash fraudulently transferred to RMail. Khan and

25    Tomkow used their positions at RPost to cause RPost (1) to transfer its $750,000 in cash

26    to Khan and Tomkow's new Bermuda entity, RMail, so that Khan and Tomkow could

27    own and control (through RMail) valuable intellectual property assets (which should

28    have been acquired in RPost's name using RPost's funds and which are precisely the

1  patents RPost (through Khan, Tomkow and others) had long represented to shareholders

2  and prospective investors were the very types of patents RPost had acquired and would

3  be acquiring) so as to purportedly insulate these assets from claims of Plaintiff (and other

4  RPost shareholders and creditors), and (2) to permit RMail, through Khan and Tomkow,

5  to take ownership of the valuable patents/intellectual property assets described above and

6  to exploit those assets and the proceeds therefrom for the aggrandizement of RMail and

7  the insiders, Khan and Tomkow, among others.  RMail is, in fact, exploiting the

8  transferred RPost assets in multiple lawsuits including, without limitation, *RMail Limited*

9  *v. Amazon.com, Inc., PayPal, Inc., et al.,* United States District Court, Eastern District -

10  Texas, Case No. 2:10-CV-258; *RPost International Limited, RPost Holdings, Inc., RMail*

11  *Limited v. Trustifi,* United States District Court, Central District - California, Case No.

12  CV-10-01416-PSG, *RMail Limited, et al. v. Docusign,* United States District Court,

13  Eastern District - Texas, Case No. 2:11-CV-00299, *RPost Holdings, Inc.; RPost*

14  *Communications Ltd., RMail Limited v. Adobe Systems Incorporated; Echosign, et al.,*

15  United States District Court, Eastern District - Texas, Case No. 2:11-CV-00325.  The

16  above patent lawsuits and all other patent lawsuits filed by Defendants are hereinafter

17  referred to as the "**RPost-RMail-RComm Patent Lawsuits.**"

18      10.    Plaintiff is informed and believes, and on that basis alleges, that RPost

19  transferred other RPost assets to RComm (the "**RPost-RComm Asset Transfers**") in or

20  about February-April 2011.  RPost, acting without notice to and approval of all

21  shareholders of RPost, transferred assets of RPost to RComm (another newly formed

22  Bermuda corporation (also formed at the behest (and under the control) of Messrs. Khan

23  and Tomkow, among others)).

24      11.    RPost, acting by and through Messrs. Khan and Tomkow, among others,

25  undertook and completed the RPost-RMail Asset Transfers with the actual intent to

26  hinder, delay, or defraud Plaintiff.

27  ///

28  ///

5
**COMPLAINT**

12. RPost, acting by and through Messrs. Khan and Tomkow, undertook and completed the RPost-RComm Asset Transfers with the actual intent to hinder, delay, or defraud Plaintiff.

13. RMail received the RPost-RMail Asset Transfers from RPost with actual knowledge of the fraudulent intent on RPost's part and with the intent to assist RPost in such fraudulent purposes as alleged hereinabove, given that, among other things, (1) RMail was formed by insiders of RPost (Khan and Tomkow), (2) Khan and Tomkow controlled and managed RPost and its assets and control and manage RMail, knew of the patents and the corporate opportunities for RPost described above, knew that the $750,000 in cash represented approximately 95% of RPost's revenue for 2009, and knew of Barton's claims and RPost's wrongful conduct regarding Barton's Shares as described above and among other duplicitous acts as referenced in the Barton Shares Lawsuit, (3) Khan and Tomkow engineered the formation of RMail and the secret transfer of RPost's assets to RMail, and (4) RPost, by and through Khan and Tomkow, among others, concealed the concept and implementation of the RPost-RMail Asset Transfers from RPost's shareholders and did not provide disclosure of all material facts regarding same to RPost's shareholders and did not seek or obtain their approval to the insider, patently conflicted and conflict of interest-ridden transfers (all of which conduct was known to RMail by virtue of the actual knowledge of Khan and Tomkow), and RMail, therefore, knew that the transfers were not approved by the RPost shareholders and were intended to benefit RMail's insiders to the detriment of RPost and RPost's creditors (such as Plaintiff) and in furtherance of the overall fraudulent purposes of said transfers on the part of RPost and RMail and its insiders.

14. RComm received the other RPost assets from RPost with actual knowledge of the fraudulent intent on RPost's part and with intent to assist RPost in such fraudulent purposes as alleged hereinabove, given that, among other things, (1) RComm was formed by insiders of RPost (Khan and Tomkow), (2) Khan and Tomkow controlled and managed RPost and its assets and control and manage RComm, knew of RPost's assets,

6
<strong>COMPLAINT</strong>

1   and knew of Barton's claims and RPost's wrongful conduct regarding Barton's Shares as

2   described above and among other duplicitous acts as referenced in the Barton Shares

3   Lawsuit, (3) Khan and Tomkow engineered the formation of RComm and the secret

4   transfer of certain of RPost's assets to RComm, (4) RPost, by and through Khan and

5   Tomkow, among others, concealed the concept and implementation of the RPost-

6   RComm Asset Transfers from many of RPost's shareholders and did not provide

7   disclosure of all material facts regarding same to RPost's shareholders and did not seek

8   or obtain their approval to the insider, patently conflicted and conflict of interest-ridden

9   transfers (all of which conduct was known to RComm by virtue of the actual knowledge

10   of Khan and Tomkow), and RComm, therefore, knew that the transfers were not

11   approved by the RPost shareholders and were intended to benefit RComm's insiders

12   (including Khan and Tomkow) to the detriment of RPost and RPost's creditors (such as

13   Plaintiff) and in furtherance of the overall fraudulent purposes of said transfers on the

14   part of RPost and RComm and its insiders.

15       15.     Further demonstrating the above transfers violate *Civil Code* §

16   3439.04(a)(1), (1) the RPost-RMail Asset Transfers and the RPost-RComm Asset

17   Transfers, respectively, were made to insider-controlled Bermuda corporations, RMail

18   and RComm; (2) RPost, through its near identical management with RMail and RComm,

19   retained possession of control of the assets transferred; (3) the RPost-RMail Asset

20   Transfers and the RPost-RComm Asset Transfers, and each of them, have been

21   concealed from RPost Shareholders; (4) RPost knew of the Barton claim before the

22   RPost-RMail Asset Transfers and the RPost-RComm Asset Transfers, respectively, were

23   made; (5) RPost concealed the asset transfers from RPost's shareholders; (6) RPost

24   failed to receive reasonably equivalent value in the RPost-RMail Asset Transfers and the

25   RPost-RComm Asset Transfers; and (7) if the representations of RPost's purported

26   auditor, Kabani & Company, Inc., were/are truthful and were representations made from

27   and based upon an audit conducted under generally accepted auditing principles,

28   standards and methodologies with appropriate verification of facts and document review

1  and retention undertaken by the auditor, RPost was allegedly insolvent at the time of, or

2  became insolvent shortly after, the RPost-RMail Asset Transfers and RPost-RComm

3  Asset Transfers were made.

4      16.    As a direct, proximate, and foreseeable result of the actually fraudulent

5  RPost-RMail Asset Transfers and the RPost-RComm Asset Transfers, and each of them,

6  and the conduct of the Defendants, Plaintiff has suffered general and special damages,

7  including, but not limited to, damages from the loss of said property and/or from its use

8  by said Defendants, in a sum of at least $30,000,000.00, according to proof, which

9  damages the Defendants should be adjudged to pay.

10      17.    In addition to the afore-referenced damages, the Defendants, and each of

11  them, are obligated to pay pre-judgment interest on the above referenced sums at the

12  legal rate from the date of the wrongful acts of said Defendants through the date of entry

13  of judgment.

14      18.    The conduct of RPost and RMail, and each of them, by and through and

15  ratified by Khan and Tomkow, as officers - directors of each entity and who were

16  authorized to act and make corporate decisions for RPost and RMail) was and is

17  malicious, oppressive and fraudulent. Barton requests that punitive and exemplary

18  damages be awarded against each of said Defendants in an amount according to proof.

19      19.    The conduct of RPost and RComm, and each of them, by and through and

20  ratified by Khan and Tomkow, as officers - directors of each entity and who were

21  authorized to act and make corporate decisions for RPost and RComm) was and is

22  malicious, oppressive and fraudulent. Barton requests that punitive and exemplary

23  damages be awarded against each of said Defendants in an amount according to proof.

24      20.    In addition to the relief set forth above, Defendants' conduct justifies,

25  without limitation, the appointment of a receiver to manage and operate RPost, RMail

26  and RComm to safeguard the above-referenced assets and to ensure that all proceeds

27  therefrom (including, without limitation, all proceeds from any royalties, license fees

28  and/or from the RPost-RMail-RComm Patent Lawsuits) are secured (and held in trust)

8
**COMPLAINT**

1    for attachment by Plaintiff upon order of the Court (and payment to Plaintiff upon the

2    order of the Court and/or upon the settlement of Plaintiff's claims in the Barton Shares

3    Lawsuit), the issuance of a pre-judgment attachment, temporary restraining order and/or

4    injunction and the imposition of a constructive trust (including, without limitation, that

5    the Court restrain Defendants from further transferring, pledging, encumbering and or

6    voluntarily or involuntarily permitting any lien upon any and/or all of the transferred

7    assets (and/or voiding any and all such transfers, pledges, encumbrances and liens), that

8    the Court order that all proceeds therefrom and/or from any transactions regarding the

9    above assets and asset transfers and any and all proceeds (via settlement or judgment)

10   obtained in the RPost-RMail-RComm Patent Lawsuits be held in trust, interplead to the

11   Court and/or paid to and held by a receiver pending further order of this Court.

12

13                                   ***SECOND CAUSE OF ACTION***

14      *(Constructively Fraudulent Transfer, Against Defendants RPost, RMail and RComm*

15                                 *and DOES 1 through 50, Inclusive)*

16          21.     Plaintiff refers to, realleges and incorporates by reference the allegations of

17   Paragraphs 1 through 10, 13-20 of this Complaint as though fully set forth herein.

18          22.     RPost did not receive reasonably equivalent value in exchange for

19   the asset transfers as alleged hereinabove.

20          23.     If the representations of RPost's purported auditor, Kabani & Company,

21   Inc., were/are truthful and were representations made from and based upon an audit

22   conducted under generally accepted auditing principles, standards and methodologies

23   with appropriate verification of facts and document review and retention undertaken by

24   the auditor, RPost was allegedly insolvent at the time the above-referenced asset

25   transfers were made, or became insolvent as a result of the above-referenced transfers,

26   and (ii) the Plaintiff's creditor status existed at the time of the above-referenced

27   transfers.

28   ///

**COMPLAINT**

8681-008/pldg/Complaint-UFTA.001

24.     At the time of the above-referenced asset transfers, RMail and RComm, as the transferees and given Khan and Tomkow's positions as officers/directors of RPost, RMail and RComm, knew that RPost was the subject of Barton's claims and had reason to believe, if the representations of RPost's purported auditor, Kabani & Company, Inc., were/are truthful and were representations made from and based upon an audit conducted under generally accepted auditing principles, standards and methodologies with appropriate verification of facts and document review and retention undertaken by the auditor, that RPost was insolvent and/or would become insolvent if the transfers, or any of them, occurred.

25.     Underscoring that the above-referenced asset transfers were not for reasonable equivalent value, the transfers were not approved by RPost shareholders, the transfers were not disclosed to prospective RPost investors and were not disclosed to RPost shareholders for more than one year (and, then, only after the fact and only partially and/or vaguely and without providing, for example, the underlying RPost-RMail transaction documents and/or the evidence of the transactions by which RMail, using RPost's funds, acquired the above-referenced patents), the RMail patent acquisitions were completed using RPost funds (with RPost/RMail's insiders - Khan and Tomkow - and RMail itself not contributing any new money but using RPost cash to finance the patent acquisitions), all acts of unusual secrecy establishing that Debtor did not receive reasonably equivalent value in the transfer.

**WHEREFORE,** Plaintiff prays for judgment on the Complaint against the Defendants as follows:

ON THE FIRST AND SECOND CAUSE OF ACTION:

1.     Avoidance and/or voiding of the above-referenced asset transfers (and all transactions related thereto and/or hereafter entered into) to the extent necessary to satisfy Plaintiff's claims;

2.     Disregard the above-referenced asset transfers and directly attach or levy execution on the property transferred, all proceeds therefrom and the

10

**COMPLAINT**

1    Rpost-RMail-RComm Patent Lawsuits and all proceeds therefrom;

2    3.    General damages in the sum of at least $30,000,000.00, plus special

3          damages and other remedies as specified in the Complaint and otherwise

4          available under law;

5    4.    A declaration that the RPost-RMail Asset Transfers are null and void;

6    5.    A declaration that the RPost-RComm Asset Transfers are null and void;

7    6.    An injunction and/or temporary restraining order against further

8          disposition by the Defendants of the assets transferred and their proceeds,

9          as referenced hereinabove and as otherwise requested by Plaintiff in this

10         action;

11   7.    The appointment of a receiver to take charge of and safeguard the assets

12         transferred and/or their proceeds and the Rpost-RMail-RComm Patent

13         Lawsuits and all proceeds therefrom;

14   8.    The imposition of a constructive trust over all of the RPost-RMail Asset

15         Transfers and all proceeds therefrom;

16   9.    The imposition of a constructive trust over all of the RPost-RComm Asset

17         Transfers and all proceeds therefrom;

18   10.   Exemplary and punitive damages, according to proof, as to the First Cause

19         of Action only;

20   11.   Costs and attorneys' fees as allowable by law (including, without

21         limitation, the private attorney general statute) and/or contract; and

22   12.   For such other and further relief as the Court deems just and proper and is

23         available under law.

24   13.   Plaintiff demands a jury trial on those claims permitted under law.

25   Dated: July 28, 2011              MCGARRIGLE, KENNEY & ZAMPIELLO, APC

26

27   By: _____
                     Patrick C. McGarrigle, Esq.
28                   Attorneys for Plaintiff
                     Kenneth Barton

**11**

**COMPLAINT**

# EXHIBIT D

**Patrick McGarrigle**

| | |
|---|---|
| **From:** | Patrick McGarrigle |
| **Sent:** | Tuesday, September 17, 2013 1:02 PM |
| **To:** | 'Lewis Hudnell' |
| **Cc:** | Michael Kenney; Winston Huff |
| **Subject:** | RE: Barton v. RPost, et al. (Our File No. 8681-006) |
| | |
| **Importance:** | High |

Mr. Hudnell:

Thank you for your note.

1. Are you unequivocally representing that RIL (a) was not a Plaintiff in any of the cases where RPost Communications is now a Plaintiff, and (b) if RIL was a Plaintiff and purportedly assigned its rights to RPost Communications, please provide copies of that evidence and terms of that alleged assignment(s) (beyond any generic notice of assignment/substitution of party, if any, filed in any of the cases).

2. As for Para. No. 2, my question was/is whether RIL has an interest in the subject litigation (any lien rights of any sort or any rights to proceeds therefrom, notwithstanding your statement that RIL is not a named party therein (to the 299, 300 and 325 cases). Please provide an unequivocal answer and the source documentation re: any rights of interest therein or lien retained by RIL.

3. With respect to the Zix action, please provide a copy of that settlement agreement to demonstrate that there is no additional consideration due RIL under that action and no continuing jurisdiction of the Court, etc. over the parties.

4. The State Court in California only denied (and denied "without prejudice" which your note does not reference) adding RMail and RComm to the RIL/Khan/Tomkow judgment via a motion to amend based on, among other things, representations made by those parties' counsel. Those representations are at odds with newly discovered evidence will be addressed with the Superior Court.

Please provide the requested information and documentation. We are not encouraging you to file any motion and find no good cause therefor. If you can provide the requested information/documentation by this time tomorrow, I will promptly review same and advise on Thursday (and assuming there are no issues with that which has been provided) whether the notice will or will not be withdrawn.

I look forward to your cooperation.

**Patrick C. McGarrigle, Esq.**
McGarrigle, Kenney & Zampiello, APC
9600 Topanga Canyon Boulevard, Suite 200
Chatsworth, California 91311
818-998-3300 T
818-998-3344 F
thefirm@mkzlaw.com

**From:** Lewis Hudnell [mailto:lewis@colvinhudnell.com]
**Sent:** Tuesday, September 17, 2013 8:07 AM
**To:** Lewis Hudnell
**Cc:** Patrick McGarrigle; Michael Kenney; Winston Huff; djagai; Casey Goolsby
**Subject:** Re: Barton v. RPost, et al. (Our File No. 8681-006)

Dear Patrick,

We still have not heard back from you regarding our request for a meet and confer.  Please let us know your availability for a call today.   Otherwise, we will assume that you will not withdraw your notice and we plan to file our motion today indicating that you could not be reached to meet and confer.

Lewis

On Friday, September 13, 2013, Lewis Hudnell wrote:

Dear Patrick,

On the first point,

1.  All of the plaintiffs object to the notice of lien.  The remaining plaintiffs are RPost Holdings, RPost Communications, and RMail.  I use RPost as shorthand to refer to the plaintiffs collectively.  I fail to see how that underscores anything.

2.  Only three of the consolidated cases are pending: 2:11-cv-299, 2:11-cv-300, 2:11-cv-325.  RPost International is not a party to these cases.  All of the cases involving RPost International have been dismissed.  You can confirm this by looking at the docket.

3.  RPost International was only a plaintiff in 2:11-cv-6, 2:11-cv-16, and 2:11-cv-64.  All of these cases have been dismissed.  Again, you can confirm this by looking at the docket.

On the second point, please see 60:23-61:10 of the August 30, 2013 hearing transcript in YC61581 where Judge Rice states that Mr. Barton has no right to collect from RPost Communications and RMail.

The third point is irrelevant to our request.

If based on these representations you will not withdraw the notice of lien, then we again request your availability to meet and confer in advance of our filing a motion to remove the notice of lien.  Many thanks.

Lewis E. Hudnell, III
d: 347.855.4772
f: 347.772.3034
m: 917.861.3494
e: lewis@colvinhudnell.com



www.colvinhudnell.com

This e-mail message is intended for the sole use of the intended recipient(s) and may contain information that is confidential, privileged and/or attorneys' work product. Any review or distribution by any other person is prohibited. If you are not an intended recipient, please immediately contact the sender and delete all copies.

On Thu, Sep 12, 2013 at 11:29 AM, Patrick McGarrigle <PatrickM@mkzlaw.com> wrote:

Dear Mr. Hudnell:

Thank you for your email, though your deadline for an immediate telephone call could not reasonably be accommodated.  As indicated below, I would be pleased to speak with you following our receipt of your substantive response and the requested information/documentation and an opportunity to review same.  Moreover, there are related subjects that you are probably already aware of (and/or should be) and we bring them to your attention further below.

*First*, your email is unclear on myriad fronts and requires clarification and documentary support before a further response can be provided.  For example:

1)   What "RPost Plaintiffs" object to the notice of lien?  You use the word "RPost" (which underscores our view that the "RPost" companies are one enterprise artificially divided in name only to facilitate the fraudulent conduct of your clients' principals, Messrs. Khan and Tomkow, et al.), but you do not identify which RPost you are referring to.  Please explain and specify.

2)   Are you representing (and can and will promptly document to us via disclosures this week) that RPost International Limited is not an interested party in any of the consolidated cases listed on the Notice of Lien (notwithstanding that the dockets indicate otherwise)? Your email refers to "this case," but, as you are aware, the cases are consolidated and include a number of cases.

3

3)   If RPost International Limited is not a plaintiff/counter-claimant or is purportedly no longer a plaintiff/counter-claimant, please explain and state clearly what its current status is in the consolidated cases and when, if at all, its status changed from the original commencement of the actions listed.


**Second**, there is no "CD CAL" (presumably you mean US Federal Court, Central District) court that has issued any ruling that Barton has no right to seek recovery of his judgment sums from RMail or RComm.   Where did you get that understanding from – please explain.   While RMail and RComm have not yet been added as parties to Barton's $4M judgment against Khan, Tomkow and RIL, Barton's rights to cause RMail and RComm to be obligated t

# EXHIBIT E

## Patrick McGarrigle

| | |
|---|---|
| **From:** | Patrick McGarrigle |
| **Sent:** | Tuesday, September 17, 2013 2:19 PM |
| **To:** | lewis@colvinhudnell.com |
| **Cc:** | Michael Kenney (MichaelK@mkzlaw.com) |
| **Subject:** | Barton v. RPost, et al. (Our File No. 8681-006) |

Mr. Hudnell:

I was hoping that we would have a substantive discussion once you provided the evidence we have requested.  Instead, your note suggests an interest in form over substance, which is unfortunate.

As you know, one of the ways to have a meaningful meet and confer is if information/documentation germane to the issues are first shared so that the subsequent discussion is not a game but productive.   Asserting that you'll only "answer these questions by phone" is tantamount to suggesting that you're not willing to stand by what you put in writing, so that we end up with a dispute over what was allegedly said or not said in a conference call.   Given the fraudulent history of the Khan/Tomkow/RPost parties' in and out of a variety of judicial proceedings, requiring advance support for your representations and clarity regarding your representations (so that we can consider them promptly) is part and parcel of a meaningful meet and confer occurring.   Your note does not provide any reason for your simply not already providing what we requested so we can get the core questions.

Regrettably, it appears that you are seemingly intent upon checking the telephonic meet and confer box while not providing basic, meaningful information and documentation to allow the meet and confer to be productive.   I will gladly discuss this matter with you and do so without suggesting that your unwillingness to supply the information/documentation in writing is appropriate or a discharge of your meet and confer obligations or is our client waiving any rights in connection therewith.  It may well be that your providing that information/documentation will obviate the need for a motion and/or demonstrate that no basis for requesting the withdrawal of the notice of lien exists; not providing same and then complaining about the lien is counter-intuitive to the filing of a good faith motion, much less conducting a productive meet and confer.

In any case, and without prejudice, you are free to call me at 2:45 p.m. PST today.

**Patrick C. McGarrigle, Esq.**
McGarrigle, Kenney & Zampiello, APC
9600 Topanga Canyon Boulevard, Suite 200
Chatsworth, California 91311
818-998-3300 T
818-998-3344 F
thefirm@mkzlaw.com

**From:** Lewis Hudnell [mailto:lewis@colvinhudnell.com]
**Sent:** Tuesday, September 17, 2013 1:41 PM
**To:** Patrick McGarrigle
**Cc:** Michael Kenney; Winston Huff; djagai
**Subject:** Re: Barton v. RPost, et al. (Our File No. 8681-006)

Dear Patrick,

The purpose of the EDTX  meet and confer requirement is to discuss substantive issues like the ones you raise by phone, not email.  It should not take a week to schedule such a conference.  I would be happy to answer these questions by phone.  Please let us know your availability for a call today.  Otherwise, like I said, we intend to file our motion.  Many thanks.

Lewis E. Hudnell, III
d: 347.855.4772
f: 347.772.3034
m: 917.861.3494
e: lewis@colvinhudnell.com


www.colvinhudnell.com

This e-mail message is intended for the sole use of the intended
recipient(s) and may contain information that is confidential,
privileged and/or attorneys' work product. Any review or distribution by
any other person is prohibited. If you are not an intended recipient,
please immediately contact the sender and delete all copies.

On Tue, Sep 17, 2013 at 4:01 PM, Patrick McGarrigle <PatrickM@mkzlaw.com> wrote:

Mr. Hudnell:

Thank you for your note.

1.   Are you unequivocally representing that RIL (a) was not a Plaintiff in any of the cases where RPost Communications is now a Plaintiff, and (b) if RIL was a Plaintiff and purportedly assigned its rights to RPost Communications, please provide copies of that evidence and terms of that alleged assignment(s) (beyond any generic notice of assignment/substitution of party, if any, filed in any of the cases).

2.   As for Para. No. 2, my question was/is whether RIL has an interest in the subject litigation (any lien rights of any sort or any rights to proceeds therefrom, notwithstanding your statement that RIL is not a named party therein (to the 299, 300 and 325 cases).  Please provide an unequivocal answer and the source documentation re: any rights of interest therein or lien retained by RIL.

3.   With respect to the Zix action, please provide a copy of that settlement agreement to demonstrate that there is no additional consideration due RIL under that action and no continuing jurisdiction of the Court, etc. over the parties.

4.   The State Court in California only denied (and denied "without prejudice" which your note does not reference) adding RMail and RComm to the RIL/Khan/Tomkow judgment via a motion to amend based on, among other things, representations made by those parties' counsel.  Those representations are at odds with newly discovered evidence will be addressed with the Superior Court.

Please provide the requested information and documentation.  We are not encouraging you to file any motion and find no good cause therefor.   If you can provide the requested information/documentation by this time tomorrow, I will promptly review same and advise on Thursday (and assuming there are no issues with that which has been provided) whether the notice will or will not be withdrawn.

I look forward to your cooperation.

**Patrick C. McGarrigle, Esq.**

McGarrigle, Kenney & Zampiello, APC

9600 Topanga Canyon Boulevard, Suite 200

Chatsworth, California 91311

818-998-3300 T

818-998-3344 F

thefirm@mkzlaw.com

**From:** Lewis Hudnell [mailto:lewis@colvinhudnell.com]
**Sent:** Tuesday, September 17, 2013 8:07 AM
**To:** Lewis Hudnell
**Cc:** Patrick McGarrigle; Michael Kenney; Winston Huff; djagai; Casey Goolsby
**Subject:** Re: Barton v. RPost, et al. (Our File No. 8681-006)

Dear Patrick,

We still have not heard back from you regarding our request for a meet and confer.  Please let us know your availability for a call today.   Otherwise, we will assume that you will not withdraw your notice and we plan to file our motion today indicating that you could not be reached to meet and confer.

Lewis

On Friday, September 13, 2013, Lewis Hudnell wrote:

Dear Patrick,

On the first point,

1.  All of the plaintiffs object to the notice of lien.  The remaining plaintiffs are RPost Holdings, RPost Communications, and RMail.  I use RPost as shorthand to refer to the plaintiffs collectively.  I fail to see how that underscores anything.

2.  Only three of the consolidated cases are pending: 2:11-cv-299, 2:11-cv-300, 2:11-cv-325.  RPost International is not a party to these cases.  All of the cases involving RPost International have been dismissed.  You can confirm this by looking at the docket.

3.  RPost International was only a plaintiff in 2:11-cv-6, 2:11-cv-16, and 2:11-cv-64.  All of these cases have been dismissed.  Again, you can confirm this by looking at the docket.

On the second point, please see 60:23-61:10 of the August 30, 2013 hearing transcript in YC61581 where Judge Rice states that Mr. Barton has no right to collect from RPost Communications and RMail.

The third point is irrelevant to our request.

If based on these representations you will not withdraw the notice of lien, then we again request your availability to meet and confer in advance of our filing a motion to remove the notice of lien.  Many thanks.

Lewis E. Hudnell, III

d: <u>347.855.4772</u>
f: <u>347.772.3034</u>
m: <u>917.861.3494</u>
e: <u>lewis@colvinhudnell.com</u>

<u>www.colvinhudnell.com</u>

This e-mail message is intended for the sole use of the intended recipient(s) and may contain information that is confidential, privileged and/or attorneys' work product. Any review or distribution by any other person is prohibited. If you are not an intended recipient, please immediately contact the sender and delete all copies.

# EXHIBIT F

## Patrick McGarrigle

| | |
|---|---|
| **From:** | Patrick McGarrigle |
| **Sent:** | Wednesday, October 16, 2013 8:05 AM |
| **To:** | lewis@colvinhudnell.com |
| **Cc:** | Michael Kenney (MichaelK@mkzlaw.com); Winston Huff (whuff@huffip.com) |
| **Subject:** | RE: Barton v. RPost, et al. (Our File No. 8681-006) |

Dear Lewis:

Thank you for your recent email and partial record production.  We have reviewed what you have provided thus far and have the following further meet and confer response.   We also note that you have filed a motion to strike, notwithstanding that RIL has not complied with our requests made to you during our discussions in September.  We hope that you will reconsider and fully comply with the requests so that a meaningful and fair discussion can be had about the propriety of your request that the judgment lien be withdrawn.

In our discussion several weeks ago, I requested (in addition to what you provided):

A declaration from RPost International Ltd. (RIL) (and preferably from an authorized board member other than Khan or Tomkow) under oath that:

        (a)     it had assigned all of its rights and claims arising out of the patents to which it held and/or had held a license and when it did so and the consideration therefor (and that RIL provide true and correct copies of documents evidencing same including board minutes for RIL authorizing the claimed transactions and affirmation in writing that all shareholders of RIL had specific notice of and had approved the above transactions);

        (b)     RIL (nor any of RIL's officers/directors/shareholders) has and had no rights (actual, residual, contingent, liquidated or unliquidated) to any of the proceeds from any of the pending cases before the Court in the Eastern District or payment therefrom;

        (c)     the terms of the Zix Corp settlement were fully performed and there were no further payments due from Zix to RIL under the settlement and that the Court does not have continuing jurisdiction over said parties regarding performance of the settlement;

        (d)     provides true and correct copies of the RIL-Zix Corp settlement (in whatever form(s) it took – license agreement, royalty agreement, etc.)(and the economic terms clearly articulated) and the executed and approved RIL board minutes authorizing same (and attesting to shareholder approval) to verify your client's statements; and

        (e)     Khan and Tomkow had, after full disclosure of all material facts to the RIL shareholders, the authority to enter into the transactions and the Zix settlement.

Unfortunately, these necessary documents were not provided, though weeks have been accorded to allow same to be gathered and produced.  I had expressed to you in some detail that Khan and Tomkow's standing to act and their conflicts of interest on countless levels removed any basis for their actions in the cases in the Eastern District, and elsewhere.

As you also know, Mr. Khan, et al. were adjudicated to have committed fraud and intentional breaches of fiduciary duty including, without limitation, falsifying, for the purpose of attempting to steal Mr. Barton's 20% equity in RIL, various RIL corporate resolutions through forgery (cutting and pasting Mr. Barton's signature

1

onto fabricated and altered "minutes" years after Mr. Barton was no longer with RIL and without Mr. Barton's knowledge or consent). Mr. Khan admitted the Barton "signatures" were placed on the fabricated minutes without Mr. Barton's knowledge or consent. Mr. Khan, et al. were also adjudicated to have destroyed the corporate shareholder registries of RIL which can only fairly be described, in addition to fraud, as an obstruction of the judicial process. Hence, sending us only purported license "termination" agreements executed by Khan/Tomkow are insufficient on their face to answer the call of the question. Under oath affirmations and delivery of the requested documents are reasonable and necessary given Messrs. Khan and Tomkow's penchant for record manipulation and destruction and piece-mealing the release of responsive documents to suit their own purposes.

While you have elected to, notwithstanding your client's decision not to comply with our reasonable requests, file the Motion to Strike, we again invite your client to immediately comply. We request that you take the Motion to Strike off calendar today. If RIL provides the requested information under oath and documentation and same is complete and in order, in good faith, we can then discuss the withdrawal, without prejudice, of the judgment lien arising from the $4M California Judgment against RIL. As you know, RIL has not posted an appeal bond in California and, hence, the pendency of their appeal, as it is, does not stay enforcement of the judgment.

If you are unwilling or without authority to comply with our requests for verified information and documentation and/or are unwilling to withdraw the Motion to Strike (without prejudice), we will provide the Court with this further communication and request a hearing on the matter and the relief set forth herein.

If you wish to discuss this matter further, I am available after 10 a.m. PST to discuss.


**Patrick C. McGarrigle, Esq.**
McGarrigle, Kenney & Zampiello, APC
9600 Topanga Canyon Boulevard, Suite 200
Chatsworth, California 91311
818-998-3300 T
818-998-3344 F
thefirm@mkzlaw.com




**From:** Lewis Hudnell [mailto:lewis@colvinhudnell.com]
**Sent:** Wednesday, September 25, 2013 6:37 AM
**To:** Patrick McGarrigle
**Cc:** Michael Kenney; Winston Huff; djagai
**Subject:** Re: Barton v. RPost, et al. (Our File No. 8681-006)

Dear Patrick,

Following up on our discussion, please let me if you will agree to withdraw the notice of lien. Thanks.

Lewis

On Wednesday, September 18, 2013, Lewis Hudnell wrote:
Dear Patrick,

As discussed, please see the attached agreement relating to the license of the Feldbau patents. RIL originally licensed these patents to RPH. That license was cancelled and superseded by a license from RPC to RPH. This document is designated Highly-Confidential Outside Attorneys Eyes Only and should be treated as such under Local Patent Rule 2-2. Please let me know if you need any additional information. Many thanks.

Lewis E. Hudnell, III
d: 347.855.4772
f: 347.772.3034
m: 917.861.3494
e: lewis@colvinhudnell.com


www.colvinhudnell.com

This e-mail message is intended for the sole use of the intended recipient(s) and may contain information that is confidential, privileged and/or attorneys' work product. Any review or distribution by any other person is prohibited. If you are not an intended recipient, please immediately contact the sender and delete all copies.

On Tue, Sep 17, 2013 at 5:19 PM, Patrick McGarrigle <PatrickM@mkzlaw.com> wrote:

Mr. Hudnell:

I was hoping that we would have a substantive discussion once you provided the evidence we have requested. Instead, your note suggests an interest in form over substance, which is unfortunate.

As you know, one of the ways to have a meaningful meet and confer is if information/documentation germane to the issues are first shared so that the subsequent discussion is not a game but productive. Asserting that you'll only "answer these questions by phone" is tantamount to suggesting that you're not willing to stand by what you put in writing, so that we end up with a dispute over what was allegedly said or not said in a conference call. Given the fraudulent history of the Khan/Tomkow/RPost parties' in and out of a variety of judicial proceedings, requiring advance support for your representations and clarity regarding your

representations (so that we can consider them promptly) is part and parcel of a meaningful meet and confer occurring.   Your note does not provide any reason for your simply not already providing what we requested so we can get the core questions.


Regrettably, it appears that you are seemingly intent upon checking the telephonic meet and confer box while not providing basic, meaningful information and documentation to allow the meet and confer to be productive.   I will gladly discuss this matter with you and do so without suggesting that your unwillingness to supply the information/documentation in writing is appropriate or a discharge of your meet and confer obligations or is our client waiving any rights in connection therewith.  It may well be that your providing that information/documentation will obviate the need for a motion and/or demonstrate that no basis for requesting the withdrawal of the notice of lien exists; not providing same and then complaining about the lien is counter-intuitive to the filing of a good faith motion, much less conducting a productive meet and confer.


In any case, and without prejudice, you are free to call me at 2:45 p.m. PST today.



**Patrick C. McGarrigle, Esq.**

McGarrigle, Kenney & Zampiello, APC

9600 Topanga Canyon Boulevard, Suite 200

Chatsworth, California 91311

818-998-3300 T

4

# EXHIBIT G

## Patrick McGarrigle

| | |
|---|---|
| **From:** | Patrick McGarrigle |
| **Sent:** | Wednesday, October 16, 2013 2:40 PM |
| **To:** | 'Lewis Hudnell' |
| **Cc:** | Michael Kenney; Winston Huff (whuff@huffip.com) |
| **Subject:** | RE: FW: Barton v. RPost, et al. (Our File No. 8681-006) |
| | |
| **Importance:** | High |

Dear Lewis:

Thank you for your note.   Our requests since September have been specific and the RPost Parties' decision not to cooperate is manifest.

There is no "wild goose chase" as you speciously assert.   But what is clear is why you declined to engage in any meet and confer in writing from the start, instead insisting on a phone call to discuss.   The Rpost Parties simply did not intend to comply with our requests, as your emails today makes clear, and instead hope to delay and stall (even offering up the curious and unsubstantiated assertion that there are no writings memorializing the terms for the disposition of the RIL-Zix lawsuit).

We'll remain open to your clients providing the declaration and the evidence requested to substantiate your assertion that RIL has no interest in the IP, the IP litigation or the settlement proceeds.   If the RPost Parties were being straight about any of this, we would have received the declaration and the requested documents and then been able to address your assertion that RIL has no interest in these matters with reasonable evidence from you verifying same.

We invite you, again, to cooperate.


**Patrick C. McGarrigle, Esq.**
McGarrigle, Kenney & Zampiello, APC
9600 Topanga Canyon Boulevard, Suite 200
Chatsworth, California 91311
818-998-3300 T
818-998-3344 F
thefirm@mkzlaw.com



**From:** Lewis Hudnell [mailto:lewis@colvinhudnell.com]
**Sent:** Wednesday, October 16, 2013 1:40 PM
**To:** Patrick McGarrigle
**Cc:** Michael Kenney; Winston Huff (whuff@huffip.com)
**Subject:** Re: FW: Barton v. RPost, et al. (Our File No. 8681-006)

Dear Patrick,

Again, we have complied with all of your requests. On our call, I went down each item of your September 17th email and provided substantive responses. I also provided you the next day, not days later, the only document you requested during our call. Today is the first time that we are hearing that the document that you requested is not sufficient. If you had indicated that on our call as you claim, then I would not have sent it to you. I sent it because you requested it.

It appears that you are on a fishing expedition because with each successive email you request additional information that you have not previously requested. None of your previous emails before today requested a declaration. Your latest email even requests items that you never before requested and that you did not even request in your email from this morning, such as the Amazon/Paypal settlement agreement. RPost International was not even a party to that case.

RPost is not going to engage is a wild goose chase. If there is a specific document that you want, then name it. Like I said, I will inquire about a declaration. There is no Zix written settlement agreement. There is no Zix written license agreement. Corporate minutes is too vague. We are not responding to discovery requests and Barton's notice does not entitle him to discovery from RPost to prove his right to a lien. Barton should have had a basis for his notice before filing it. And we are certainly going to point out to Judge Gilstrap that it appears that he does not in response to your opposition.


Lewis E. Hudnell, III
d: 347.855.4772
f: 347.772.3034
m: 917.861.3494
e: lewis@colvinhudnell.com


www.colvinhudnell.com

This e-mail message is intended for the sole use of the intended
recipient(s) and may contain information that is confidential,
privileged and/or attorneys' work product. Any review or distribution by
any other person is prohibited. If you are not an intended recipient,
please immediately contact the sender and delete all copies.

On Wed, Oct 16, 2013 at 3:40 PM, Patrick McGarrigle <PatrickM@mkzlaw.com> wrote:

Dear Lewis:

Thank you for your email, but, no, you did not and have not complied with our specific requests for information/documentation to work to resolve these issues.

Respectfully, it is not incumbent upon us to continue to hound you for information/documentation which was specifically requested in a phone call that occurred because you declined to respond to our written requests.   I was clear in our call that the purported 'termination' agreements signed by Khan and Tomkow were not going to be sufficient, but you sent them anyway.  Asking days later, then, if we needed "additional information" was gratuitous; we had just advised you a day or two earlier that the "termination" agreements were dubious and not controlling and insufficient to substantiate your assertions and that other specific documentation and a declaration was required.   Notably, during our mid-September call, I advised you that a declaration (from an officer/director other than Khan/Tomkow) attesting to the facts you purported to hold as true was required because the representation of counsel on such matters was not sufficient, particularly given the history of Khan and Tomkow in regards to document forgery and destruction (and duplicitous testimony) and that the documents concerning the Zix settlement and Amazon/PayPal settlements, etc., corporate minutes, etc. (as outlined again in our email earlier today) were required because of RIL's status as a plaintiff and owner of the claims.

You said you would talk with your clients and asserted that there's no 'settlement agreement' with Zix but there may be a license agreement.  Again, by submitting only the 'termination' agreement and ignoring our requests and then filing your motion, you've clearly indicated that your clients will not cooperate.  Feigning that the declaration and document requests were not made during our conference call because we have not spent more legal time pressing your clients to comply is hardly meaningful; we asked you for a declaration and supporting documents and your clients declined to provide it.   You could certainly propose a protective order as a condition to providing the settlement documents to resolve that issue if your clients had any intent to cooperate and be forthright.

In any case, I wrote to you again today to accord your clients the opportunity to resolve these issues informally before the opposition had to be filed.    If your clients are going to provide the source documents regarding the settlements and the corporate minutes and declaration, then our suggestion that the motion to strike be withdrawn and your client prove up its assertion that RIL (who you concede had the IP and whose IP rights were, at worst, held by RMail in trust) has no interest in the IP litigation or settlements, can proceed over the next several weeks.   If that can be proven up conclusively, a withdrawal of the lien without prejudice may be possible.  However, if your clients continue to decline to cooperate, they are forcing these issues to come before the Court.   We will ask the Court to order the turnover of the documentation and production of the under oath declaration.

So, barring confirmation of a change of position by your clients, we will file the Opposition with the Court today.

Best regards,

**Patrick C. McGarrigle, Esq.**

McGarrigle, Kenney & Zampiello, APC

9600 Topanga Canyon Boulevard, Suite 200

Chatsworth, California 91311

818-998-3300 T

818-998-3344 F

thefirm@mkzlaw.com

**From:** Lewis Hudnell [mailto:lewis@colvinhudnell.com]
**Sent:** Wednesday, October 16, 2013 12:11 PM
**To:** Patrick McGarrigle
**Cc:** Michael Kenney; Winston Huff (whuff@huffip.com)

**Subject:** Re: Barton v. RPost, et al. (Our File No. 8681-006)

Dear Patrick,

We have complied with all of your requests to date. After our discussion, I sent you two follow up emails, to which you did not respond. Your email today is the first time that you have requested a declaration. Indeed, in my first follow up email to our conversation from nearly a month ago, I specifically asked whether you needed any additional information. I would not have asked if I thought that you were expecting a declaration. If you had responded then, then perhaps we could have avoided filing our motion. But the fact that you didn't and the fact that you are raising this issue two weeks after we filed our motion belies your claim that you were

4

expecting a declaration.  Moreover, it is not RPost's job to prove that there is no basis for the lien.  It is Barton's job to prove that there is a basis for the lien.

That said, I will check with RPost regarding your request for a declaration.  I have already advised you that the Zix mediation did not result in a written settlement.  All other documents are subject to the restrictions of the mediation agreement, the EDTX mediation plan, and/or privileged and therefore cannot be shared.

Lewis E. Hudnell, III

d: 347.855.4772
f: 347.772.3034
m: 917.861.3494
e: lewis@colvinhudnell.com



www.colvinhudnell.com

This e-mail message is intended for the sole use of the intended
recipient(s) and may contain information that is confidential,
privileged and/or attorneys' work product. Any review or distribution by
any other person is prohibited. If you are not an intended recipient,
please immediately contact the sender and delete all copies.

On Wed, Oct 16, 2013 at 11:05 AM, Patrick McGarrigle <PatrickM@mkzlaw.com> wrote:

Dear Lewis:

Thank you for your recent email and partial record production.  We have reviewed what you have provided thus far and have the following further meet and confer response.   We also note that you have filed a motion to strike, notwithstanding that RIL has not complied with our requests made to you during our discussions in September.  We hope that you will reconsider and fully comply with the requests so that a meaningful and fair discussion can be had about the propriety of your request that the judgment lien be withdrawn.

In our discussion several weeks ago, I requested (in addition to what you provided):

A declaration from RPost International Ltd. (RIL) (and preferably from an authorized board member other than Khan or Tomkow) under oath that:

(a)      it had assigned all of its rights and claims arising out of the patents to which it held and/or had held a license and when it did so and the consideration therefor (and that RIL provide true and correct copies of documents evidencing same including board minutes for RIL authorizing the claimed transactions and affirmation in writing that all shareholders of RIL had specific notice of and had approved the above transactions);

(b)      RIL (nor any of RIL's officers/directors/shareholders) has and had no rights (actual, residual, contingent, liquidated or unliquidated) to any of the proceeds from any of the pending cases before the Court in the Eastern District or payment therefrom;

(c)      the terms of the Zix Corp settlement were fully performed and there were no further payments due from Zix to RIL under the settlement and that the Court does not have continuing jurisdiction over said parties regarding performance of the settlement;

(d)      provides true and correct copies of the RIL-Zix Corp settlement (in whatever form(s) it took – license agreement, royalty agreement, etc.)(and the economic terms clearly articulated) and the executed and approved RIL board minutes authorizing same (and attesting to shareholder approval) to verify your client's statements; and

(e)      Khan and Tomkow had, after full disclosure of all material facts to the RIL shareholders, the authority to enter into the transactions and the Zix settlement.

Unfortunately, these necessary documents were not provided, though weeks have been accorded to allow same to be gathered and produced.  I had expressed to you in some detail that Khan and Tomkow's standing

to act and their conflicts of interest on countless levels removed any basis for their actions in the cases in the Eastern District, and elsewhere.

As you also know, Mr. Khan, et al. were adjudicated to have committed fraud and intentional breaches of fiduciary duty including, without limitation, falsifying, for the purpose of attempting to steal Mr. Barton's 20% equity in RIL, various RIL corporate resolutions through forgery (cutting and pasting Mr. Barton's signature onto fabricated and altered "minutes" years after Mr. Barton was no longer with RIL and without Mr. Barton's knowledge or consent).  Mr. Khan admitted the Barton "signatures" were placed on the fabricated minutes without Mr. Barton's knowledge or consent.  Mr. Khan, et al. were also adjudicated to have destroyed the corporate shareholder registries of RIL which can only fairly be described, in addition to fraud, as an obstruction of the judicial process.  Hence, sending us only purported license "termination" agreements executed by Khan/Tomkow are insufficient on their face to answer the call of the question.  Under oath affirmations and delivery of the requested documents are reasonable and necessary given Messrs. Khan and Tomkow's penchant for record manipulation and destruction and piece-mealing the release of responsive documents to suit their own purposes.

While you have elected to, notwithstanding your client's decision not to comply with our reasonable requests, file the Motion to Strike, we again invite your client to immediately comply.  We request that you take the Motion to Strike off calendar today.  If RIL provides the requested information under oath and documentation and same is complete and in order, in good faith, we can then discuss the withdrawal, without prejudice, of the judgment lien arising from the $4M California Judgment against RIL.  As you know, RIL has not posted an appeal bond in California and, hence, the pendency of their appeal, as it is, does not stay enforcement of the judgment.

If you are unwilling or without authority to comply with our requests for verified information and documentation and/or are unwilling to withdraw the Motion to Strike (without prejudice), we will provide the Court with this further communication and request a hearing on the matter and the relief set forth herein.

If you wish to discuss this matter further, I am available after 10 a.m. PST to discuss.

**Patrick C. McGarrigle, Esq.**

McGarrigle, Kenney & Zampiello, APC

9600 Topanga Canyon Boulevard, Suite 200

Chatsworth, California 91311

818-998-3300 T

818-998-3344 F

thefirm@mkzlaw.com

**From:** Lewis Hudnell [mailto:lewis@colvinhudnell.com]
**Sent:** Wednesday, September 25, 2013 6:37 AM

**To:** Patrick McGarrigle
**Cc:** Michael Kenney; Winston Huff; djagai
**Subject:** Re: Barton v. RPost, et al. (Our File No. 8681-006)

Dear Patrick,

Following up on our discussion,  please let me if you will agree to withdraw the notice of lien.  Thanks.

Lewis

On Wednesday, September 18, 2013, Lewis Hudnell wrote:

Dear Patrick,

As discussed, please see the attached agreement relating to the license of the Feldbau patents.  RIL originally licensed these patents to RPH.  That license was cancelled and superseded by a license from RPC to RPH.  This document is designated Highly-Confidential Outside Attorneys Eyes Only and should be treated as such under Local Patent Rule 2-2.  Please let me know if you need any additional information.  Many thanks.

8

Lewis E. Hudnell, III

d: 347.855.4772
f: 347.772.3034
m: 917.861.3494
e: lewis@colvinhudnell.com

 colvin hudnell
IP SOLUTIONS

www.colvinhudnell.com

This e-mail message is intended for the sole use of the intended
recipient(s) and may contain information that is confidential,
privileged and/or attorneys' work product. Any review or distribution by
any other person is prohibited. If you are not an intended recipient,
please immediately contact the sender and delete all copies.

On Tue, Sep 17, 2013 at 5:19 PM, Patrick McGarrigle <PatrickM@mkzlaw.com> wrote:

Mr. Hudnell:

I was hoping that we would have a substantive discussion once you provided the evidence we have
requested.  Instead, your note suggests an interest in form over substance, which is unfortunate.

As you know, one of the ways to have a meaningful meet and confer is if information/documentation germane to the issues are first shared so that the subsequent discussion is not a game but productive.   Asserting that you'll only "answer these questions by phone" is tantamount to suggesting that you're not willing to stand by what you put in writing, so that we end up with a dispute over what was allegedly said or not said in a conference call.   Given the fraudulent history of the Khan/Tomkow/RPost parties' in and out of a variety of judicial proceedings, requiring advance support for your representations and clarity regarding your representations (so that we can consider them promptly) is part and parcel of a meaningful meet and confer occurring.   Your note does not provide any reason for your simply not already providing what we requested so we can get the core questions.

Regrettably, it appears that you are seemingly intent upon checking the telephonic meet and confer box while not providing basic, meaningful information and documentation to allow the meet and confer to be productive.   I will gladly discuss this matter with you and do so without suggesting that your unwillingness to supply the information/documentation in writing is appropriate or a discharge of your meet and confer obligations or is our client waiving any rights in connection therewith.   It may well be that your providing that information/documentation will obviate the need for a motion and/or demonstrate that no basis for requesting the withdrawal of the notice of lien exists; not providing same and then complaining about the lien is counter-intuitive to the filing of a good faith motion, much less conducting a productive meet and confer.

In any case, and without prejudice, you are free to call me at 2:45 p.m. PST today.

**Patrick C. McGarrigle, Esq.**

McGarrigle, Kenney & Zampiello, APC

9600 Topanga Canyon Boulevard, Suite 200

Chatsworth, California 91311

818-998-3300 T

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all who have consented to electronic service. Local Rule CV-5(a)(3)(A).

<u>/s/ Patrick C. McGarrigle</u>