# EXHIBIT A

1 | PATRICK C. MCGARRIGLE, ESQ., SBN 149008
MICHAEL J. KENNEY, ESQ., SBN 192775
2 | PHILIP A. ZAMPIELLO, ESQ., SBN 198723
McGARRIGLE, KENNEY & ZAMPIELLO, APC
3 | 9600 Topanga Canyon Boulevard, Suite 200
Chatsworth, California  91311
4 | PH: (818) 998-3300   FAX: (818) 998-3344

5 | Attorneys for Creditor/Adversary Plaintiff
Kenneth Barton

6

7

8 |                UNITED STATES BANKRUPTCY COURT

9 |                CENTRAL DISTRICT OF CALIFORNIA

10 |                    LOS ANGELES DIVISION

11

12 | IN RE:                          ) Case No. 2:13-bk-19713-VZ
                                    )
13 |    ZAFAR DAVID KHAN,           )
                                    )
14 |        Debtor,                 ) NOTICE OF MOTION AND
                                    ) MOTION OF CREDITOR -
15 |                                ) ADVERSARY PLAINTIFF
                                    ) KENNETH BARTON TO
16 |                                ) CONVERT DEBTOR ZAFAR
                                    ) KHAN'S CHAPTER 13
17 |                                ) BANKRUPTCY CASE TO
                                    ) CHAPTER 7; MEMORANDUM OF
18 |                                ) POINTS AND AUTHORITIES;
                                    ) DECLARATION OF PATRICK C.
19 |                                ) McGARRIGLE AND EXHIBITS
                                    ) THERETO.
20 |                                )
                                    ) Date:    October 7, 2013
21 |                                ) [Self-Calendared]
                                    ) Time:    11:00 a.m.
22 |                                ) Dept.:   Courtroom 1368
                                    )          Edward Roybal Federal
23 |                                )          Building, 255 East Temple
                                    )          Street, Los Angeles, CA
24 |                                )
                                    ) [Compendium of Exhibits,
25 | _____       ) Volumes I - IV filed concurrently
                                    ) herewith]
26 |                                )
                                    )
27 |                                )

28

---

1

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  **TO: THE HONORABLE JUDGE VINCENT P. ZURZOLO, UNITED**

2  **STATES BANKRUPTCY JUDGE; DEBTOR ZAFAR KHAN AND HIS COUNSEL**

3  **OF RECORD; THE CHAPTER 13 TRUSTEE AND ALL INTERESTED PARTIES:**

4      PLEASE TAKE NOTICE THAT, on October 7, 2013, in Courtroom 1368, at 11:00

5  a.m., or as soon thereafter as the matter may be heard, Creditor/Adversary Plaintiff

6  Kenneth Barton ("**Creditor,**" "**Barton**" or "**Movant**"), by and through his attorneys of

7  record, hereby moves for an order converting the Chapter 13 Bankruptcy Case of Debtor

8  Zafar Khan ("**Debtor**" or "**Khan**") to a Chapter 7 Case under 11 U.S.C. Section 1307(c).

9      If you wish to oppose or respond to this motion, you must file a written response

10 with the Clerk of the United States Bankruptcy Court at Edward R. Roybal Building and

11 Courthouse, 255 East Temple Street, Suite 940 Los Angeles, California 90012, serve a

12 copy of it on the Movant, United States Trustee, and all other parties requesting notice, at

13 the address set forth above and upon the Chapter 13 Trustee (see attached service list) no

14 less than 14 days prior to the above hearing date.   If you fail to file a response to this

15 motion within such time period, the Court may treat such failure as a waiver of your right to

16 oppose the motion and may grant the requested relief.

17     This Motion is based on the following:

18     1.      Debtor Zafar Khan's unsecured, liquidated and non-contingent pre-petition

19 claims exceeded and exceed the eligibility maximum for a Chapter 13 case (11 U.S.C.

20 §109(e)), and, as such, cause under 11 U.S.C. §1307(c) exists to convert the case to

21 Chapter 7 as conversion is in the best interests of the creditors and the estate.   Based upon

22 the Los Angeles Superior Court's statements of decision and Judgment in the

23 **"Pre-Petition Superior Court Action"**[1] (which claims and Khan's liability were

24 established pre-petition, with that Court poised to complete the 2nd phase of its damages

25 determination after the cause was submitted for decision just prior to the petition filing

26 date), Debtor's unsecured obligations to Creditor Barton exceed $4,070,081.91 including

27 compensatory and punitive damages for fraud, intentional breach of fiduciary duty and

---

28 1 *Barton v. RPost International Limited, Zafar Khan, Terrance Tomkow, et al.*, LASC
Case No. YC061581.

1

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1  conversion, etc.   In addition, the pre-petition claims of unscheduled creditors – Rpost

2  International Limited ("RIL") and shareholders of RIL and its affiliates – also render Khan

3  ineligible under Chapter 13.   As a result, Debtor does not qualify under Chapter 13 as his

4  pre-petition unsecured debt exceeds the eligibility maximum.   Under the totality of the

5  circumstances in this case (as described more fully below), the best interests of the

6  creditors and the estate warrant that the instant case be converted to Chapter 7.

7       2.      While Chapter 13's eligibility bar coupled with the extent of Debtor's actual

8  unsecured debt are sufficient to preclude Debtor's continued maintenance of a Chapter 13

9  case and to justify conversion of the case to Chapter 7 for the reasons set forth below, other

10  "indicia" of cause under 11 U.S.C. §1307(c) also exist to warrant conversion to Chapter 7.

11  Under the totality of the circumstances, any one of the facts below warrant conversion to

12  Chapter 7: **(a)** Debtor concealed and misrepresented his assets in his Schedules, **(b)** Debtor

13  has obstructed and abused the Bankruptcy process as part of a larger scheme to defraud the

14  United States Bankruptcy Court, the United States District Court (in at least the Eastern

15  District of Texas), the Los Angeles Superior Court, Creditor Barton and the myriad other

16  creditors of Debtor (both those to whom notice of this bankruptcy proceeding was given

17  and those who were not); **(c)** Debtor filed the Petition to interfere with the Los Angeles

18  Superior Court's entry of Judgment, and did so at a time when Debtor was admittedly

19  solvent (at least $310,000 in net worth, and without accounting for Debtor's shareholder

20  interests in the on-going corporate businesses (RPost International Limited ("**RIL**"),

21  RMail Limited ("**RMail**") and RPost Communications, Ltd. ("**RComm**") [which he and

22  co-debtor Terrance Tomkow control]), **(d)** Debtor's petition was filed in bad faith[2]; and

23  **(e)** Debtor's plan is non-confirmable.

24       3.      Because the Chapter 13 proceeding presently continues to allow Khan to

25  control the assets including those which he concealed and defiantly refuses to disclose to

26  the Trustee and creditors, Barton respectfully requests that this case be converted to

27  _____

28  [2] A determination of "bad faith" is not a requirement for conversion, only that "cause" for
conversion be demonstrated under Section 1307(c).  *In Re Henson*, 289 B.R. 741 (N.D.
Calif. 2003).

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1  Chapter 7 forthwith as same is in the best interests of the creditors and the estate.   As the

2  Court stated in *In Re Henson*, 289 B.R. 741 (N.D. Calif. 2003):

3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12
> "In this case, the interests at stake would be better served
> through conversion  of the case for administration by a
> Chapter 7 Trustee than through dismissal of the case.
> Conversion will place the estate in the hands of an independent
> Court-appointed Trustee, preserve such assets as exist and
> allow for potential recovery of additional ones through use
> of avoiding powers, maintain the Code's priorities among
> creditors in an orderly distribution, and permit   Creditor to
> seek exception of its claim from discharge to pursue Debtor
> outside of bankruptcy if it wishes to do so. On balance, that
> result is preferable to dismissal, which would leave all
> creditors and claimants to fend for themselves in State Court,
> with an absent Debtor and none of the avoiding powers
> provided by the Code."

13  Creditor Barton and all other creditors of Debtor will be best served by an independent

14  trustee's active involvement to secure, protect and preserve, and liquidate the myriad assets

15  for recovery by the creditors through the prompt seizure thereof and taking control of the

16  entities referenced above to ensure that the Debtor's creditors are paid and Debtor and his

17  representatives' manipulation of the legal system and subject businesses is substantially

18  curtailed, if not prevented and unwound.

19       This Motion is and will be based upon this Notice, the attached Memorandum of

20  Points and Authorities in support of the Motion, the Declaration of Patrick C. McGarrigle

21  (and Requests for Judicial Notice therein) and the Compendium of Evidence in Support of

22  the Motion (Volumes 1 and 2) filed concurrently therewith, the complete files and records

23  in this action, the oral argument of counsel and such other and further evidence as the Court

24  might deem just and proper.

25  Dated:  September 13, 2013        McGARRIGLE KENNEY & ZAMPIELLO, APC

26

27                    By:_____

28                         Patrick C. McGarrigle, Esq.
                         Attorneys for Creditor/Adv. Plaintiff Ken Barton

3

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

**TABLE OF CONTENTS**

**Page(s)**

**MEMORANDUM OF POINTS AND AUTHORITIES** ...........................................1

I.  **CONVERTING DEBTOR'S BANKRUPTCY TO CHAPTER 7 IS SUPPORTED BY CAUSE AS DEBTOR IS NOT QUALIFIED FOR CHAPTER 13 AND THE TRUSTEE'S CONTROL OVER AND LIQUIDATION OF THE DEBTOR'S INDIVIDUAL AND CORPORATE ASSETS IS IN THE BEST INTERESTS OF THE CREDITORS/ESTATE** ...........................................1

A.  **UNDERLYING FACTS** ...........................................2

1.  The State Court Fraud Decision Against Khan, et al. .................2

2.  Khan's Asset Accumulation &Concealment ......................4

B.  **AS KHAN WAS/IS INELIGIBLE TO FILE & MAINTAIN THIS CHAPTER 13 CASE AND "CAUSE" UNDER SECTION 1307(C) IS PRESENT, CONVERSION TO CHAPTER 7 IS WARRANTED** .........9

1.  The Law Re: Determining Chapter 13 Eligibility..........................9

2.  The Law Re: Other Indicia Of "Cause" For Conversion/Dismissal Under Section 1307(C)................................................10

3.  Khan Is Ineligible For Chapter 13 Case; As Such, Cause For Conversion Is Present ....................................................14

4.  Additional, Overwhelming Good Cause Exists Which Compels The Conversion Of Khan's Bankruptcy To Chapter 7 ..............17

a)  Khan's Schedules Contain Misrepresentations and Conceal Material Assets ...........................................17

b)  Despite The Trustee's Written And Oral Requests, Khan Has Defiantly Refused To Produce Records And Information Of His Assets Including The Corporate Assets That He Controls, Thereby Misusing And Abusing The Bankruptcy System.........................................................21

c)  Khan Had At Least $315,000 In Net Worth As Of The Petition Date (Independent Of The Value Of His Shares In The Rpost Companies And The Corporate Assets He Controls); The Petition Was Filed Solely To Interfere With The Pre-Petition Superior Court Action.................22

-i-

TABLE OF CONTENTS

d)   Khan's "Plan" Is Not Confirmable And Is Inequitable
Given The Substantial Claims Against Him/The Estate ..23

5.   Conversion To Chapter 7 Is Clearly In The Best
Interests Of Khan's Creditors And The Estate............................24

II.   CONCLUSION...........................................................................................25

**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

## CASES

## FEDERAL CASES

Page(s)

*Eisen v. Curry (In re Eisen),*
    14 F.3d 469(9th Cir. 1994)................................................................13

*Ekeke v. United States,*
(S.D. Il. 1991) 133 B.R. 450, 452 ....................................................10

*In re Alt,*
    305 F3d 413(6th Cir. 2002)..............................................................13

*In re Cavanagh,* 250
    B.R. 107, 114 (9th Cir. BAP 2000)..................................................14

*In Re Crittenden,*
    2012 WL 1492321(D. Montana 2012)...............................................14

*In Re Docco,*
    2010 WL 703113 (N.D. Calif. 2010) ................................................14

*In re Ferri,*
    2010 Bankr. LEXIS 1178 at *9, 2010 WL 141817 at * 3 (Bankr. D.N.M. 2010)..10

*In Re Fostvedt,*
    823 F.2d 305 (9th Cir. 1987) ......................................................9, 10

*In re Goeb,*
    675 F.2d 1386 (9th Cir.1982)......................................................13, 24

*In Re Guastella,*
    341 B.R. 908 (9th Cir. BAP 2006)..............................................10, 18

*In re Henson,*
    289 B.R. 741 (2003)...................................................................18, 24

*In re Jensen,*
    425 B.R. 105, 109-111 (Bankr. S.D.N.Y. 2010).................................11

*In re Jercich,*
    238 F.3d 1202 (9th Cir.2001).........................................................11

*In Re Keenan,*
    201 B.R. 263 (USBC SD Calif. 1996) ..........................................9, 10

*In re Leavitt,*
    171 F.3d 1219 (9th Cir. 1999)..............................................12, 13, 14

*In Re Lindsey,*
    183 B.R. 624 (D. Idaho 1995)........................................................14

TABLE OF AUTHORITIES

*In re Nash,*
   765 F.2d 1410, 1415 (9th Cir. 1985)................................................13

*In re Nelson,*
   343 B.R. 671(9th Cir. BAP 2006)...........................................9, 10

*In re Su,*
   290 F.3d 1140 (9th Cir.2002)..................................................11

*In re Sobczak,*
   369 B.R. 512, 518 (9th Cir. BAP 2007)...................................11

*In Re Wenberg,*
   902 F.2d 768(9th Cir. 1990)...................................................10

*Neary v. Padilla (In re Padilla),*
   222 F.3d 1184, 1192-93 (9th Cir. 2000)................................13

*Scovis v. Henrichsen (In re Scovis),*
   249 F.3d 975(9th Cir. 2001)...................................................10

**CALIFORNIA CASES**

*Industrial Indemnity Co. v. Golden State Co.*
   (1953) 117 Cal.App.2d 519.......................................................6

*In re Marriage of Connolly*
   (1979) 23, Cal.3d 590........................................................8, 18

**FEDERAL STATUTES**

11 U.S.C. § 101(12) .................................................................9

11 U.S.C. §109(e) ..................................................9, 10, 11, 12

11 U.S.C. § 1112(b) ...........................................................10, 11

11 U.S.C. § 1307(c).................................1, 2, 9, 10, 11, 12, 13, 17, 24

**SECONDARY SOURCES**

*8 Collier On Bankruptcy,*
   ¶1307.04 (Alan N. Resnick & Henry J. Sommer, 15th ed. rev. 2005) ...............9

*Norton Bankruptcy Law and Practice,*
   3rd Ed. § 148:1 (2012) ..........................................................11

**TABLE OF AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **CONVERTING DEBTOR'S BANKRUPTCY TO CHAPTER 7 IS SUPPORTED BY CAUSE AS DEBTOR IS NOT QUALIFIED FOR CHAPTER 13 AND THE TRUSTEE'S CONTROL OVER AND LIQUIDATION OF THE DEBTOR'S INDIVIDUAL AND CORPORATE ASSETS IS IN THE BEST INTERESTS OF THE CREDITORS/ESTATE.**

By this Motion, Barton move the Court for an order converting the instant Chapter 13 case to Chapter 7 (conversion, rather than dismissal, being in the best interests of Khan's creditors and the estate) because **(a)** the Debtor is ineligible for Chapter 13, as Debtor's pre-petition debts exceed the Chapter 13 limitation, and **(b)** as separate but additional cause for conversion, Debtor has misrepresented and concealed assets on his schedules (original and amended), has misused and defiantly refused to cooperate with the Bankruptcy process (including the Trustee's requests for specific asset documentation and information), filed the petition solely to interfere with the Superior Court entering its decision on the valuation of the common shares (held by Khan, Barton and Tomkow in RIL) (as the valuation/damages issue had been submitted to the Court pre-petition and required the Court to simply choose the value per share and multiply same by the number of Barton's Shares in RIL fraudulent stolen by Khan, et al.), and has otherwise prosecuted this Bankruptcy in bad faith having secreted away assets in the preference period and refusing to disclose same.   Khan's practice of playing fast and loose with every court he is in front of – submitting forged corporate resolutions and destroying corporate records in the State Court Action, concealing the State Court fraud decision and this bankruptcy from the United States District Court in Texas (presiding over multiple consolidated patent infringement cases (IP)) and now with this Court (by submitting misleading schedules and concealing assets) - must be stopped and conversion of this case is the first step in that direction.

Under the totality of the circumstances, Chapter 7 conversion is the appropriate measure to ensure that the creditors of Debtor are paid and that the estate, managed by a Trustee concerned about the recovery of assets for the estate and creditors (and not by the

1  Debtor whose self-interest and manipulation is the stuff of legends), realizes a substantial

2  (but otherwise never to be shared and distributed) benefit.   Debtor made the election to

3  bring these matters before the Bankruptcy Court and, as a result, he should not be rewarded

4  with a dismissal, but instead, the conversion of the case to Chapter 7 and an orderly,

5  unbiased control over and disposition of the assets should occur for the benefit of the

6  creditors and the estate without delay.

7          **A.       Underlying Facts.**

8                  **1.       The State Court Fraud Decision Against Khan, et al.**

9          Barton was a co-founder of RIL, a technology-software firm whose patents and

10  products included registered email and electronic transaction verification functionality.

11  During the course of litigation between Barton and RIL concerning RIL's failure to pay

12  some $450,000+ in compensation and expense reimbursements, Barton learned in a

13  deposition of Khan in the summer 2009 that RIL/Khan/Tomkow had secretly taken

14  Barton's 6,016,500 shares in RIL and returned them to RIL's treasury (purporting to divest

15  Barton of his near 20% equity position in the company).   Shortly thereafter, Barton

16  commenced the Pre-Petition State Court Action in January 2010 for fraud, intentional

17  breach of fiduciary duty, conversion, violations of Business & Professions Code Section

18  17200, etc.   The liability and damages phase of the trial proceeded in March/April 2012.

19  In August 2012, the Superior Court adjudged Khan, Tomkow and RIL to have committed

20  fraud, etc. including, without limitation, engaging in corporate records forgery, corporate

21  records destruction and other conduct sufficiently egregious to also warrant the imposition

22  of punitive damages against Khan and Tomkow.   Ex. 10.   The Superior Court had already

23  received extensive share and enterprise valuation evidence regarding RIL (Ex. 9);

24  however, the Superior Court initially decided (in August 2012) to award Barton the return

25  of his shares as an alternative remedy (plus $100,000 in emotional distress damages and

26  punitive damages, among other relief).   The punitive damages phase, which had been

27  bifurcated, proceeded to trial in November 2012.   At the conclusion of that phase, the

28  Superior Court, having heard sufficient evidence of Khan/Tomkow's gutting of RIL's

1   assets – through transfers of IP and cash from RIL to RMail and RComm (both then

2   newly-formed Bermuda entities which Khan/Tomkow controlled), reversed his decision

3   regarding the return of the shares and decided to proceed with additional share/enterprise

4   valuation evidence and hearings so as to award Barton the value thereof.   Declaration of

5   Patrick C. McGarrigle ("**McGarrigle Decl.**"), Para. 15; Compare Ex. 10 & Ex. 15.   The

6   Court appointed an independent expert (proposed by Khan/Tomkow/RIL) who supplied a

7   report and gave testimony regarding the valuation of the RIL shares and, inherent therein,

8   the enterprise value of RIL as of the June 2009 conversion date.   Exs. 14 & 25.   As the

9   Superior Court stated on April 4, 2013, its remaining task was to assign the value to the

10   common shares of RIL, multiply same by the number of Barton shares (to award share

11   valuation damages) and multiply same by the number of Khan and Tomkow common

12   shares in RIL to assist in the Court's punitive damages determination.   Ex. 25, p.

13   99:5-100:14.   Khan agreed that the entire matter was deemed submitted as of April 12,

14   2013 (two days before the Petition was filed).   Ex. 25, p. 102:6-7; 104:16-105:13.

15         However, on the eve of the Superior Court issuing its Revised Statement of

16   Decision awarding further damages (based on the extensive share valuation evidence the

17   Court had received) and punitive damages against Debtor, among others, Khan filed a

18   Sunday night Chapter 13 petition on April 14, 2013.   Exs. 1 & 2.   The Superior Court

19   had, all pre-petition, conducted three trial phases: liability and damages in March/April

20   2012, punitive damages in November 2012 and additional damages/valuation hearings in

21   February/early April 2013.   The Petition filing simply delayed the Superior Court entering

22   its further damages and punitive damages award based on the pre-petition conduct of

23   Khan, et al.; the Court confirmed it was "prepared to rule." Ex. 27.   On or about May 3,

24   2013, this Court issued an order lifting the automatic stay concerning the Pre-Petition

25   Superior Court Action so that the Superior Court could issue its ruling and Judgment, etc.

26   On June 18, 2013, the Superior Court issued its Ruling on Punitive Damages and Revisions

27   to Statement of Decision ("**RSOD**") finding that the common shares of RIL (Barton, Khan

28   and Tomkow all held common RIL shares) were worth $.64 per share and, multiplying said

---

3

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  sum by Barton's 6,016,500 common shares, Khan, Tomkow and RIL were liable in the

2  further sum of $3.9M for their fraud, etc. in the theft of those shares.  Ex. 15, p. 3.  On

3  August 30, 2013, the Superior Court entered its Judgment against Khan, Tomkow & RIL

4  for $3.8M, plus punitive damages against Khan and Tomkow, etc.  Ex. 17.

5      No sooner had the Superior Court entered its Judgment but Khan and Tomkow have

6  (underscoring why Chapter 7 conversion is necessary) RIL attempting, *after-the-fact*, to

7  conduct three years of RIL shareholder meetings (meetings for the years when

8  Khan/Tomkow had orchestrated the asset transfers without shareholder knowledge or

9  approval) (Ex. 24[B]).   Yet, in sharp contrast, RIL/Khan/Tomkow's attorney falsely

10  represented to the Superior Court that same day (on August 30, 2013) that RPost had

11  complied with all "corporate formalities."  Ex. 24[A], p. 29:21-23.

12              **2.      Khan's Asset Accumulation & Concealment.**

13      Debtor Khan is a shareholder, officer and director of RPost International Limited

14  ("**RIL**"), RMail Limited ("**RMail**"), RPost Communications, Ltd. ("**RComm**") (the "**RIL**

15  **Parties**").  Ex. 26, p. 21:6-13; 31:24-32:2.   RIL, formed in approximately 2000, was

16  founded by Barton, another debtor (Terrance Tomkow, Bankruptcy Case No.:

17  2:-13-bk-19712-WB), and Debtor Khan.   Barton owned 6,016,500 common shares in

18  RIL; the Superior Court determined that his shares were converted by Khan and Tomkow

19  (and RIL) in June 2009 (Exs. 10 & 15) (though, Khan/Tomkow/RIL asserted that Barton's

20  Shares had allegedly been unwound earlier – though they admittedly destroyed the

21  corporation's shareholder registries which would evidence such facts and forged corporate

22  records to cover up their theft).

23      During the period of mid-2009 through October 2010, RIL raised at least $6M from

24  investors, leaving $4M net capital (*after* deducting $2M in claimed accrued expenses) for

25  approximately the same period.  Ex. 12, p. 165:26-169:24.  <u>**Said funds have never been**</u>

26  <u>**accounted for by RIL/Khan/Tomkow and refuse to do so in these proceedings**</u>.  After

27  the purported RIL asset transfer to RComm in March 2011, RComm (with the same

28  business, assets, shareholders, officers/directors, officers, website, business plan and

1  contracts as RIL) similarly raised at least another $5M+ from March 2011 thru July 2012

2  (Ex. 26, p. 17:3-10); **Yet, RComm/Khan/Tomkow have never accounted for that**

3  **capital and refuse to do so in the proceedings.**   Similarly, as discussed below,

4  Khan/Tomkow have utilized their insider company, RMail, to seize for themselves IP

5  rights and RIL's corporate opportunities that RIL funded and were within RIL's

6  business-sphere and then sued SWIFT, Amazon/Paypal and others and then settle and

7  retain for themselves (and in secret) the proceeds from those suits and without disclosure to

8  the RIL/RComm shareholders or, thereafter, the Trustee.  Ex. 12, p. 101:19-102:20;

9  103:20-104:13; Ex. 26, p. 25:22-27:15; 28:16-23.   IP settlements typically involve cash

10  payments and royalty/licensing agreements – yet, Khan/Tomkow defiantly refused to

11  disclose the RMail settlements at all or the amount and location of the settlement proceeds

12  and terms (and bank statements) to the Trustee while concurrently and incongruously

13  claiming their shares in RMail are worthless.  Ex. 5; Ex. 26, p. 14:16-23; 16: 2-5, 9-10,

14  15-25; 21:14-25.  The corporate share assets of Khan/Tomkow (which corporate finances

15  Khan brazenly conceals so as to "support" his false representation that his shares in the

16  RPost entities are "$0") more than amply demonstrate that conversion is in the best

17  interests of the creditors and estate.

18       Yet, the success of RIL business enterprise was not something that Khan/Tomkow

19  ever wanted Barton to be a part of (as if the forgery of corporate resolutions and corporate

20  record destruction were not evidence enough of their intent to freeze Barton out of any

21  realization of the value of his equity), even if he prevailed, as he did, in the litigation.

22  Knowing that they were engaging in their fraud and that Barton would pursue and

23  ultimately did pursue them for their fraud and breaches of fiduciary duty, etc. Khan and

24  Tomkow proceeded with a series of acts (in addition to concealing and failing to account

25  for the stunning equity accumulated as noted above):

26       **(a)** They formed RMail and secretly (with no disclosure to and approval by

27  RIL's shareholders) syphoned off nearly a $1M of RIL cash in the summer of 2009/2010 to

28  put valuable IP in the control of Khan/Tomkow's insider company (RMail) (McGarrigle

---

5

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1    Decl., Para. 30 [See, Ex. 11, p. 27:5-15; 28:19-29:25; 30:15-23]);

2              **(b)** They concealed the taking of the corporate IP opportunity and diversion

3    of corporate assets from RIL to their asset-less Bermuda company RMail[3] [*Id.*];

4              **(c)** Compounding their duplicity and plan for self-aggrandizement (and again

5    with no disclosure to and approval by RIL's shareholders), they carved out for RMail's use

6    only (Ex. 29, p.2) a valuable "field of use" within the IP (IP which was purchased with

7    syphoned off RIL funds) that verifies electronic banking/sales transactions and purported

8    to exclude this valuable "field of use" from the artificial construct of "license-back" of the

9    IP to RIL (whose cash paid for the entirety of the IP in the first place); and

10             **(d)** After suing Amazon and PayPal for damages based on the alleged

11   infringement of the "carved-out" patent, caused RMail to settle with Amazon/PayPal in

12   March 2013 (some 30 days before the Petition was filed) (Exs. 21 & 22), but have refused

13   to disclose and continue to conceal the settlement amounts and settlement documents (the

14   Petition and "Amended" schedules disclose nothing regarding these IP litigations and

15   settlement) while continuing to speciously claim their interests in RMail are worthless.

16   Ex. 26, p. 14: 16-23; 16:2-5, 9-10, 15-25; 21: 14-25.   Khan also caused RIL to settle with

17   Zix Corp. days before the Petition was filed (Exs. 18-20), but has refused to disclose and

18   continues to conceal (again, the Petition and "Amended" schedules disclose nothing

19   concerning this IP litigation and settlement) the settlement sums received and the

20   settlement documents, all to frustrate and materially interfere with the Trustee/Creditor's

21

---

22   3 *Industrial Indemnity Co. v. Golden State Co.* (1953) 117 Cal.App.2d 519, 533

23   ("corporate officer or director may not seize for himself to the detriment of his company
     business opportunities in the company's line of activities which the company has an

24   interest in or a prior right to obtain and that if he seizes them in violation of his fiduciary
     duty the corporation may claim for itself all benefits so obtained by him.). Here, RIL

25   signed the NDA and was listed as the purchaser on the patent acquisition contracts until the
     last minute when Khan/Tomkow swapped in their new and admittedly asset-less entity

26   (Ex. 12, p. 104:14-20), RMail, to be the buyer (but having RIL guaranty the obligation it
     was already poised to buy for itself).   Then, after the secret swap of entities, Khan/RMail

27   secretly peeled-off of a valuable "field of use" within that very patent for itself (Ex. 29, p.

28   2) to the exclusion of RIL's shareholders/creditors (and then collecting undisclosed
     settlements with Amazon and PayPal [Ex. 21-22]).

6

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   rights and interests.   Ex. 26, p. 37:15-38:4.

2   The 2nd act in the Khan/Tomkow asset concealment and transfer charade occurred in

3   early 2011 and continues to this day.   After taking nearly $1M in cash out of RIL in

4   2009/2010 and raising more than $6M (in the name of RIL) between July 2009 and

5   October 2010, Khan and Tomkow augmented their asset transfer scheme.   In early 2011,

6   Khan and Tomkow engineered the transfer of 99% of RIL's assets to another new Bermuda

7   company, RComm, ostensibly to assist garnering new investors because, by using a new

8   company name and re-stating the share composition, new investors would not be deterred

9   from investing by the number of financing rounds RIL had undertaken in the prior 10

10   years.   RIL became RComm with a new name, but the same initial shareholders (save

11   certain common shareholders who apparently were not rolled into RComm), same officers,

12   same directors, same patents, same contracts, same website, same advisors, same counsel,

13   same offices, etc.   Even the equity raises were nearly identical:   In the 20 months before

14   the RIL to RComm transfer, RIL raised $6M in new equity at preferred share prices

15   ranging from $3.85 to $4.75 per share; In the 16 months after the RIL to RComm asset

16   transfer, RComm raised at least $5M in new equity (from late March 2011 through late

17   July 2012) at preferred share prices ranging from $5.00 to $5.75 per share.   Ex. 11, p.

18   76:24-78:20.

19   Yet, Debtor Khan incredibly asserts – while concealing the financial records of the

20   entities and failing to account for millions in investor capital – that his common and

21   preferred shares in these companies are worth "$0" or are "speculative" (Ex. 2, p. 7).   This

22   patently untenable plea (orchestrated through the artificial construction of asset transfers

23   between companies which Khan/Tomkow control overall) cries out for conversion and

24   Trustee seizure and liquidation.   For example,   (a) RComm investors are paying at or

25   above $5.75 per share for a typical interest payment preference (and with the same

26   purported re-sale restrictions as on Khan's preferred shares) (Ex. 12, p.178:5-15), but Khan

27   claims *his identical preferred shares* (183,000 of them) are worth $0; (b) the RIL

28   enterprise and shares had been valued by two different experts (Exs. 9 & 14) establishing

7

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   the common share values at $2.43 per common share with a near $100M enterprise

2   valuation or $.64 per common share at a $33M enterprise value[4], but neither of these

3   experts said the RIL shares were worth $0, nor did the Superior Court; and (c) RMail

4   settled with Amazon/Paypal in March 2013 and RIL settled with Zix Corporation in April

5   2013 (Exs. 18-22), but Khan has defiantly refused to disclose the amounts paid in the

6   preferential settlements, where the funds were deposited and/or disbursed and will not

7   provide the settlement documents, all to interfere with the bankruptcy process and the

8   Trustee/Creditors' ability to assess the availability of assets to satisfy the debts.   In short,

9   (a) as of June 2009 (and before Khan artificially dissected and transferred out RIL's assets

10   to RMail and RComm), the value of just Debtor's common shares in RIL was between

11   $3.8M and $14M, derived from a $3.85 preferred share pricing as of said date (and without

12   accounting for the $5.75 preferred share pricing as of late 2012, which causes the value of

13   the commons to have increased as well (as the value of the commons is extrapolated from

14   the enterprise value.   As the preferred share prices continued upward to $5.75 per share,

15   the value of the commons, too, increase, and therefore the value of Khan's common shares

16   also increased (See, Ex. 9 and compare 2/07 ($2.04) to 6/09 ($2.43) common share

17   valuation derived from preferred shares at $3.00 and $3.85 per, respectively); and (b)

18   Debtor's preferred shares in RComm (RIL preferred shares that were transferred and

19   exchanged into preferred shares in RComm), are worth at least the $1M (183,000 pref

20   shares x $5.75).   *In re Marriage of Connolly* (1979) 23, Cal.3d 590.

21        Between Khan's deliberate withholding of financial records, bank statements,

22   equity contributions, IP asset valuations and IP settlements and coupled with the value of

23   Khan's shares based on the determinations made the experts and the Superior Court and

24   based on Khan's own admissions, in addition to Khan's debts making him ineligible for

25   Chapter 13, Khan's assets demonstrate that the best interests of the creditors and the estate

26   will only have an opportunity to be realized vis-à-vis a Chapter 7 conversion and the

27   immediate appointment of a trustee to seize and liquidate the Khan interests in the

28

---

4  See, Exs. 9 (p. 3, Sched. 3) & 14 (Ex. 5B therein).

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   companies and marshal the corporate assets to be available for distribution or sale.

2   **B.      As Khan Was/Is Ineligible To File & Maintain This Chapter 13**
3   **        Case And "Cause" Under Section 1307(c) Is Present, Conversion To**
4   **        Chapter 7 Is Warranted.**

5        11 U.S.C. § 1307(c) allows the Court, upon a showing of cause, to convert the
6   Chapter 13 Bankruptcy case to a Chapter 7 case (or dismiss the Chapter 13) "whichever is
7   in the best interests of creditors and the estate."   Evaluating whether a Chapter 13 case
8   should be dismissed or converted is a two-step process.   Once the court determines that
9   cause exists (here, for example, ineligibility due to the amount of pre-petition debts), the
10  court must then decide between conversion and dismissal based upon the best interest of
11  the creditors.   *In re Nelson* (9th Cir. BAP 2006) 343 B.R. 671, 675.

12       **1.      The Law Re: Determining Chapter 13 Eligibility.**

13       As an overview, the maximum threshold of unsecured debt a debtor may have to file
14  and maintain a Chapter 13 case is $383,175.00, effective as of the April 1, 2013
15  adjustment.   11 U.S.C. §109(e).   If a debtor is not eligible for relief under Chapter 13,
16  that ineligibility is cause for dismissal under §1307(c).   8 *COLLIER ON BANKRUPTCY*,
17  ¶1307.04 (Alan N. Resnick & Henry J. Sommer, 15th ed. rev. 2005).

18       Under Section 109(e), the determination of the pre-petition debts is guided by
19  various statutes and case authority.   Under the Bankruptcy Code, a debt means "liability
20  on a claim." 11 U.S.C. § 101(12).   A "claim" is defined as a "right to payment, whether or
21  not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,
22  unmatured, disputed, undisputed, legal, equitable, secured, or unsecured [.]" 11 USC §
23  101(5)(A).   In evaluating the Debtor's debts for purposes of Chapter 13 eligibility, the
24  Court assesses whether the debt/claim in question is noncontingent and liquidated.   11
25  USC Section 109(e).   To that end, "[T]he case law uniformly holds that 'if all events
26  giving rise to liability occurred prior to the filing of the bankruptcy petition,' the debt is not
27  contingent." *In Re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987) (affirmed denial of C13
28  Plan where pre-petition sums were neither contingent or unliquidated); *In Re Keenan*, 201

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**
8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   B.R. 263, 264-265 (USBC SD Calif. 1996) (debtor motion requesting estimation of

2   creditor's claim was denied where claim was neither contingent ["All of the events upon

3   which liability could be imposed occurred prepetition.   Accordingly, her claim is not

4   contingent, and is not amenable to estimation under Section 502(c) on that ground."] or

5   unliquidated).   Moreover, a claim is liquidated where it is subject to "ready determination

6   and precision in computation of the amount due."   *In Re Fostvedt*, supra; *In Re Keenan*,

7   supra, at p. 265-266 (state court's determination and ability, based on the status of the

8   proceedings there, to determine the sum due renders the claim liquidated, barring

9   estimation under Section 502); *In Re Wenberg*, 902 F.2d 768 (9th Cir. 1990) (state court's

10  post-petition award of attorneys' fees and costs as part of that court's pre-petition

11  award/judgment against debtor ***constituted part of the "liquidated debt for purpose of***

12  ***determining debtor eligibility under 11 U.S.C. Section 109(e).")*** (Emphasis Added).[5]

13          **2.       The Law re: Other Indicia of "Cause" For Conversion/Dismissal**

14                  **Under Section 1307(c).**

15          For Chapter 13 cases, Section 1307(c) specifically enumerates ten non-exhaustive

16  circumstances in which a court may dismiss a case of convert it to Chapter 7.   *Ekeke v.*

17  *United States*, 133 B.R. 450, 452 (S.D. Il. 1991) ("The listed `causes' are not exhaustive,

18  nor is the court limited to the listed `causes.'").   The language in 1307(c) parallels the

19  language contained in 1112(b), which governs dismissal and conversion in Chapter 11

20  cases.   *In re Ferri*, 2010 Bankr. LEXIS 1178 at *9, 2010 WL 141817 at * 3 (Bankr.

21  D.N.M. 2010).   Section 1307(c) also requires "notice and a hearing" prior to   conversion.

22          Both 11 U.S.C. § 1307(c) and 11 U.S.C. § 1112(b) establish a two-step process for

23  considering the question of conversion or dismissal.   *In re Nelson*, 343 B.R. 671, 674 (9th

24  _____

25  5 The amount of a debtor's debt for Chapter 13 eligibility purposes under § 109(e) is
    normally determined by reference to the schedules.   *Scovis v. Henrichsen (In re Scovis)*,

26  249 F.3d 975, 982 (9th Cir. 2001).   However, the Bankruptcy Court is permitted to
    consider matters beyond the schedules in assessing the debtor's eligibility and bad faith.

27  *In Re Guastella*, *supra* at 918 (Affirmed order granting motion to dismiss for ineligibility
    under Chapter 13 and finding bad faith filing of schedules in conflict with state court

28  tentative decision in pending litigation).

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   Cir. BAP 2006) (Sections 1307(c) and 1112(b) "establish a two-step analysis for dealing

2   with questions of conversion and dismissal": (a) cause must be established, and (b) "a

3   choice must be made between conversion and dismissal based on the `best interest of

4   creditors and the estate.'"). The choice of one remedy over the other is to be made upon

5   consideration of the best interests of creditors and the estate.   11 U.S.C. § 1307(c); *In re*

6   *Jensen*, 425 B.R. 105, 109-111 (Bankr. S.D.N.Y. 2010).    **"The interests of the debtor**

7   **are not paramount. Generally, a case should be converted rather than dismissed**

8   **when there are assets available for distribution to creditors."** William L. Norton, Jr. &

9   William L. Norton III, *Norton Bankruptcy Law and Practice*, 3rd Ed. § 148:1 (2012)

10  (Emphasis Added).   In considering whether to grant a § 1307(c) conversion motion, the

11  court may consider only the best interests of the creditors and the estate; the debtor's best

12  interests cannot be considered.   *In re Sobczak*, 369 B.R. 512, 518 (9th Cir. BAP 2007).

13        In addition to ineligibility based on the sum of pre-petition debts of the debtor, there

14  are other indicia of "cause" which warrant an order granting a motion to convert and policy

15  reasons for conversion abound as well.   *First*, the policy reasons for conversion to Chapter

16  7, over dismissal, are inherent to the purpose of Section 109(e) – to protect and promote the

17  best interests of the creditors and the estate.   The Court in *In re Henson*, 289 B.R. 741

18  (2003) provided guiding analysis:

19        "If the case were dismissed with prejudice, Creditor, Zlotoff,
20        Wells Fargo Bank, the Internal Revenue Service, and anyone
        else to whom Debtor incurred a pre-petition or post-petition
21        debt would have to compete with each other for such assets as
        could be located (including whatever Debtor may have taken,
22        or had sent, to Canada). However, if the case were converted
        to Chapter 7, § 348 would apply to provide that all pre-conversion
23        creditors and claimants would receive whatever pre-conversion assets
        were available in an orderly distribution conducted by a professional
24        Chapter 7 Trustee according to the priorities fixed by the Code. With
25        respect to Creditor's judgment for willful infringement, Creditor has argued
        that such a claim would be non-dischargeable in Chapter 7 under
26        § 523(a)(6)—that may or may not be so pursuant to recent
        Case law such as *In re Jercich*, 238 F.3d 1202 (9th Cir.2001)
27        and *In re Su*, 290 F.3d 1140 (9th Cir.2002), but Creditor
28

                                              11
                    **MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   would have a chance to test its theory in Chapter 7 and, if
successful, could pursue Debtor outside of bankruptcy just

2   as if the case had been dismissed.... **Finally, a Chapter 7 Trustee
could apply § 547 and § 549 to avoid, respectively,**

3   **any pre-petition preferential transfers and unauthorized postpetition**

4   **transfers, which remedies are provided by the Code
but not available to creditors outside of bankruptcy.**

5   As noted by *Staff* (at 260): 'The standard for choosing conversion or

6   dismissal based on "the best interest of creditors and the estate" implies a
balancing test to be applied through case-by-case analysis.

7   In the end, the determination is a matter for sound judicial

8   discretion.' **In this case, the interests at stake would be better served
through conversion of the case for administration by a**

9   **Chapter 7 Trustee than through dismissal of the case.
Conversion will place the estate in the hands of an**

10  **independent Court-appointed Trustee, preserve such assets**

11  **as exist and allow for potential recovery of additional
ones through use of avoiding powers, maintain the Code's**

12  **priorities among creditors in an orderly distribution, and**

13  **permit Creditor to seek exception of its claim from discharge
to pursue Debtor outside of bankruptcy if it wishes to**

14  **do so. On balance, that result is preferable to dismissal,
which would leave all creditors and claimants to fend for**

15  **themselves in State Court, with an absent Debtor and none
of the avoiding powers provided by the Code.** The reasons

16  supporting conversion over dismissal are equally applicable

17  regardless of whether the cause to remove the case from
Chapter 13 is a bad faith filing, unreasonable and prejudicial

18  delay, or any other form of cause." (Emphasis Added).

19  As demonstrated more fully below, Khan has assets - personally and which he controls

20  through his corporations – which, when liquidated, provide a substantial source of

21  recovery for the creditors and estate.    Allowing Khan's continued control over,

22  concealment of and use of the assets to the great prejudice of the creditors and estate is

23  abhorrent to the very policy purpose behind Section 109(e) and an abuse of the bankruptcy

24  process.

25      ***Second***, additional 'cause' – beyond ineligibility due to the amount of pre-petition

26  debt – is established through a variety of indicia including the debtor's bad faith. In

27  addition to the factors specifically enumerated in Section 1307(c), a Chapter 13 petition

28  filed in bad faith may be dismissed for "cause." *In re Leavitt* (9th Cir. 1999) 171 F.3d

12

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  1219, 1224-1225; *In re Eisen* (9th Cir. 1994) 14 F.3d 469, 470.  It is well established that

2  lack of good faith constitutes "cause" to invoke the relief under Section 1307(c).[6]  The *In*

3  *Re Henson* Court further discussed the bad faith standard:  "In the Ninth Circuit, an

4  additional form of 'cause' for involuntary dismissal consists of filing a Chapter 13 petition

5  in bad faith, *see In re Eisen*, 14 F.3d 469, 470 (9th Cir.1994) ("*Eisen*"): A Chapter 13

6  petition filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. § 1307(c)

7  [citations omitted].... To determine bad faith a bankruptcy judge must review the 'totality

8  of the circumstances.' *In re Goeb*, 675 F.2d 1386, 1391 (9th Cir.1982). A judge should ask

9  whether the debtor "misrepresented facts in his [petition or] plan, unfairly manipulated the

10  Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable

11  manner." *Id.* at 1390; *In re Leavitt*, *supra*, 171 F.3d at 1224 [Debtor's initial schedules

12  undervalued assets and Debtor offered nothing to largest unsecured creditor which was

13  deemed inequitable considering Debtor's assets]; *In re Eisen*, *supra* [Chapter 13 petition

14  dismissal appropriate as having been filed in "bad faith" based in part upon debtor's

15  contradictory and misleading statements of his property interests; a factor relevant in

16  determining whether a Chapter 13 Petition has been filed in bad faith includes

17  misrepresentations of fact by debtor in his Plan or **any evidence that debtor filed his**

18  **Petition in an inequitable manner**]; *In re Alt* (6th Cir. 2002) 305 F3d 413, 421 (Chapter

19  13 petition dismissed as having been filed in "bad faith" where Debtor understated income

20  and failed to schedule tax debt that put her over the jurisdictional limit.).  "A debtor's

21  history of filings and dismissals is relevant." *In re Nash*, 765 F.2d 1410, 1415 (9th Cir.

---

22
23  6 "[W]e have held that bad faith does provide "cause" to dismiss Chapter 11 and Chapter
23  13 bankruptcy petitions...The Bankruptcy Code specifically mentions good faith in
24  Chapters 11 and 13 when it permits a court to confirm a payment plan only if it is proposed
25  in good faith.  In *[Eisen v. Curry (In re Eisen)*, 14 F.3d 469 (9th Cir. 1994),] we linked the
25  good faith requirement implicit in a Chapter 13 bankruptcy with the good faith requirement
26  for proposing a payment plan when we stated that '[t]o determine if a petition has been
26  filed in bad faith courts are guided by the standards used to evaluate whether a plan has
27  been proposed in bad faith.'...The Bankruptcy Code's language and the protracted
28  relationship between reorganization debtors and their creditors lead us to conclude that bad
28  faith per se can properly constitute "cause" for dismissal of a Chapter 11 or Chapter 13
petition..."  *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1192-93 (9th Cir. 2000).

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   1985).   Bad faith also exists where the debtor only intended to defeat state court litigation.

2   *In re Chinichian,* 784 F.2d 1440, 1445–46 (9th Cir.1986); *In Re Docco,* 2010 WL 703113

3   (N.D. Calif. 2010).   It should further be noted that a finding of bad faith does **not** require

4   fraudulent intent on the part of the Debtor.   *Leavitt, supra,* at 1224.

5        Conversion to Chapter 7 from Chapter 13 is also warranted where the Debtor has

6   not presented and cannot present a confirmable plan.   *In Re Lindsey,* 183 B.R. 624 (D.

7   Idaho 1995).   In *In Re Crittenden,* 2012 WL 1492321 (D. Montana 2012), the Bankruptcy

8   Court iterated the test for determining whether a Chapter 13 plan was submitted in good

9   faith:

10        "In *Leavitt,* 171 F.3d at 1224, the Ninth Circuit held that in
          determining whether a chapter 13 plan was proposed in good

11        faith, a bankruptcy court should consider (1) whether the
          debtor misrepresented facts in his or her petition or plan,

12        unfairly manipulated the Code, or otherwise filed his or her

13        petition or plan in an inequitable manner; (2) the debtor's
          history of filings and dismissals; (3) whether the debtor

14        intended to defeat state court litigation; and (4) whether
          egregious behavior is present. See also *In re Cavanagh,* 250

15        B.R. 107, 114 (9th Cir. BAP 2000).   After considering the
          *Leavitt* factors and the evidence in this case, the Court concludes

16        that conversion of the case to Chapter 7 is in the best interests of
          creditors and the estate."

17

18   Under anyone of the above standards, an order converting Khan's case to Chapter 7 is also

19   supported by good cause beyond Khan's patent ineligibility for Chapter 13 relief.

20        **3.    Khan Is Ineligible For Chapter 13 Case; As Such, Cause
                   For Conversion Is Present.**

21

22        *First*, Barton's claim against Khan – documented through a series of pre-petition

23   and post stay-being-lifted orders and Judgment – is and was non-contingent and liquidated

24   as of the petition filing date.   As such, because the Barton claim exceeds $4M against

25   Khan, Khan is ineligible for Chapter 13 and conversion to Chapter 7 is warranted.

26        The history of the Pre-Petition State Court Action is not subject to any good faith

27   dispute by Khan.   See, Section I(A)(1) above.   Here, as of April 12, 2013, pre-petition,

28   the Superior Court has already adjudged (in August 2012) Khan to have committed fraud –

     corporate resolutions forged (cutting and pasting Barton's signatures on 'back-dated'

                                              14

1   resolutions designed to strip Barton of his shares in RIL), corporate shareholder registries

2   destroyed (to hide the evidence of Barton's share ownership), etc., and awarded damages

3   and the return of Barton's Shares.   The Court had conducted a three day punitive damages

4   phase trial and, thereafter, having decided to issue share value damages rather than what

5   would have been (due to the asset transfers by Khan and Tomkow from RIL to

6   RMail/RComm) the inequitable return to Barton of shares in an asset-gutted RIL,

7   conducted several additional trial hearings regarding share valuation damages and

8   commissioned and received a valuation report from an independent expert.   The final step

9   for the Court was "arithmetic":   Pick the common share value (the Court chose the [Khan

10  suggested] independent expert's value) and multiply it by Barton's 6,016,500 common

11  shares and publish his share damages award (and, for punitive damages consideration,

12  multiply the same per common share value by the Khan and Tomkow common shares as

13  part of the Court's net worth evaluation).   Ex. 25, p. 100:2-14.

14         Yet, just days after the cause was submitted for the Court to do just that, Khan filed

15  his midnight petition.   Hence, Khan knew, at the time of his Petition filing, that he would

16  not meet the Chapter 13 threshold because the Superior Court was poised to issue its

17  further damages award, which was readily determinable by the Court as all the evidence

18  (testimonial and documentary) had been introduced to the Court over a 12 month period.

19  Underscoring the improper motive for the petition filing, Khan did not seek additional time

20  to file his Chapter 13 plan; instead, he rushed to do so ahead of the Superior Court's RSOD

21  to leave the false impression that Khan's unsecured debt somehow was at a level that

22  qualified him for Chapter 13 status.   In mid-June 2013, the Superior Court issued its

23  Revised Statement of Decision establishing Khan's liability to Barton at over $4M (and, by

24  virtue of the Court's $.64 per common share value conclusion, Khan's own common shares

25  in RIL could then be valued at more than $3.9M).   Thereafter, the Superior Court's

26  Judgment was entered on August 30th, further affirming that Khan's indebtedness for

27  fraud, intentional breach of fiduciary duty, conversion exceeds $4M.   Under the facts and

28  controlling law, any plea by Khan that Barton's claim was anything but non-contingent and

---

15

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   liquidated would be folly.

2   **Second**, and independent of Barton's claims against Khan, the claims of other

3   creditors arising from pre-petition wrongful acts of Khan, Tomkow, et al. – including

4   creditors that Khan did not schedule – render Khan ineligible for Chapter 13.   ***First***, RIL

5   has a claim of at least $1M against Khan and Tomkow for defense costs and, separately

6   though related, for the full amount (for indemnity) of the liability of RIL to Barton in the

7   Pre-Petition State Court action (liability which derives from Khan/Tomkow's (and others)

8   pre-petition fraud and breaches of fiduciary duty).   Pursuant to RIL's Bye-Laws (Ex. 8,

9   Para. 77.3), Khan and Tomkow were required to post bonds for the benefit of the

10   corporation as security for the fees and costs incurred by RIL in defending them in the

11   Pre-Petition State Court Action.   At the 341A hearing on May 28, 2013, Khan admitted

12   that he did not post that bond (and falsely claimed RIL, hit with the near $4M judgment

13   because of Khan, et al.'s fraud, is not a creditor in his case), a pre-petition wrongful act that

14   left and now leaves RIL as a creditor for the defense expenses and for the Barton Judgment.

15   Ex. 26, p. 34:8-35:8.   Had Khan posted the bond as required (and for at least the value of

16   the insurance policy which was depleted defending Khan/Tomkow and which would have

17   been available to RIL to pay some portion of the Judgment), RIL would then at least have

18   had a source of recovery (for fees/costs and/or indemnity) as RIL's $1M D&O policy was

19   fully exhausted in the litigation.   Ex. 28.   Clearly, the obligation to post the bond was a

20   pre-petition event (which should have been done part and parcel of RIL commencing the

21   defense of Khan and Tomkow when the Barton lawsuit was filed in January 2010.   Yet,

22   and underscoring their insider-control of RIL, Khan and Tomkow neither posted the bond

23   nor did they list RIL as a creditor and, as such, failed to give RIL's shareholders notice of

24   the bankruptcy proceedings as well.   Failing to schedule RIL as a creditor and RIL's

25   pre-petition claim of at least $1M (if not the full $4M due on the Barton Judgment) also

26   render Khan Chapter 13 ineligible.

27   ***Third***, the myriad other proofs of claim filed against Khan in the Chapter 13 case

28   reflect pre-petition claims in the tens of millions.   The Court's docket reflects proofs of

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1    claim – separate from Barton's POC – well beyond the Chapter 13 threshold (in an order of

2    magnitude far in excess of 10).

3        Hence, pursuant to Section 1307(c), because the pre-petition claims against Khan

4    exceed the maximum debts for Chapter 13 eligibility, Barton's Motion herein is well taken

5    and conversion to Chapter 7 should be ordered.   For the reasons set forth in Section B(3)

6    below, conversion is most definitely in the best interests of the creditors and estate of Khan

7    and an independent trustee should be immediately appointed to seize the assets and take

8    immediate steps to protect the interests of the creditors and the estate therein.

9

10       **4.    Additional, Overwhelming Good Cause Exists Which Compels
         The Conversion of Khan's Bankruptcy To Chapter 7.**

11       In addition to Khan's ineligibility, this Court can rely on any number of other

12    indicia of "cause" to grant the instant Motion and convert Khan's case to Chapter 7.

13       **a)    Khan's Schedules Contain Misrepresentations and
         Conceal Material Assets.**

14

15       Ostensibly, since 2000, Debtor's entire livelihood and economic success is tied to

16    his ownership and control of the RPost Companies – RIL, RMail and RComm and their

17    affiliates and subsidiaries around the world.   However, to mislead the Court and Trustee,

18    Khan has incredibly scheduled his shares in these three companies as valued at $0 and

19    concealed and continues to conceal the financial details and documents of the RPost

20    companies so as to interfere with the Trustee/Creditors' evaluation of what is already

21    known to be Khan's bogus "$0" share valuations listed in his schedules.

22       *First*, Khan's RIL shares, at least as of June 2009 (and before Khan and Tomkow

23    orchestrated the transfers of cash and IP out of RIL and usurped RIL's IP opportunities) are

24    valued at at least the same $.64 per common share as the Superior Court determined.

25    With at least 6M common shares in RIL, Khan's RIL share interest is worth at least $3.8M.

26    That share value, moreover, does not account for at least $4M ($6M raised less the

27    purported "accrued" expenses) in capital raised in RIL from July 2009-October 2010

28    which is unaccounted for in RIL's own financial records and which Khan continues to

     refuse to account for.   *Second*, Khan's preferred shares (which were in RIL and then were

                                           17
     **MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   apparently rolled into the reconstituted in RComm) are worth at least $1.035M; Khan

2   admitted that RComm was selling preferred shares (with all the restrictions Khan will

3   complain about in an Opposition) for $5.75 per preferred shares.   With 183,000 preferred

4   shares in his name, Khan's preferred shares in RComm are worth at least $1.045M.   *In Re*

5   *Marriage of Connolly*, *supra*.   Hence, Debtor's filing of his original schedules and

6   amended schedules both concealing the above-referenced valuations and then

7   misrepresenting that the value as "zero" constitute sufficient evidence of bad faith to justify

8   conversion (*In Re Gaustella* and *In Re Henson* ) and underscore Debtor's efforts to

9   manipulate and misuse the Bankruptcy proceedings.

10        *Third*, Khan does not account for the RComm capital accumulation (above

11   purported "accrued" expenses) of at least $5M from March 2011 through July 2012 and

12   thereafter.   Khan has at least 750,000 common shares in RComm; if RComm has

13   additional equity (cash) above expenses and liabilities of several million dollars (a fair

14   conclusion but one which Khan's non-disclosure and obstruction is designed to thwart the

15   final determination thereof), then Khan's common shares have value (independent of the

16   enterprise value being determined).   *Fourth*, with respect to his RMail shares, Khan

17   would have the Court believe that the RIL's shareholders were informed of fully and

18   approved Khan/Tomkow's **(a)** transfer of $750,000-$1M from RIL to RMail for the

19   purpose of allowing RMail to "buy" two very valuable, core patents (the "**219/334**

20   **Patents**"), **(b)** secret set-up of an insider Bermuda company that Khan/Tomkow would

21   only allegedly be 10% shareholders of but Khan (who admits that he controls all of the

22   RPost Companies purse strings and is the only person able to answer about the company's

23   business affairs [Ex. 26, p. 25:22-27:25; 28:16-23] has allowed a purported salesman from

24   Costa Rica to own and control 90% of the entity that controls the key patents to RIL's

25   business, while the investors in RIL and, later RComm, have no interest in RMail or the IP

26   (and no say in the terms that Khan imposes for this "license back" of only a part of the IP

27   which was acquired using RIL's funds/guaranty); **(c)** plan, while purporting to "license

28   back" to RIL the patents bought with RIL's funds, to carve out from the patent – for their

18

1  own aggrandizement – a field of use within the 219/334 Patents that verifies electronic

2  banking and on line7 sales transactions and then secretly (with no disclosure to and

3  approval by the RIL/RComm shareholders) prosecutes actions and retains the settlements;

4  (**d**) settle, in March 2013, just these "carve-out" patent infringement claims against

5  Amazon/PayPal but refuse to disclose the payments and other consideration received by

6  RMail (or Khan, etc.) and refuse to disclose the settlement agreement, notwithstanding

7  their occurrence within 90 days of the filing; and (**e**) settle, in April 2013 with the press

8  announcement the day after the petition filing, that "RPost" has settled another IP action

9  against Zix Corporation (a competitor in the email verification platform), but refuse to

10  disclose the payments and other consideration received by the RPost entity(ies) and refuse

11  to disclose the settlement agreement.   And, as noted below, Khan has defiantly refused to

12  produce the bank statements and other financial information for the RIL/RComm/RMail

13  entities so that the Trustee and creditors could assess the duplicitous $0 share valuations

14  that Khan has represented under oath.   If RMail received $1M from Amazon/PayPal,

15  Khan's shares – and there is little doubt that Khan owns (and/or beneficially owns and

16  controls) far more than 5% of RMail and that the 90% "majority" purported shareholder is

17  a strawman (since Khan/RIL set up the corporation and bank account for the shareholder's

18  company in Belize and used Khan's prior business name – Momentex – as the shill for his

19  _____

20  7 Imagine the number of electronic banking and sales transactions that occur every day in

21  just the U.S. and then imagine what the value of the patent is that allows for verification of
   those transactions.   Even RPost's press releases tout that its patents cover the tracking of

22  "billions" of business advertising emails (Ex. 6, Ex. 6 therein).   Hence, it is no surprise
   then that Khan refuses to provide the Trustee and Creditors with the settlement amounts

23  and settlement documents in the SWIFT and Amazon/PayPal settlements because those
   sums are likely sufficient to make a substantial contribution towards the payout of the

24  claims against Khan, including on Barton's Judgment.   **What is alarming, particularly**

25  **given the recent NSA matters in the news, is that an adjudged fraud and corporate**
   **document forger, etc. (Khan) has the ability – through the RPost registered email**

26  **product which acts as a clearinghouse for all emails using its services – to view and**
   **retain the emails and attachments thereto of government agencies, law firms,**

27  **insurance companies, etc. and do so without any accountability or safeguards to**
   **ensure secrets are not being divulged, mis-used or worse.   Placing these assets in the**

28  **hands of a Trustee is all the more compelling under these circumstances.**

19

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   activities) – have substantial value (independent from the value that the IP itself has which

2   Khan's obstruction also seeks to prevent this Court/The Trustee/Creditors from learning

3   about and evaluation).

4       The Federal District Court in the Eastern District of Texas has viewed Khan's

5   duplicity in that Court – concealing these bankruptcy proceedings and the fraud

6   determination - as grounds to stay the IP litigation which Khan his prosecuting for

7   RIL/RMail/RComm.   Ex. 23.   Conversely, by concealing the IP litigation, settlements

8   and cash/equity received from the scheduled, Khan continues to play fast and loose, telling

9   one Court only what Khan wants it to know and telling this Court only what Khan wants to

10  reveal to suit the purpose of this sham Chapter 13 filing and obstructing the discovery and

11  consideration of assets that impact the value of the shares in the RPost companies.

12      Khan has **(1)** concealed assets which he controls through the RPost Entities

13  (including the RMail entity [that Khan, Tomkow and a strawman "salesman" own – to the

14  exclusion of the several hundred RIL/RComm investors] that now controls all of the

15  intellectual property after a series of inter-company transfers) including, without

16  limitation, valuable settlements between, for example, RMail and Amazon/PayPal (entered

17  into just a month before the Petition Filing Date) with the unaccounted for proceeds being

18  distributed to Khan's offshore (Belize, Cayman Islands and/or Bermuda) accounts while

19  Debtor has feigned an inability or lack of recollection as to the consideration paid by

20  Amazon/PayPal when questioned at the 341A hearing; **(2)** concealed the other extensive

21  intellectual property lawsuits being litigated in the Eastern District of Texas, which legal

22  proceedings have substantial value to the estate and Khan's shares in the corporations; and

23  **(3)** has provided patently evasive and non-responsive "answers" to asset and liability

24  inquiries by the U.S. Trustee and Creditors' counsel and has failed to comply with the

25  Trustee's requests (Ex. 5; Ex. 26, pp. 16, 16 & 21) for shareholder lists and capital

26  contributed, all banking information (accounts and statements) for all of the RPost entities

27  in the U.S. and abroad (of which there are nearly two dozen per RPost's own website [Ex.

28  6, {Exs. 5 & 6 therein}) and copies of the settlement agreements with Amazon/PayPal and

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  Zix Corporation (and the records tracing the proceeds from these March/April 2013

2  settlements – none of which were disclosed on the Debtor's schedules, original or

3  amended.  Exs.1, 2, 3 & 7.

4              **b)**      **Despite the Trustee's Written And Oral Requests, Khan**

5                           **Has Defiantly Refused To Produce Records And Information Of His Assets Including the Corporate Assets**

6                           **That He Controls, Thereby Misusing and Abusing The Bankruptcy System.**

7        Khan's evasion and defiant refusal to provide the Trustee and Creditors with asset

8  information and supporting documentation is in and of itself an abuse of the Bankruptcy

9  process and sufficient 'cause' for conversion.   At the 341A hearing on May 28, 2013 and

10  in the Trustee's subsequently filed objections, the Trustee requested **(a)** all bank statements

11  and all the financial records of the corporate entities; **(b)** complete lists with contact

12  information of the shareholders of the corporations – RIL, RComm and RMail, the capital

13  paid in by each shareholder and where that capital was deposited and when and where the

14  funds are now; and **(c)** the settlement agreements that were entered into in the 45 days

15  before the Petition was filed including, without limitation, settlements with Amazon,

16  PayPal and Zix Corporation and where those settlement funds were received and

17  distributed.    Khan defied the Trustee, failing to produce the required information and

18  documentation.[8]   Khan's fast and loose repertoire with the facts and the obligation to

19  speak fully and truthfully is not limited to his Petition filing here.   While hurriedly

20

21        8 Instead, and in sharp contrast to a debtor who is compliant, what Khan did produce was

22  900 pages of largely uninformative tax returns and then a summary cover sheet with
     redacted banking institutions used by each RPost entity (though not represented as

23  complete), **but no bank statements whatsoever and no accounting for the $6M in**

24  **capital RIL raised from July 2009 through October 2010 or for the minimum $5M in capital RComm raised from March 2011 through July 2012 (or the millions raised**

25  **thereafter).   Khan did not produce the RIL/RComm/RMail shareholder**

26  **information and contacts, the capital contribution amounts, dates of the capital contributions and in which bank's accounts for which entities the funds were**

27  **deposited.   And, Khan refused to produce the settlement agreements entered into in March and April 2013 with Amazon, PayPal and Zix corporation or account for the**

28  **proceeds of the settlements, the accounts the settlement funds were deposited in and where the funds were distributed to therefrom.**

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1  attempting to settle out the IP lawsuits Khan was pursuing in the names of

2  RIL/RComm/RMail in the U.S. District Court in the Eastern District of Texas, Khan and

3  his counsel there concealed his bankruptcy and the Superior Court fraud determination

4  from the judge presiding over said IP litigation.   The Federal Court there has since issued

5  a stay of proceedings (issued just 2 days before the trial was to begin), underscoring the

6  Court's rightful concern about the relationship between Debtor's fraud and bankruptcy and

7  the disposition of corporate assets.   As safeguarding the interests of the estate and

8  creditors is the paramount consideration, Khan's abuse of the bankruptcy process and

9  deliberate non-compliance should not be countenanced.

10

11          c)       **Khan Had At Least \$315,000 In Net Worth As Of The**

**Petition Date (Independent of The Value of His Shares In**

12  **The RPost Companies And The Corporate Assets He**

**Controls); The Petition Was Filed Solely To Interfere With**

13  **the Pre-Petition Superior Court Action.**

14       Without even disclosing or factoring in his shares in and the assets of the RPost

15  Companies he controls as an officer/director/shareholder (Khan being the signatory on all

16  the entities bank accounts), at the time of the Petition filing, Khan has admitted to the

17  Superior Court that his net worth was at least \$315,000.00.   Ex. 16, p.10:15-18.

18  Moreover, even the initial \$100,000.00 awarded to Barton was not sufficient to put Khan's

19  net worth in the negative or justify the instant Petition filing, for one simple reason: <u>Khan</u>

20  <u>represented to the Superior Court that RIL, not Khan, had set aside \$100,000 to pay that</u>

21  <u>portion of the Superior Court's award in the initial Statement of Decision.</u>   Ex. 11, p.

22  86:19-24; Ex. 13, p. 45:20-25.   Further, Khan concedes that all of his credit card bills were

23  being paid by RIL/RComm (Ex.11, p. 6:11-23), rendering meritless on its face any

24  assertion that Khan faced credit card debt of any significance not being covered by the

25  corporations he controls.

26       Instead, what is crystal clear is that Khan's midnight Petition was filed the weekend

27  after the Superior Court (with acknowledgment by Khan's state court counsel) determined

28  that the matter was submitted for further decision effective April 12, 2013.   Ex. 25. p.

102:6-7, 104:16-105:13.   Here, Khan filed the Petition just following the close of

1   evidence in the Pre-Petition Superior Court Action on Sunday, April 14th, and while that

2   Court was ready to issue its monetary award after more than 1 year of trial activities (three

3   trial phases); Khan then quickly filed his purported Chapter 13 Plan (Ex. 4) before the

4   Superior Court issued its further Statement of Decision and suggested to this Court that his

5   liability in that action was merely $100,000.     After the stay was lifted, the Superior Court

6   issued its RSOD 3 months ago but Khan and his counsel have refused to withdraw the inapt

7   "plan" or convert this case, have presented no other plan (and cannot do so) and continue to

8   propagate the fraudulent schedules that conceal the corporate assets (and, hence, share

9   values), all to the prejudice of the creditors and the estate.   Khan used the Petition filing to

10  attempt to suggest that his liability was only $100,000 (putting aside that he represented

11  that RIL would pay that sum) and rushed to submit a Chapter 13 plan before the Superior

12  Court issued its RSOD establishing its findings regarding the value of common shares

13  which necessarily include the value of Khan's 6M common shares in RIL.   The Petition

14  was filed, therefore, as part of Khan's plan to create a false impression before this Court

15  and the Trustee and his failure to withdraw same underscores the improper purpose of the

16  Petition filing and continued case prosecution by Khan.

17       Only a Chapter 7 conversion will rectify Khan's charade and allow the appointment

18  of an independent Trustee to marshal the assets and provide for their orderly sale and

19  distribution to satisfy the creditors and the estate; in sharp contrast, Khan has demonstrated

20  a deliberate disregard for the authority of the Courts and an unchecked willingness to say

21  anything to any court and conceal the material information that a debtor acting in good

22  faith would have long ago disclosed in full and, at worst, disclosed when called out by the

23  Chapter 13 to do so.

24              **d)    Khan's "Plan" Is Not Confirmable And Is**
                        **Inequitable Given The Substantial Claims Against**
25                      **Him/The Estate.**

26       Even assuming *arguendo* that Khan's Chapter 13 ineligibility and other "cause"

27  does not somehow compel conversion and his bad faith in filing and prosecuting this

28  Chapter 13 case were not rampantly evident, Khan's failure to account for, via submission

---

23

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  of an amended plan, Barton's liquidated fraud claim (or the claims of the other creditors)

2  and to present any payment plan concerning same is considered "bad faith" under Section

3  1307(c)(1).   *In re Goeb* (1982) 675 F2d 1386 [Court can consider lack of repayment of

4  unsecured claims in 'bad faith' analysis]).   The deliberately hurried plan – derived from

5  schedules which conceal and mislead regarding Khan's assets and which blatantly omits

6  any reference to the other pre-petition claims of RIL and other shareholders of the RPost

7  Companies and attempts to avoid the Barton Judgment – could not be confirmed from

8  either an undisclosed asset or misrepresented debt perspective.   The instant plan was

9  presented in bad faith and is not confirmable and, therefore, conversion of the case to

10  Chapter 7 is warranted.

11      **5.      Conversion to Chapter 7 Is Clearly In The Best Interests of
12           Khan's Creditors And The Estate.**

13      Under controlling law and applicable principles, conversion of Khan's Chapter 13

14  case to a Chapter 7 case is undoubtedly and undeniably in the best interest of all of the

15  creditors and the estate.   Chapter 7 is the only equitable method by which – for the

16  administrative, procedural and substantive reasons articulated in *Henson* – all of Khan's

17  creditors have the best opportunity to receive the most amount of, if not all of, the sums due

18  from him.   Khan has manipulated and concealed assets (despite opportunities to reverse

19  his duplicity), has secreted away the undisclosed assets (IP litigation settlements, for

20  example), defiantly refused to comply with the Trustee's documentary and information

21  requests at the 341A hearings and in its objections, filed the Chapter 13 case for an

22  improper purpose involving the Pre-Petition State Court Action, and has played and

23  continues to play fast and loose with the Courts.

24      Debtor's control over the RPost entities (and his common and preferred shares

25  therein) reflect an asset base that, upon Chapter 7 liquidation and assuming no waste or

26  other wrongful acts undertaken by or at the direction of Debtor concerning said assets, will

27  be sufficient to pay movant and all unsecured creditors that which they are owed in full and

28  cover the costs incurred by the trustee and his/her employed professionals.   Conversion of

Debtor's Bankruptcy case to Chapter 7 with the Trustee thereupon assuming managerial

24

1   control (and employing such professionals in connection therewith) is in the best interests

2   of the creditors[9] and, further, to prevent Debtor's continuing fraud upon this Court, the

3   creditors and the judicial system in other myriad jurisdictions.

4   **II.   CONCLUSION.**

5       Khan does not qualify for Chapter 13 and, on that ground alone, conversion to

6   Chapter 7 is required and, given the substantial assets under Khan's control and in his

7   possession, is in the best interests of the creditors and the estate.   In addition, conversion

8   of this case to a Chapter 7 case is supported by cause as Khan's petition and schedules have

9   concealed and misrepresented assets, Khan has subverted the Bankruptcy process, Khan

10   (with admitted net worth in excess of $310,000 (without even accounting for his shares and

11   assets under control in the RPost entities)) filed the Petition to interfere with the

12   Pre-Petition State Court Action (so as to attempt to have a "plan confirmed" before the

13   Superior Court's final judgment damages award was issued), Khan has no confirmable

14   plan and the best interests of the creditors and estate are overwhelming protected vis-à-vis

15   a conversion to Chapter 7.

16       Debtor Khan's fraud before the Los Angeles Superior Court, the US District Court

17   in Texas and now this Court is irreconcilable with the maintenance of the Chapter 13 case

18   and the avoidance of a Chapter 7 conversion.   Barton's Motion is well taken and should be

19   granted.   A Chapter 7 trustee should be appointed forthwith and a restraining order

20   imposed on Debtor from taking any actions regarding his assets pending further order of

21   this Court.

22   Date:   September 13, 2013          McGARRIGLE, KENNEY & ZAMPIELLO, APC

23                                       By: _____

24                                           Patrick C. McGarrigle, Esq.
                                             Michael J. Kenney, Esq.
25                                           Attorneys for Creditor/Adversary Plaintiff
                                             Kenneth Barton

26   _____

27   9 Upon conversion, Barton requests that the Court deem Barton's Adversary Complaint,
     filed on July 26, 2013 (and Debtor's answer thereto), as filed in the converted Chapter 7
28   case (and that such administration also apply to the other adversary complaint filed in the
     Khan bankruptcy).

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

### DECLARATION OF PATRICK C. MCGARRIGLE

I, Patrick C. McGarrigle, declare:

1.       I am an attorney, duly licensed to practice before this Court, and the principal McGarrigle, Kenney & Zampiello, APC, counsel for Creditor/Adversary Plaintiff Kenneth Barton (**"Barton"**).   The following is based upon my personal knowledge and, if called upon, I could and would competently testify to the truth thereof.

2.       Attached to the accompanying Compendium of Evidence as Exhibit "1" and incorporated fully herein by this reference is a true and correct copy of the Chapter 13 Bankruptcy Petition (the **"Petition"**) filed by Debtor Zafar Khan (**"Khan"** or **"Debtor"**) on April 14, 2013 with the United States Bankruptcy Court, Central District.

3.       Attached to the accompanying Compendium of Evidence as Exhibit "2" and incorporated fully herein by this reference is a true and correct copy of Khan's Summary of Schedules, filed with this Court on April 29, 2013, regarding his Petition in this Bankruptcy case.

4.       Attached to the accompanying Compendium of Evidence as Exhibit "3" and incorporated fully herein by this reference is a true and correct copy of Khan's Amended Schedules, filed with this Court on May 3, 2013, regarding his Petition in this Bankruptcy case.

5.       Attached to the accompanying Compendium of Evidence as Exhibit "4" and incorporated fully herein by this reference is a true and correct copy of Khan's "Chapter 13 Plan," filed with this Court on April 29, 2013.

6.       Attached to the accompanying Compendium of Evidence as Exhibit "5" and incorporated fully herein by this reference is a true and correct copy of the Chapter 13 Trustee's Objections to Khan's Chapter 13 Plan, filed with this Court on May 30, 2013.

7.       Attached to the accompanying Compendium of Evidence as Exhibit "6" and incorporated fully herein by this reference is a true and correct copy of Barton's Objections to Khan's Chapter 13 Plan, filed with this Court in May 2013.

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

8.      Attached to the accompanying Compendium of Evidence s Exhibit "7" and incorporated fully herein by this reference is a true and correct copy of Khan's Amended Schedules filed in this Bankruptcy Case on or about June 28, 2013.

9.      Attached to the accompanying Compendium of Evidence as Exhibit "8" and incorporated fully herein by this reference is a true and correct copy of the Bye-Laws of Rpost International Limited ("RIL"), which RIL produced (through Khan) to my office in approximately January 2006.

10.      Attached to the accompanying Compendium of Evidence as Exhibit "9" and incorporated fully herein by this reference is a true and correct copy of the common share valuation report of Jaime d'Almeida of Duff & Phelps concerning the value of the common shares of RIL as of June/July 2009, which report I moved into and which the Los Angeles Superior Court admitted into evidence in the trial of *Barton v. RPost International Limited; Zafar Khan; Terrance Tomkow; et al.*, LASC Case No. YC061581 (the "**Pre-Petition Superior Court Action**").      Duff & Phelps concluded, based on the then $3.85 per preferred share pricing of RIL shares sold in May/June 2009 and utilizing the back-solve method, that RIL's enterprise value was $100M and the common share value (per common share) was $2.42 per common share.

11.      Attached to the accompanying Compendium of Evidence as Exhibit "10" and incorporated fully herein by this reference is a true and correct copy of the Los Angeles Superior Court's August 3, 2012 Statement of Decision (the "**LASC SOD**") in the Pre-Petition Superior Court Action, following the first (liability) phase of the trial therein.

12.      Attached to the accompanying Compendium of Evidence as Exhibit "11" and incorporated fully herein by this reference is a true and correct copy of excerpts of the November 20, 2012 transcript which was Day 1 of the punitive damages phase of the trial in the Pre-Petition Superior Court Action.

13.      Attached to the accompanying Compendium of Evidence as Exhibit "12" and incorporated fully herein by this reference is a true and correct copy of excerpts of the

2

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   November 21, 2012 transcript which was Day 2 of the punitive damages phase of the trial

2   in the Pre-Petition Superior Court Action.

3        14.    Attached to the accompanying Compendium of Evidence as Exhibit "13"

4   and incorporated fully herein by this reference is a true and correct copy of excerpts of the

5   November 26, 2013 transcript which was Day 3 of the punitive damages phase of the trial

6   in the Pre-Petition Superior Court Action.

7        15.    Attached to the accompanying Compendium of Evidence as Exhibit "14"

8   and incorporated fully herein by this reference is a true and correct copy of the report of the

9   expert offered by RIL to the Los Angeles Superior Court and appointed thereupon by said

10  Court as an independent valuation expert, Dr. Paul Wazzan, dated March 8, 2013, which

11  report was submitted directly to the Court and all counsel (including myself) pursuant to

12  Court Order.   Dr. Wazzan concluded, also based on the then $3.85 per preferred share

13  pricing of RIL shares sold in May/June 2009 and utilizing the back-solve method (but

14  utilizing two different inputs than Duff & Phelps, that RIL's enterprise value was $33M

15  and the common share value (per common share) was $.64 per common share.

16       16.    In the Pre-Petition Superior Court Action, the Superior Court issued its SOD

17  following the liability phase (which initially awarded Barton the return of his shares in RIL

18  which had been procured by RIL/Khan/Tomkow through forgery and fraud and thereafter

19  converted) and found that a punitive damages phase would proceed.    After a period of

20  punitive damages discovery, the punitive damages phase of the trial proceeded on

21  November 20, 21 and 16, 2012.   At the conclusion of that trial, on November 26, 2012, the

22  Court concluded that, because of the asset transfers by Khan and Tomkow from RIL to

23  both RMail and RComm, the return to Barton of his shares would not be equitable or just;

24  the Court then proceeded to reconsider and revisit the award of damages and the

25  determination of the value of RIL and its common shares as of a June 2009 conversion

26  date.    Following further stipulated to meetings between the Court and the parties'

27  experts, the Court obtained proposed third party experts from which the Court to choose

28  and appoint as the Court's independent expert under the California Code of Civil

3

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  Procedure.   The Court selected the independent expert preferred by Khan/Tomkow/RIL,

2  Dr. Paul Wazzan, who thereafter reviewed materials and reports from the parties' experts,

3  issued his own report and submitted to examination before the Court on April 4, 2013 and

4  provided a supplemental report as of April 12, 2013, at which point the parties – Barton and

5  RIL/Khan/Tomkow agreed that the case was then deemed submitted for decision (which

6  the Court advised all parties that it was prepared to promptly proceed to do).

7       17.      Based on Khan's admissions in the Pre-Petition Superior Court Action,

8  Khan has 6,016,500 common shares in RIL but has also since indicated it is 6M shares.

9       18.      Attached to the accompanying Compendium of Evidence as Exhibit "15"

10 and incorporated fully herein by this reference is a true and correct copy of the Los Angeles

11 Superior Court's Punitive Damages Award and Revisions to Statement of Decision, dated

12 June 18, 2013.

13      19.      Attached to the accompanying Compendium of Evidence as Exhibit "16"

14 and incorporated fully herein by this reference is a true and correct copy of excerpts of

15 Khan's Motion to Reduce Punitive Damages filed on or about June 28, 2013 in the

16 Pre-Petition Superior Court Action, wherein Khan admits that his net worth is

17 $310,000.00.

18      20.      Attached to the accompanying Compendium of Evidence as Exhibit "17"

19 and incorporated fully herein by this reference is a true and correct copy of the "Judgment

20 After Court Trial" entered by the Court and filed on August 30, 2013 in the Pre-Petition

21 Superior Court Action.

22      21.      Attached to the accompanying Compendium of Evidence as Exhibit "18"

23 and incorporated fully herein by this reference is a true and correct copy of RIL's Federal

24 court Complaint in the Eastern District of Texas entitled *RPost International Limited v. Zix*

25 *Corporation*, Case No. 2:11-cv-00064-TJW-CE, filed on January 31, 2011 (the "**Zix**

26 **Action**").   The Zix Action was one of several alleged patent infringement actions filed by

27 RIL/RMail/RComm against national and multi-national corporations conducting business

28 in the email and electronic banking/transaction verification spaces.   Attached to the

---

4

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1    Compendium of Evidence as Exhibits "19" and "20," respectively, are true and correct

2    copies of the Order of Dismissal of the Zix Action (entered on April 12, 2013) and the RIL

3    Press Release dated April 15, 2013 announcing the purportedly "confidential" settlement

4    of the Zix Action.   As noted in the transcript of the May 26, 2013 341A examination of

5    Mr. Khan, he refused to provide any of the settlement terms of the RIL-Zix settlement.

6    And, despite the Trustee's request for production of the settlement agreement, Khan has

7    refused to produce same and has not produced same to Barton or to the Trustee.

8          22.       Attached to the accompanying Compendium of Evidence as Exhibit "21"

9    and incorporated fully herein by this reference is a true and correct copy of RMail Federal

10   court Complaint in the Eastern District of Texas entitled *RMail v. Amazon*, Case No.

11   2:10-cv-00258-TJW, filed on July 21, 2010 (the **"Amazon Action"**).   Attached to the

12   Compendium of Evidence as Exhibit "22" is a true and correct copy of the Order of

13   Dismissal of the Amazon Action (entered on March 13, 2013).   Unlike the Zix Action

14   settlement, RMail did not announce in a press release that it had reached any settlement at

15   all of the Amazon Action (and its companion, consolidated PayPal Action).   At his July 2,

16   2013 further 341A examination, Khan refused to provide any of the settlement terms of the

17   Amazon/PayPal settlement.   And, despite the Trustee's request for production of the

18   settlement agreement, Khan has refused to produce same and has not produced same to

19   Barton or to the Trustee.

20         23.       Attached to the accompanying Compendium of Evidence as Exhibit "23"

21   and incorporated fully herein by this reference is a true and correct copy of the Stay Order

22   of the United States District Court, entered August 2, 2013, in the RIL/RMail/RComm

23   action against Adobe Systems/EchoSign/Docusign (Eastern District Case No.

24   2:10-cv-00025-JRG [the **"Adobe Action"**], the remaining not-settled IP claims that exist

25   in the consolidated action of which Amazon and PayPal were a part.   The Eastern District

26   Court issued the Stay Order, not because of any disclosure to the Court by

27   RIL/RMail/RComm or its principals, Khan & Tomkow but, because that Court there just

28   learned (from Adobe's counsel through contacts with counsel for other RIL/RComm

5

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1  shareholders [who have filed adversary complaints in the Khan/Tomkow bankruptcies]

2  and the undersigned as counsel for Barton that Khan and Tomkow had been adjudged to

3  have committed forgery and fraud and had personal bankruptcies pending in the Central

4  District of California.

5      24.    Attached to the accompanying Compendium of Evidence as Exhibit "24"

6  and incorporated fully herein by this reference is a true and correct copy of an RIL

7  shareholder meeting notice dated August 30, 2013, which RIL sent to certain shareholders

8  purporting to give notice of a shareholder meeting covering three years (2011-2013) and to

9  approve minutes from an alleged meeting from 2010, nearly four years ago.   This Notice

10  is particularly alarming since (a) in sharp contrast, RIL's counsel represented to the

11  Superior Court on the very same date that RPost had "complied with all corporate

12  formalities" (Ex. 15, p. 29), and (b) Khan/Tomkow are attempting to white-wash corporate

13  records covering periods where Khan/Tomkow were engaged in fraudulent asset transfers

14  from RIL to RMail and to RComm.

15      25.    Attached to the accompanying Compendium of Evidence as Exhibit "25"

16  and incorporated fully herein by this reference is a true and correct copy of excerpts of the

17  transcript of the April 4, 2013 valuation damages hearing before Judge Stuart M. Rice in

18  the Los Angeles Superior Court in the Pre-Petition State Court Action.

19      26.    Attached to the accompanying Compendium of Evidence as Exhibit "26"

20  and incorporated fully herein by this reference is a true and correct copy of the transcript of

21  the May 28, 2013 341A hearing of Debtor Khan, conducted by the Trustee and at which I

22  was present and made inquiries of Khan.

23      27.    Attached to the accompanying Compendium of Evidence as Exhibit "27"

24  and incorporated fully herein by this reference is a true and correct copy of the April 19,

25  2013 of the Superior Court's Minutes, stating that the Court was "prepared to rule" and

26  issue its award including punitive damages.

27      28.    Attached to the accompanying Compendium of Evidence as Exhibit "28"

28  and incorporated fully herein by this reference is a true and correct copy of the July 26,

---

6

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

1   2013 email letter I received from counsel for Carolina Casualty Insurance, RIL's insurer,

2   confirming that RIL's Director's & Officer's (D&O) policy proceeds have been fully

3   exhausted.   In other words, Khan and Tomkow, while failing to post a bond as security for

4   their obligation to RIL to cover defense and indemnity obligations (Ex. 7, Para. 77.3), have

5   caused the D&O policy to be exhausted.   As such, RIL, exposed to a $3.9M judgment in

6   favor of Barton, has claims against Khan and Tomkow for the defense fees and costs and

7   the judgment; yet, Khan and Tomkow did not schedule RIL as a creditor or the indemnity

8   rights as a claim of the corporation.   Why?   It is clear that Khan and Tomkow will not

9   acknowledge the patent conflict of interest of their continued status as the operational

10   officers/directors of RIL/RComm/RMail.

11         29.      Attached to the accompanying Compendium of Evidence as Exhibit "29"

12   and incorporated fully herein by this reference is a true and correct copy of Debtor Khan's

13   Declaration in the *RMail et al v. Amazon, PayPal* litigation wherein he admits to having

14   "carved out" for RMail's benefit only the functionality (the "field of use") of the 219/334

15   Patents that verify electronic transactions.   This sequestering of this valuable field of use

16   for their own benefit and to the exclusion of the shareholders of RIL and RComm,

17   notwithstanding that RIL's funds and guaranty were used to acquire the entire IP at issue, is

18   and was a patent breach of fiduciary duty and conflict of interest through self-dealing and

19   usurpation of RIL's corporate opportunities.

20         30.      Khan and Tomkow formed RMail in the Fall 2008 and syphoned off nearly a

21   $1M of RIL cash in the summer of 2009 and into 2010 to put the 219/334 Patents in the

22   control of Khan/Tomkow's insider company (RMail) and not RIL (which entity had signed

23   the NDA and was set up to be the patent acquisition entity until Khan/Tomkow switched

24   the name of the buyer in the contract, while keeping RIL as a guarantor of the entire

25   purchase price).   See, Ex. 11 p. 27:5-15; 28:19-29:25; 30:15-23.   Khan and Tomkow

26   plugged in the asset-less RMail as the buyer of the patents, swapping out RIL but still

27   having RIL guaranty the purchase, and then had RIL "loan" RMail $754,000+ to acquire

28   the 219/334 Patents - $554,000 being described as a "loan" to RMail (that never gets

7

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

1   repaid), $200,000 as a "license" fee and then $45,000 per year in license fees payable to

2   RMail.    Conspicuously, Khan and Tomkow have never produced any shareholder meeting

3   and board of director meeting minutes whereby their insider, self-dealing transactions were

4   fully disclosed and approved in advance; given the Superior Court's SOD/RSOD, Khan

5   and Tomkow's corporate record forgery and destruction (coupled with the August 30, 2013

6   "notice" for a meeting to approve undisclosed corporate minutes from 4 years ago – Ex.

7   24[B]) underscores why there is no record of actual full disclosures and informed consent.

8   Consistently with their practice of concealment here, and although the 219/334 Patents

9   transaction allegedly was completed in August 2009, Khan and Tomkow did not allude to

10  the transactions until January 2011 (burying the reference to the transaction in a note

11  section of an alleged "audit" of RIL's assets (an "audit" used to spook those shareholders

12  contacted about yet another asset transfer transaction involving RIL's assets, this time to

13  RComm)).

14      I declare under the penalty of perjury under the laws of the State of California and

15  the United States of America that the foregoing is true and correct.

16      Executed this 13th day of September, 2013 at Chatsworth, California.

17

18

19                                   Patrick C. McGarrigle

20

21

22

23

24

25

26

27

28

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 7**

8681-009\BK\Barton-Motion to Convert to Chapter 7 9-8-13

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

9600 Topanga Canyon Boulevard, Suite 200, Chatsworth, California 91311

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION OF CREDITOR - ADVERSARY PLAINTIFF KENNETH BARTON TO CONVERT DEBTOR ZAFAR KHAN'S CHAPTER 13 BANKRUPTCY CASE TO CHAPTER 7; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PATRICK C. McGARRIGLE AND EXHIBITS THERETO** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ____9/13/2013____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Trustee - Nancy K Curry (TR): ecfnc@trustee13.com

Attorney for Debtor - Lewis R. Landau: LLandau@HorganRosen.com

Attorney for Thomas Burke/ 26736 Canada, Inc.: scott.e.shapiro.esq@gmail.com

United States Trustee (LA): ustpregion16.la.ecf@usdoj.gov

Joely Khanh Linh Bui on behalf of Interested Party Courtesy NEF: wdk@wolffirm.com, joely.bui@wolffirm.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) ___9/13/13___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | | | |
|---|---|---|---|
| Franchise Tax Board<br>Bankruptcy Section MS: A-340<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | Courtesy NEF<br>c/o The Wolf Firm<br>2955 Main Street<br>Second Floor<br>Irvine, CA 92614-2528 | Employment Development Dept.<br>Bankruptcy Group MIC 92E<br>P.O. Box 826880<br>Sacramento, CA 94280-0001 | Los Angeles City Clerk<br>P.O. Box 53200<br>Los Angeles, CA 90053-0200 |
| Los Angeles Division<br>255 East Temple Street<br>Los Angeles, CA 90012-3332 | 126736 Canada Inc., a Canadian<br>corporation<br>c/o Scott E. Shapiro, Esq.<br>APPELL SHAPIRO, LLP<br>15233 Ventura Blvd, Suite 420<br>Sherman Oaks, CA 91403-2220 | American Express<br>Box 0001<br>Los Angeles, CA 90096-8000 | (p) BANK OF AMERICA<br>PO BOX 982238<br>EL PASO TX 79998-2238 |
| Barclays US Air<br>Card Services<br>PO Box 13337<br>Philadelphia, PA 19101-3337 | CMRE Financial Svcs In<br>3075 E Imperial Hwy, Ste 200<br>Brea, CA 92821-6753 | Cerastes, Llc<br>C O Weinstein And Riley, Ps<br>2001 Western Avenue, Ste 400<br>Seattle, Wa 98121-3132 | Chase United Mileage Plus<br>Card Services<br>PO Box 94014<br>Palatine, IL 60094-4014 |
| Citibank Aadvantage<br>Processing Center<br>Des Moines, IA 50363-0001 | George Martin<br>c/o Scott E. Shapiro, Esq.<br>15233 Ventura Blvd, Suite 420<br>Sherman Oaks, CA 91403-2220 | Henry Ben-Zvi<br>Ben-Zvi & Associates<br>3231 Ocean Park Boulevard, Suite 212<br>Santa Monica, California 90405-3232 | Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 |
| (p)Portfolio Recovery Associates LLC<br>PO BOX 41067<br>NORFOLK VA 23541-1067 | Suntrust Mortgage, Inc<br>Bankruptcy Department RVW 3034<br>PO Box 27767<br>Richmond VA 23261-7767 | Suntrust Mortgage Inc.<br>PO Box 26149<br>Richmond, VA 23260-6149 | Thomas Burke<br>c/o Scott E. Shapiro, Esq.<br>APPELL SHAPIRO, LLP<br>15233 Ventura Blvd, Suite 420<br>Sherman Oaks, CA 91403-2220 |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

United States Trustee (LA)
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017-5413

Lewis R Landau
Horgan Rosen Beckham & Coren
LLP
23975 Park Sorrento Ste 200
Calabasas, CA 91302-4011

Nancy K Curry (TR)
700 S Flower Street, Suite 1215
Los Angeles, CA 90017-4114

Zafar David Khan
1929 Ruhland Ave, Unit A
Redondo Beach, CA 90278-2322

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) ____9/13/13____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Federal Express:
Hon. Vincent Zurzolo
U.S. Bankruptcy Court, Roybal Federal Building,
255 E. Temple Street, Suite 1360 / Courtroom 1368
Los Angeles, CA 90012-3332

Via Federal Express:
Hon. Julia W. Brand
U.S. Bankruptcy Court, Roybal Federal Building
255 E. Temple Street, Suite 1382 / Courtroom 1375
Los Angeles, CA 90012-3332

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 13, 2013   Vanessa Bravo | /s/ Vanessa Bravo |
|---|---|
| *Date*          *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**