**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| RMAIL LIMITED, | § § § § § § § § § § | CASE NO. 2:10-CV-258 |
| Plaintiff, | | |
| | | CONSOLIDATED |
| v. | | |
| | | |
| AMAZON.COM, INC., ET AL. | | |
| DOCUSIGN, INC. | | CASE NO. 2:11-CV-299 |
| ADOBE SYSTEMS, INC., ET AL. | | CASE NO. 2:11-CV-325 |

| | | |
|---|---|---|
| RPOST HOLDINGS, INC., ET AL., | § § § § § § | CASE NO. 2:12-CV-510 |
| Plaintiffs, | | |
| v. | | |
| CONSTANT CONTACT, INC., ET AL. | | |

| | | |
|---|---|---|
| RPOST HOLDINGS, INC., ET AL., | § § § § § § § | CASE NO. 2:12-CV-511 |
| Plaintiffs, | | |
| | | CONSOLIDATED |
| v. | | |
| | | |
| EPSILON DATA MANAGEMENT, LLC | § § § § | CASE NO. 2:12-CV-512 |
| EXACTTARGET, INC. | | CASE NO. 2:12-CV-513 |
| EXPERIAN PLC, ET AL. | | CASE NO. 2:12-CV-516 |
| VOCUS, INC. | | |

| | | |
|---|---|---|
| RPOST HOLDINGS, INC., ET AL., | § § § § § § § | CASE NO. 2:12-CV-517 |
| Plaintiffs, | | |
| v. | | |
| INFOGROUP, INC., ET AL. | | |

**ORDER TO STAY AND ADMINISTRATIVELY CLOSE**

I.  **INTRODUCTION**

Defendants in the above actions have each moved to dismiss, or in the alternative, to stay their respective cases pending a determination of ownership as to the following Asserted Patents:

- The Tomkow Patents: U.S. Patent Nos. 7,966,372 ("the '372 patent"); 8,161,104 ("the '104 patent"); 8,209,389 ("the '389 patent"); 8,224,913 ("the '913 patent"); and 8,504,628 ("the '628 patent")
- The Feldbau Patents: U.S. Patent Nos. 6,182,219 ("the '219 patent"); 6,571,334 ("the '334 patent").

The Asserted Patents are categorized into two groups by inventor. The first group is a set of four related patents by the sole inventor and owner, Terrance Tomkow. Tomkow assigned the patent application that ultimately issued as the '372 patent (the parent of the other Tomkow patents) and any patents granted based on that application to RPost International, Inc. on May 20, 2001. On May 30, 2013, another assignment was filed between the same parties to correct a typographic error—changing the corporate designation of RPost International from "Inc." to "Limited." Ownership of the Tomkow patents was transferred between RPost International and RPost Communications as part of a capitalization plan executed on March 21, 2011. Beginning in January 2010, several related proceedings brought by dissatisfied shareholders of RPost International in California have called the validity of the asset transfer into question based on, among other things, allegations of fraud. Defendants are echoing those arguments before this Court.

The second group of the Asserted Patents consists only of the '219 parent patent and its continuation, the '334 patent by inventors Ofra and Michael Feldbau. The '219 patent was

originally owned by Authentix-Authentication Technologies, Ltd. ("Authentix") and sold to RMail Limited for $800,000. RPost International loaned RMail Limited $550,000 to finance part of the purchase price of the '219 patent as memorialized by a promissory note. In conjunction with the promissory note, RMail Limited granted RPost International an exclusive license to the '219 patent and its continuation in the email field of use. RPost International in turn granted RPost Holdings (at the time a subsidiary of RPost International) an exclusive field of use to the Feldbau patents. RPost Communications acquired RPost Holdings, as well as the promissory note and exclusive license to the Feldbau patents, from RPost International as part of the March 21, 2011 transaction. There is no dispute that RPost International never held title to the Feldbau patents. Nonetheless, the right to enforce the Feldbau patents is closely tied to the allegedly fraudulent transfer of assets between RPost International and RPost Communications.

Of the Asserted Patents, the '219, '334, '624, and '372 patents are asserted in the earliest-filed action, *RMail Ltd. v. Amazon.com, Inc. et al.*, Case No. 2:12-cv-510 ("the Amazon action"). The '219, '372, '104, '389, and '913 patents are asserted in *RPost Holdings, Inc. et al. v. Constant Contact, Inc.*, Case No. 2:12-cv-510 ("the Constant Contact action") and *RPost Holdings, Inc. et al. v. Infogroup, Inc. et al.*, Case No. 2:12-cv-517 ("the Infogroup action"). The '104, '389, and '913 patents are asserted in *RPost Holdings, Inc. et al. v. Epsilon Data Management, LLC*, Case No. 2:12-cv-511 ("the Epsilon Data action").

## I. REQUESTED RELIEF

Defendants in the Constant Contact, Infogroup, and Epsilon Data actions contend that RPost Holdings, RPost Communications, and RMail Limited (collectively, "Plaintiffs") do not have the right to sue on the Asserted Patents based on the allegations made in the California state actions and in actions before a United States Bankruptcy Court located in California. Defendants

assert that this case must be dismissed for lack of subject matter jurisdiction. Defendants also move, in the alternative, for a stay pending final determination in the related proceedings pending in California. (*See* Case No. 2:12-cv-510, Dkt. No. 60; Case. No. 2:12-cv-511, Dkt. No. 18; and Case No. 2:12-517, Dkt. No. 34.)

The Court first learned of the co-pending cases on August 1, 2013 when defendant Adobe alerted the Court to correspondence sent by the plaintiffs in the California state court and the bankruptcy cases. (*See* Case No. 2:10-cv-258, Dkt. No. 540.) This unexpected development occurred on the eve of trial of the Amazon action and the Court stayed the case for 90 days. (*Id.*, Dkt. No. 545.) The stay was extended by another 60 days and expired on December 30, 2013. (*Id.*, Dkt. No. 554.) The Amazon defendants have moved for a continuation of the stay until the California state court actions and the bankruptcy proceedings are resolved with finality. (*Id.*, Dkt. No. 559.)

## II. RELATED PROCEEDINGS

### a. California State Actions

The two California state court proceedings are *Kenneth Barton v. RPost International Ltd., Zafar Khan, and Terrance Tomkow*, Case. No. YC061581 ("Barton 581") and *Kenneth Barton v. RPost International Ltd., RMail Ltd., and RPost Communications Ltd.*, Case. No. YC065259 ("Barton 259").

Barton 581 was brought by Kenneth Barton ("Barton"), a former officer of RPost International, against RPost International and four of its five directors, including Zafar Khan ("Khan"), and Terrance Tomkow ("Tomkow") for fraud and breach of fiduciary duty.[1] Barton 581 went to trial last year and judgment was entered in favor of the plaintiff. RPost International, Khan and Tomkow were found to have committed fraud and were held jointly and severally

---

[1] None of the parties to Barton 581 are named parties in the above actions.

liable for actual damages of $3.2 million. Punitive damages were also imposed against Khan and Tomkow. The judgment is on appeal before the California Court of Appeals, Second Appellate Division.

Barton 259 involves allegations of fraudulent transfer of assets from RPost International to RMail Limited and RPost Communications during the capitalization plan of March 21, 2011. Both RMail Limited and RPost Communications are also parties to the present litigations. In Barton 259, the plaintiff seeks to void the transfer of those assets, which includes intellectual property, to RMail Limited and RPost Communications. It specifically identifies the '219 patent as one such intellectual property. Barton 259 is scheduled for a trial before a jury and is set to commence on November 3, 2014.

      b.    **Bankruptcy Proceedings**

There are also several related bankruptcy proceedings in California. Khan and Tomkow each petitioned the United States Bankruptcy Court in California for Chapter 13 bankruptcy protection following entry of judgment in Barton 581. (*See In re Zafar David Khan*, No. 2:13-bk-19713-VZ and *In re Terrance Alexander Tomkow*, No. 2:13-bk-19712-WB.)

Barton filed an adversary proceeding to convert Khan and Tomkow's bankruptcy petitions from Chapter 13 to Chapter 7, and this conversion has now been granted. (*See Barton v. Khan*, No. 2:13-cv-ap-1752-VZ and *Barton v. Tomkow*, No. 2:13-cv-1751-WB.) Khan and Tomkow are both appealing that ruling and Barton's adversary proceeding has been stayed until further notice.

In addition to Barton's challenge, Thomas Burke and 126736 Canada, Inc. also filed shareholder derivative actions on behalf of RPost International, RPost Communications, and RMail Limited in the Khan and Tomkow bankruptcies. (*See Burke et al. v. Khan*, No. 2:13-cv-

5

ap-1773-VZ and *Burke et al. v. Tomkow*, No. 2:13-cv-1774-WB.) Khan and Tomkow moved to dismiss the complaints for lack of standing and the court granted dismissal. As a consequence, Burke and 126736 Canada, Inc. have since filed a Second Amended Complaint, which is now pending and which Khan and Tomkow are again seeking to have dismissed.

### III. RULE 12(b)(1) MOTION TO DISMISS

The Court first evaluates the motions to dismiss for lack of subject matter jurisdiction filed in the Constant Contact, Epsilon Data, and Infogroup actions. Each motion makes the same arguments and shall be addressed together.

#### a. Applicable Law

The doctrine of standing is an essential part of the case-or-controversy requirement of Article III and is a constitutional prerequisite for the court to have subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing the[] elements [of standing]." *Id.* at 561. "In order to have standing, the plaintiff in an action for patent infringement must be a 'patentee' pursuant to 35 U.S.C. §§ 100(d) and 281, or a licensee who holds 'all substantial rights' in the patent." *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1375, 1384 (Fed. Cir. 2002) (citations omitted). "[The Federal Circuit] has determined that in order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit*." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309-10 (Fed. Cir. 2003) (citing *Lans v. Digital Equp. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001)). "If the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured after the inception of the lawsuit." *Abraxis Bioscience, Inc. v. Navita LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010).

Federal Rule of Civil Procedure 12 permits the court to evaluate subject matter jurisdiction and consider the question of standing at any time. Standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. *Lujan*, 504 U.S. at 561. "If the defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuits, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *ENS, LLC v. Cisco Sys., Inc.*, 685 F. Supp. 2d 631, 640 (E.D. Tex. 2009) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). Ultimately, a Rule 12(b)(1) motion should be granted only when it is clear the claimant can prove no set of facts in support of its claims that would entitle it to relief. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

    **b.    Analysis**

Defendants make three arguments for why the Court lacks subject matter jurisdiction over these cases: (1) at the time this action was filed on August 24, 2012, the ownership of the Asserted Patents was in dispute, (2) the alleged owners are not parties to this action, and (3) Plaintiffs cannot cure defects in standing by adding parties to this action.

With respect to the first point, Defendants essentially argue that mere existence of an ownership dispute which predates the lawsuit would defeat standing. That is not the law.[2] If

---

[2] The only case relied upon by Defendants for this theory is not on point. *Nolen v. Lufkin Industries, Inc.* involves a prior assignment of patent assets from Nolen to Lufkin Industries that Nolen now claims was fraudulent. 469 Fed. Appx. 857 (Fed. Cir. 2012). Thus, Nolen's allegations of patent infringement were made expressly contingent upon the district court first rescinding the assignment and awarding ownership back to Nolen. *Id.* at 859. The Federal Circuit agreed with the district court's ruling that Nolen lacked standing to assert its patent infringement claims on a patent that it did not own. *Id.* By comparison, the Plaintiffs here are in the position of Lufkin Industries.

Defendants' theory is true, then anyone could defeat an infringement suit by simply challenging the ownership of the patents before the suit was filed. In addition, Defendants' position simply mirrors the allegations made in the pending California actions. Defendants submit no affidavits, testimony, or plausible evidence beyond mere argument and documents filed in the California actions. Indeed, the bulk of Defendants' support is taken directly from Barton 581, a case involving none of the parties in this case. As Judge Rice stated in denying Barton's motion to add RPost Communications and RMail Limited to the judgment in the Barton 581 case, "[ownership of the patents] has little or nothing to do with Mr. Barton's large judgment against [RPost International]." (Dkt. No. 69 at 8.) Defendants' first argument falls short of a legitimate "factual attack" required by Rule 12(b)(1) as a challenge to subject matter jurisdiction. Nevertheless, even though Defendants' efforts do not rise to the level of a "factual attack," the Court will, out of an abundance of caution, weigh the evidence and evaluate any merit to Defendants jurisdictional challenges.

Plaintiffs responded to Defendants' arguments with ownership evidence in the form of affidavits signed by Khan, Tomkow, John Fitzgerald (an attorney involved with the prosecution and assignment of the Asserted Patents), and Carole Krechman (a board member of RPost International representing the Preferred Shareholders on the Board of Directors until April 2011, and since then, a current board member of RPost Communications). Both Khan and Krechman attest to the March 21, 2011 transaction where RPost Communications acquired RPost Holdings and certain intellectual property assets from RPost International as part of a capitalization plan.

---

Pursuant to the March 21, 2011 Purchase and Sale Agreement and companion Assignment Agreement, Plaintiffs received and currently holds enforceable title to the Asserted Patents until such date the assignment is declared null and void.

8

Fitzgerald attests to the typographical correction changing RPost International *Inc.* to *Limited* in recording the assignment of the '372 patent from the inventor, Tomkow, to RPost International.[3]

Further, Plaintiffs produced the Purchase and Sale Agreement (PSA) dated March 21, 2011, the companion Assignment Agreement executed on the same date, board minutes approving the transaction, the RMail-Authentix Patent Assignment Agreement transferring rights to the '219 patent, the promissory note memorializing RPost International's financing of the '219 patent purchase, the exclusive license of the '219 and '334 patents, as well as various documents making up the March 2011 transaction. It is apparent that Defendants do not actually dispute the chain of title of the Asserted Patents. The gravamen of Defendants' challenge centers on whether the transaction followed certain corporate formalities, including whether it was presented to and approved by all the shareholders of RPost International. Plaintiffs produced the Khan and Krechman Affidavits affirming that strict corporate formalities were followed. Defendants, in reply, produced nothing beyond the judgment in Barton 581 as a means to question Khan's sworn declarations. This Court does not treat affidavits lightly and will not distrust them without good cause. After carefully reviewing the evidentiary materials submitted by the parties, the Court finds that Plaintiffs have established current ownership of the Asserted Patents by a preponderance of the evidence at this stage of the litigation.

Defendants' second argument that the alleged owners are not parties to this action is similarly unpersuasive. While an action for infringement must join as plaintiffs all co-owners of the patents, the *alleged* owners in the California actions have not yet been finally adjudicated to be the *actual* owners of the Asserted Patents. As the record currently stands, Defendants have

---

[3] Defendants raise the typographical error as part of their lack of standing argument in a Reply brief. However, the Court is persuaded that Tomkow clearly intended to assign his patents to RPost International, whether the corporate designation be Inc. or Limited. *Pennzoil Co. v. FERC*, 645 F.2d 360, 388 (5th Cir. 1981) (In contract interpretation, courts are compelled to give effect to the parties' intentions.) This conclusion is substantially bolstered by the fact that RPost International Inc. does not exist.

made no showing that there are other established owners of the Asserted Patents other than the Plaintiffs in this case.

Because the Court finds that it has subject matter jurisdiction of this case, there is no need to reach Defendants' third point regarding curing defects in standing. Defendants' motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

## IV. MOTION TO STAY

The Court now considers the Defendants' alternative request for a stay. "The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon, Inc.,* 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (citations omitted). Management of the court's docket requires "the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts typically consider three things when deciding whether to stay litigation pending reexamination: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Soverain Software LLC,* 356 F. Supp. 2d at 662 (citation omitted). "Essentially, courts determine whether the benefits of a stay outweigh the inherent costs based on these factors." *EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05-cv- 81, 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006).

### a. Analysis

The Court first learned of the related co-pending California cases from counsel for Adobe during a pretrial conference held the Thursday before Monday jury selection in the Amazon action. When asked why this information was not disclosed earlier, counsel for Plaintiffs represented that they were unaware of these related litigations until the Court learned of it. The

Court immediately entered a stay for 90 days to consider these developments and prevent the risk of proceeding to trial on uncertain grounds. The stay was further extended by 60 days to December 30, 2013. During the pendency of the stay, the parties filed three joint notices to update the Court on the status of the California co-pending actions. (*See* Case No. 2:10-cv-258, Dkt. Nos. 552, 559, and 561.)

Of the co-pending California actions, only Barton 259 and the shareholder derivative action directly involve the Plaintiff entities. If the fraudulent transfer claims are ultimately resolved in Barton's favor and the March 2011 transaction declared null and void, then that result would have a considerable impact on Plaintiffs' standing to sue in each of the above actions. During a telephonic status conference held in the Amazon action on January 27, 2014, Plaintiffs did not dispute this potential problem or the effect that it would have on the present Texas actions.[4] A jury trial in California is scheduled to commence in Barton 259 on November 3, 2014. Accordingly, the Court sees no reason to hold a trial in the Amazon case or proceed with the other actions as to patents whose ownership might soon be established in a manner that would waste the time and resources of the parties and this Court.

Furthermore, the judgment in Barton 581 only adds weight to the ownership concerns raised in Barton 259. Khan and Tomkow were adjudged to have committed fraud in Barton 581 "with malice … and oppression." (Case No. 2:12-cv-510, Dkt. No. 60 at 5.) Punitive damages were imposed against them individually. Khan and Tomkow are also the Plaintiff corporate representatives in the above cases and have been present throughout pretrial hearings in the

---

[4] Plaintiffs argue that the Feldbau patents would not be affected by the California actions because RPost International never held an ownership interest in the '219 patent. However, it is undisputed that the RPost International was granted an exclusive license to use the '219 patent and its continuations. The exclusive license was transferred as part of the March 21, 2011 transaction that is alleged to be fraudulent in Barton 259. Therefore, even though ownership of the Feldbau patents is not at issue in California, the right to enforce the Feldbau patents is still inextricably intertwined.

Amazon action. It is bewildering, if not unbelievable, to the Court that Plaintiffs' counsel could have been unaware of the co-pending California actions until it was brought to light on the eve of trial in Marshall, Texas. All of these things dictate that the Court take a cautious position until finality of the California actions is achieved.

With regard to the first factor in the stay analysis, the Court finds that a stay will not unduly prejudice or present a clear tactical disadvantage to the Plaintiffs. The Plaintiffs were fully aware of the co-pending California cases, even if their Texas counsel were not. Plaintiffs clearly knew of the serious implications those cases would have on the issue of patent ownership in the present actions. The failure to disclose such information seriously erodes their credibility before this Court. Still, knowing of the allegations against them in California, Khan and Tomkow chose to file the present actions (and continue to file additional actions on this group of patents) in this District. Therefore, any prejudice this stay may impose must be attributed solely to Plaintiffs' own actions.

Plaintiffs' assertion for timely enforcement of its patent rights is unpersuasive based on the circumstances here. Allowing Plaintiffs to first litigate the state law ownership issues in California will streamline these cases and avoid unnecessary costs and efforts on behalf of all the parties. In fact, permitting these Texas cases to proceed creates a risk of undue prejudice to the Defendants by subjecting them to multiple suits should Plaintiffs not be found to be the rightful patent owners. The Court believes reason requires it to stay these cases so that the substantial cloud of uncertainty can be cleared away. Accordingly, the first factor weighs heavily in favor of a stay.

The second factor similarly weighs in favor of a stay. A resolution in Barton 259 will either simplify the issues for trial or moot these actions entirely. Either way, validity of the asset

transfer agreement and the issue of ownership should be decided in California. Plaintiffs argue that even if they lose in California these cases can still proceed as normal by merely substituting the parties. This Court disagrees. If the Amazon case is tried and the jury returns a plaintiff's verdict, it would be much too late to then substitute the parties. Considering the realities imposed by the co-pending litigations, the Court finds that its limited time and other resources would be better used by delaying trial of these cases as long as they rest upon such unsteady and shifting jurisdictional grounds.

The third factor is whether discovery is complete and whether a trial date is set. Each of the above actions is at a different point along its own litigation timeline. The Amazon action is the earliest-filed case and it is on the cusp of trial. The Epsilon Data action has just started claim construction briefing and is in its early stages. The Constant Contact and Infogroup actions are in their infancy and are still awaiting a scheduling conference. The early posture of three of the four actions supports a stay.

For the foregoing reasons, the Court finds that a stay pending resolution of the California state actions and the bankruptcy actions is appropriate in these particular circumstances. Defendants' request for a stay is **GRANTED**.[5]

## V. CONCLUSION

Pursuant to the Court's inherent authority to manage its docket and based upon the foregoing reasoning, the following motions are **GRANTED** as to the alternative request for a stay. All other requests for relief are **DENIED**.

- *RPost Holdings, Inc. et al. v. Constant Contact, Inc.*, Case No. 2:12-cv-510, Dkt. No. 60;

- *RPost Holdings, Inc. et al. v. Epsilon Data Management, LLC*, Case No. 2:12-cv-511, Dkt. No. 18; and

---

[5] The Court does not reach Defendants' alternative argument for a stay under the abstention doctrine.

- *RPost Holdings, Inc. et al. v. Infogroup, Inc. et al.*, Case No. 2:12-cv-517, Dkt. No. 34.

The defendants' recommendation to extend the stay imposed in *RMail Ltd. v. Amazon.com, Inc. et al.*, Case No. 2:12-cv-510 is also **GRANTED**. (Dkt. No. 559.)

The above actions are hereby **STAYED** and are ordered **ADMINISTRATIVELY CLOSED**. The parties are also directed to jointly furnish to the Court written notice setting forth full details as to each case and fully advising the Court on the then current status of such co-pending California state actions and bankruptcy actions beginning on December 1, 2014 and continuing every three months (quarterly) thereafter until further order of this Court.

**So ORDERED and SIGNED this 30th day of January, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE