IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| RMAIL LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., et al.,<br><br>Defendants. | Civil Action No. 2:10-cv-258-JRG (Lead Case)<br><br>Hon. Rodney Gilstrap |
| RPOST HOLDINGS, INC., et al.<br><br>Plaintiffs,<br><br>v.<br><br>CONSTANT CONTACT, INC., et al.,<br><br>Defendants. | Civil Action No. 2:12-cv-510-JRG |
| RPOST HOLDINGS, INC., et al.<br><br>Plaintiffs,<br><br>v.<br><br>INFOGROUP, INC., et al.,<br><br>Defendants. | Civil Action No. 2:12-cv-517-JRG |

## PLAINTIFFS' MOTION FOR RECONSIDERATION
## REGARDING ORDER TO STAY AND ADMINISTRATIVELY CLOSE

## I.      INTRODUCTION

Plaintiffs RPost Holdings, Inc., RPost Communications Limited, and RMail Limited (collectively "RPost") respectfully seek reconsideration of the Court's January 30, 2014 Order To Stay And Administratively Close the above-captioned cases.  Specifically, RPost seeks reconsideration of two issues: (1) the Court's determination that RPost's right to enforce the Feldbau patents is inextricably intertwined with Barton 259 and (2) the Court's determination any prejudice that the stay may impose must be solely attributed to RPost's own actions.  Both of these determinations appeared central to the Court's ultimate ruling.  As detailed in this motion, RPost respectfully submits that the '219 patent and its continuations are not inextricably interwined with Barton 259 and RPost's actions do not justify the prejudice imposed by the stay.

In addition to the defendants in the above-captioned cases, defendants Citigroup and Intuit in *RPost Holdings, Inc. et al. v. Exact Target, Inc.*, 2:12-cv-512-MHS filed a similar motion to dismiss or in the alternative stay, litigation pending determination of the California actions.  The Exact Target case was originally assigned to the Court.  The Court, however, recused itself and the case is now pending before Judge Schneider.  At time the Court issued its Stay Order, the Exact Target Defendants and RPost had filed their opening motion and opposition, respectively.  In their reply brief, which was filed after the Stay Order, the Exact Target Defendants argued that Judge Schneider should adopt the Court's Stay Order.

RPost, however, maintains that the Exact Target case is distinguishable from the above captioned cases because it only involves the '219 patent and because RPost International and RPost Communications are not parties to that case.  Nevertheless, the arguments for why the Exact Target case should proceed apply equally to the above-captioned cases, which also involve the '219 patent.  RPost presents these arguments in its sur-reply in the Exact Target case, which it filed February 14.  To promote judicial economy and the interest of justice, RPost submits the

1

same arguments in this motion for the Court's consideration.  RPost respectfully submits that in light of the facts and arguments below, the Court should reconsider its Stay Order and lift the stay in the above captioned cases at least as to the '219 patent and its continuations.

## II.   ARGUMENT

### A.  The '219 Patent Is Not Inextricably Intertwined with Barton 259.

Contrary to the Stay Order, even if the fraudulent transfer claims in Barton 259 are ultimately resolved in Barton's favor and the March 21, 2011 transaction is declared null and void (assuming that it a possible outcome), then that result will not impact RPost's standing to sue.  The March 2011 transaction, in which RMail terminated RPost International's exclusive field of use license to the '219 patent and granted the same license to RPost Communications, does not impact RMail's ownership of the '219 patent.  RMail acquired the '219 patent and its continuations from a third party in 2008.[1]

Regarding the 2008 transaction, Barton's fraudulent transfer claim challenges the reasons for the loan that RPost International extended to RMail to help finance the purchase of the '219 patent.[2]  But the only asset transferred from RPost International to RMail in this transaction was cash.  If this transfer of cash is determined to be fraudulent, then Barton may have a claim against the transferred cash.[3]  Neither Barton nor RPost International have a claim against the '219 patent.  In fact, California Law limits Barton's recovery to the amount of the assets transferred—in this case the amount of the loan.[4]

Barton apparently recognizes this fact because his complaint does not assert that RMail does not own the '219 patent, or that RPost International is the true owner.[5]  Instead, Barton

---

[1] *RPost Holdings, Inc. et al. v. Infogroup, Inc.*, 2:12-cv-517-JRG, Dkt. No. 35-1 at ¶20, Exs. F and G.
[2] 2:12-cv-517-JRG, Dkt. No. 34-4 at ¶9.
[3] Cal. Civ. Code §3439.07.
[4] Cal. Civ. Code §3439.08(b), (c).
[5] 2:12-cv-517-JRG, Dkt. No. 34-4.

seeks (1) to void the transfer, (2) to have a receiver appointed to take charge of and to safeguard the transferred assets and their proceeds, and (3) to have a constructive trust imposed over the transferred assets and their proceeds.[6]  At best, these remedies simply purport to assert title over the cash assets of RPost International and RMail, not the '219 patent itself.  Indeed, the entire thrust of Barton's allegations is directed to the proceeds of any patent infringement lawsuits or other enforcement activities.  Even Barton's request for a receiver asks that the receiver safeguard the assets, not sell them.[7]

Imposing a constructive trust over the transferred assets and their proceeds also does not affect title to the '219 patent.  In *Lewis v. Superior Court*, the court held that a creditor could not record a lis pendens against real property the debtor bought with funds that were the subject to an asserted fraudulent transfer action and subsequently sold to a third party.[8]  While the court so concluded in part because the transferees of the real property were unaware of the potential that the property was so acquired (and therefore were bona fide purchasers), the court noted the fraudulent transfer claim at most was an equitable claim asserting a constructive trust over the property, which was not a legal claim to title over the real property.[9]  Similarly, Barton's claims do not impact legal title to the '219 patent.  Because the defendants fail to explain how any of the remedies sought by Barton can result in an outcome that could impact RMail's and RPost Holdings' right to enforce the '219 patent, a stay is not warranted.

Moreover, the issue in Barton 259 is whether the 2008 and 2011 transactions were fraudulent as to Barton's rights as a judgment creditor of RPost International, not whether these transactions were fraudulent as a whole.  Indeed, the Court determined that these transactions

---

[6] *Id.* at p. 10-11.
[7] *Id.*
[8] *Lewis v. Superior Court*, 30 Cal. App. 4th 1850 (1994).
[9] *Id.* at 1862-63 ("The fact that someone buys property with stolen money does not make the victim the owner of that property as a matter of real property law. It merely entitles the victim to pursue the thief and to recover a money judgment . . .")

were conducted according to the appropriate corporate formalities.[10]  Barton's monetary judgment (currently on appeal) is against RPost International, not RMail.  Should the judgment survive appeal and be enforceable, then cash would be owed back to RPost International.  RPost International could then use the returned proceeds to satisfy the judgment.  RPost International would not, however, acquire the '219 patent.

Additionally, RPost respectfully disagrees with some of the facts stated in footnote 4 of the Stay Order.  First, although RPost International was an exclusive licensee of '219 patent at the time of the March 2011 transaction, RPost International had already granted an exclusive license to the '219 patent to RPost Holdings.[11]  Contrary to footnote 4, RPost International's and RPost Holdings' licenses were not transferred as part of the March 2011 transaction.  Instead, RMail terminated RPost International's license and granted an exclusive license to RPost Communications.[12]  In turn, RPost Communications granted RPost Holdings that same license that RPost Holdings had received from RPost International.[13]

Although the Stay Order states that the right to enforce the '219 patent is inextricably intertwined with the March 2011 transaction, that is not the case.  RPost Holdings' right to enforce the '219 patent has not changed because it holds the same license it held before the transaction.  RMail's right to enforce the '219 patent also has not changed because it is the undisputed owner of the '219 patent.  Thus, even if the March 2011 transaction is voided, RMail and RPost Holdings will hold the same rights that they do now.  RPost Communication's and RPost International's right to enforce the '219 patent are irrelevant to the analysis.  Even if it is determined that RPost Communications is not a proper party to the above captioned cases, that

---

[10] Dkt. No. 563 at p. 9.
[11] 2:12-cv-517-JRG, Dkt. No. 35-1 at ¶27, Ex. F.
[12] *Id.* at ¶31, Ex. F.
[13] *Id.* at ¶32, Ex. G.

alone does not impact RMail's and RPost Holdings' ability to enforce the rights that they have held all along.

## B.  The Stay Will Unduly Prejudice RPost And Is Unwarranted.

RPost further respectfully submits that the undue prejudice imposed by the stay is not warranted because the Stay Order is based on a misunderstanding of RPost's knowledge of the California actions.  Contrary to the Stay Order, both RPost and the Amazon Defendants were aware of Barton 581 and 259 before Adobe decided to bring these and the other California actions to light on the eve of trial.  Indeed, Barton 581 was filed January 29, 2010 and Barton 259 was filed July 28, 2011—well before the Final Pretrial Conference in the Amazon case.[14]  In fact, the Amazon Defendants planned to make extensive use of evidence from Barton 581 and 259 at trial.

For example, Adobe extensively questioned Dr. Tomkow at his March 22, 2013 deposition regarding the June 19, 2102 Statement of Decision in Barton 581.[15]  Adobe also deposed Mr. Khan about this ruling.[16]  Also both Adobe and Docusign listed on their respective trial exhibit lists documents from Barton 581 and 259, some of which RPost produced with its first production to these defendants, almost a year before the Final Pretrial Conference.[17] Included among those exhibits is a letter dated August 19, 2011 that RPost's New York and Dallas counsel received from Barton's counsel regarding the filing of Barton 259.[18]  This letter was the first and only communication that these counsel received from Barton's counsel before

---

[14] 2:12-cv-517-JRG, Dkt. No. 34-2 and 34-4.
[15] Declaration of Lewis E. Hudnell, III ("Hudnell Decl.") at Ex. A.
[16] *Id.* at Ex. B.
[17] Dkt. No. 520-6 (Adobe's Trial Exhibit List) at Exhibits 27, 302, 351, 352, 355, and 480; Dkt. No. 515-5 (Docusign's Trial Exhibit List) at Exhibit 92.
[18] *Id.* at Adobe Trial Exhibit 302; Hudnell Decl. at Ex. C.

the Court first stayed the Amazon case.[19]  And RPost produced this letter with its first production

to the Amazon Defendants.[20]

      In fact, RPost produced all of Mr. Khan's and Dr. Tomkow's deposition and trial

testimony from Barton 581 on March 15, 2013—months before the Final Pretrial Conference.[21]

Despite being aware of Barton 581 and 259 and despite the discovery the Amazon Defendants

received from RPost regarding these cases, the Amazon Defendants never raised an ownership

issue regarding the '219 patent or any RPost patent based on the California actions.  Adobe filed

a Motion to Dismiss U.S. Patent No. 7,966,372 for Lack of Standing, which challenged RPost

Communications' ownership of the '372 patent based on the same transactions that are the

subject of Barton 259.[22]  But Adobe's motion, which the Court denied, did not assert that RPost

Communications did not own the '372 patent because the March 2011 transactions were

allegedly fraudulent.[23]

      In reality, RPost first brought the Barton 581 and 259 actions to the Court's attention

when it filed a motion *in limine* to exclude evidence regarding the Barton actions.[24]  Both

Docusign and Adobe opposed the motion arguing that Barton 581 was relevant to damages.[25]

Docusign also argued that RPost's ownership of the asserted patents, which include the '219

patent, was central to its defense ever since Docusign filed its original answer, which was August

2, 2011.[26]  Thus, if anybody should have alerted the court of Barton 259, it should have been

Docusign.  But other than its answer and its response to RPost's motion *in limine*, Docusign did

not otherwise raise an ownership issue based on the Barton actions.

---

[19] Hudnell Decl. at ¶5; Declaration of Winston O. Huff ("Huff Decl.") at ¶2-3.
[20] Hudnell Decl. at ¶6; Huff Decl. at ¶3.
[21] Hudnell Decl. at ¶7.
[22] Dkt. No. 361.
[23] *Id.* at Dkt. Nos. 361 and 546.
[24] *Id.* at Dkt. No. 489, Motion *in Limine* No. 1.
[25] *Id.* at Dkt. No. 510, 511.
[26] *Id.* at Dkt. No. 510; *RMail Limited et al. v. Docusign, Inc.*, 2:11-cv-299-JRG, at Dkt. No. 10.

Although RPost's counsel in the above-captioned cases were aware of Barton 581 and 259, none of these counsel knew that Mr. Khan and Dr. Tomkow had filed for personal bankruptcy protection in April 2013.[27]  But apparently Adobe's counsel did.  In Barton's counsel email to Adobe's counsel, which Adobe submitted with its July 30, 2013 Notice Relating to Correspondence, Barton's counsel states to Adobe's counsel "*[a]s you also know*, Khan and Tomkow filed C13 petitions in mid-April, filings which are the subject of pending adversary complaints for non-dischargeability which were filed in the last week."[28]  Adobe's counsel was also presumably aware of the Barton adversary proceedings referenced in the email, which were filed July 25, 2013—five days before Adobe filed its notice.

RPost's counsel in the above-captioned cases, however, had no knowledge whatsoever of any of the Barton adversary proceedings and the Burke shareholder derivative suit until they received Adobe's notice.[29]  Indeed, the Burke shareholder derivative suit was filed July 29, 2013—the day before Adobe filed its notice.  Although Mr. Khan and Dr. Tomkow were aware of their personal bankruptcy filings, they were not and could not be aware of the Barton adversary proceedings and the Burke shareholder derivative suits before these suits were filed.[30]

In short, the Court's finding that the prejudice that a stay will impose should be attributed solely to RPost's own actions is based on an incomplete set of facts.  RPost made full disclosure to the Amazon Defendants and the Court and thus should not have to solely suffer the prejudice of an indefinite stay.  The Amazon Defendants knew of the Barton actions and made the strategic decision not to challenge RMail's ownership of the '219 patent.  Moreover, the Court has already determined that ownership is not an issue in the California actions.  An indefinite stay will,

---

[27] Hudnell Decl. at ¶8; Huff Decl. at ¶4; Declaration of Kenneth C. Goolsby ("Goolsby Decl.") at ¶3.
[28] Dkt. No. 540-2.
[29] Hudnell Decl. at ¶9; Huff Decl. at ¶5; Goolsby Decl. at ¶4.
[30] Declaration of Zafar Khan at ¶¶2-5; Declaration of Terrance Tomkow at ¶¶2-3.

however, unduly prejudice and disadvantage RPost because the '219 patent expires within a few years.  As such, the Stay Order may extinguish RPost's right to enforce the '219 patent entirely when the facts do not justify that result.

## III.   CONCLUSION

In conclusion, a resolution in Barton 259 will not simplify or moot the issues in the above cases as to the '219 patent and its continuations.  Regardless of how Barton 259 turns out, RMail's ownership and RMail's and RPost Holdings' right to enforce the '219 patent will not change.  Additionally, the Stay Order does not address several facts regarding RPost's and the Amazon Defendants' knowledge of the California actions.  Thus, RPost respectfully requests that the Court reconsider its Stay Order and lift the stay in the above-captioned cases as to at least the '219 patent and its continuations.

Respectfully Submitted,

Dated: February 17, 2014

/s/ Lewis E. Hudnell, III
Winston O. Huff, Attorney in Charge
State Bar No. 24068745
Deborah Jagai
State Bar No. 24048571
W. O. Huff & Associates, PLLC
302 Market Street, Suite 450
Dallas, Texas 75202
214.749.1220 (Firm)
469.206.2173 (Facsimile)
whuff@huffip.com
djagai@huffip.com


Kenneth C. Goolsby
State Bar No. 24003668
BOON, SHAVER, ECHOLS,
COLEMAN & GOOLSBY, P.L.L.C.
1800 N.W. Loop 281, Suite 303
Longview, TX 75604
Telephone:  (903) 759-2200
Facsimile:  (903) 759-3306
Email: casey.goolsby@boonlaw.com

Lewis E. Hudnell, III
Colvin Hudnell LLP
375 Park Avenue
Suite 2607
New York, New York 10152
Tel: 212.634.6866
Fax: 347.772.3034
lewis@colvinhudnell.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that all parties of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 17th day of February, 2014.

/s/ Lewis E. Hudnell, III
Lewis E. Hudnell, III