# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| RMAIL LIMITED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RIGHTSIGNATURE, LLC, FARMERS GROUP, INC., FARMERS INSURANCE COMPANY, INC., <br><br> Defendants. | **Civil Action No. 2:10-CV-258-JRG** <br> (Lead Case) <br><br> Civil Action No. 2:11-cv-300-JRG <br><br><br> **REDACTED** |

## DEFENDANT SHAREFILE, LLC'S F/K/A RIGHTSIGNATURE'S MOTION TO STRIKE PORTIONS OF DR. KEVIN ALMEROTH'S EXPERT <u>REPORT ON INFRINGEMENT</u>

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    LEGAL STANDARDS ......................................................................................... 2

III.   ARGUMENT ......................................................................................................... 3

     A.    Dr. Almeroth's Doctrine of Equivalents Opinion Should Be Stricken For Never Being Disclosed ........................................................................................ 3

     B.    Other New Theories Disclosed For the First Time in Dr. Almeroth's Report Should be Excluded ........................................................................................... 4

     C.    Limitations For Which No Evidence Was Disclosed In Infringement Contentions, Yet For Which Dr. Almeroth Now Provides Evidence, Should Be Excluded ........ 11

     D.    Dr. Almeroth's Reliance on Source Code Should Be Stricken For RPost's Failure to Serve Source Code Contentions ................................................................. 12

     E.    RPost Lacks Good Cause For Ignoring the Local Rules ......................................... 13

IV.   CONCLUSION .................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adaptix, Inc. v. Alcatel-Lucent USA, Inc.*,
   2014 WL 11663160 (E.D. Tex. Dec. 16, 2014) .......................................................................4

*Biscotti Inc. v. Microsoft Corp.*,
   No. 13-cv-1015-JRG-RSP, 2017 WL 2267283 (E.D. Tex. May 24, 2017) ..................... *passim*

*Computer Acceleration Corp. v. Microsoft Corp.*,
   503 F.Supp.2d 819 (2007) .......................................................................................................2

*Semcon IP Inc. v. ZTE Corp.*,
   No. 16-cv-437-JRG-RSP, 2018 WL 4501808 (Feb. 28, 2018) ......................................2, 4, 14

*Sycamore IP Holdings LLC v. AT&T Corp.*,
   No. 16-cv-588-WCB, 2017 WL 4517953 (Oct. 10, 2017) ....................................................2, 4

**Other Authorities**

Local Rule 4-1 ..................................................................................................................................2

Local Rule CV-5(a)(3) ...................................................................................................................16

Rule 3-1(g) .....................................................................................................................................12

Rule 3-6 ............................................................................................................................................3

I.  **INTRODUCTION**

Defendant ShareFile, LLC, formerly known as RightSignature, LLC ("RightSignature") brings this Motion to Strike portions of RMail Limited, et al. ("RPost's") Expert Report of Dr. Kevin Almeroth offering opinions on infringement. As anyone who has appeared before this Court knows, a party cannot disclose novel theories and evidence of (alleged) infringement for the first time through the mouth of its experts. Here, RPost has done precisely that, with neither leave nor cause. Despite leaving itself every caveat and disclaimer in its infringement contentions, it simply chose not to disclose many of its infringement theories, through updated contentions or otherwise. And here, despite an express invitation by defense counsel to update the contentions, it stuck steadfastly by those contentions served years ago.

Notably, this is not a case of an expert simply elaborating on the theories laid out in RPost's infringement contentions. Rather, the expert is effectively adding wholesale to the contentions, after the close of discovery, thereby neutering the whole point of the Patent Rules' disclosure requirements. RightSignature premised its entire discovery strategy based on what RPost laid out in the contentions, and the prejudice to RightSignature from any change at this late stage is self-evident. To avoid the precise type of issue raised by this motion, RightSignature's counsel even expressly inquired whether the pre-stay contentions from June 2012 remained the operative contentions; RPost unequivocally answered that they were.

Specifically, Dr. Almeroth's report improperly contains new theories of infringement not set out in the complaint or in RPost's infringement contentions, including a Doctrine of Equivalents infringement theory never disclosed until the service of Dr. Almeroth's report. Further, Dr. Almeroth supports his opinions with RightSignature source code despite RPost never providing P.R. 3-1(g) source code contentions after invoking P.R. 3-1(g) for virtually every limitation in its original infringement contentions served in June 2012. RPost's untimely

1

reliance on new theories in Dr. Almeroth's report and its disclosure of source code positions at this late stage—where Dr. Almeroth's report was served on the close of fact discovery (April 1) and trial is but a few months away—violates the Court's rules and severely prejudices RightSignature. The portions of Dr. Almeroth's report violating these rules should be stricken.

## II. LEGAL STANDARDS

Under the Local Patent Rules, a party's infringement contentions are "deemed to be that party's final contentions," and unless necessitated by the Court's claim construction ruling, leave is required for any amendment or supplementation to those final contentions, "made only by order of the Court, which shall be entered only upon a showing of good cause." L.P.R. 3-6. The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F.Supp.2d 819, 822 (2007) (internal citations omitted). In determining whether to exclude evidence due to a party's violation of the Local Patent Rules or an otherwise untimely and prejudicial disclosure, courts in this District consider several factors, including the offending party's explanation for the untimely disclosure, the prejudice to the moving party, the importance of the newly disclosed theories, and the potential impact on the timing of judicial proceedings. *Biscotti Inc. v. Microsoft Corp.*, No. 13-cv-1015-JRG-RSP, 2017 WL 2267283, at *2 (E.D. Tex. May 24, 2017); *Sycamore IP Holdings LLC v. AT&T Corp.*, No. 16-cv-588-WCB, 2017 WL 4517953, at *2 (Oct. 10, 2017); *Semcon IP Inc. v. ZTE Corp.*, No. 16-cv-437-JRG-RSP, 2018 WL 4501808, at *2-3 (Feb. 28, 2018) (each striking late disclosed infringement theories).

## III. ARGUMENT

### A. Dr. Almeroth's Doctrine of Equivalents Opinion Should Be Stricken For Never Being Disclosed

Plaintiffs' original, never-amended infringement contentions contain no disclosure regarding infringement pursuant to the Doctrine of Equivalents beyond stating that it may later take such an infringement position depending on claim construction. *See* Ex.1[1] (RPost's Infringement Contentions Cover Pleading) at 5 ("[B]ecause the Court has not yet construed the asserted patent claims, and the parties have not exchanged potentially disputed claim terms (pursuant to Patent Local Rule 4-1), it is not yet clear whether RPost will rely on the Doctrine of Equivalents to show the presence of any particular claim element(s) in the accused products or methods."). Dr. Almeroth's report now contends ▓▓▓



Ex. 2 (Dr. Almeroth's Infringement Report) (hereinafter "Almeroth Inf. Report") at ¶¶ 403, 404 (emphases added); *see also id.* at ¶ 413 ▓▓▓

---

[1] All cited exhibits are attachments to the Declaration of Jackob Ben-Ezra in support of this Motion.

3

At no time during the fact discovery period did RPost seek leave to amend its required infringement contentions under P.R. 3-1(d), including in connection with the Court's claim construction order entered March 12, 2013.  This, despite RPost even acknowledging that it could so amend in its 2012 infringement contentions.  *See* Ex. 1 at 4 ("Patent Rule 3-6 provides that RPost may supplement its infringement contentions if either there is good cause for doing so or the Court's claim construction ruling so requires.").  Because RPost failed to disclose any theories pursuant to the Doctrine of Equivalents, Dr. Almeroth's infringement opinions based thereon should be stricken—specifically, paragraphs 403 through 408 and paragraphs 413 through 414.  *See Biscotti*, 2017 WL 2267283, at *4 (acknowledging blanket statements regarding the Doctrine of Equivalents are unacceptable, stating "This is distinguishable from circumstances in which the Court struck doctrine of equivalents allegations when a party simply included a blanket or boilerplate statement (not tied to any particular claim element) such as 'any element not literally met is met by the doctrine of equivalents.'") (citing *Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 6:15-CV-01038, 2016 WL 7666160, at *3 (E.D. Tex. Dec. 5, 2016)); *Adaptix, Inc. v. Alcatel-Lucent USA, Inc.*, 2014 WL 11663160 (E.D. Tex. Dec. 16, 2014) (striking portions of expert report alleging infringement via Doctrine of Equivalents when such theory was not disclosed in infringement contentions).

      **B.**    **Other New Theories Disclosed For the First Time in Dr. Almeroth's Report Should be Excluded**

Making matters worse, Dr. Almeroth sets forth several additional new, previously undisclosed theories.  Courts in this District consistently hold parties to the theories disclosed in their contentions, and RPost should not be permitted to ambush RightSignature with untimely theories—disclosed for the first time via expert report—at the close of fact discovery and with

trial a few months away, to RightSignature's prejudice. *Biscotti*, 2017 WL 2267283, at *1; *Sycamore*, 2017 WL 4517953, at *2; *Semcon*, 2018 WL 4501808, at *2-3.

1. **'219 Patent**

Independent Claim 60[a] requires "A method of authenticating a dispatch and contents of the dispatch successfully transmitted from a sender to a recipient." RPost's infringement contentions suggest—via a red rectangle—that the "Contents of Dispatch" includes a multitude of items, including a subject line and personal message for the recipient, the sender, the recipient, and the user-uploaded document itself:



Ex. 3 (Exhibit 1 to Plaintiffs' Infringement Contentions ('219 Patent)) at 1. Yet, in Dr. Almeroth's report, he refers to ████████████████████ Almeroth Inf. Rep. at ¶ 281 ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ (emphasis added). Switching from RPost's position that the "contents of the dispatch" includes everything in the red rectangle in the excerpt above to

5

instead ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is a change in theory that was not disclosed in RPost's infringement contentions. The change is inexplicable and late, because the information relevant to Dr. Almeroth's new infringement theories was publicly available at the time of service of RPost's infringement contentions seven years ago. *See, e.g.*, Ex. 4 ("RightSignature – FAQ – response to "How does RightSignature enable online document signing"). For all of these reasons, paragraph 281 of Dr. Almeroth's infringement expert report should be stricken.[2]

### 2.    '334 Patent:

Independent claim 18[a] requires "***[a]uthentication data*** for authenticating a dispatch and contents of the dispatch successfully electronically transmitted from or for a sender to a recipient comprising a representation of the following set A of information elements." (emphasis added). RPost's infringement contentions were silent regarding "authentication data," as RPost only placed boxes around "Sender," "Recipient," and "Dispatch/Contents of Dispatch":



---

[2] Independent Claim 71[a] similarly includes the "contents of the dispatch" limitation. The same change in theory regarding Claim limitation 60[a] applies to this limitation as well. As such, paragraphs 319-320 of Dr. Almeroth's report should be stricken for the same reasons.

6

Ex. 5 (Exhibit 2 to Plaintiffs' Infringement Contentions ('334 Patent)) at 1. Dr. Almeroth's report is the first time that RPost identifies any theory for what constitutes "authentication data."

In his report, Dr. Almeroth describes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Almeroth Inf. Rep. at ¶ 372 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (emphasis added). Injecting a new theory (*e.g.*, ▮▮▮▮▮▮▮▮▮▮) goes beyond RPost's infringement contentions which were silent regarding "authentication data," th▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For these reasons, paragraph 372 of Dr. Almeroth's report should be stricken.

Independent Claim 18[b] requires "content data a1 representative of the ***contents of the dispatch***." (emphasis added). Dr. Almeroth's opinions regarding this limitation should be stricken for precisely the same reason as limitation 60[a] of the '219 patent, as explained *supra*. That is, Plaintiffs' infringement contentions attempt to correlate—via a red rectangle—that the "Contents of Dispatch" include a multitude of items, including a subject line and personal message for the recipient, the sender, the recipient, and the uploaded document itself:



7

Ex. 5 at 2. Yet, in Dr. Almeroth's report, he refers to ▮▮▮▮▮ ▮▮▮▮▮ Almeroth Inf. Rep. at ¶ 374 ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮. Switching from RPost's position that the "contents of the dispatch" includes everything in the red rectangle in the above excerpt to instead t▮▮▮▮ ▮ is a clear change in theory that RPost never disclosed in its contentions. For these reasons, paragraph 374 of Dr. Almeroth's report should be stricken.

### 3.   '372 Patent

Independent Claim 1[c] requires "transmitting the message to the recipient." RPost's infringement contentions for this claim limitation is a single page that only identifies the invitation email RightSignature sends to intended signers as satisfying this limitation:



Ex. 6 (Exhibit 4 to Plaintiffs' Infringement Contentions ('372 Patent)) at 3. Yet, in Dr. Almeroth's report, he refers to ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ Almeroth Inf. Rep. at ¶ 447 ▮▮▮▮▮

8

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ To support his

allegations, Dr. Almeroth relies on paragraphs in his report that describe ████████████████

████████████████████████████████████████████████████████████████ *See,*

*e.g.*, *id.* at ¶ 125 █████████████████████████████████████████████████

████████████████ ; *see also* ¶¶ 126, 155-159. ███████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ .

Switching from RPost's position that the invitation email satisfies this limitation as

shown in the excerpt above instead to the █████████████████████████████

█████████████████████████████████████████████████████████████ is a

change in theory that was not disclosed in Plaintiffs' infringement contentions. ████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ . *See, e.g.*,

Ex. 4 ("RightSignature – FAQ – response to "Do recipients need to have a RightSignature

account"). Additionally, Dr. Almeroth's report includes ███████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████ which Dr. Almeroth

relies on for satisfying this limitation. *See, e.g.*, Almeroth Inf. Rep. at ¶ 126 ██████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████ For these

reasons, paragraph 447 of Dr. Almeroth's report should be stricken.

Independent Claim 1[d] requires "storing at the server at least a portion of a mail

transport protocol dialog generated by the server and the recipient during the transmission of the

9

message between the server and the recipient." RPost's infringement contentions for this claim limitation are a single page that only identifies RightSignature's "Archive" service that stores previously signed documents as satisfying this claim limitation:



Ex. 6 at 4. In his report, Dr. Almeroth alleges new infringement theories for this limitation by identifying ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Almeroth Inf. Rep. at ¶ 450 ▓▓▓▓▓▓▓▓



▓▓▓▓▓▓▓▓▓▓ (emphasis added). RPost's contentions did not identify ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as a portion of the mail transport protocol dialog that RightSignature allegedly stores to satisfy this limitation.

Switching from RPost's position that the portion of the mail transport protocol dialog is part of the document archive shown in the excerpt above instead to ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ constituting the stored portion of a mail transport dialog is a change in theory that was not disclosed in Plaintiffs' infringement contentions.

10

Further, the information needed to identify the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ is and was publicly available at the time of Plaintiff's infringement contentions. *See, e.g.*, Ex. 4 ("RightSignature – FAQ – response to "What is the difference between an original document and a signed document"). In fact, Dr. Almeroth's report includes ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that he relies on for this very limitation. *See, e.g.*, Almeroth Inf. Rep. at ¶¶ 130, 134, 181, 193, 198. For these reasons, paragraph 450 of Dr. Almeroth's report should be stricken.

### C. Limitations For Which No Evidence Was Disclosed In Infringement Contentions, Yet For Which Dr. Almeroth Now Provides Evidence, Should Be Excluded

Plaintiffs' infringement contentions provided no disclosure of any kind with respect to certain limitations in independent Claim 18 of the '334 patent and independent Claim 1 of the '624 patent—in fact, the relevant cell in Plaintiffs' infringement contention chart was literally blank for those limitations. Yet, Dr. Almeroth now provides argument and evidence in support of those limitations. Those limitations are in '334 patent Claim 18, and '624 patent Claim 1:

'334 Patent, Claim 18:

| United States Patent 6,571,334 | Right Signature's Online Document Signing Service | Evidence |
|---|---|---|
| wherein said authentication data does not comprise an encrypted representation of said content data and said dispatch record data which is encrypted with a secret key, either symmetric or asymmetric, associated with said recipient. <br><br> *RPost presently contends that this element is a software limitation. RPost reserves the right to amend its contentions relating to this software limitation (without waiver of the right to reconsider this contention) per P.R. 3-1(g), as amended by this Court.* | The authentication data in Right Signature's Online Document Signing Service does not comprise an encrypted representation of the content data and the dispatch record data which is encrypted with a secret key associated with the recipient. | |

Ex. 5 at 14.

'624 Patent, Claim 1:

11

| United States Patent 7,707,624 | Right Signature's Online Document Signing Service | Evidence |
|---|---|---|
| | | Right Signature Online Document Signing Service |
| processing the request by the recipient to receive proof of transmission or delivery of the manually initiated reply to the sender; *RPost presently contends that this element is a software limitation. RPost reserves the right to amend its contentions relating to this software limitation (without waiver of the right to reconsider this contention) per P.R. 3-1(g), as amended by this Court.* | Right Signature processes the request by the recipient to receive proof of transmission or delivery of the manually initiated reply to the sender. | |

Ex. 7 (Exhibit 3 to Plaintiffs' Infringement Contentions ('624 Patent)) at 18.

This is an improper provision of new theories and evidence relative to RPost's infringement contentions, and as such Dr. Almeroth's opinions regarding those limitations, specifically paragraphs 389 and 421, should be stricken. It appears RPost may have intended to supplement its contentions with respect to these limitations—among others—with source code citations, as per the note in the left-hand column in the above excerpts ("RPost presently contends that this element is a software limitation. RPost reserves the right to amend its contentions . . . ."). Despite this, RPost never amended its contentions. Further, Dr. Almeroth relies on information and evidence based on usage of the RightSignature service that was publicly available as of the time of Plaintiffs' infringement contentions to support new theories for both of these limitations. *See, e.g.*, Almeroth Inf. Rep. at ¶¶ 122-126. There is no reason RPost could not have identified this supposed support years ago.

### D.   Dr. Almeroth's Reliance on Source Code Should Be Stricken For RPost's Failure to Serve Source Code Contentions

Plaintiff's case references RightSignature's source code for the very first time in Dr. Almeroth's infringement expert report. Plaintiff's only-served infringement contentions, served in June 2012, invoke Patent Rule 3-1(g). Specifically, for virtually every limitation RPost states:

> RPost presently contends that this element is a software limitation. RPost reserves the right to amend its contentions relating to this software limitation (without

waiver of the right to reconsider this contention) per P.R. 3-1(g), as amended by this Court.

*See, e.g.*, Ex. 1 at 2.  P.R. 3-1(g) requires a party that is asserting claim elements are *software* limitations to identify, on an element-by-element basis, the source code that satisfies those claim limitations within a reasonable time after the opposing party's production of source code.  *See Biscotti*, 2017 WL 2267283, at *3 (E.D. Tex. May 24, 2017).  Despite asserting that it would amend its contentions within a reasonable time after receiving source code, RPost never sought leave to amend.  *See* Ex. 5 at 2 ("RPost reserves the right to amend its contentions relating to software and/or firmware limitations pursuant to P.R. 3-1(g), as amended by the Court."). Failure to provide such notice is grounds for striking an expert's opinions based on code not previously produced.  *See Biscotti*, 2017 WL 2267283, at *3-*4 (finding good cause under less favorable facts where plaintiff's expert relied on never-disclosed source code, stating "There is no dispute that Biscotti's Infringement Contentions do not include citations to the relevant Broadcast API source code. Indeed, the words "Broadcast API" cannot be found in Biscotti's Infringement Contentions").

The instant case presents an unquestionable violation of P.R. 3-1(g): 1) Plaintiffs identified source code claim limitations in their original infringement contentions and invoked P.R. 3-1(g); 2) Plaintiffs reviewed RightSignature's source code; 3) Plaintiffs never amended their infringement contentions to identify <u>any</u> source code; and 4) Plaintiff's infringement expert relied on source code in his expert report.  Under these facts, all of Dr. Almeroth's references to RightSignature's source code should be stricken, specifically paragraphs 77, 215-219.

### E.     RPost Lacks Good Cause For Ignoring the Local Rules

While RPost's failure to comply with the Local Patent Rules alone warrants striking these new theories, the lack of good cause or any other justification for the late disclosure and the

13

resulting prejudice to RightSignature also demand it. Because of RPost's untimely disclosure, it deprived RightSignature of the opportunity to ventilate the new infringement theories under the limited re-opening of discovery ordered by this Court. Indeed, RPost's expert report, replete with new theories, arrived on the day fact discovery closed (April 1, 2019), and RightSignature had only two weeks to respond to Dr. Almeroth's report. The prejudice to RightSignature is manifest, as it relied on RPost's original, never-amended theories in defending the case throughout discovery. For example, RightSignature was led to believe during discovery that RPost would not rely on the Doctrine of Equivalents nor would it change its infringement theories from its original contentions. Had RPost timely disclosed its new theories, RightSignature would have had more than two weeks to develop arguments to rebut the new theories.

RPost has no explanation or credible excuse for the timing of its late disclosure, and cannot demonstrate good cause for amending now after fact discovery has closed. The absence of cause is magnified, as explained above, by RPost's reliance on publicly available information to underpin its new theories.[3] While there would not have been good cause for amending its infringement contentions at any point since the stay was lifted—beyond amending to provide source code contentions which RPost did not do—RPost had at least several months before the April 1st deadline to prepare the Almeroth Report and raise any issues with its infringement theories by motion to this Court, as required under the Rules. Instead, RPost decided to lie in wait until the last day of fact discovery and obscure its late disclosure of new theories in an expert report. That is improper, and the new theories should be struck. *See Semcon*, 2018 WL 4501808, at \*2 ("Infringement contentions augment existing discovery and pretrial procedures, but the goal of each of these devices is to 'make a trial less a game of blind man's buff and more a fair contest

---

[3] Materials Dr. Almeroth relied upon were also available as of the time RightSignature's source code was made available for inspection, yet RPost never served source code contentions.

with the basic issues and facts disclosed to the fullest practicable extent.'") (quoting *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958)); *Biscotti*, 2017 WL 2267283, at *4 ("Although Microsoft's prejudice is lessened by the fact that Microsoft had two months to respond to Dr. Wicker's report and the opportunity to depose Dr. Wicker, Microsoft's case and claim construction strategy relied on Biscotti's original theory for more than two years, and it is not reasonable to require Microsoft to make a significant shift in the few months before trial. Finally, a continuance would unnecessarily delay the upcoming trial.").

## IV. CONCLUSION

For the foregoing reasons, RightSignature respectfully requests that the Court strike paragraphs 77, 215-219, 281, 319-320, 372, 374, 389, 403-408, 413-414, 421, 447, 450 of Dr. Almeroth's infringement report for the reasons identified above.

| | |
|---|---|
| Dated:  April 29, 2019 | Respectfully submitted,<br>*/s/ David M. Barkan*<br>**David M. Barkan**<br>By:   CA Bar 160825<br>barkan@fr.com<br>**FISH & RICHARDSON P.C.**<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063<br>Tel: (650) 839-5070<br>Fax: (650) 839-5071<br><br>**Indranil Mukerji**<br>MA Bar 644059<br>mukerji@fr.com<br>**FISH & RICHARDSON P.C.**<br>1000 Maine Avenue, SW<br>Suite 1000<br>Washington, DC 20024<br>Telephone:  (202) 783-5070<br>Facsimile:   (202) 783-2331<br><br>**Jackob Ben-Ezra**<br>TX Bar 24073907<br>ben-ezra@fr.com<br>**Caitlin M. Dean**<br>Texas Bar 24109797<br>cdean@fr.com<br>**FISH & RICHARDSON P.C.**<br>1221 McKinney Street<br>Suite 2800<br>Houston, Texas 77010<br>Telephone:  (713) 654-5300<br>Facsimile:  (713) 652-0109<br><br>**Lawrence Jarvis**<br>Georgia Bar No. 102116<br>jarvis@fr.com<br>1180 Peachtree Street NE<br>Suite 2100<br>Atlanta, GA 30309<br>Telephone: (404) 892-5005<br>Facsimile: (404) 892-5002<br><br>**COUNSEL FOR DEFENDANT SHAREFILE, LLC F/K/A RIGHTSIGNATURE, LLC** |

16

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document and all attachments thereto has been served on April 29, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

<i>/s/ David M. Barkan</i><br/>
David M. Barkan

**CERTIFICATE OF CONFERENCE**

On April 11, 2019, David Barkan, counsel for ShareFile, met and conferred telephonically with Bo Davis and Christian Hurt, counsel for RPost. ShareFile explained the basis of the motion, and RPost indicated that it disagreed with ShareFile's position.

<i>/s/ David M. Barkan</i><br/>
David M. Barkan

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned hereby certifies that the foregoing document and attachments thereto are authorized to be filed under seal pursuant to Paragraph 8.1.1 of the Protective Order entered in this case (Dkt. No. 330).

<i>/s/ David M. Barkan</i><br/>
David M. Barkan