**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| RMAIL LIMITED, et al.,<br><br>Plaintiffs,<br>v.<br><br>RIGHTSIGNATURE, LLC, FARMERS GROUP, INC., FARMERS INSURANCE COMPANY, INC.,<br><br>Defendants. | **Civil Action No. 2:10-CV-258-JRG**<br>(Lead Case)<br><br>Civil Action No. 2:11-cv-300-JRG<br><br>**REDACTED** |

**DEFENDANT SHAREFILE, LLC'S F/K/A RIGHTSIGNATURE'S *DAUBERT* MOTION TO EXCLUDE TESTIMONY FROM KEITH UGONE'S EXPERT REPORT RELATING TO DAMAGES**

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. The Feldbau Patents-in-Suit ..... 2

B. The Tomkow Patents-in-Suit ..... 2

C. The [REDACTED] ..... 3

D. Dr. Ugone's Report ..... 3

III. LEGAL STANDARDS ..... 4

IV. ARGUMENT ..... 4

A. Dr. Ugone Analyzed the Incorrect Parties to the Hypothetical Negotiations ..... 4

B. Dr. Ugone Improperly Bases His Entire Analysis On [REDACTED] ..... 9

C. Dr. Ugone's [REDACTED] Royalty Base is Unreliable ..... 11

D. Dr. Ugone Improperly Offers [REDACTED] ..... 12

V. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................1, 1, 4

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014)....................13

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)....................5, 10

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)....................7, 8, 9

*Lucent Techs. v. Gateway*,
580 F.3d 1301 (Fed. Cir. 2009)....................4, 5

*Micro Chem., Inc. v. Lextron, Inc.*,
317 F.3d 1387 (Fed. Cir. 2003)....................4

*Opticurrent, LLC v. Power Integrations, Inc.*,
No. 17-CV-03597-WHO, 2018 WL 6727826 (N.D. Cal. Dec. 21, 2018)....................7

*ResQNet.com Inc. v. Lansa, Inc.*
594 F.3d 860 (Fed. Cir. 2010)....................4, 13

*Uniloc USA, Inc. v. Microsoft Corp.*
632 F.3d 1292 (Fed. Cir. 2011)....................4

*Warsaw Orthopedic, Inc v. Nuvasive, Inc.*,
2016 WL 4536740 (S.D. Cal. June 15, 2016)....................7

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012)....................10

## I. INTRODUCTION

Defendant ShareFile, LLC, formerly known as RightSignature, LLC ("RightSignature") brings this *Daubert* Motion to Exclude Certain Testimony from RMail Limited, et al. ("RPost's") Expert on damages, Dr. Keith Ugone. In his expert report, Dr. Ugone presents a damages framework built almost completely [REDACTED] Dr. Ugone compounds this error by presenting a hypothetical negotiation in which the negotiating licensor was not a proper party to the negotiation. This is especially significant because Dr. Ugone relies heavily on [REDACTED] In fact, the proper parties to the negotiation are not alleged to have been competitors. Dr. Ugone makes an additional legal error when he includes non-infringing activity as part of the royalty base. Finally, Dr. Ugone provides an [REDACTED] to his royalty, without any analysis of [REDACTED] or any explanation of why the parties to the hypothetical negotiation would have assumed [REDACTED]

Dr. Ugone's errors are not merely questions of credibility or how much weight to give to the evidence. To the contrary, Dr. Ugone takes legally erroneous principles and builds an entire damages model on those principles, thus inviting the jury to reach a damages verdict that is contrary to Federal Circuit law. Dr. Ugone's hypothetical negotiation and damages model should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

## II. FACTUAL BACKGROUND

There are four patents-in-suit. Because the patents-in-suit fit into two categories, they are discussed as two bundles: "the Feldbau patents" (U.S. Patent Nos. 6,182,219 ("the '219 patent") and 6,571,334 ("the '334 patent")) and "the Tomkow patents" (U.S. Patent Nos. 7,707,624 ("the '624 patent" and 7,966,372 ("the '372 patent"). Importantly, the two categories of patents were owned and invented by different entities and inventors.

### A. The Feldbau Patents-in-Suit

The Feldbau patents are both titled "Apparatus and Method for Authenticating the Dispatch and Contents of Documents." On August 6, 2009, then-assignee Authentix assigned its interest in the '219 patent to RMail Limited. Exhibit 1 (assignment history of the '219 Patent).[1] Also on August 6, 2009, Authentix assigned its interest in the '334 patent to RMail Limited. Exhibit 2 (assignment history of the '334 Patent). [REDACTED] Exhibit 3 (Exhibit 6A to March 19, 2019 Dep. Tr. of Zafar Khan, Vol. 5). [REDACTED]

### B. The Tomkow Patents-in-Suit

RPost International Limited is the original assignee of the '624 patent and the '372 patent application. The '624 patent is titled "System for, and Method of, Proving the Transmission, Receipt and Content of a Reply to an Electronic Message." The Tomkow patents were assigned

[1] Unless otherwise noted, all exhibits are attached to the Declaration of Jackob Ben-Ezra filed in support of this Motion.

[2] [REDACTED] Exhibit 3 (Exhibit 6A to Khan Vol. 5).

to RPost International, Ltd. in April 2007. Exhibits 4, 5 (assignment histories of Tomkow patents). RPost International, Ltd. assigned the Tomkow patents to RPost Communications in March 2011. Exhibits 4, 5 (assignment histories of Tomkow patents).

### C. The Rejected Propat Offers

During patent litigation from 2003-2005 regarding the '219 patent, a Magistrate Judge ordered then-plaintiff Propat International to make settlement offers to then- defendants RPost, Inc., RPost US, and RPost International, Ltd.. The RPost entities were the accused infringers in the litigation. Exhibit 6 [REDACTED] at RPO_0011746-749, RPO_0012288-291, and RPO_0008005-006, respectively. [REDACTED] *Id.* The [REDACTED] *Id.*

### D. Dr. Ugone's Report

Dr. Ugone offers a menu of damages, [REDACTED] Exhibit 7 (Dr. Ugone's Damages Expert Report) (hereinafter "Ugone Report") at ¶ 15. He bases his royalty rates on an analysis of [REDACTED] Ugone Report at ¶ 94. From this [REDACTED] Dr. Ugone contemplates [REDACTED] Ugone Report at ¶ 6. He maintains that the parties to those hypothetical negotiations would be [REDACTED] Ugone Report at ¶1, n. 1. Dr. Ugone [REDACTED] Ugone Report at ¶ 15.

## III. LEGAL STANDARDS

Federal Rule of Evidence 702 allows a jury to hear expert testimony if it is based on "scientific, technical, or other specialized knowledge" by a qualified expert and if it "will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. The Supreme Court has assigned "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

A party proffering expert testimony has the burden to establish by a preponderance of the evidence that such testimony is sufficiently reliable. *See Daubert*, 509 U.S. at 592 n.10. To be admissible, expert testimony must be (1) based on sufficient facts or data; (2) the product of reliable principles and methods; and (3) an application of the principles and methods reliably to the facts. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591-592. As "gatekeeper," the court must exclude expert testimony that "is irrelevant or does not result from the application of reliable methodologies or theories to the facts of the case." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003).

Experts' opinions on patent damages, like any other expert testimony, must be based on sound economic principles and reliable data in order to be admissible. *See Uniloc USA, Inc. v. Microsoft Corp*. 632 F.3d 1292 (Fed. Cir. 2011); *ResQNet.com Inc. v. Lansa, Inc*. 594 F.3d 860 (Fed. Cir. 2010); *Lucent Techs. v. Gateway*, 580 F.3d 1301 (Fed. Cir. 2009).

Additional, specific points of law are discussed in the relevant sections below.

## IV. ARGUMENT

### A. Dr. Ugone Analyzed the Incorrect Parties to the Hypothetical Negotiations

In his expert report, Dr. Ugone utilized a "hypothetical negotiation" approach to determining a reasonable royalty. *See* Ugone Report at ¶ 5. The hypothetical negotiation is a

"willing licensor-willing licensee" approach to ascertaining the royalty that would have been agreed upon at the time the alleged infringement began. *See Lucent Techs.*, 580 F.3d at 1324. The hypothetical negotiation analysis is an educated attempt, "as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement." *Id.* at 1325. The identities and practices of the willing parties, therefore, are important considerations in this analysis because the parties' unique circumstances and characteristics, captured in part by the damages factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), provide contextual details for the hypothetical discussion and inform the licensing outcome.



Here, Dr. Ugone opined [REDACTED] For both, he opines [REDACTED] Ugone Report at ¶ 1, n.1 [REDACTED]); ¶ 5 [REDACTED] Dr. Ugone's designation of "RPost" is legally erroneous for multiple reasons.

First, with respect to the hypothetical negotiation [REDACTED] the "willing licensor" at the negotiating table indisputably could not be [REDACTED] At that time, [REDACTED] Instead, it must have been either [REDACTED]

Critically, [redacted] Exhibit 8 [redacted] at 4. Consequently, [redacted] *Id.* Dr. Ugone fails to discuss any of these issues, and instead simply [redacted] Dr. Ugone purports to include [redacted] via a footnote in his report but [redacted]

Figure 1 to Ugone Report. In failing to identify the correct entities at the hypothetical negotiation for the Feldbau patents, Dr. Ugone ignored the legal requirement to determine "the

value of the patented technology to the parties in the marketplace when infringement began." *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012).

The error in Dr. Ugone's mistake is similar to that at issue in *Warsaw Orthopedic, Inc v. Nuvasive, Inc.*, 2016 WL 4536740 (S.D. Cal. June 15, 2016), which warranted exclusion of the expert's analysis. In that case, the asserted patent was previously owned by an individual named inventor, who later assigned his patent to a predecessor-in-interest of the plaintiff. *Id.* at *2-5. After determining that the correct patent owner at the time infringement began was the individual inventor, the district court granted defendants' motion to strike plaintiff's expert report because it failed to analyze the hypothetical negotiation from the named inventor's perspective. *Id.* at *5. Similarly, here Dr. Ugone should have analyzed the hypothetical negotiation with respect to the [REDACTED] from the perspective of [REDACTED] There is no legal basis to perform the hypothetical negotiation analysis from the perspective of a company that did not own the patent rights nor even have the right to license the patents. *See id.*; *see also Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-CV-03597-WHO, 2018 WL 6727826, at *8-9 (N.D. Cal. Dec. 21, 2018).

This distinction in negotiating parties is further critical because [REDACTED] would obviously have been in a completely different bargaining position as compared to an unrelated entity [REDACTED] having different attributes, interests, and considerations. And [REDACTED] [REDACTED] [REDACTED] was in an entirely different bargaining position than [REDACTED] *See* Exhibit 9 (Dep. Tr. of Zafar Khan, Vol. 1, March 25, 2013) at pp. 79:25-80:5. This is critical, because Dr. Ugone bases his opinion on [REDACTED]



[redacted] when in fact [redacted] *See, e.g.*, Ugone Report at ¶ 53 [redacted]; ¶ 68 [redacted]; *see also* ¶¶ 69, 95.

As such, Dr. Ugone's damages opinion [redacted] places the wrong parties at the negotiation, and on that basis should be stricken under Fed. R. Evid. 702. *LaserDynamics*, 694 F.3d at 76.

The same error pervades Dr. Ugone's analysis of the [redacted] as well, because [redacted] *See* Ugone Report at ¶ 9 [redacted] The original assignee of the Tomkow patents was RPost International. *See* Exhibit 4 (assignment history of the '624 Patent); Exhibit 5 (assignment history of the '372 Patent. [redacted] Moreover, because Dr. Ugone utilizes [redacted] the fundamental legal error in his treatment of the parties to the hypothetical



[redacted] negotiation infect his analysis of the [redacted] Because Dr. Ugone did not reliably apply the hypothetical negotiation framework to the facts of this case, his opinions should be excluded.

### B. Dr. Ugone Improperly Bases His Entire Analysis On [redacted]

As the main data point underlying his entire royalty analysis, Dr. Ugone discusses a [redacted] That [redacted] Dr. Ugone's reliance on [redacted] is improper, for several reasons.

First, Dr. Ugone ignores that the [redacted] *See* Exhibit 6 [redacted] at RPO_0008005. [redacted] thus does not fit within the scope of *Georgia Pacific* factor #1 [redacted]

Second, Dr. Ugone does not explain why the parties to the hypothetical negotiation would have considered [redacted]. Generally, litigation-induced settlement agreements are not probative in the damages calculus in the context of hypothetical negotiations. *See, e.g. LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) ("The propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable.



. . . The notion that license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty is a logical extension of *Georgia–Pacific*, the premise of which assumes a voluntary agreement will be reached between a willing licensor and a willing licensee, with validity and infringement of the patent not being disputed”).

Exhibit 6

at RPO_0011746-749, RPO_0012288-291, and RPO_0008005-006, respectively. Even worse,

Significantly, Dr. Ugone does not use the

To the contrary, he

Ugone Report at ¶ 14. In short, Dr. Ugone takes

Dr. Ugone’s failures warrant excluding his opinions under Fed. R. Evid. 702. *See Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 29-30 (Fed. Cir. 2012) ([3]

[3] Interestingly, Dr. Ugone’s reliance on is contradicted by his own statements in his report. Specifically, in opining that



### C. Dr. Ugone's [REDACTED] Royalty Base is Unreliable

Dr. Ugone opines that RightSignature would pay a royalty in the form of a [REDACTED] Ugone Report at ¶ 94 [REDACTED] To arrive at his damages calculations for both the Feldbau and Tomkow patents, Dr. Ugone [REDACTED] *Id.* at ¶ 119. He defines [REDACTED] *Id.* at ¶ 14, n.13. Dr. Ugone's use of [REDACTED] as the royalty base is unreliable and involves substantial over-counting because [REDACTED] for either of the Feldbau or Tomkow patent groups.

RPost's own infringement expert Dr. Almeroth testified that [REDACTED] Exhibit 11 (2019-04-26 Almeroth Rough Dep. Tr.) at 72 [REDACTED]; Exhibit 12 (Almeroth Inf. Report at ¶¶ 128, 177, 180-81, 187). That is, under Dr. Almeroth's opinions regarding infringement, [REDACTED] which Dr. Almeroth relies on for showing infringement of each asserted patent. *See, e.g.*, Exhibit 12 (Almeroth Inf. Report at ¶¶ 331, 335, 382, 387, 421, 424, 458, 460). As such,

---

[REDACTED] Dr. Ugone states [REDACTED] Ugone Report at ¶ 110. The same applies to [REDACTED]



Dr. Ugone's reliance on [redacted] is wrong and unsupportable.

Tellingly, Dr. Ugone discusses [redacted] in his report, which relate to [redacted] Ugone Report at ¶ 42 [redacted] Acknowledging his awareness that the [redacted] generally, Dr. Ugone includes [redacted] Ugone Report at ¶ 119. He does not however provide [redacted] For the reasons explained above, any opinion Dr. Ugone offers using [redacted] is unsupported by the facts of the case and should be stricken under Fed. R. Evid. 702.

### D. Dr. Ugone Improperly Offers [redacted]

Dr. Ugone improperly contends his calculated damages figures should be [redacted] failing to tie it to the facts and further in violation of the "entire market value" rule. Specifically, Dr. Ugone states, [redacted]

Ugone Report at ¶ 15 (emphasis added). Similarly, for [redacted]

[redacted]

*Id.* In order to avoid overvaluing the patented invention, the Federal Circuit has cautioned that "the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). By [redacted] Dr. Ugone adds damages that are not based upon the contribution of the patented features to the accused products. More specifically, Dr. Ugone's arbitrary application of [redacted] suffers from blindly increasing damages across the board without being tied to the allegedly infringing features of the accused product or even the actual price changes of the accused products over time—and similarly not specific to the relevant market. *See, e.g.*, Ugone Report at ¶ 40 [redacted] "Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). Dr. Ugone's damages calculations [redacted]

## V. CONCLUSION

For the forgoing reasons, RightSignature respectfully requests that the Court exclude Dr. Ugone's opinions as detailed above.

Dated: April 29, 2019

Respectfully submitted,

By: */s/ David M. Barkan*

**David M. Barkan**
CA Bar 160825
barkan@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel: (650) 839-5070
Fax: (650) 839-5071

**Indranil Mukerji**
MA Bar 644059
mukerji@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW
Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

**Jackob Ben-Ezra**
TX Bar 24073907
ben-ezra@fr.com
**Caitlin M. Dean**
Texas Bar 24109797
cdean@fr.com
**FISH & RICHARDSON P.C.**
1221 McKinney Street
Suite 2800
Houston, Texas 77010
Telephone: (713) 654-5300
Facsimile: (713) 652-0109

**COUNSEL FOR DEFENDANT SHAREFILE, LLC F/K/A RIGHTSIGNATURE, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on April 29, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ David M. Barkan*
David M. Barkan

**CERTIFICATE OF CONFERENCE**

On April 27, 2019, counsel for ShareFile David Barkan conferred in person with Deb Coleman counsel for RPost around. ShareFile explained the basis of the motion, and RPost indicated that it disagreed with ShareFile's position.

*/s/ David M. Barkan*
David M. Barkan

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned hereby certifies that the foregoing document is authorized to be filed under seal pursuant to the March 26, 2013 Protective Order.

*/s/ David M. Barkan*
David M. Barkan