**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| RMAIL LIMITED, et al., | Civil Action No. 2:10-CV-258-JRG (Lead Case) |
| Plaintiffs, | |
| | CONSOLIDATED |
| v. | |
| AMAZON.COM, INC., et al., | |
| | Civil Action No. 2:11-cv-299-JRG |
| DOCUSIGN, INC., | |
| | Civil Action No. 2:11-cv-300-JRG |
| RIGHT SIGNATURE, LLC, FARMERS GROUP, INC., FARMERS INSURANCE COMPANY, INC., | |
| ADOBE SYSTEMS INCORPORATED, ECHOSIGN, INC., | Civil Action No. 2:11-cv-325-JRG |
| Defendants. | |

**ADOBE'S RESPONSE TO RPOST'S MOTION TO STRIKE PORTIONS OF**
**THE EXPERT REPORT OF DR. MARKUS JAKOBSSON (DKT. 725)**

**FILED UNDER SEAL**

Adobe Inc., f/k/a Adobe Systems Inc., and EchoSign, Inc. (collectively "Adobe") hereby respond to Plaintiffs RMail Limited, RPost Communications Limited, and RPost Holdings, Inc.'s ("RPost's or Plaintiffs'") Motion to Strike Portions of the Expert Report of Dr. Markus Jakobsson (Dkt. 725) (the "Motion").

## I.     INTRODUCTION

All of Dr. Jakobsson's analyses are admissible and relevant, and RPost has not shown otherwise.   Dr. Jakobsson consistently applies this Court's claim constructions to his non-infringement opinions, including after his extensive factual analysis of source code details.   Dr. Jakobsson also correctly applies the plain and ordinary meaning of claim terms in his non-infringement analysis, but RPost objects to his opinions on plain meaning.   RPost's objections to Dr. Jakobsson's opinions go to the weight of the evidence and can be the subject of cross-examination, but are not the basis for the exclusion of testimony.   RPost also objects to Dr. Jakobsson's opinions regarding RPost's product, but such testimony is relevant to damages issues and should not be excluded.   As such, RPost's Motion should be denied in its entirety.

## II.     ARGUMENT

### A.     Dr. Jakobsson Properly Applies the Court's Claim Constructions

Dr. Jakobsson properly applies the Court's claim constructions, or applies the plain and ordinary meaning, to each of the limitations identified in RPost's Motion.

### 1.     The "Receiving" Limitations ('219 Patent)

As an initial matter, RPost references numerous paragraphs in summary fashion without specifying anything objectionable about such paragraphs.   For example, in ¶¶ 196-199, Dr. Jakobsson analyzes the source code details for the accused product, and in ¶¶ 200-201 Dr. Jakobsson analyzes facts concerning the operation of the accused product, including facts that RPost's expert does not dispute.   Dkt. 725-1 at ¶¶ 196-201.   Then, in ¶¶ 202-203, Dr. Jakobsson

analyzes these undisputed facts to properly render his expert opinion of no literal infringement and no infringement under the doctrine of equivalents. *Id.* at ¶¶ 202-203.

Dr. Jakobsson also analyzes the plain and ordinary meaning of the claim limitations at issue. RPost's acknowledges that the Court did not construe either of the "receiving" limitations referenced by RPost's Motion. Dkt. 725 at 4. As such, these terms are afforded their plain and ordinary meaning, and a patent's specification can help inform the plain meaning of a claim term. *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-00744-JRG, 2017 WL 3704760, *4 (E.D. Tex. 2017) (denying JMOL and ruling that substantial evidence, in the form of expert testimony on what was the "plain and ordinary" meaning of the claim term, supported the jury's finding where the accused infringer's expert provided reasons for why the term was limited to a certain scope). Indeed, "[a]t trial, parties may introduce evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art so long as the evidence does not amount to arguing claim construction to the jury." *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 660857, at *3-5 (N.D. Cal. Feb. 20, 2014) (internal citations omitted) (denying Samsung's motion to strike portions of Apple's non-infringement report because "Dr. Storer's understanding of the plain and ordinary meaning of the term at issue is supported by the specification such that a jury could (but would not have to) agree with Apple's noninfringement position."). Given that Dr. Jakobsson must testify on the plain and ordinary meaning of claim terms to aid the jury's understanding of such terms, he properly uses the intrinsic records as evidence of "the plain and ordinary meaning of terms not construed by the Court to one skilled in the art." *Apple*, 2014 WL 660857, at *3; *see, e.g.*, Dkt. 725-1 at ¶ 193 (looking to the statements of RPost during re-examination, where it stated that "***one skilled in the art would understand the use of the term*** in the context of the patent to mean that a message or dispatch that is 'transmitted'

means sending the message or dispatch to a recipient, where the message or dispatch actually gets to the recipient." (emphasis added)).  Dr. Jakobsson should be allowed to offer evidence on the plain and ordinary meaning to aid in the jury's understanding.[1]

### 2.    "Non-Interested Third Party" ('219 Patent)

With regards to the "non-interested third party" limitation, Dr. Jakobsson properly compares the claims, according to the Court's construction, to the accused product.  The Court's construction of this term is "a party who carries out the authentication function without bias and *without the participation* of the sender *or the recipient*" (Dkt. 297 at 43 (emphases added)), and Dr. Jakobsson applies this construction in his analyses.  *See, e.g.*, Dkt. 725-1 at ¶ 220 ("███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████") (emphases added).  In ¶ 218, Dr. Jakobsson expressly relies on the claim construction to dispute RPost's opposing expert, and in ¶¶ 220-221 offers his opinion on no literal infringement and no infringement under doctrine of equivalents using the Court's construction. *Id.* at ¶¶ 218, 220-221.

In fact, the Court's construction includes the phrase "without the participation of the recipient," and Dr. Jakobsson references the prosecution history to provide some context for applying the construction.  *See id.* at ¶ 219 (referencing the applicants statements regarding the recipient's "cooperation," i.e. participation).  This is a permissible analysis.  *See Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, No. CIV.A. 398CV2996D, 2002 WL 1751381, at *31 (N.D. Tex. Apr.

---

[1] By contesting Dr. Jakobsson's interpretation of the "plain and ordinary meaning" of these claim terms, RPost arguably raises "an actual dispute regarding the proper scope of these claims."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  As such, Adobe would be amenable to construction of the claim terms, *i.e.*, "receiving content data representative of the contents of the dispatch originated from the sender and being electrically transmitted to said recipient" and "electronically transmitted to said receiving system."

4, 2002) (denying motion to strike expert testimony, holding that "[t]he court considers this methodology—that of applying specialized knowledge and experience to the language and prosecution history of a specific patent in order to determine the meaning of its terms—to be reliable for determining how one with ordinary skill in the art would interpret the claim language."); *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 2016 WL 9402395, at *7 (S.D. Fla. May 3, 2016), *vacated on other grounds*, 876 F.3d 1350 (Fed. Cir. 2017) ("A dispute about the proper *application* of the Court's constructions is not grounds to exclude Mr. Taylor's opinions. . . . The terms are meaningless without a proper, reasoned application under the circumstances in this case—which is exactly the purpose of expert testimony.  Exclusion of Mr. Taylor's opinions, therefore, is not warranted.") (emphasis in original).  As such, ¶ 219 of Dr. Jakobsson's report should not be stricken, and instead, can be the subject of cross-examination.

### 3.    "An Indicia of a Time of Successful Transmission of the Dispatch to the Recipient" ('219 Patent)

In ¶ 227, which RPost moves to strike, Dr. Jakobsson's opinion is focused on rebutting the documentation that RPost's opposing expert relies upon.  *See* Dkt. 725-1 at ¶ 227.  Dr. Jakobsson identifies RPost's theory of infringement, and then proceeds to refute RPost's underlying evidence that allegedly supports that theory.  *Id.*  With regards to the "indicia of a time of successful transmission of the dispatch to the recipient" claim term, Dr. Jakobsson again properly compares the construed claim to the accused product.  The Court construed this term as "data that represents the time at which the dispatcher forwarded the dispatch for delivery…" (Dkt. 297 at 33-24), and Dr. Jakobsson's analyses use this construction.  *See, e.g.*, Dkt. 725-1 at ¶ 230 ("▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆").  There is nothing objectionable to strike.

### 4. "Comparing the Accused Product to the '372 and '624 Patent Specification"

Dr. Jakobsson rigorously applies the claims of the '624 patent, as construed, to the accused product, including through detailed source code analysis. For those claim limitations in the '372 and '624 patents that have a plain and ordinary meaning, such as "transmitting the manually initiated reply" and "transmitting the message" (*see* Dkt. 297 at 57 and 97), Dr. Jakobsson properly reviewed and considered the specification in the ordinary course of his analysis. *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-00744-JRG, 2017 WL 3704760, *4 (E.D. Tex. 2017) ("Genband provided substantial evidence in the form of expert testimony that in the context of the patent the plain and ordinary meaning of 'digital transmission facility' is limited to facilities transmitting voice. The jury was entitled to weigh and consider the substantial evidence discussed above in favor of Genband."); *Apple*, 2014 WL 660857, at *3-5 ("Dr. Storer's understanding of the plain and ordinary meaning of the term at issue is supported by the specification such that a jury could (but would not have to) agree with Apple's noninfringement position."). As explained above, to testify and apply the plain meaning of the claim terms, Dr. Jakobsson should be permitted to review the specification to inform the plain and ordinary meaning of the terms. *Id.* RPost's objections to Dr. Jakobsson's opinions go to the weight of the evidence and can be the subject of cross-examination, but are not the basis for the exclusion of testimony.

### 5. "Portion of a Mail Transport Protocol Dialog" ('372 Patent)

RPost contends that the "Jakobsson Report does not apply the Court's constructions" with regards to the "mail transport protocol dialog" terms. Dkt. 725 at 6-7. Not so. This Court construed the term "mail transport protocol dialog" as "data including a list of at least one command and at least one response exchanged between devices during the transmission of a

message."  Dkt. 297 at 87.  Dr. Jakobsson uses this claim construction in his noninfringement analyses.  *See* Ex. 1 at, e.g., ¶ 327 (" ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ ").

RPost misconstrues the Court's claim construction analysis regarding the term "portion." In its order, the Court deliberately emphasized the word "and" when it found that "Defendants have not shown that 'at least a portion of the commands and responses' must be read to mean at least a portion of the commands *and* at least a portion of the responses."  Dkt. 297 at 86 (emphasis in original).  As such, a "portion" of the "mail transport protocol dialog" does not need to include *both* a portion of a command *and* a portion of a response, but must include at least one portion of either a command or a response.  The only paragraph of Dr. Jakobsson's report which RPost cites in its Motion, *i.e.*, ¶ 330, expresses his criticism of Dr. Almeroth's analysis according to this construction.  *See* Dkt. 725-1 at ¶ 330 (" ██████████████████████████████████████

████████████████████████████████████████████████████████

████████ ").  Dr. Jakobsson did not ignore the Court's constructions with regards to the "mail transport protocol dialog" terms.  To the contrary, it is RPost who has ignored the construction of "mail transport protocol dialog," which was construed to require "a list of at least one command and at least one response…".  Dkt. 297 at 87.

## B.    Dr. Jakobsson's References to the Prosecution History of the Patents-in-Suit is Appropriate

As an initial matter, in ¶¶ 217, 221, 226, 232, 235, 255, and 280, which RPost objects to, Dr. Jakobsson provides his opinion that there is no infringement under the doctrine of equivalents under the Function-Way-Result Test or Insubstantial Differences Test.  This is entirely proper and there is nothing objectionable about these paragraphs.  With regard to ¶¶ 164-169, Adobe agreed

during the parties' meet and confer that Dr. Jakobsson would not advance opinions regarding the ultimate legal issue of prosecution history estoppel.  As such, this dispute should be moot.  The remaining content in ¶¶ 164-169 provide the basic undisputed facts of the prosecution history for purposes of background, and is proper.  *Key Energy Servs., Inc. v. C.C. Forbes, LLC*, No. 2:08-CV-346-CE, 2011 WL 7429433, at *1–2 (E.D. Tex. June 3, 2011) (Granting motion to strike expert testimony regarding legal conclusions, but denying motion as to testimony concerning "the factual story concerning what the prosecution history was.").

### C.  Dr. Jakobsson's Comparison of the Accused Product to the RPost Product is Appropriate

In ¶ 400 of his expert report, Dr. Jakobsson cites to the testimony of Dr. Terrance Tomkow, RPost's Chief Technology Innovation Officer and sole inventor of the '372 and '624 patents, for the proposition that the accused "EchoSign" system is " ▮▮▮▮▮▮ " while RPost's ▮▮▮▮▮▮ . *See* Dkt. 725-1 at ¶ 400 (citing Ex. 2 at 35:21-37:6 and 157:24-159:21).  RPost asserts that there is "no linkage between a hypothetical 'web-centric' product and the Accused Product," but Dr. Tomkow provided this linkage himself while testifying.  *See* Ex. 2 at 35:21-36:4 (" ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ").  By contrast, Dr. Tomkow testified that " ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ " *Id.* at 36:7-10.

The implications of this distinction between Adobe's ▮▮▮▮▮▮ product and RPost's product, as described by Dr. Tomkow, are relevant to damages because RPost's damages expert, Dr. Ugone, opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ " *See* Ex. 3 at ¶ 68.  As such, Dr. Jakobsson's opinions regarding this testimony and the differences between Adobe and RPost's product offerings are relevant "to a factual determination that the jury will decided in this case," namely the nature of competition between Adobe and RPost.  *See, e.g., Georgia-Pac. Corp. v. U.S.*

*Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (reciting the fifth G-P factor: "5. The commercial relationship between the licensor and licensee…") modified sub nom. *Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).  As such, ¶¶ 400-401 of Dr. Jakobsson's report are relevant and should not be stricken.

## III.   CONCLUSION

For the reasons above, Adobe respectfully requests that the Court deny RPost's Motion to Strike Portions of the Expert Report of Dr. Markus Jakobsson (Dkt. 725).

DATED: May 6, 2019

Respectfully submitted by:

*/s/ Michael A. Berta, with permission by*
*Michael E. Jones*
MICHAEL A. BERTA
michael.berta@arnoldporter.com
RYAN J. CASAMIQUELA
ryan.casamiquela@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER
LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.340

MICHAEL E. JONES
Texas State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON PC
110 N. College, Suite 500
Tyler, Texas 75702
Telephone: 903.597 8311
Facsimile: 903.593 0846

***Attorneys for Adobe Inc. f/k/a Adobe***
***Systems Incorporated and EchoSign, Inc.***

## CERTIFICATE OF SERVICE

        I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on May 6, 2019.

        I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on May 6, 2019.

*/s/ Michael E. Jones*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

        I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Michael E. Jones*