# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| RMAIL LIMITED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC., et al, <br><br> DOCUSIGN, INC., <br><br> ADOBE SYSTEMS INCORPORATED, et al., <br><br> Defendants. | Civil Action No. 2:10-CV-258-JRG (Lead Case) <br><br> CONSOLIDATED <br><br> Civil Action No. 2:11-cv-299-JRG <br><br> Civil Action No. 2:11-cv-300-JRG <br><br> Civil Action No. 2:11-cv-325-JRG |

**PLAINTIFFS' RESPONSE TO RIGHTSIGNATURE'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. KEVIN ALMEROTH (DOC. NO. 728)**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | PROCEDURAL BACKGROUND | 1 |
| II. | LEGAL STANDARD | 1 |
| III. | ARGUMENT | 3 |
| | A. RPost Has Agreed to No Longer Assert the '624 Patent Against RightSignature. | 3 |
| | B. RPost Disclosed the "contents of the dispatch" Limitation of the '219 Patent. | 3 |
| | C. RPost Disclosed its Infringement Theories for the '334 Patent. | 4 |
| | D. RPost's Contentions Provide Notice of its Infringement Theories for the '372 Patent. | 6 |
| |     1. "transmitting the message" | 6 |
| |     2. "storing at the server at least a portion of the mail transport protocol dialog" | 9 |
| | E. "No Evidence" Limitations | 9 |
| | F. Rule 3-1(g) Is Irrelevant to a Narrative Description of the Accused Product's Source Code. | 10 |
| | G. Good Cause and Prejudice | 11 |
| IV. | CONCLUSION | 12 |

## TABLE OF AUTHORITIES

**CASES**

*Balsam Coffee Solutions Inc. v. Folgers Coffee Co.*, No. 6:09-cv-89, 2009 WL 4906860 (E.D. Tex. Dec. 9, 2009) .................................................................................................. 2

*Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. cv 12-01971-CW, 2014 WL 1653131 (N.D. Cal. Apr. 24, 2014) ..................................................................................................... 2

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-CV-37-RWS, 2017 WL 2651618 (E.D. Tex. June 20, 2017), *adopted*, 2017 WL 4693971 (E.D. Tex. July 31, 2017) ................................................................................................................. 11

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09-cv-116, 2010 WL 346218 (E.D. Tex. Jan. 21, 2010) ...................................................................................................... 2

*Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 786606 (E.D. Tex. Feb. 26, 2010) ........................................................................................................ 1-2, 4, 9

*Finisar Corp. v. DirecTV Grp., Inc.,* 424 F. Supp. 2d 896 (E.D. Tex. 2006) .............................. 11

*L.C. Eldridge Sales Co. v. Azen Mfg. Pte*, No. 6:11cv599, 2013 U.S. Dist. LEXIS 186309 (E.D. Tex. Oct. 11, 2013) ..................................................................................................... 2

*Orion IP LLC v. Staples, Inc.*, 407 F. Supp. 2d 815 (E.D. Tex. 2006) ..................................... 3, 10

*Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009) ..................................................................................................................... 2

*Ziilabs Inc. v. Samsung Elecs. Co.*, No. 2:14-cv-203-JRG-RSP, 2015 U.S. Dist. LEXIS 158549 (E.D. Tex. Aug. 24, 2015) ................................................................................... 10

**RULES**

FED. R. CIV. P. 26 ........................................................................................................................ 1-2

RightSignature's motion (Doc. No. 728) ("Motion") is based, in part, on RightSignature's incorrect claim that Dr. Almeroth's expert report disclosed infringement theories that were not set forth in RPost's infringement contentions. In making this incorrect claim, RightSignature confuses *theories* of infringement with *evidence* of infringement. This Court has long held that a plaintiff's infringement contentions must provide theories, but not evidence. *See Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010). Evidence, however, is properly provided in connection with expert discovery. FED. R. CIV. P. 26(a)(2)(B). RightSignature identifies evidence that was not disclosed—and not required to be disclosed—in RPost's infringement contentions.

## I.   PROCEDURAL BACKGROUND

RPost served its infringement contentions nearly seven years ago, in June 2012. Doc. No. 728 at 7-8 (of 8). RightSignature produced source code for its electronic signature services for the first time on February 8, 2019. *See* Ex. 4 at 6-7. At that time, expert reports were due on March 11, 2019. RPost sent its attorneys to review the source code on February 15th. *Id*. at 1. After RPost's attorneys identified relevant portions, source code printouts were available to RPost's experts for the first time on February 19th. *Id*. In the eight years since RightSignature received RPost's infringement contentions, RightSignature never raised any issue regarding the sufficiency of those contentions.

## II.  LEGAL STANDARD

Expert reports are expected to provide more information than is contained in infringement contentions. While "[e]xpert infringement reports may not introduce theories not previously set forth in infringement contentions[,] . . . [t]he scope of infringement contentions and expert reports are not, however, coextensive." *Fenner Invs.*, 2010 U.S. Dist. LEXIS 17536, at *2. "Infringement

contentions need not disclose 'specific evidence nor do they require a plaintiff to prove its infringement case.'" *Id*. (quoting *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09-cv-116, 2010 WL 346218, at *2 (E.D. Tex. Jan. 21, 2010)); *see also Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009) ("Infringement contentions are not intended to require a party to set forth a prima facie case of infringement and evidence in support thereof"); *Balsam Coffee Solutions Inc. v. Folgers Coffee Co.*, No. 6:09-cv-89, 2009 WL 4906860, at *3 n. 2 (E.D. Tex. Dec. 9, 2009) ("P.R. 3-1 does not require the disclosure of evidence and documents supporting infringement contentions").  Expert reports, in contrast, include a complete statement of the expert's opinions, the basis and reasons for them, and facts or data considered when forming them. *See* FED. R. CIV. P. 26(a)(2)(B).

In deciding a motion to strike expert reports on the grounds of untimely disclosure, the threshold question is "whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. cv 12-01971-CW, 2014 WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014).

Further, a defendant cannot sit on its infringement contention sufficiency arguments until after service of the expert report, only to attack the expert report as exceeding the bounds of arguably insufficient contentions.  *L.C. Eldridge Sales Co. v. Azen Mfg. Pte*, No. 6:11cv599, 2013 U.S. Dist. LEXIS 186309, at *20 (E.D. Tex. Oct. 11, 2013) ("Defendants completed the entire claim construction process, more than a year of discovery, and expert discovery without complaining that they could not discern Plaintiffs' theory from their contentions. Thus, Defendants cannot now claim that they did not have notice."); *Fenner*, 2010 U.S. Dist. LEXIS 17536, at *3 ("If Defendants were unclear as to the scope of the contentions, it was their responsibility to work with Plaintiff, informally or through motion practice, to clarify the issue.").  "A defendant cannot

lay behind the log until late in the case and then claim it lacks notice as to the scope of the case or the infringement contentions." *Orion IP LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006). "The Patent Rules intend to strike a balance of providing fair notice to defendants without requiring unrealistic, overly factual contentions from plaintiffs, but the burden of notice the Patent Rules place on plaintiffs is intended to be a shield for defendants, not a sword." *Id*.

### III. ARGUMENT

The Court should not strike portions of Dr. Almeroth's report.  For some limitations, it is true that Dr. Almeroth cites evidence not expressly mentioned in the prose or screenshots of RPost's infringement contentions.  But those theories are not new.  They were disclosed in RPost's contentions.  And the "new" evidence that Dr. Almeroth cites was shown in screenshots within those infringement contentions, charted against the same limitations that RightSignature challenges here.  Even so, Dr. Almeroth's inclusion of more evidence—beyond what is described in the prose of the infringement contentions—is within the purview of Federal Rules of Civil Procedure, the local rules, and this District's case law.  For other limitations, RightSignature claims it has no notice of RPost's infringement theories, yet this is the first time they have raised such a challenge.  Those arguments have been waived.

    **A.  RPost Has Agreed to No Longer Assert the '624 Patent Against RightSignature.**

To reduce the number of disputes, RPost has agreed to no longer assert the '624 Patent against RightSignature.  Thus, the doctrine of equivalents issue is moot.  Motion at 3.

    **B.  RPost Disclosed the "contents of the dispatch" Limitation of the '219 Patent.**

RightSignature argues that RPost is advancing new theories via a box-drawing exercise for the "contents of the dispatch" limitation.  Motion at 5-6.  To highlight the "dispatch" and "contents of a dispatch" limitations, RPost's original infringement contentions drew a box around a portion



of the RightSignature service webpage—that menu was entitled "Send *a Document*." Motion, Ex. 3 at 1 (emphasis added).  Thus, it is not a new theory.

Moreover, the other information contained in the contention's drawn box is consistent with Dr. Almeroth's analysis. After RPost served its contentions, the Court construed the "dispatch" to mean *"the transmission sent* from a sender *toward a recipient* via a dispatcher." Doc. No. 297 at 23 (emphasis added). Further, the Court construed "contents for the dispatch" to mean "the entire content the sender originates for sending *to the recipient*." *Id*. (emphasis added). Indeed, the other evidence within the box—                                              —is indicative of a transmission sent to a recipient. That disclosure directly ties to the Court's later-entered construction and does not change the scope of the infringement theory.

    **C.**    **RPost Disclosed its Infringement Theories for the '334 Patent.**

RightSignature argues that RPost's contentions were silent as to the '334 Patent's claimed "authentication data." Motion at 6. This argument is a belated contention-sufficiency argument. Motion at 7 ("Dr. Almeroth's report is the first time that RPost identifies any theory for what constitutes 'authentication data.'"). As an initial matter, RPost's infringement contentions are sufficiently clear to put RightSignature on notice that the document model underlying the manner in which RightSignature uploads a document, *inter alia*, satisfies the "authentication data" limitation of the claims. RightSignature fails to explain in its motion how it was misled by RPost's infringement contentions. Indeed, for seven years, RightSignature never raised any issue with RPost's infringement contentions. *Fenner Invs.,* 2010 U.S. Dist. LEXIS 17536, at *3 ("If Defendants were unclear as to the scope of the contentions, it was their responsibility to work with

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Plaintiff, informally or through motion practice, to clarify the issue."). Even now, RightSignature fails to explain how identifying the functionality that allows uploading a document fails to put it on notice that the source code underlying that functionality represents a different infringement theory. Instead, RightSignature merely asks the Court to assume that Dr. Almeroth's report presents a different theory and then strike the report. RightSignature fails to carry its burden.

Regardless, claim 18 of the '334 Patent requires that the "authentication data" represent the component parts of the remainder of the claim. *See* Doc. No. 297 at 17 (construing "authentication data" to mean "information that is associated with the contents of the dispatch by generating a representation of at least the elements a1, a2, and a3, the representation comprising one or more elements"). RPost's contentions provide notice for each of those component parts, and thus, provide notice for the "authentication data." First, RPost's contentions included citations to "a1," which is "content data . . . representative of the dispatch." *See* Ex. 1 at 2 (citing "Send a Document" page related to the dispatch). Next, RPost cited audit-trail information within the Signature Certificate for "time indicia a2." *Id*. at 3-4 (showing timestamp information within a rectangle). Finally, RPost cited the same Signature Certificate information for "indicia a3 related to the destination of the dispatch." *Id*. at 3 (showing recipient name, email address, and IP address within a rectangle). Thus, RPost previously disclosed its infringement theory for the "authentication data."

Dr. Almeroth cited to consistent evidence in his report. ▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



RightSignature also argues that Dr. Almeroth includes—for the first time—the ▮▮▮▮ ▮▮▮▮ as part of his infringement opinion.  Motion at 7.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  But the contents of RightSignature's source code are not public, and RPost only learned of ▮▮▮▮▮▮ when it deposed RightSignature's 30(b)(6) witness on March 22, 2019—about *one week* before opening expert reports were due.  There is nothing inconsistent with using ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the same theory that RPost previously disclosed—authentication data includes dispatch information, which includes the uploaded document.  Ex. 1 at 2 (screenshot showing contents of the dispatch encompassing uploaded document for claim 18).

Additionally, RightSignature argues that there is a mismatch between "contents of the dispatch" set forth in the contentions versus what Dr. Almeroth cited.  Motion at 7-8.  For the same reasons as set forth above for the '219 Patent, there is not.

### D. RPost's Contentions Provide Notice of its Infringement Theories for the '372 Patent.

RightSignature challenges Dr. Almeroth's opinion on two limitations for this patent.  The first is "transmitting the message."  The second is "storing at the server at least a portion of the of a mail transport protocol dialog."  RPost addresses each below.

#### 1. "transmitting the message"

RightSignature challenges Dr. Ameroth's evidence for the "transmitting the message" limitation.  Motion at 8-9.  For this element of claim 1 of the '372 Patent, in its contentions, RPost included a screenshot of an invitation email—an email sent to a recipient, which the recipient then

uses to open RightSignature's web-based signature application to sign an uploaded document. Motion at 8. ███████████████████████

█████████████████ RightSignature argues that there is mismatch between the contentions and Dr. Almeroth's report, but RightSignature is incorrect.

███████

Moreover, other elements in RPost's contentions directly tie "the message" to an uploaded document—indicating that the "transmission of the message" must include transmission of the uploaded document. For example, for claim 1's preamble—requiring "a method of ***transmitting a message*** from a sender to a recipient"—RPost cited a screenshot showing the "***Send a Document***" page:



Ex. 3 at 1 (annotation added). Similarly, for the "receiving the message" limitation, RPost cited the same screenshot—again, showing that the message included the uploaded documents:

Plaintiffs' Response to DocuSign's Motion to Strike Dr. Almeroth                    Page 7



*Id.* at 2 (annotation added). And again, for "receiving at the server an indication from the recipient that *the message* has been received," RPost cited a screenshot of the recipient's web browser with the uploaded document in view:



*Id.* at 5 (annotation added). Additionally, RPost contended that the Signature Certificate—which is created for completed, signed *documents*—was indicative of the "digital signature of *the message*." Thus, as a matter of logic, the "transmission of the message" element must be related to transmission of the documents. Hence, the contentions disclose transmitting the uploaded

Plaintiffs' Response to DocuSign's Motion to Strike Dr. Almeroth                                              Page 8

[REDACTED]

document to the user through RightSignature's web-based application. If RightSignature believed that there was a conflict between "the message" in every element of claim 1—except the "transmitting" limitation—it should have sought clarification from RPost. RightSignature did not.

### 2. "storing at the server at least a portion of the mail transport protocol dialog"

RightSignature further challenges Dr. Almeroth's evidence for "storing at the server at least a portion of the of a mail transport protocol dialog." Motion at 9. But RightSignature misses the mark here. RightSignature admits that RPost's infringement contentions identify RightSignature's archive service "that ***stores previously signed documents***"—which directly ties to the "storing" requirement in the claim. Motion at 10 (emphasis added). As the face of the screenshot in the contentions shows, the archive stores signed documents completed in the RightSignature service. Ex. 3 at 4 ("Your *signed documents* are stored . . . Upon execution, each document is locked"). [REDACTED]

[REDACTED] RightSignature argues that [REDACTED] are "new infringement theories." *Id*. They are not new; they are simply evidence of a disclosed theory.

### E. "No Evidence" Limitations

RightSignature seeks to strike every limitation where RPost did not include an evidentiary citation in its original contentions. Motion at 11-12. But the infringement contentions are not required to include evidence. *Fenner*, 2010 U.S. Dist. LEXIS 17536, at *2 ("Infringement contentions need not disclose specific evidence nor do they require a plaintiff to prove its infringement case.") (internal citation omitted). Here again, RightSignature's argument is effectively a belated attack on the sufficiency of RPost's contentions—if RightSignature was

unclear as to RPost's infringement theory, RightSignature should have asked. *Orion IP*, 407 F. Supp. 2d at 817-18. By waiting until after expert reports, seven years after contentions were served and five months after the stay was lifted, RightSignature is strategically attempting "to use its alleged lack of clarification to its advantage." *Id*. at 818. Thus, RightSignature waived this argument. *Cf. Ziilabs Inc. v. Samsung Elecs. Co.*, No. 2:14-cv-203-JRG-RSP, 2015 U.S. Dist. LEXIS 158549, at **6-8 (E.D. Tex. Aug. 24, 2015) ("[T]he Court concludes that Ziilabs Motion to Strike appears to be nothing more than a belated motion to strike Defendants' P.R. 3-3(b) . . . [T]o the extent Defendants' 3-3 disclosures are deficient, the Court finds Ziilabs' waived any such objections by waiting nearly seven months to act.").

      **F.    Rule 3-1(g) Is Irrelevant to a Narrative Description of the Accused Product's Source Code.**

RightSignature also seeks to strike paragraphs of a narrative description of the RightSignature service—not infringement opinions of claim limitations—where Dr. Almeroth discusses source code. Motion at 12-13. But P.R. 3-1(g) does not have any bearing on the narrative description of the accused instrumentality in an expert's report. Judge Payne explained that P.R. 3-1(g) delays the notice function provided by infringement contentions:

> Local Patent 3-1(g) has a clear purpose. The Rule affords a party alleging infringement an opportunity to delay compliance with Patent Rule 3-1's requirements for claim elements that may be satisfied by source code that has not yet been produced. After production of the source code, the party claiming infringement must update its infringement contentions by identifying the portions of the code that satisfy relevant claim elements within 30 days. ***The Rule does not, however, bind a party that refers to a claim element as a "software limitation" to later identify corresponding source code. The Rule merely gives the party a delayed option of doing so***. If a party discloses how a "software limitation" is met without reference to source code, and the party's disclosure otherwise meets Local Patent Rule 3-1's requirements, there may be no need to later update infringement contentions with references to source code.

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-CV-37-RWS, 2017 WL 2651618, at *9 (E.D. Tex. June 20, 2017) (emphasis added), *adopted*, 2017 WL 4693971, at *6 (E.D. Tex. July 31, 2017) ("P.R. 3-1(g) does not create an obligation to identify corresponding source code"). P.R. 3-1(g) does not even bind a patentee to serve updated contentions with source code citations. The rule has no bearing on an expert's ability to discuss the accused product's source code in narrative format. It is simply inapplicable to RightSignature's requested relief.

Moreover, RightSignature argues that RPost never sought leave to amend its contentions to include source code citation under 3-1(g), even though it only provided printouts of the RightSignature source code one week before expert reports were initially due. Once again, this is a contention sufficiency argument—one that should be considered waived. Alternatively, Dr. Almeroth's report should be considered an amendment to RPost's infringement contentions. *See Finisar Corp. v. DirecTV Grp., Inc.,* 424 F. Supp. 2d 896, 900 (E.D. Tex. 2006) (expert report "reasonably could be considered to constitute, in effect, new 'Final Infringement Contentions'").

G. **Good Cause and Prejudice**

RightSignature argues that RPost relied on publicly available information in its expert report, which allegedly undercuts any good cause RPost would need to show. *E.g.*, Motion at 12, 14. This argument is a red herring. RPost is permitted to rely on publicly available documents, just as it is permitted to rely on non-public documents. But RightSignature produced very little non-public, relevant technical documentation. Indeed, until February 8, 2019, RightSignature had produced only 36 non-prior-art documents in this case, totaling 623 pages. Ex. 5. RightSignature's deadline to produce all relevant documents was November 19, 2012. Doc. No. 172, ¶ 3. But the bulk of RightSignature's non-public document production came in late February and even now consists only of about 14,300 pages. As noted, RightSignature did not produce source code until

February 8, 2019, and, despite repeated early requests for witnesses, did not make its 30(b)(6) witness available until March 22nd, ten days before expert reports were due. Equity weighs against permitting RightSignature to produce what little discovery it did until the very end of the discovery period and then complain that RPost used public information to supplement the lack of non-public disclosure.

Regardless, an expert's job is to explain the accused functionality to a lay jury, and definitive technical documents surely help buttress that explanation. But, because there were so few technical documents produced, Dr. Almeroth cited the information that he had available, some of which is public. And because evidence is not required in infringement contentions, it is irrelevant whether those publicly available documents were included in the initial contentions.

RightSignature also argues it is prejudiced because it only had two weeks to respond to Dr. Almeroth's report. Motion at 14. If RightSignature needed more than two weeks to respond to Dr. Almeroth's report, it could have asked RPost. It did not. RightSignature also argues that RPost "had at least several months before the April 1st deadline to prepare the Almeroth Report." Motion at 14. But that cuts both ways. As detailed in the previous paragraph, the amendments to the docket control order were driven entirely by RightSignature's and other Defendants' back-loading of document and witness production. Indeed, Defendants repeatedly attempted to force RPost into the unreasonable position of managing late-produced documents and triple- or quadruple-tracking depositions during the last week of discovery.

## IV. CONCLUSION

For the reasons stated above, the Court should deny RightSignature's motion to strike portions of Dr. Almeroth's report.

|   |   |
|---|---|
| Dated: May 6, 2019 | Respectfully submitted, |
|   | /s/ William E. Davis, III |
|   | William E. Davis, III |
|   | Texas State Bar No. 24047416 |
|   | bdavis@bdavisfirm.com |
|   | Christian Hurt |
|   | Texas State Bar No. 24059987 |
|   | churt@bdavisfirm.com |
|   | Edward Chin (Of Counsel) |
|   | Texas State Bar No. 50511688 |
|   | echin@bdavisfirm.com |
|   | Debra Coleman (Of Counsel) |
|   | Texas State Bar No. 24059595 |
|   | dcoleman@bdavisfirm.com |
|   | **THE DAVIS FIRM, PC** |
|   | 213 N. Fredonia Street, Suite 230 |
|   | Longview, Texas 75601 |
|   | Telephone: (903) 230-9090 |
|   | Facsimile: (903) 230-9661 |
|   |   |
|   | *Counsel for Plaintiffs* |
|   | *RPost Holdings, Inc., RPost Communications* |
|   | *Limited, and Rmail Limited* |

### CERTIFICATE OF SERVICE

I certify that the foregoing sealed document and all attachments thereto are being served via email on all counsel of record on this May 6, 2019.

/s/ William E. Davis, III
William E. Davis, III