███████████████████████████

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| RMAIL LIMITED, et al., | |
| Plaintiffs, | |
| v. | |
| AMAZON.COM, INC., et al., | **Civil Action No. 2:10-CV-258-JRG** (Lead Case) |
| DOCUSIGN, INC., | Civil Action No. 2:11-cv-299-JRG |
| RIGHTSIGNATURE, LLC, FARMERS GROUP, INC., FARMERS INSURANCE COMPANY, INC., | Civil Action No. 2:11-cv-300-JRG |
| ADOBE SYSTEMS INCORPORATED, ECHOSIGN, INC., | Civil Action No. 2:11-cv-325-JRG |
| Defendants. | ████████████████ |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE AND *DAUBERT* MOTION TO EXCLUDE PATENT-ELIGBILITY TESTIMONY OF DR. KEVIN ALMEROTH (DKT. 947)**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................ ii

    **I.**     **BACKGROUND** ................................................................................................1

         A.  The Record Prior to the Court's June 7, 2019 Section 101 Order ...........................1

         B.  The Section 101 Order ...............................................................................................2

         C.  Dr. Almeroth's Opening Supplemental Report and Dr. Clark's Rebuttal
             Supplemental Report...............................................................................................2

    **II.**    **ARGUMENT** ......................................................................................................3

         A.  Dr. Almeroth's Opening Supplemental Report is Timely ......................................3

         B.  Dr. Almeroth's Opinions Are Related to *Alice* Step Two ......................................4

         C.  Dr. Almeroth's Opinions Regarding RPost's Products Are Admissible ................9

         D.  Defendants' Requested Relief is Overinclusive ....................................................13

    **III.**   **CONCLUSION** ................................................................................................14

## TABLE OF AUTHORITIES

### Cases

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)..........................................................................................5

*Data Engine Techs LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018) ...........................................................................................5

*Daubert v. Merrell Down Pharms., Inc.*,
509 U.S. 579 (1993).................................................................................... *passim*

*Frolow v. Wilson Sporting Goods Co.*,
710 F.3d 1303 (Fed. Cir. 2013)..........................................................................................4

*Genband US LLC v. Metaswitch Networks Corp.*,
2016 U.S. Dist. LEXIS 1651 (E.D. Tex. Jan. 8, 2016)........................................................5

*Gonzalez v. Infostream Grp., Inc.*,
2016 U.S. Dist. LEXIS 14604 (E.D. Tex. Feb. 7, 2016) .........................................9–10, 13

*Homeland Housewares, LLC v. Whirlpool Corp.*,
865 F.3d 1372 (Fed. Cir. 2017).........................................................................................8

*Info-Hold, Inc. v. Applied Media Techs. Corp.*,
783 F.3d 1262 (Fed. Cir. 2015).......................................................................................12

*In re Katz Interactive Call Processing Patent Litig.*,
639 F.3d 1303 (Fed. Cir. 2011).......................................................................................13

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004).........................................................................................12

*Liquid Dynamics Corp. v. Vaughan Co.*,
449 F.3d 1209 (Fed. Cir. 2006).......................................................................................10

*Network-1 Techs., Inc. v. Alcatel-Lucent USA Inc.*,
2017 WL 4020589 (E.D. Tex. Sept. 12, 2017).................................................................12

*Nielsen v. Alcon, Inc.*,
2011 U.S. Dist. LEXIS 116733 (N.D. Tex. Sep. 2, 2011)..................................................10

*Perdiemco, LLC v. Industrak LLC*,
2016 U.S. Dist. LEXIS 183648  (E.D. Tex. Nov. 6, 2016) ...............................................9

*Prometheus Labs., Inc. v. Roxane Labs., Inc.*,
    805 F.3d 1092 (Fed. Cir. 2015)...........................................................................................8

███████████████████████████████████

RPost respectfully requests that the Court should deny Defendants' Motion.  Dr. Almeroth's opinions are timely, tied to the *Alice* inquiry, and are admissible under the Federal Rules of Evidence.  Defendants are free to present contrary evidence through their expert (Dr. Clark) and cross examine Dr. Almeroth.  They are not entitled to striking his opinions.[1]

## I.   BACKGROUND

RPost presents this background in response to Defendants' background section, which omits a number of key facts.

### A.   The Record Prior to the Court's June 7, 2019 Section 101 Order

Prior to the June 9, 2019 Section 101 Order, Plaintiffs served Dr. Almeroth's Rebuttal Report on Validity.   Ex.  1.  ████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████  ████████████████████

██████████████████████████

Dr. Almeroth will testify as to these opinions at trial.  Defendants filed a total of five motions to strike Dr. Almeroth's opinions.  Dkt. Nos. 686, 712, 718, 728, 729.  Defendants did not move to strike the opinions in Dr. Almeroth's validity rebuttal report.

RPost also produced a number of materials showing how its services operate, including a number of video demonstrations and documentation.  RPost included that documentation on its exhibit list served on Defendants.  *See, e.g.*, Dkt. 916-5, at 10, 22, 32  (RPost trial exhibit list listing RPO_0106614, RPO_TMI_0004557, RPO_0147946, RPO_0147948, and RPO_0147950 exhibits discussed in Dr. Almeroth's Opening Supplemental Report).

---

[1] To streamline the issues, Plaintiffs withdraw the challenged portions of Dr. Almeroth's Opening Supplemental Report that relate solely to the '624 Patent and RPost's products, namely paragraphs 63, 101, 102, and 103.



**B.      The Court's Section 101 Order**

The Court granted-in-part and denied-in-part Defendants' motions for summary judgment regarding invalidity under Section 101.  Dkt. 912.  The Court denied the Motion with regard to claims 9 and 15 of the '372 Patent and claims 1, 2, and 4 of the '624 Patent.  *Id.* at 2. Regarding those claims, the Court held that "there is a genuine dispute of material fact as to whether the Remaining Claims 'involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry.'"  *Id.* (internal quotation omitted).  The Court then granted leave to the parties to "produce expert reports on *Alice* step two with respect to the Remaining Claims, such that the jury will have appropriate expert testimony available during trial from which to determine the material facts regarding whether the Remaining Claims meet *Alice* step two."  *Id.*  The Court set a deadline for opening reports was June 14, 2019 and rebuttal reports on June 19, 2019.  *Id.*  The Court instructed both parties to "set forth their respective positions on *Alice* step two in opening reports, and then may submit responsive rebuttal reports."  *Id.*

**C.      Dr. Almeroth's Opening Supplemental Report and Dr. Clark's Rebuttal Supplemental Report**

RPost served Dr. Almeroth's Opening Supplemental Report on June 14, 2019 (Dkt. 947-2).  That report provided expert testimony regarding *Alice* step two for the asserted claims.

As part of those opinions, Dr. Almeroth analyzed the materials produced in the case to ultimately conclude that the product functionality was reflected within the scope of claims 9 and 15 of the '372 Patent.  Dkt. 947-2, at ¶ 94.

On June 19, 2019, Defendants' served Dr. Clark's rebuttal report.

███████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

## II.   ARGUMENT

Defendants raise a number of complaints and critiques of Dr. Almeroth's Opening Supplemental Report.  Each of those go to the weight of the evidence, not its admissibility. Surviving a *Daubert* challenge is a low bar under Rule 702.  That rule does not require perfect, airtight proof in order for testimony to be admissible.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert v. Merrell Down Pharms., Inc.*, 509 U.S. 579, 596 (1993).  Defendants have each of those tools in their trial toolbox.  They are more than able to examine Dr. Almeroth on any perceived weaknesses.  They can present Dr. Clark's contrary opinions.  But they are not entitled to exclude Dr. Almeroth's testimony.  RPost respectfully requests that the Court deny Defendants' Motion.

### A.   Dr. Almeroth's Opening Supplemental Report is Timely

Dr. Almeroth's Opening Supplemental Report is timely.  The Court's June 7, 2019 Order granted leave to serve a supplemental opening report on June 14, 2019, Dkt. 912, at 2, and RPost timely served Dr. Almeroth's report on that date.  Defendants' sole timeliness allegation is that Dr. Almeroth could have included his opinions in his earlier reports. Mot. at 7.  That proves too much: the opinions in both sides' supplemental reports on eligibility hypothetically could have been included in their earlier reports.  Both Dr. Almeroth and Dr. Clark addressed Section 101 in their prior reports in April, 2019.  The Order allowed supplementation on *Alice* step two, and in particular expert testimony on the issue.  Dkt. 912, at 2.  █████████████████████

██████████████████████████████████████████████

██████████████████████████████

██████████████████████████████████████

Defendants' prejudice allegations are also overstated.  Dr. Almeroth did not rely on new factual evidence—the exhibits he analyzed were produced in fact discovery and already on RPost's exhibit list.██████████████████████████████████████████

████████████████████████████████████████████████ Ex 1 at ¶¶ 438–440.  Despite filing a total of *five* Motions to Strike Dr. Almeroth's opinions in his prior reports, Dkt. Nos. 686, 712, 718, 728, 729, Defendants tellingly did not move to strike those sections of his report at the appropriate time.

Defendants also had the opportunity per the Court's June 7, 2019 Order to respond to the analysis in Dr. Almeroth's Opening Supplemental Report.  And they did: Dr. Clark's Rebuttal Supplemental Report contains over thirty paragraphs directly responding to Dr. Almeroth's analysis.  Dkt. 946-2, at ¶¶ 44–79.  Dr. Almeroth did not provide new, previously undisclosed facts; he did not wait until his rebuttal report to provide his opinions.  Defendants responded to Dr. Almeroth's report.  They were not unduly prejudiced.

Defendants' complaint, at root, is that Dr. Almeroth's analysis further weighs in favor of denying their Motion in Limine regarding RPost practicing the asserted patents.  Mot. at 6–7.  That Motion, however, should be denied anyway, independent of Dr. Almeroth's Report.  Defendants continue to bake into their argument an incorrect premise: that expert testimony is required to show that a patentee practices its patents.  That is not the law, and Defendants still ignore that circumstantial evidence can be sufficient.  *See Frolow v. Wilson Sporting Goods Co.*, 710 F.3d 1303, 1310–11 (Fed. Cir. 2013) (discussing marking).  Defendants' alleged motion-in-limine-based prejudice is not a reason to strike Dr. Almeroth's report.

## B.      Dr. Almeroth's Opinions Are Related to *Alice* Step Two

Dr. Almeroth's opinions regarding the awards and Forrester Report are admissible and

█████████████████████████████████████

relevant to *Alice* step two.  Industry applause can be relevant to if the invention improved upon computer functionality or recites a computer-implemented abstract idea.  *See Data Engine Techs LLC v. Google LLC*, 906 F.3d 999, 1008 (Fed. Cir. 2018) (upholding, at *Alice* step one, claims where "[t]he invention was applauded by the industry for improving computers' functionality as a tool able to instantly access all parts of complex three-dimensional electronic spreadsheets," referring to "[n]umerous contemporaneous articles [that] attributed the improved three-dimensional spreadsheets' success to its notebook tab feature"); *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) ("[S]ome inventions' basic thrust might more easily be understood as directed to an abstract idea, but under step two of the *Alice* analysis, it might become clear that the specific improvements in the recited computer technology go beyond 'well-understood, routine, conventional activit[ies]' and render the invention patent-eligible.") (citation omitted).

Dr. Almeroth's opinions are sufficient, and Defendants' critiques are the fodder for cross-examination, not the basis for exclusion.  Defendants' challenge the connection[2] between RPost's products and the technology of the asserted claims.  ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[2] Defendants challenge Dr. Almeroth's opinions under the nexus requirement for secondary considerations evidence for obviousness.  Mot. at 9–10.  But Dr. Almeroth's Supplemental Opening Report does not deal with obviousness, and Defendants waived that *Daubert* challenge when they failed to file a motion on Dr. Almeroth's rebuttal validity report.  In any case, Dr. Almeroth's opinions show a sufficient nexus.  *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 1651, at *6 (E.D. Tex. Jan. 8, 2016) ("Accordingly, Mr. Lanning may rely on and offer opinions about evidence of copying, commercial success and industry praise so long as this evidence is tied to some product, feature, or technology that Genband alleges embodies one or more asserted patents.  Even if the product embodies technology other than just the asserted patents, the connection is sufficient to permit the circumstantial inference of a nexus.").

███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

The 2011 World Mail Award mentioned on RPost's website is linked to those functionalities because it was tied to "services built upon" RPost's "Registered Email technology platform," *viz.*, the platform that "digitize[es] high value documents and correspondence traditionally bound to hard copy where laws, regulations or best practices have required ***strong evidentiary records of delivery proof, timestamps, message and document content, signatures, or data privacy*."[3]  The way RPost's technology platform provides that level or proof and timestamps is through the Registered Receipt functionality and audit trail functionality reflected in the claims, as laid out in Dr. Almeroth's report.  *E.g.*, Dkt. 947-2, at ¶¶ 84–92, 94.  The Forrester Report is also linked to the technology of the claims.  The Report addresses the e-signature market, and RPost's e-signature offerings are based on the patented functionality, as detailed in Dr. Almeroth's report.  *Id.* at ¶¶ 72–95.

Defendants quarrel with the award evidence because it mentions "***new*** services built upon" the Registered Email technology platform and Dr. Almeroth at his deposition did not recall the details of the awards.  Mot. at 8.  They also critique the Forrester Report because it analyzed multiple factors, which Defendants allege do not relate to the claims.  *Id.*

Those critiques go to the weight of the testimony, not its admissibility.  There is a sufficient link between these awards and the patented technology to allow the fact-finder to decide the issue.  For the award, the press release indicates that the "new" services refer to new applications using the Registered Email Technology reflected in the claims, suggesting praise for the patented functionality (since it enables the new applications).  And the fact of an award

---

[3] https://www.rpost.com/news/rpost-wins-2011-world-mail-award-security/ (emphasis added).

██████████████████████████████████████

(whether a Nobel Prize, industry award, government award, or something lessor) is at least circumstantial evidence that the technology is not wholly conventional, routine, or well-understood.

There is also a sufficient link between the Forrester Report and the claimed technology. As Defendants recognize, one of the evaluation criteria in the Forrest Report was compliance. Mot. at 8 n.3. In the "Compliance with industry/country regulations and technical standards" area, RPost received a 5 (out of a scale of 1 to 5). *See* Ex. 2, at RPO_0107272. ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ . ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ That there were other potential criteria does not render Dr. Almeroth's testimony inadmissible; it simply goes to the weight of the testimony.

Defendants' allegations regarding the amount of time between the time of the invention and the awards is also an issue that goes to weight, not admissibility. As Defendants' admit, Dr. Almeroth accounted for this time period in his report. Mot. at 10 (reproducing Supplemental Opening Report, at ¶ 97). While Defendants boldly assert that Dr. Almeroth's analysis "def[ies] all common sense," *id.*, it is reasonable to conclude that awards issued years after the invention for the products that embody the claimed technology support a finding that the technology was not conventional, well-understood, or routine at the time of the invention. As time passes, the state of the technological arts progresses; what started as a breakthrough later becomes the state of the art. Thus, continued praise for RPost's offerings years after the invention suggest that the



functionality was not conventional at the time of the award.  If the functionality was not conventional at the time of the award, the arc of technological progress indicates that it would not have been conventional years prior.  Defendants are free to present contrary evidence and cross examine Dr. Almeroth.  But they are not entitled to exclude his testimony.

Defendants primarily rely on a commercial success case (*Prometheus v. Roxane*) to argue that the passage of time weighs in favor of striking Dr. Almeroth's testimony.  But *Prometheus* is not a *Daubert* case—the Federal Circuit affirmed, under a deferential standard of review, the District Court's weighing of the evidence presented there, *i.e.*, the Court admitted the evidence and could afford it little weight.  805 F.3d 1092, 1101–02 (Fed .Cir. 2015).[4]  In addition, commercial success is generally different than the evidence that Dr. Almeroth addresses. Consumers may purchase products for reasons unrelated to its functionality, such as marketing, changes in the market, or pricing that varies over time.  *See id.*  But the awards and recognition evidence that Dr. Almeroth relies upon are sufficiently linked to the product functionality itself, the core aspect of which Dr. Almeroth's analysis ties to the claimed technology.

Defendants also assert that Dr. Almeroth's opinions regarding the RSign product should be struck because the awards relate to the RMail product, not the RSign product.  Mot. at 11.

Moreover, Defendants omit that the Forrester Report relates to RPost's esignature offerings, which would encompass RSign

---

[4] The other case Defendants rely on, *Homeland v. Whirlpool*, is an *Inter Partes* Review case regarding claim construction expert testimony—not a *Daubert* case.  865 F.3d 1372, 1378.  But even then, the Court held that the PTAB did not err in affording little weight to the testimony, which was admitted into evidence.  *Id.*

Response to Defendants' *Daubert* Motion to Strike                                                     Page 8

███████████████████████████████████████████████

and RMail (both have esignature functionality), though RPost's focus has been RMail.  *See id.*;

*see also* Ex. 2, at RPO_0107274 ("Although it provides web-centric e-sign services, RPost . . .

has focused on email-centric e-sign services. . . .").

Lastly, Defendants assert that striking Dr. Almeroth's opinions regarding the claimed

functionality within RPost's products warrants striking his opinions regarding the awards and

the Forrester Report.  But Defendants did not move to strike Dr. Almeroth's industry praise

opinions regarding the awards and the Forrester Report in his Rebuttal Report on Validity.  Ex

1, at ¶¶ 438–440.  Thus, that evidence will be in the record in any event.  There is no reason to

exclude Dr. Almeroth's mirror opinions in his Supplemental Opening Report.

## C.      Dr. Almeroth's Opinions Regarding RPost's Products Are Admissible

Dr. Almeroth's opinions regarding the RPost products are also admissible.  Defendants'

complaints reduce to Dr. Almeroth did not perform the same level of detail in his Opening

Supplemental Report as he did in his infringement reports—he did not review RPost's source

code, rely on testing of RPost's products,[5] talk with RPost personnel, or provide a claim chart

(rather than provide his opinions in prose).  But none of that is even required for an infringement

opinion, let alone an opinion that the claimed technology is present in RPost's products as part

of rebutting an invalidity defense.  *See Perdiemco, LLC v. Industrak LLC*, Civil Action No. 2:15-

cv-727-JRG-RSP, 2016 U.S. Dist. LEXIS 183648, at *16 (E.D. Tex. Nov. 6, 2016) ("[T]he

Court notes that there is no legal ground for excluding an expert's opinion on the basis that they

failed to use the accused products. The law in this District is to the contrary."); *Gonzalez v.*

---

[5] Defendants incorrectly assert that "Dr. Almeroth did not use RPost's products."  Mot. at 15.  Dr. Almeroth testified that he has used RPost's products, though the opinions in his report do not rely on that personal use (which was principally in the days leading up to his deposition, though he testified he may have also used RPost products earlier in the case).  Ex. 4, at 124:15–16 ███████
████████████████████████████████████

*Infostream Grp., Inc.*, No. 2:14-cv-906-JRG-RSP, 2016 U.S. Dist. LEXIS 14604, at *5 (E.D. Tex. Feb. 7, 2016) (denying *Daubert* motion to strike invalidity testimony on prior art eBay reference that relied on screenshots of eBay's website and not the underlying source code because "*Daubert* does not require an expert to rely on only direct evidence to reach her conclusions"); *Nielsen v. Alcon, Inc.*, No. 3-08-CV-2239-B-BD, 2011 U.S. Dist. LEXIS 116733, at *18 (N.D. Tex. Sep. 2, 2011) ("The court initially observes that an expert is not required to perform direct physical testing on an accused device in order to prove infringement.") (citing *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006)).

Dr. Almeroth's analysis is sufficient under *Daubert*.  Critically, Defendants do not actually engage with what is in Dr. Almeroth's report, instead focusing on cropped out, incomplete, and out-of-context deposition testimony snippets.  But looking at the analysis Dr. Almeroth actually performed in his Opening Supplemental Report shows that it is sufficiently reliable under Rule 702 and *Daubert.*

Dr. Almeroth relied on RPost demonstration videos and documentation.  He analyzed the evidence, describing how RPost's products operate for multiple paragraphs (Dkt. 947-2*,* at ¶¶ 72–93), applied the Court's claim constructions in his analysis, (*id.* at ¶ 66), and reached the following conclusions for claims 9 and 15 of the '372 Patent: (*id.* at ¶ 94):





Defendants ignore that paragraph and how it ties the functionality that Dr. Almeroth described above to the limitations of claim 9 and 15.  Dr. Almeroth uses the language of the claims to match the functionality he described to the claimed technology.  Defendants instead argue that Dr. Almeroth's testimony should be struck under *Daubert* because it is not in their preferred form—a claim chart.  But *Daubert* does not require an expert's report to be in one form or another, so long as the substance (which is the testimony) is sufficiently reliable.

Indeed, while Defendants incorrectly criticize Dr. Almeroth's report as not containing a limitation-by-limitation analysis, they can only point to one alleged missing element from Dr. Almeroth's analysis of the '372 Patent claims—the additional limitation in dependent claim 15. Mot. at 13.  They do not point to any limitations from claim 9, which warrants denial of their motion on that claim.  And their view of Dr. Almeroth's analysis for claim 15 is incorrect.

The only element in claim 15 that Defendants point to requires "data in the dialog between the server and the recipient relating to the message including the identification of the server and the recipient and the identification of the message and an acknowledgement of the receipt of the message by the recipient."  '372 Patent, at claim 15.

██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

The "message data," "identification data," and "acknowledgement of receipt data" tracks the language of claim 15.  That data is also exemplified on the Registered Receipt discussed in Dr. Almeroth's report.  *See, e.g.*, Dkt. 947-2*,* at ¶¶ 55, 86–90.  The receipt shows the acknowledgement of receipt of the message by the recipient (*e.g.*, delivered and opened), the identification of the server (*e.g.*, the rpost.net server identified in the delivery audit trail) and the recipient (*e.g.*, the email addresses of the recipients), and the identification of the message (*e.g.*, the message ID information in the receipt and audit trail dialog).  *See id.*

Defendants next critique Dr. Almeroth for observing that the RPost products match the disclosure of the Patents-in-Suit, noting that RPost asserted that comparing the accused products to the embodiments to assert noninfringement is improper.  Mot. at 13 (citing *Network-1 Techs., Inc. v. Alcatel-Lucent USA Inc.*, No. 6:11-cv-492-RWS-KNM, 2017 WL 4020589, at *3-5 (E.D. Tex. Sept. 12, 2017)).  These assertions suffer from two problems, one legal and one factual.

Legally, the problem with comparing an accused product to an embodiment to argue **noninfringement** is that it improperly **narrows** the claims to cover only those embodiments. *Info-Hold, Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262, 1267 (Fed. Cir. 2015) ("[W]e have 'expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.'") (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)).  That concern does not apply when determining if a patentee practices its own home-grown patents by looking at the

patent's embodiments.   That is because the law presumes that the claims do not exclude a disclosed embodiment.  *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1324 (Fed. Cir. 2011). ("[T]here is a strong presumption against a claim construction that excludes a disclosed embodiment . . . .").  Notably, Defendants fail to point to any limitation in the asserted claims that does not cover the disclosed embodiments.  To the contrary, for the purposes of noninfringement, Defendants seek to use the specification to inform the plain-and-ordinary meaning of certain claim limitations.  *See* Dkt. 914, at 2.

This case also presents a unique factual circumstance that Defendants ignore.   The specification describes the embodiments in terms of the RPost service, using RPost servers and a receipt.  *See* Dkt. 947-2, at ¶¶ 47–54 (discussing specification).  The term "RPost" appears in the '372 Patent almost 150 times.  RPost also has marked its Registered Email Technology with a number of patents, including the '372 Patent.   *See, e.g.*, *id.* at ¶ 74 (reproducing RPO_TMI_0004557, at RPO_TMI_0004576) (showing platform listed with '372 Patent, among other patents).  This is all at least circumstantial evidence that an expert can consider, as part of the larger record, in forming an admissible opinion.  *See Gonzalez*, 2016 U.S. Dist. LEXIS 14604, at *5 ("Sometimes, an expert can rely on circumstantial evidence.").   Dr. Almeroth considered that evidence, as well as reviewing RPost's materials and video demonstrations, to determine if the technology embodied the '372 Patent claims, as detailed above.  His opinions have a sufficient factual basis and perform a reliable analysis under *Daubert*.

**D.      Defendants' Requested Relief is Overinclusive**

A number of the paragraph Defendants' seek to strike are unrelated to the bases of their motion.   Paragraphs 98–100, for example, express independent opinions regarding the unconventional nature of the '624 Patent claims.  They do not contain the opinions Defendants' are seeking to strike and should remain independent of the outcome of Defendants' Motion.  In

Response to Defendants' *Daubert* Motion to Strike                                                     Page 13

███████████████████████████

addition, as noted above, Plaintiffs are withdrawing paragraphs 63, 101, 102, and 103, mooting

Defendants' motion as to those paragraphs.

## III.    CONCLUSION

For the foregoing reasons, RPost respectfully requests that the Court deny Defendants'

Motion to Strike.


DATED June 30, 2019

Respectfully submitted,

By: /s/ William E. Davis, III
William E. Davis, III
Texas State Bar No. 24047416
bdavis@bdavisfirm.com
Debra Coleman
Texas State Bar No. 24059595
dcoleman@bdavisfirm.com
Christian Hurt
Texas State Bar No. 24059987
churt@bdavisfirm.com
Edward Chin
Texas State Bar No. 50511688
echin@bdavisfirm.com

DAVIS FIRM
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
T: (903) 230-9090
F: (903) 230-9661


*Counsel for Plaintiffs*
*RPost Holdings, Inc., RPost*
*Communications Limited, and RMail*
*Limited*

███████████████████████████████

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing sealed document is being served

via email on all counsel on this 30th day of June, 2019.

/s/ William E. Davis, III
William E. Davis, III