# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| RMAIL LIMITED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC., et al., | Civil Action No. 2:10-CV-258-JRG <br> (Lead Case) |
| DOCUSIGN, INC., | Civil Action No. 2:11-cv-299-JRG |
| RIGHTSIGNATURE, LLC, FARMERS GROUP, INC., FARMERS INSURANCE COMPANY, INC., | Civil Action No. 2:11-cv-300-JRG |
| ADOBE SYSTEMS INCORPORATED, ECHOSIGN, INC., <br><br> Defendants. | Civil Action No. 2:11-cv-325-JRG |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STRIKE AND *DAUBERT* MOTION TO EXCLUDE TESTIMONY FROM DR. KEITH UGONE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.  DR. UGONE'S SUPPLEMENTAL REPORTS SHOULD NOT BE
    STRUCK BECAUSE THEY ARE REASONABLY WITHIN THE
    SCOPE OF AND RELATED TO ADDRESSING THE
    EFFECTS AND CONSEQUENCES OF THE COURT'S ORDER ............................ 2

    A.  Dr. Ugone's understanding that RPost's products practice
        the Tomkow Patents is not new and was disclosed in his Original Reports ................ 2

    B.  The Court's Order rendered irrelevant the primary value indicator
        (Propat's proposed license to the '219 Patent) of Dr. Ugone's analysis;
        thus, it was necessary for Dr. Ugone to place more weight on
        other relevant value indicators ................................................................................ 3

    C.  The ███████████ was and remains an input in Dr. Ugone's
        analysis of RPost's opportunity cost of licensing ...................................................... 5

II. DR. UGONE'S SUPPLEMENTAL REPORTS ARE
    NOT UNRELIABLE UNDER *DAUBERT* .................................................................. 5

    A.  **Dr. Ugone's reasonable royalty opinion is not a "lost profits" opinion** ............... 6

    B.  **Dr. Ugone's reasonable royalty analysis is proper** ............................................ 7

        1.  Dr. Ugone's reliance on the ███████████
            to apportion damages is proper ........................................................................ 7

        2.  Dr. Ugone's reliance on "expected profit margins" is supportable .................. 8

        3.  Dr. Ugone's inclusion of unsuccessful transactions is reliable
            given that they are part of the economic footprint of the Accused Products ....... 9

        4.  Dr. Ugone's did not ignore what Defendants characterize
            "reliable" evidence ......................................................................................... 10

III. CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286, 1314 (Fed. Cir. 2014) ................................................................................6

*Cornell Univ. v. Hewlett-Packard Co.*,
    609 F.Supp.2d 279 (S.D.N.Y. 2009) ................................................................................ 11

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ............................................................................................8

*Micro Chem., Inc. v. Lextron, Inc.*,
    317 F.3d 1387 (Fed. Cir. 2003) ........................................................................................ X

*SimpleAir, Inc. v. Google Inc.*,
    No. 2:14-CV-11, 2015 U.S. Dist. LEXIS 135915 (E.D. Tex. Oct. 5, 2015) ...................... 6, 8

*Whiteserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed Cir. 2012) ............................................................................................ 11

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) ..........................................................................................6

The Court should deny Defendants DocuSign, Inc. ("DocuSign"), Adobe Inc. and EchoSign, Inc. ("Adobe"), and ShareFile, LLC, f/k/a RightSignature, LLC's ("RightSignature") (collectively "Defendants") Motion to Strike and *Daubert* Motion to Exclude Testimony from Dr. Keith Ugone (Dkt. No. 950) because: 1) Dr. Ugone's Supplemental Reports[1] are reasonably within the scope of and related to addressing the effects and consequences of the Court's Order (Dkt. No. 912) on RPost's damages model; and 2) the Supplemental Reports are not unreliable under *Daubert*.

To the extent that the Defendants believe that Dr. Ugone's opinions are not credible or that he could have considered or should have given greater weight to certain alleged evidence in his analysis, the jury should weigh the evidence and decide whether the Defendants' alleged contrary evidence or Dr. Ugone's methodology and opinions are more compelling and credible. The Defendants improperly seeks to block Dr. Ugone's opinions from being put before the jury so they can do their job – weigh the facts, evaluate the correctness of Dr. Ugone's conclusions and methodology, and judge credibility.

After Dr. Ugone issued his original report, Adobe did not seek to strike that report on any basis. Thus, to the extent Adobe now seeks to strike Dr. Ugone's supplemental report on any issues that it could have sought to strike earlier, those arguments should be considered waived.

For these reasons and those detailed below, Plaintiffs RMail Limited, RPost

---

[1] Dr. Ugone's supplemental reports (served on June 14, 2019) for DocuSign, Adobe, and RightSignature are referred to as **Exhibits 1, 2,** and **3 ("collectively, "Supplemental Reports")** respectively. RPost's arguments primarily apply to each of Dr. Ugone's supplemental report. Defendant-specific distinctions are explained where necessary. Also, only the '372 Patent is asserted against RightSignature. Unless otherwise noted, references to the "Tomkow patents" for RightSignature include only the '372 Patent.
  Dr. Ugone's original reports (served on April 1, 2019) for DocuSign, Adobe, and RightSignature are referred to as **Exhibits 4, 5,** and **6 (collectively, "Original Reports")**, respectively.

Plaintiffs' Response to Defendants' Motion to Strike and
*Daubert* Motion to Exclude Testimony from Dr. Keith Ugone                                        Page 1

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Communications Limited, and RPost Holdings, Inc. (collectively "RPost") respectfully request that the Court deny the Defendants' Motion.

I. **DR. UGONE'S SUPPLEMENTAL REPORTS SHOULD NOT BE STRUCK BECAUSE THEY ARE REASONABLY WITHIN THE SCOPE OF AND RELATED TO ADDRESSING THE EFFECTS AND CONSEQUENCES OF THE COURT'S ORDER.**

   A. **Dr. Ugone's understanding that RPost's products practice the Tomkow Patents is not new and was disclosed in his Original Reports.**

Dr. Ugone's understanding that RPost's products practice the Tomkow Patents is not a new opinion. Even in his original reports, Dr. Ugone had an understanding from Dr. Almeroth that RPost's products practice the teachings of the Tomkow Patents. As noted in his Original Reports, Dr. Ugone understood that



Ex. 5 at ¶ 37; *see also* Ex. 4 at ¶ 36; Ex. 6 at ¶ 40. Other statements in his Original Reports gave the Defendants ample notice that Dr. Ugone understood and had the opinion that RPost's products practice the Tomkow Patents. Ex. 5 at ¶¶ 9(c)            ), 57; *see also* Ex. 4 at ¶¶ 9(c), 59; Ex. 6 at ¶¶ 9(c), 60.

Although the statement[2] that Dr. Ugone added to his Supplemental Reports provides more specificity as to when the technology covered by the '372 Patent had been integrated into RPost's products, this statement ultimately has no impact on Dr. Ugone's opinion, as he already

---

understood, as indicated in his Original Reports, that RPost's products embodied the teachings of the Patents-in-Suit, which included Tomkow Patents. Thus, the Defendants are wrong about their contention that this is a new opinion from Dr. Ugone.

> **B.      The Court's Order rendered irrelevant the primary value indicator (Propat's proposed license to the '219 Patent) of Dr. Ugone's analysis; thus, it was necessary for Dr. Ugone to place more weight on other relevant value indicators.**

The effects and consequences of the Court's Order (Dkt. No. 912), which invalidated the asserted claims of the Feldbau Patents, on RPost's damages model have been major and far-reaching. The Court's Order stripped away the foundation of RPost's damages model by rendering irrelevant the starting point and primary value indicator of Dr. Ugone's analysis (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓) in his Original Reports. Ex.5 at § V(A), IX(D), XI(A). Before the Court's Order, Dr. Ugone primarily relied on the ▓▓▓▓ ▓▓▓▓▓ as a starting point of his analysis and as a primary value indicator because ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, which in the hypothetical negotiation is assumed valid and infringed. After the Court's Order, however, the fundamental assumption in the hypothetical negotiation – that the asserted patents are assumed valid and infringed – no longer applied to the Feldbau Patents because they are, as a direct consequence of the Court's Order, no longer asserted patents and are invalid.  The circumstances of the hypothetical negotiation fundamentally changed because of the Court's Order – the only asserted patents now are the Tomkow Patents and only those are assumed valid and infringed; and the Propat Proposal became irrelevant to the present Tomkow-only case given that, after the Court's Order, it involves a licensing offer to patents that are invalid.

It is unreasonable for the Defendants to expect Dr. Ugone to be bound by his prior reliance on the Propat Proposal given the vastly different circumstances that now exist after the Court's

Order. The Defendants are attempting to take tactical advantage of the situation caused by the Court's Order because they know that Dr. Ugone **had** to assume that the Feldbau Patents were valid and infringed as part of the hypothetical negotiation framework in his Original Reports, and that it would be unreasonable for Dr. Ugone to have anticipated the outcome of the Court's Order and avoid relying on the Propat Proposal "just in case" the Feldbau Patents were invalidated. Dr. Ugone's reliance on the Propat Proposal was appropriate based on the facts known to him at the time and the assumption that the Feldbau Patents were valid.

Because the capstone and primary value indicator in his Original Reports, it was no longer valid after the Court's Order, Dr. Ugone had to change his opinion based on the new reality.³ Dr. Ugone placed more weight on other relevant value indicators ( ). In his Original Reports, Dr. Ugone performed an analysis of RPost's as a secondary value indicator, thus this is not a new theory in his Supplemental Reports. Ex. 4 at § XI(B); *see also* Ex. 5 at § XI(B); Ex. 6 at § XI(B).

As Dr. Ugone explained in his June 23-24, 2019 depositions, with the no longer being relevant, and by moving a secondary value indicator of RPost's opportunity cost to the primary (i.e., number one) value indicator, Dr. Ugone needed to supplement his analysis.⁴ Dr. Ugone further explained in his deposition that he used the **same methodology** as in his Original Reports, but looked at it in a couple of different ways based upon the documents that were in the





record.[5] These additional documents included the ▮▮▮▮ that the Defendants address in their Motion and which they questioned Dr. Ugone about extensively over two days of depositions, thereby diminishing any claim of prejudice that Defendants might allege. Ex. 7 at 133:10-157:15; Ex. 8 at 112:15-114:2.

    C.    The ▮▮▮▮ was and remains an input in Dr. Ugone's analysis of RPost's opportunity cost of licensing.

Dr. Ugone's ▮▮▮▮ theory, or RPost's opportunity cost of licensing, was a value indicator in the Original Reports and is not a "new" damages theory. Ex. 5 at § XI(B). In addition, the De▮▮▮▮ was in Dr. Ugone's Original Reports and remains in his Supplemental Reports as an input to Dr. Ugone's calculation of RPost's opportunity cost of licensing (especially because Dr. Ugone used the same basic methodology when presenting his opportunity cost of licensing approach).[6] Contrary to Defendants' assertions, Dr. Ugone did not use the ▮▮▮▮ to support an upward valuation of damages. Dr. Ugone's use of the ▮▮▮▮ actually served as an apportionment mechanism and served to lower claimed damages. Ex. 5 at ¶¶ 87(C), 88, 103.

## II.    DR. UGONE'S SUPPLEMENTAL REPORTS ARE NOT UNRELIABLE UNDER *DAUBERT*

Dr. Ugone's Supplemental Reports are not unreliable under *Daubert*. Through their various attacks, the Defendants are seeking to have the Court go beyond its gatekeeping role by weighing the facts, evaluating the correctness of Dr. Ugone's conclusions, imposing the Defendants' preferred methodology, and judging Dr. Ugone's credibility. This is improper. The Court must be "cautious not to overstep its gatekeeping role and weigh facts, evaluate the

---

[5] Ex. 7, K. Ugone Depo. Tr. (6/23/2019) at 65:16-66:22, 67:20-70:12; Ex. 8 at 127:11-128:2.
[6] Ex. 4 at ¶ 104; Ex. 5 at ¶ 102; Ex. 6 at ¶ 103; Ex. 1 at ¶¶ 90-91; Ex. 2 at ¶¶ 87-88; Ex. 3 at ¶¶ 92-93.

███████████████████████████████████████

correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another." *SimpleAir, Inc. v. Google Inc.,* No. 2:14-CV-11, 2015 U.S. Dist. LEXIS 135915, at *3 (E.D. Tex. Oct. 5, 2015) (quoting *Apple Inc. v. Motorola, Inc.,* 757 F.3d 1286, 1314 (Fed. Cir. 2014), *rev'd on other grounds by Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1349 (Fed. Cir. 2015)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (collecting authority).

### A. Dr. Ugone's reasonable royalty opinion is not a "lost profits" opinion.

The Defendants cast Dr. Ugone's reasonable royalty opinion as a ███████ theory. Motion at 3. ████████████████████████████████████████████████ ████████████████████████████. Although a lost profits analysis would require one to look at the *Panduit* factors,[7] Dr. Ugone did not quantify lost profits in his reports, so a *Panduit* analysis was neither necessary nor appropriate.[8] Rather, Dr. Ugone evaluated ██████████ ████████████████████████████████████ and what Dr. Ugone opined to was what a ██████ ████████████████████████████████████████████████████████████ and ████████████████████████████████████████████████[9] It would be improper for a hypothetical negotiation construct to not include the negotiating position of the patent holder.[10] As such, Dr. Ugone's calculated opportunity cost of RPost licensing its patented technology to the Defendants reflects a negotiating position and a "force or pressure that's in the [negotiation]

---

[7] Ex. 7 at 90:14-91:20.
[8] Ex. 7 at 91:12-13.
[9] Ex. 7 at 91:5-15.
[10] Ex. 7 at 91:10-20, 92:16-23, 127:8-9.

██████████████████████████████████████

room," not a quantification of lost profits.[11]

Dr. Ugone did not "totally disregard" his earlier damages model. Rather, Dr. Ugone noted that the value indicators or "anchors" related to the Feldbau Patents were no longer relevant given the Court's Order.[12] As a result, Dr. Ugone's other value indicator (*i.e.,* ████████████ ████████ ), which was included in his Original Reports, was given greater weight as a benchmark for a reasonable royalty payment for a license to the Tomkow Patents.[13]

████████████████████████████████████████

████████████████████████████████████ Dr. Ugone relied on RPost's projections and presentations as inputs into his opportunity cost calculation, as these sources provide indications as to RPost's negotiating position **at the time of the hypothetical negotiations.** For example, if RPost was telling its investors (or potential investors) this information, then it also is the logical position RPost would take at the hypothetical negotiations.[15] For these reasons, the Defendants' assertion that Dr. Ugone has a "lost profits" opinion should be rejected.

  **B.**  **Dr. Ugone's reasonable royalty opinion analysis is proper.**

  **1.**  **Dr. Ugone's reliance on the ████████████ to apportion damages is proper.**

As explained in his Supplemental Reports and at his depositions, Dr. Ugone's analysis accounts for an estimated apportionment of the value of the Accused Products to the patented technology. ████████████████████████████████████████

---

[11] Ex. 7 at 91:16-20, 92:16-23, and 127:8-9.
[12] Ex. 5 at fn. 6.
[13] Ex. 7 at 59:9-61:11.
[14] Ex. 1 at ¶ 90; Ex. 2 at ¶ 87; Ex. 3 at ¶ 92.
[15] Ex. 7 at 146:23-147:5.

[redacted]

Neither RPost nor Dr. Ugone claim that that the DemandGen Survey is perfect. An imperfect survey that lacks certain data that otherwise could make it more helpful is not a reason to exclude the use of the survey. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, *856 (Fed. Cir. 2010) ("While the data were certainly imperfect, and more (or different) data might have resulted in a 'better' or more 'accurate' estimate in the absolute sense, it is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony."). Precluding Dr. Ugone from using the DemandGen survey as his apportionment mechanism would be improper. "Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury. The jury was entitled to hear the expert testimony and decide for itself what to accept or reject. *Id*.

To the extent that the Defendants disagree with Dr. Ugone's methodology and/or inputs, the Defendants can present such arguments to the jury. "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. At trial, the Defendants will have the opportunity to attack the DemandGen Survey and let the jury decide if they correct. Disagreement with Dr. Ugone's methodology and/or inputs is not grounds for striking his damages opinions. "The existence of other facts, however, does not mean that the facts used failed to meet the minimum standards of relevance or reliability." *Id*. "Under Rule 702, the question is whether the expert relied on facts sufficiently related to the disputed issue." *Id*.

---

[16] Ex. 7 at 176:2-20; *see also* Ex. 1 at ¶ 106; Ex. 2 at ¶ 103; Ex. 3 at ¶ 108.

In addition, as Dr. Ugone explained in his deposition, his understanding of the Tomkow Patents is that they facilitate the compliance enablement of the Accused Products. As such, using the ▮ whether one or both of the Tomkow Patents are found valid and infringed is consistent with his understanding of the patented technology.[17]

### 2. Dr. Ugone's reliance on "expected profit margins" is supportable.

The projections provide insights into the economic mindset of RPost at the time of the hypothetical negotiation. It would be inappropriate to not consider RPost's negotiating position at the time of the hypothetical negotiation. Whether these projections turned out to be 100% accurate has no bearing on their relevance as an indicator of RPost's mindset at the time of the hypothetical negotiation, especially considering that in the real world, RPost was damaged by the Defendants' alleged infringement which provides one explanation as to why the projections were not met.[19]

In addition, while Dr. Ugone made no claims that he identified the "smallest saleable unit," he does explain how the ▮ survey results serve as an apportionment mechanism.

Finally, Dr. Ugone's methodology is consistent with the requirement that the parties are a willing licensor and a willing licensee.

---

[17] Ex. 7 at 259:22 – 260:23.
[18] Ex. 7 at 106:25-107:3, 127:17-20, 146:23-147:5.
[19] Ex. 1 at fn. 356; Ex. 2 at fn. 308; Ex. 3 at fn. 316; *see also* Ex. 7 at 93:3-21.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████[20] In addition, the ultimate royalty rate to which Dr. Ugone opines is within the range of foregone profit scenarios presented by Dr. Ugone and is not at the highest figure presented.

> 3. **Dr. Ugone's inclusion of ███████████████ is reliable given that they are part of the economic footprint of the Accused Products.**

Adobe has waived this argument. ████████████████████████████████████████████████████████████████████████████████████████████████████.

As explained in his Supplemental Reports, Dr. Ugone understands that the Tomkow Patents relate to verifying the delivery and integrity of electronic transactions; however, Dr. Ugone also notes that non-completed transactions are part of economic footprint of the Accused Products.[21] ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████. ████████████████████████████

████████████████████████████████████

---

[20] Ex. 1 at ¶ 90; Ex. 2 at ¶ 87; Ex. 3 at ¶ 92.
[21] Ex. 1 at ¶ 108; Ex. 2 at ¶ 104, 105; Ex. 3 at ¶ 110.
[22] Ex. 1 at ¶ 109; Ex. 2 at ¶ 106; Ex. 3 at ¶ 111.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ the royalty base for the Tomkow Patents as derived by Dr. Ugone can fairly be said to represent "the revenue generated by the infringement" or the "revenue pool implicated by the infringement." *See Whiteserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 27 (Fed Cir. 2012) ("[T]he classic way to determine the reasonable royalty amount is to multiply the royalty base, which represents the revenue generated by the infringement, by the royalty rate, which represents the percentage of revenue owed to the patentee."); *Cornell Univ. v. Hewlett-Packard Co.*, 609 F.Supp.2d 279, 286 (S.D.N.Y. 2009) ("a royalty base, or the revenue pool implicated by the infringement').

Given the circumstances of this matter, there is no reason to exclude Dr. Ugone for providing alternative damages in light of the possibility that one royalty base is found more appropriate than another royalty base. ▬▬▬▬▬▬▬▬▬ is one potential business-related outcome from the hypothetical negotiation, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Hence, such transactions would have been a negotiation point at the hypothetical negotiations.

4.   **Dr. Ugone did not ignore what Defendants characterize as "reliable" evidence.**

Dr. Ugone did not ignore what Defendants characterize as "reliable" evidence. As explained in his Supplemental Reports, RPost's prior agreements related to the Feldbau Patents ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ are not probative because, among other reasons, the Feldbau Patents were found to be invalid (whereas in his Original Reports, the Feldbau Patents were assumed valid).[23]

---

[23] Ex. 1 at ¶¶ 95, 98, 102; Ex. 2 at ¶¶ 92, 95, 99; Ex. 3 at ¶¶ 97, 100, 104; Ex. 7 at 20:2-15, 21:11 – 22:24

The fact that Dr. Ugone did not arrive at the same conclusions as the Defendants with respect to the probative value of certain evidence is not a reason to strike Dr. Ugone's opinions. That is a question of which facts to credit, not a *Daubert* question. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."). Accordingly, the Defendants' motion grounded on this basis should be denied.

## III.   CONCLUSION

For the foregoing reasons, RPost respectfully requests that the Court deny the Defendants' Motion.

DATED June 30, 2019

Respectfully submitted,

By: /s/ William E. Davis, III
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Debra Coleman
Texas State Bar No. 24059595
dcoleman@davisfirm.com
Christian Hurt
Texas State Bar No. 24059987
churt@davisfirm.com
Edward Chin
Texas State Bar No. 50511688
echin@davisfirm.com
Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com

DAVIS FIRM PC
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
T: (903) 230-9090
F: (903) 230-9661

███████████████████████████████

**Counsel for Plaintiffs RPost Holdings, Inc., RPost Communications Limited, and Rmail Limited**

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing sealed document is being served via email on all counsel on this 30th day of June, 2019.

/s/ William E. Davis, III
William E. Davis, III

